1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

    BECTON, DICKINSON AND COMPANY,
4   GENEOHM SCIENCES CANADA, INC.,        :    CIVIL ACTION
    and HANDYLAB, INC.,                    :
5                                          :
                Plaintiffs,                :
6   v                                      :
                                           :
7   NEUMODX MOLECULAR, INC,                :
                                           :    NO. 19-1126-LPS
8          Defendant.                      - - -

9
                          Wilmington, Delaware
10                       Thursday, June 25, 2020
                        *Telephonic Oral Argument*
11
                               - - -
12
    BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge
13
    APPEARANCES:                    - - -
14

15              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                BY:  MICHAEL J. FLYNN, ESQ.
16
                       and
17
                WILMER CUTLER PICKERING HALE AND DORR LLP
18              BY:  DAVID P. YIN, ESQ.
                     (Washington, District of Columbia)
19
                       and
20
                WILMER CUTLER PICKERING HALE AND DORR LLP
21              BY:  OMAR A. KHAN, ESQ.
                     (New York, New York)
22
                          Counsel for Plaintiffs
23

24                              Brian P. Gaffigan
                                Registered Merit Reporter
25

1    APPEARANCES:   (Continued)

2

3                   FARNAN LLP
                    BY:   BRIAN E. FARNAN, ESQ.

4                         and

5                   DICKINSON WRIGHT PLLC
                    BY:   JAMES K. CLELAND, ESQ., and

6                         MICHAEL N. SPINK, ESQ.
                          (Ann Arbor, Michigan)

7
                                Counsel for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22                              - oOo -

23                      P R O C E E D I N G S

24              (REPORTER'S NOTE:  The following telephonic oral

25    argument hearing was held remotely, beginning at 1:34 p.m.)

1          THE COURT:  Good afternoon, everybody.  This is

2    Judge Stark.  Who is there for the plaintiffs, please?

3          MR. FLYNN:  Good afternoon, Your Honor.  This is

4    Michael Flynn from Morris Nichols on behalf of plaintiffs.

5    And with me on the line is Omar Kahn and David Yin from

6    Wilmer Hale; and we also have Scott Rittman who is Chief

7    Counsel for Intellectual Property at Becton Dickinson and

8    Company.

9          THE COURT:  Okay.  Good afternoon to all of you.

10          And who is there for defendant, please?

11          MR. FARNAN:  Good afternoon, Your Honor.  Brian

12    Farnan on behalf of the defendant; and with me is James

13    Cleland and Michael Spink from Dickinson Wright.

14          THE COURT:  Okay.  Good afternoon to you all

15    as well.  I have a court reporter, of course, taking

16    everything down; so I'll note for the record it is our case

17    of Becton Dickinson and Company, et al versus NeuMoDx, I

18    believe, N-e-u-M-o-D-x, Molecular, Inc., Civil Action No.

19    19-1126-LPS.

20          This is the time we set to hear argument on

21    the remaining pending motions.  We've got some things out

22    yesterday that should streamline today's discussion.  So we

23    have left the plaintiffs' motion to dismiss with respect to

24    noninfringement as well as the motion especially to strike

25    inequitable conduct.

```
 1                    We will hear from plaintiffs first, but any

 2       questions before we get started?  Any questions from

 3       plaintiffs?

 4                    MR. FLYNN:  No, Your Honor.

 5                    THE COURT:  Okay.  From defendant?

 6                    MR. FARNAN:  No, Your Honor.  Thank you.

 7                    THE COURT:  And I should say I have everybody's

 8       slides in front of me that you submitted yesterday so we'll

 9       hear from plaintiffs.

10                    MR. KAHN:  Good morning, Your Honor.  This is

11       Omar Kahn for the plaintiffs.

12                    The parties have certain screenshots regarding

13       historical background regarding the interaction, why the

14       litigation arose, but we would like to focus or time on

15       the motion to dismiss and strike and specifically on the

16       inequitable conduct issues.  With respect to the motion to

17       dismiss on the noninfringement counterclaim, unless the

18       Court has questions we would rest on the papers and the

19       slide.

20                    THE COURT:  Sure.  The only question, you don't

21       oppose giving them leave to amend if I dismiss this version

22       of the noninfringement counterclaim; right?

23                    MR. KAHN:  Correct.  We don't oppose leave to

24       amend.

25                    THE COURT:  All right.  You can focus on
```

1      inequitable conduct then.

2              MR. KAHN:  Thank you, Your Honor.  So on the

3      inequitable conduct counterclaims and defenses, this is a

4      case where all NeuMoDx has done is identified statements in

5      the file history with which it disagreed.  It is merely

6      challenging those isolated statements made by an attorney in

7      responding to Office Actions that are regarding claim terms

8      and distinction in the prior art.  What is not disputed is

9      there is no prior art that was withheld.  We know test

10     results that were not provided.  There is no relevant

11     internal products that was not disclosed, no prior use

12     on-sale bar information not provided.  There is no evidence

13     of contradictory statements made by the attorney internally,

14     in publications or made by BD.

15             All of the underlying information that formed

16     the basis for the attorneys' arguments, here Mr. Israelsen,

17     was before the Examiner.  The attorney and Examiner were

18     looking at the same material, going back and forth based on

19     the same materials to which they both had access equally.

20             No case law, not from NeuMoDx, we haven't found

21     any, exists where inequitable conduct allegations was

22     sustained based solely on the statements in the file history

23     and the challenge disagreements with those statements.

24             There is no such case because that would be

25     contrary to the repeated view from the Federal Circuit that

1    inequitable conduct claims are the atomic bomb of patent

2    litigation and a plague to be avoided; and if NeuMoDx's

3    claims were allowed and if attorney argument or advocacy of

4    the type that is present here in this case were sufficient,

5    every single case would involve inequitable conduct claims

6    based on the statements in the file history.

7              To address exactly this issue, this problem, the

8    Federal Circuit has amplified and explained several times

9    what the Rule 9 standard means in this context.

10             So while NeuMoDx might prefer to "kick the can"

11   down the road to summary judgment and post-trial, the

12   controlling Federal Circuit authority instructs that it must

13   satisfy the heightened pleading requirements today; and

14   NeuMoDx has failed to do so because ultimately all that it

15   has put forward in the amended answer are labels and

16   conclusions, not facts to support the inequitable conduct

17   allegations.

18             The cases cited in the briefing are clear that

19   on these very same facts, the same facts presented by this

20   case, issues of claim interpretation, distinguishing the

21   prior art are attorney argument that cannot be the subject

22   of inequitable claims; and even if they could, NeuMoDx

23   separately cannot satisfy the materiality -- knowledge and

24   materiality and falsity and intent to deceive requirement.

25   There is simply no alleged facts, only conclusory

1    assumptions to support those elements.

2            With the Court's permission, I will quickly hit

3    each of those elements:  affirmative misrepresentation of

4    fact, but-for materiality, knowledge of falsity of

5    materiality, and intent to deceive.

6            Starting with affirmative misrepresentation.  We

7    can start on slide 4.

8            NeuMoDx's first theory relates to the Wilding

9    reference.  And, importantly, of course, there is no dispute

10   the Wilding reference was available in the record.  In fact,

11   the Examiner was the one that cited the Wilding reference in

12   the first instance.

13           NeuMoDx's theory relates to one sentence in

14   the attorney's response to the Office Action; and NeuMoDx

15   disagrees with the statement that Wilding does not disclose

16   thermocycling the PCR reaction.

17           If we go to slide 5, NeuMoDx had a second

18   disagreement with a different statement again regarding the

19   Wilding reference, but it's really the same theory.  The

20   same theory that the prosecuting attorney Mr. Israelsen

21   incorrectly interpreted the content of the prior art Wilding

22   reference.

23           And here, the statement that NeuMoDx disagreed

24   with -- disagrees with is the statement that Wilding does

25   not teach "a multi-lane microfluidic cartridge, each lane

1    comprising a PCR reaction."

2              If we're on slide 6, the only reason to have

3    this slide for the Court is to show that these comments were

4    made in response to a nonfinal Office Action.  These are

5    amendment and response to the Examiner's action which is

6    not a declaration or an affidavit which sometimes, under

7    the Federal Circuit's case law, is subject to a slightly

8    different standard.

9              On slide 7, we have started to lay out the

10   Federal Circuit cases that speak directly to this issue.

11   *Young* and *Akzo*, these two cases directly speak to attorney's

12   arguments relating to the decision in the prior art.

13             In *Young*, what the attorney did was to

14   "interpret what the fulsome record teaches and why the

15   decision disclosed in that reference is different from the

16   claim limitation."  That is exactly what Mr. Israelsen did

17   in this case.

18             In the *Akzo* case, the applicant argued to the

19   Examiner that prior -- two prior art references did not

20   anticipate the patent, and it cited certain limitations

21   that were not met by prior art.  That is exactly what

22   Mr. Israelsen did in this case.

23             If we go to slide 8, these two Federal Circuit

24   cases are arising in a slightly different context, Your

25   Honor.  These are cases that don't necessarily relate to

1    distinguishing, to whether or not claim limitations were

2    present in the prior art, but now the attorney is making

3    arguments about whether in the *Life Techs.* case there was a

4    reasonable expectation of success.

5            And in the *Rothman* case, whether the art cited

6    was analogous to the claims and to the patent claims that

7    were being prosecuted.

8            Again, in both cases, the Federal Circuit

9    found that the attorney argument could not give rise to an

10   inequitable conduct claim.

11           And, again, both of these issues, we have

12   related Federal Circuit cases that speak to the fact that

13   reasonable expectation of success as the Court notes is a

14   question of fact.  The attorney was arguing about questions

15   of fact, whether or not the reference is prior art.  It is

16   analogous.  It is also a question of fact.  The attorney in

17   *Rothman* was also arguing about questions of fact.

18           On slide 9, we have two industry court cases

19   that apply these teachings from the Federal Circuit.

20           The *SunPower* case in particular is on a 12(b)(6)

21   standard where the defendant sought leave to amend and leave

22   to amend was denied.  And in that case, the applicants

23   distinguish the teachings of the prior art in order to

24   traverse a nonfinal rejection.  The applicant statements

25   were arguments against a rejection; and the Court held that

1    the challenger could not satisfy, did not satisfy the

2    pleading standard for inequitable conduct.

3               On slides 10 and 11 of the presentation, what

4    we have done is simply cut and paste exactly what the

5    challenged statements are that Mr. Israelsen made in the

6    leftmost column; and then in the two right columns, we

7    cut-and-pasted corresponding statements that the attorney

8    -- the challenged statements that were made by the attorney

9    in some of the cases that we just talked about.

10              And in each instance, the statements are

11   virtually identical.  In each instance, the statements are

12   distinguishing the prior art, identifying the limitations

13   that were missing in the prior art, and arguing that the

14   claims were patentable over the prior art.

15              In the *SunPower* case, which is on slide 11, that

16   case is almost directly on point.  Again, as I said, that

17   was a 12(b)(6) case where leave to amend was denied.

18              The applicant tried to distinguish what there

19   was a Woodring reference and argued that no known invention

20   suggested by the prior art contemplates the use of

21   photovoltaic modules; and the challenger in the litigation

22   alleged that contrary to the attorney's representation,

23   Woodring does contemplate the use of those modules.

24              And that is exactly the challenge here for the

25   statement made by the Mr. Israelsen.

 1              And so with respect to NeuMoDx's first theory

 2     based on the Wilding reference, all of the cases are clear

 3     that when discussions of the content of the prior art

 4     distinguishing the prior art, and arguing that the claims

 5     are patentable to the prior art, those are all attorney

 6     arguments.  They cannot give rise to an inequitable conduct

 7     claim.

 8              On slide 12, if we can turn to that slide, we

 9     have NeuMoDx's second theory which is even worse in our

10     view than the first theory.  Because now, it's not even a

11     discussion of the prior art.  What here NeuMoDx is starting

12     to challenge relates to an amendment to the patent claims.

13     And here, NeuMoDx challenges the deletion of the term

14     "microdroplet" and Mr. Israelsen's remarks describing those

15     amendments.

16              On slide 13, we've replicated exactly what the

17     amendment was; and one of the many amendments that were

18     made was to delete the term "microdroplet" from the claim

19     limitation.

20              And then on slide 14, we have shown the remarks

21     that were provided.  And this is part of the same document;

22     the documents in slide 13 and 14 are part of the same

23     document, the same document that was about 15 pages long.

24     And after the section with the black-lined amendment,

25     Mr. Israelsen submitted remarks but concluded with a

1    boilerplate conclusion section that describes the purpose of

2    the amendments that were not specifically addressed in the

3    foregoing discussion.

4            So right before the excerpt on slide 14, there

5    was a discussion of certain amendments that were made, and

6    then this conclusory statement in the conclusion section

7    is directed to the amendments that were not specifically

8    discussed in the prior section.

9            Again, these comments are not in a declaration

10   or affidavit.  And we have highlighted the words "it is

11   believed," because the section is expressly the attorney's

12   opinion and his argument.  It cannot be, under any

13   circumstances, a factual misrepresentation because the

14   attorney is saying "it is believed that ..." and then the

15   entire section follows, including the sentence that NeuMoDx

16   challenges, which is the sentence that "these amendments

17   have only been made to increase claim readability, improve

18   grammar and reduce the time and effort required for

19   prosecution."

20           And so the reason that this fares even worse

21   than the Wilding reference theory, and we submit that this

22   theory fails for all the same reasons, but it fares even

23   worse because this is true boilerplate language, and it is

24   boilerplate for at least two reasons:

25           First, it turns clearly from on the face of the

1    document.  There is a catchall to discuss any amendment that

2    he didn't specifically discuss in the remarks preceding the

3    conclusion section; and, second, it is also boilerplate

4    because, as we discussed in our briefing, Mr. Israelsen

5    recycled exactly the same language twice when he prosecuted

6    the '308 patent.  That is one of the patents that is

7    referenced in NeuMoDx briefs, and so it's boilerplate; and

8    so for that reason, it is even worse when we get to slide

9    15, which under the *Innogenetics* case, the comments made

10   in the *Innogenetics* case were almost identical to the

11   comments that Mr. Israelsen made here where there was a

12   throwaway sentence directed to -- a throwaway boilerplate

13   section that was directed to issues that weren't directly

14   relevant.  And the Federal Circuit said:  That is just

15   boilerplate.  We're not going to find inequitable conduct on

16   that ground.

17           Even if there were some claim interpretation

18   or construction issue with respect to the construction of

19   "microdroplet," that also would not give rise to inequitable

20   conduct allegations.  We've shown a case here, the *Masimo*

21   case, which was an in-District case for exactly that point.

22           In slide 16, we have done the same thing that

23   we did in the Wilding theory, which is we put the Israelsen

24   statements side by side with the statements that were

25   challenged in the cases that we just discussed; and the

1    boilerplate language in *Innogenetics* is virtually identical

2    because there, the language, the statement from the attorney

3    was the references do not relate to the invention and

4    further discussion of the same is not necessary.

5             So there, of course, the attorney was talking

6    about the prior art references.  Here, the attorney was

7    talking about the amendments to the claims.  In both

8    instances, the attorney was saying I don't think there is

9    any reason to discuss in *Innogenetics* the references in

10   this case, the rest of the amendment; and that was, in both

11   instances, at the conclusion of the statements and remarks

12   that were being made.

13            We're on to slides 17 and 18, if we could turn

14   to but-for materiality.

15            On slide 18, and maybe it is worth just a second

16   to talk about the but-for materiality theory that they have

17   on the remarks, the "microdroplet" remark.

18            So the chain of causation, Your Honor, goes

19   something like this, as I understand it.  It's the

20   "microdroplet" limitation is removed.  The Examiner didn't

21   catch it and didn't understand its importance.

22            He then apparently limited his search to

23   non-microdroplet references.  He then apparently did not

24   find any relevant art such as -- and then the defendants

25   identified the Zou references, Z-o-u references.

1          And that chain of causation, there is no factual

2     basis to give rise to a reasonable inference than any of

3     those steps in that causation occurred.

4               THE COURT:  All right.  Yes.  You're running out

5     of time.  I've got a couple of questions.  I've got to stop

6     you there.

7               MR. KAHN:  Sure.

8               THE COURT:  What is your contention about why

9     the "microdroplet" amendment was made?  Do you dispute that

10    it as a broadening amendment?  Do you contend that it was

11    done for grammar?  What is your position on that?

12              MR. KAHN:  So in our view, Your Honor, the Court

13    does not have to confront that issue in that, even assuming

14    the "microdroplet" limitation, it was incorrect to add --

15    to remove that limitation.  It's irrelevant because the

16    issue is whether or not the statements that were made were

17    attorney argument.

18              And to be clear, the Court does not have to

19    agree that it was boilerplate because the other cases

20    discussing attorney argument generally would cover it.

21              In terms of whether the "microdroplet"

22    limitation, whether the removal of that limitation broadened

23    the claims, we think of course it did, because the removal

24    limitation would presumptively broaden the claims in some

25    way.

1    So what Mr. Israelsen was saying was that the

2    broadening of the claim does not affect their patentability

3    in that way.  And so were the Court to deny the motion, we

4    would certainly contest NeuMoDx's allegation that that

5    statement was false.

6    THE COURT:  All right.  And then in terms of

7    their contentions about what the attorneys said about

8    Wilding, I think they're saying at least some of it was

9    factual misrepresentations because the attorney said here is

10   something that is in -- or I think more accurately here is

11   something that is not in Wilding when the defendant's view

12   is absolutely those things were in Wilding.

13   I don't expect you to agree with that as a

14   factual matter, but if that is a fair reading of the

15   allegation, can't that be the basis for an inequitable

16   conduct allegation?

17   MR. KAHN:  No, Your Honor.  The very act of

18   distinguishing the prior art means to speak to the content

19   of the prior art.

20   And so when you say my claims are

21   distinguishable over this reference, you are saying that

22   this reference doesn't have that limitation.  And to the

23   extent that there was some dispute or difference between

24   distinguishing the prior art and characterizing the prior

25   art, we disagree that there is.  The cases are clear that

1    even talking about what the prior art says will not give

2    rise to claims of inequitable conduct.  That is clear from

3    the *SunPower* case.

4              THE COURT:  All right.  Is there no limit on

5    that?  I mean if the prosecuting attorney lies about who is

6    the person listed as the inventor on a prior art patent or

7    intentionally lies about the date on the face of the patent

8    or the title of the patent, I mean things we would all agree

9    objectively are not true just by looking at the prior art

10   patent, is that entirely immune as a matter of law from

11   inequitable conduct liability simply because the Examiner

12   can see for him or herself that it is false?

13             MR. KAHN:  We're not saying here, Your Honor,

14   the attorneys are immune from liability; and certainly there

15   are cases from this District that say under certain

16   circumstances the, attorney and the applicant can be liable

17   for alleged -- you know, can -- a claim can be stated

18   against them for inequitable conduct.

19             But in the specific circumstance, you have the

20   difference between attorney argument and an affirmative

21   misrepresentation.  In the cases that find that the line

22   between attorney argument has been crossed over and now you

23   are into affirmative misrepresentation, that line in those

24   cases relies on the fact there is some extrinsic evidence

25   that contradicted the statement that was made, that shifted

1   the attorney's statement or the advocacy from their

2   arguments for affirmative misrepresentation.  There is other

3   evidence out there not in front of the Examiner that was

4   withheld that now arguably would move from the attorney

5   argument field or space to an affirmative misrepresentation.

6           So in the *Wyeth* case, internal testing data

7   and procedures were withheld that would have informed the

8   Examiner's views as to what the testing data was -- the

9   purported testing data meant.

10          In the *Southco* case, there was a product sample

11  and contradictory statements and other publications that

12  were withheld from the Examiner.  And so what --

13          THE COURT:  All right.  Yes.  I'm going to have

14  to stop you.  I'll give you a couple minutes for rebuttal,

15  but let me turn now to defendants.

16          Go ahead, please.

17          MR. CLELAND:  Yes.  Good afternoon, Your Honor.

18  This is James Cleland on behalf of defendants.

19          I'd like to start off with a quote from

20  Magistrate Judge Burke in the *Wyeth Holdings* case because

21  there seems to be a lot of dispute here about the fact that

22  you cannot have an inequitable conduct claim when prior art

23  is in front of the Examiner.

24          And his quote from that case is, "To countenance

25  Wyeth's approach would create a perverse incentive where

1    applicants would be free to falsely characterize such

2    documents but then claim immunity from a later charge of

3    inequitable conduct because the mischaracterized material

4    was before the PTO."

5              There are a number of cases out there.  We've

6    cited several of them, including *Wyeth Holdings*, including

7    *Southco*, including *Quest*, including *Apotex*, where the

8    inequitable conduct claim has either survived the 12(b)(6)

9    motion or even prevailed on the merits based upon

10   misrepresentations.

11             In each of those --

12             THE COURT:  Yes, let me stop you there.  In each

13   of those cases, was there not some information that was also

14   in possession of the party charged with inequitable conduct

15   that was not in front of the PTO?

16             MR. CLELAND:  Your Honor, I believe that may be

17   the case.  *Southco*, if my memory serves me correctly, was

18   largely based on two representations regarding what the

19   prior art did not teach, much like we have here.

20             I don't recall off the top of my head whether

21   other information factored into that analysis.  But in all

22   of these cases, I think with the exception of one, the

23   prosecuting attorney was the "who" in the *Exergen* test,

24   and that person was charged at least partially maybe in

25   combination with the inventor of being the one who

1   committed inequitable conduct based upon at least in part

2   misrepresentations.

3          So, Your Honor, I'd like to just comment very

4   briefly on the background here before I dive into the

5   substance.  It will be very brief, because I think a little

6   bit of flavor kind of puts the right frame of mind in place.

7          Back when Handylab was sold, BD brought in a new

8   prosecuting attorney in about 2010, Mr. Israelsen.  As soon

9   as he stepped in the door, he immediately pushed the

10  inventors, the inventors who knew the prior art, who knew

11  why they claimed the scope of the claims that they did, and

12  who knew what was in the scope of the prior art and it

13  wasn't.  He pushed them out the door.  He didn't consult

14  them about claim amendments, he didn't consult them about

15  prosecution, and he immediately laid to waste the entire

16  claim strategy that existed.  His goal was to obtain the

17  broadest claims possible, really any means possible.

18         So that really takes us to, I'm going to refer

19  Your Honor to our Slide No. 6 where we lay out a pattern of

20  misconduct here.

21         There are at least four acts that form a basis

22  for that pattern.  Two of them are in the '708 patent

23  related to the Wilding reference, and they're two separate

24  incidents.  They're two separate representations.  The

25  third is the "microdroplet" limitation.  The fourth is the

1    continuation of these misrepresentations into the '900

2    patent which is a continuation of the '708 patent.

3              And I think it is important, if you turn to

4    Slide No. 7, to look at the actual language of what

5    Mr. Israelsen said, and in the context of what the Patent

6    Office had done before he made that statement.

7              For instance, relative to the Wilding reference,

8    the applicant had just amended the claim to require

9    thermocycling in an single PCR chamber.  And that limitation

10   was amended in the claim that said, okay, you can't do it in

11   multiple reaction chambers for the same lane.

12             Well, if you look at slide 8, and I apologize,

13   it may not have a number on it, it's comparison.  Wilding

14   clearly discloses a single reaction chamber with a single

15   meter where PCR occurs, yet Mr. Israelsen focuses his

16   attention on Figs. 4, 5, and 6A where you have to cycle

17   between two reaction chambers to complete the PCR reaction.

18             And the problem is he didn't just stop it,

19   arguing what those figures, Figs. 4, 5, and 6 disclose.  He

20   made the affirmative statement that Wilding does not

21   disclose thermocycling in the single PCR reaction zone when

22   in fact it absolutely does, as shown in Figs. 1, 2, and 3.

23             The next instance relates to a representation

24   that was made given the nature of this Wilding disclosure.

25   Again, an affirmative representation where Mr. Israelsen

1   said Wilding fails to disclose, at slide 9, multi-lane

2   microfluidic cartridge where each lane comprises a PCR

3   reaction chamber.  And he cited the Examiner to paragraph 39

4   in Figs. 2 and 5 when, if you look at our next slide, it

5   directly -- it's contradicted by the language of Wilding

6   at page -- at paragraph 17 where it says the substrate may

7   comprise a plurality of protection reaction chambers to

8   enable the rapid parallel detection of nucleotide in a

9   mixture.  Parallel detection requires parallel lanes.

10  Multiple reaction chambers, multiple lanes.

11          That is a representation as to what is not in

12  the prior art, to take the Examiner off the scent of the

13  102(b) reference that had been asserted against the

14  applicants in the prosecution.  We have alleged but-for

15  materiality that Wilding would invalidate the claims.  That

16  element is there.  Those are clear representations.

17          As for the "microdroplet" limitation which we

18  have listed on slide 11, I think Your Honor noted earlier,

19  it is a clear broadening amendment of the claim language.

20  It was not made to increase claim readability, to improve

21  grammar and reduce the time and effort require those in the

22  art to clearly understand the scope.  It was made that so

23  when later this was being litigated, that there would be

24  less of a limitation on claim scope because of prosecution

25  history estoppel, either the claim scope or the Doctrine of

1    Equivalents.

2              It was a sword.  It was an affirmative statement

3    to try to obtain broader claim scope, and now it's allegedly

4    boilerplate that plaintiff is attempting to use as a shield.

5              And they really cannot have it both ways here.

6    If you are going to make a statement of the Patent Office

7    and it is wrong, and you have done it for the purposes of

8    patentability, then you have to live with the consequences

9    of that statement.

10              There was some question about how this particular

11    statement is material; and I think what plaintiffs' counsel

12    said actually is not exactly the theory here.

13              The theory is, and as we have stated, that by

14    not mentioning that claim amendment, and instead including

15    different claim amendments that focused the Examiner on

16    those claim amendments, for instance, including the claim

17    amendment of a microfluidic cartridge, it really focused the

18    Examiner's attention on what the Examiner was searching.

19              And here the Examiner went away from focusing on

20    the heaters, which is really what the two Zou patents that

21    we said would have invalidated these claims, those are in

22    paragraphs 17 and 18 of our counterclaims, those two

23    references form the bases for invalidity positions in two

24    IPRs that involve the '708 and the '900 patents.

25              That instead of focusing on the broader scope,

1    the Examiner narrowed to "microfluidic," and neither of the

2    Zou patents mentions "microfluidic."  It doesn't include

3    that terminology.  It includes the terminology

4    "microfabricated."

5              So if you had "microdroplet," the Examiner in

6    all likelihood would have said, okay, I need to go broader

7    than "microfluidic," but it took him away from that focus

8    and that is problem here.

9              You cannot, you can't justify misrepresentations

10   by saying they're meaningless when they clearly had an

11   impact on what the Examiner did.

12             Turning to slide 13.

13             The representations relative to the '900 patent

14   are similar to those in the '708 patent.  So I won't go

15   through and I won't repeat those.

16             The other important thing to note here is that

17   we do have a pattern of misconduct.  And the case law,

18   including the *Paragon* case, including the -- let me find

19   it -- including similar cases find that that pattern of

20   misconduct is a strong factor when it comes to intent.

21             And there already is the pleading standard where

22   the Court, this Court has made it very clear in cases like

23   *Wyeth Holdings* that the *Exergen* standard applies where the

24   Court only need reasonably infer that the patent applicant

25   made a deliberate decision to deceive the Patent Office.

1          A pattern of misconduct places that gambit of

2    action, that group of actions into that intent, into that

3    intent prong to satisfy that *Exergen* standard.  When you do

4    it once, maybe it can be excused.  You do it twice, no; but

5    here four times -- four separate times.

6          And that is not a coincidence, that's a pattern,

7    and it shows an intent to clearly deceive the Patent Office

8    here and try to come up with a claim scope that was way

9    beyond what the patentee was entitled to here.

10         Your Honor, I'll pause there if you have any

11   questions.

12              THE COURT:  Sure.  Thank you.

13         Isn't it an equally plausible inference that

14   the attorney actually believed what he was telling the PTO?

15   This is what he saw in Wilding, this is what he didn't see,

16   and he knew Examiner was a person of skill and had Wilding

17   in front of him or her?

18              MR. CLELAND:  Your Honor, I don't believe that

19   that is possible.  And I don't believe that that is the most

20   reasonable inference here for two reasons.

21         No. 1, I think if the prosecuting attorney had

22   simply read Wilding, the first embodiment mentioned in

23   the first figures shown are the embodiment in the figures

24   showing a single reaction chamber, a single PCR reaction

25   chamber.  It would have been gross negligence not to read

1    that reference before claiming that the reference did not

2    teach a particular claim element.

3              Secondly, that the same thing applies to that

4    disclosure in paragraph 17.  You would have had to

5    completely ignored that, which is gross misconduct, or not

6    read it altogether in order to make that representation,

7    that false representation that the Wilding reference does

8    not disclose that claim limitation and that feature.

9              THE COURT:  All right.  I didn't have other

10   questions at this point on inequitable conduct.  Did you

11   want to say any more about that or did you want to say

12   anything about noninfringement?

13             MR. CLELAND:  I don't think -- Your Honor, I

14   think I have completed the argument on inequitable conduct,

15   on noninfringement.  The only thing I will note is that we

16   followed I think what has been traditional practice of the

17   District.  If the Court believes that that is not sufficient

18   in light of the current set of cases, we would request leave

19   to amend; and that's all that I have to add on that piece.

20             THE COURT:  Well, if I were to follow the cases

21   that measure the sufficiency of a counterclaim by the same

22   standards, we would measure a claim for infringement.  You

23   could see that he's not met that burden at this point with

24   the operative pleadings; is that right?

25             MR. CLELAND:  Your Honor, I think it's fair to

1    say that it is pled in a more cursory manner that doesn't

2    include the type of detail that I think some cases and

3    courts have recently required.

4                    THE COURT:  All right.  Is there anything else

5    you wanted to add for the defendant?

6                    MR. CLELAND:  Nothing else, Your Honor.  Thank

7    you.

8                    THE COURT:  Okay.

9                    MR. CLELAND:  Your Honor, I'm sorry.  I did have

10   one more item to add.

11                   It is in our counterclaims and we included in a

12   number of slides, but we laid out both the materiality and

13   the intent allegations.  They are pretty thorough.  They

14   are pretty compliant with existing in-District as well as

15   Federal Circuit case law as to what has to be pled in order

16   to satisfy the burden under 9(b) for inequitable conduct.

17                   So with that, I will close.

18                   THE COURT:  Okay.  Thank you.

19                   A couple minutes for rebuttal, if plaintiffs

20   want.

21                   MR. KAHN:  Thank you, Your Honor.  Just a couple

22   of quick things.

23                   I think my colleague on the other side, his

24   argument has demonstrated our point really.  I think their

25   theory is a gross negligence theory as I think he said that

1    a couple times.  That is exactly the theory that was

2    projected en banc by the *Therasense* case.

3            And on some of the other issues, I think the

4    notion that NeuMoDx -- the defendants here should be able to

5    plead and sustain the NeuMoDx counterclaim is undermined by

6    everything my colleague on the other side was just saying.

7            So everything on the materiality point, for

8    example, that the Examiner would have changed the scope of

9    the prior art searching, that's belied by the fact that the

10   Examiner was not looking for microdroplets before the

11   amendment was made.

12           The suggestion, again, so unfounded,

13   unsupported, no facts, suggests the Examiner would

14   have/could have changed the searching.

15           The suggestion that he would have found the Zou

16   references.  There is no allegation in the complaints that

17   the word "microdroplet" is used in the Zou reference.  It is

18   not, and that is why.

19           The suggestion that the microdroplet -- the

20   Examiner was deterred from searching because of the term

21   "microfluidic," well, that is exactly what the term -- I

22   think I heard counsel just say, even though it is not in the

23   allegations, it is not in the record, I think I heard

24   counsel just say that is the term used in Zou.

25           So the claim, amended claim uses the term

1    "microfluidic."  That's what Examiner was searching on and

2    that is the term that is used in Zou.  There is no factual

3    basis whatsoever on which to conclude the but-for

4    materiality that they've laid out here.

5            On the pattern of misconduct, I just don't

6    understand, quite frankly, Your Honor, the suggestion there.

7    Zero plus zero plus zero is still zero.  I don't think you

8    can stack insufficient allegations on top of each other and

9    suggest somehow that now they're sufficient.

10           And even if you could, but you can't, the

11   pattern of misconduct, the cases that talk about that talk

12   exclusively about pattern of misconduct with respect to the

13   intent to deceive prong, and even within that prong, talk

14   about pattern of misconduct with respect to the deliberate

15   decision to withhold reference or prior art from the office.

16           So the pattern of misconduct doesn't allow them

17   to evade the obligation to show material misrepresentation,

18   materiality, knowledge of materiality, and all of those

19   other elements of inequitable conduct.

20           With that, Your Honor, if you have no further

21   questions, I'll rest.

22           THE COURT:  I have no further questions.  Thank

23   you both for the argument.  I am prepared now to give you my

24   decision.

25           The motion, of course, is plaintiffs' motion to

1    dismiss the defendant's counterclaim seeking declaratory

2    judgment of noninfringement of the asserted patents as well

3    as to strike the defendant's affirmative defense asserting

4    inequitable conduct and a counterclaim for inequitable

5    conduct.

6              For the reasons I will try to explain, my

7    decision is to grant the motion.  I'm granting it both with

8    respect to the noninfringement and the inequitable conduct.

9              Let me talk about noninfringement because there,

10   with respect to the motion to dismiss the counterclaim for

11   noninfringement, that motion is granted, but I am also

12   granting leave to the defendants to amend and try again to

13   state their counterclaim for noninfringement.

14             Basically this part of the motion is not really

15   in dispute.  I am informed by, among other things, the

16   *Princeton Digital* case that is cited in the briefing; and

17   while I am certainly not requiring anything like the details

18   one sees in an infringement or noninfringement claim chart,

19   I do think that a defendant attempting to assert a

20   counterclaim of noninfringement has to do more than just

21   simply parrot the statute and say I don't infringe, which

22   is essentially all the defendant has done at this point.

23             So that part of the motion is granted, but

24   defendant has leave to attempt to replead.

25             Of course, our focus today was on the other

1    portion of the motion:  The motion to dismiss and/or strike

2    the inequitable counterclaim and affirmative defense.

3              This portion of the motion is also granted.

4              In my view, the defendant has failed to meet

5    the heightened pleading standard for pleading a claim of

6    inequitable conduct.  And I say that for sort of I suppose

7    high level general reasons and then some specific reasons.

8              As a general matter, I think what the defendants

9    are alleging here comes within the scope of what the Federal

10   Circuit was talking about in the *Rothman* decision.

11             In *Rothman*, the Federal Circuit in 2009 said:

12   "The law prohibits genuine misrepresentation of material

13   fact," but -- that's my "but" -- "a prosecuting attorney is

14   free to present argument in favor of patentable without fear

15   of committing inequitable conduct."

16             So other than the but, that was a quote, the

17   "but" is implied.  And the point, of course, is I think that

18   what the defendants are alleging here falls into the bucket

19   of attorney argument and that the defendants have failed to

20   plead any material factual misrepresentation which could be

21   the basis for an inequitable conduct claim.

22             And I say that about both the "microdroplet"

23   amendment statement that defendant point to as well as all

24   the statements about the Wilding prior art.  All of that

25   in my mind falls on the side of attorney argument and,

1  importantly, does not fall into the bucket of material

2  factual misrepresentation.

3          Once I reached those conclusions, I also

4  necessarily reject the argument that there is somehow here a

5  well-pled pattern of misconduct by the prosecuting attorney.

6  I don't see that being pled here at all given that I don't

7  see any singular pleading that adequately alleges

8  inequitable conduct.  Really, it is that all of this falls

9  within the scope of acceptable attorney argument, attorney

10  advocacy.

11          With respect to the amendment, I'll just say a

12  little bit more.  It is undisputed, as you can see it for

13  instance at slide 13, the amendment was made in the fashion

14  that amendments are typically made in prosecution of the

15  patent, through cross-outs and underlining.  There is no

16  ambiguity at all about the strike-out of the claim term

17  "microdroplet" and the Examiner could see that just as

18  clearly as anyone could.

19          The statement that accompanied it is a statement

20  of belief; it is at slide 14, the second paragraph there.

21  And it is not, in my mind, plausibly viewed as a material

22  factual misstatement.  It is a characterization of the

23  reasons for the amendments.  I don't see any material

24  misrepresentation or falsity that one could find in that.

25          The idea that this was putting the Examiner off

the scent or might cause the Examiner not to see what

otherwise the defendant would characterize as an obviously

broadening amendment, I just don't see those as the types of

arguments that get you within the scope of what is a very

narrow claim, that is, inequitable conduct.  It is not what

inequitable conduct is for.

The Examiner could read the clear amendment,

could decide for him or herself why it was there and whether

it affected the patentability of the claims and a statement

of belief that also is boilerplate.  Importantly, I don't

see it, at least in this case, coming close to a basis for

being meritorious or a well-pled inequitable conduct claim.

And similarly, the statements about the Wilding

prior art.  Without dispute, the prior art was in front the

Examiner.  The Examiner could read the prior art every bit

as well as the prosecuting attorney.

The prosecuting attorney is free to make

arguments about what is or is not in that prior art, to

characterize the relationship of that prior art to the

claims that the prosecuting attorney is prosecuting.  That

is all within the scope of what is permitted in the course

of advocacy in front of the PTO.  I am just not at all

persuaded that there is a plausible allegation here that

what the prosecuting attorney said about the prior art

constituted a material factual misstatement.

It seems to me that all of the other cases that the defendant has tried to analogize this case to are ones in which the party accused of acting inequitably and committing inequitable conduct had some information that the Examiner lacked perhaps information about experiments or studies that that party had done or that a third party did or about some products that were not in front of the Examiner, what have you.

There are all sorts of fact patterns that are out there, but in this case, there is no allegation that the prosecuting attorney knew anything about Wilding that the Examiner didn't know or couldn't know, and I just don't think therefore this is a well-pled allegation of inequitable conduct.

To the contrary, there are plenty of cases cited here by the plaintiffs which I think are right on point and support my decision that this is not an inequitable conduct.

For example, the *Young* and the *Akzo* decisions from the Federal Circuit, the *SunPower* and *LifeScan* decisions from this court, and even the *Masimo* decision. All of these are consistent with the principles that have persuaded me that the motion here should be granted.

I think there probably are other flaws with the pleading, including those identified by the plaintiffs. Materiality, intent to deceive I think are probably not

```
 1    adequately pled, but I said enough and rest my decision on

 2    what I have said about the lack of allegations with respect

 3    to material misrepresentation.

 4              So that is my decision.  Are there any questions

 5    on that, first from plaintiffs?

 6              MR. KAHN:  No questions, Your Honor.

 7              THE COURT:  And from defendant?

 8              MR. CLELAND:  No questions, Your Honor.

 9              THE COURT:  All right.  Anything else that we

10    should talk about, plaintiffs?

11              MR. KAHN:  Nothing from our end, Your Honor.

12              THE COURT:  Okay.  Defendant?

13              MR. FARNAN:  Your Honor, this is Brian Farnan.

14              MR. CLELAND:  Your Honor, I'm sorry.  No.

15              THE COURT:  That's a "no" for the defendants?

16              MR. CLELAND:  Yes, Your Honor.  "No."

17              THE COURT:  Okay.  Okay.  Well, thank you all

18    very much.  Stay safe.  Thanks for the argument.  Good-bye.

19              (Telephone conference ends at 2:26 p.m.)

20

21        I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.
22

23                        /s/ Brian P. Gaffigan
                          Official Court Reporter
24                          U.S. District Court

25
```

**'**

**'308** [1] - 13:6
**'708** [4] - 20:22, 21:2, 23:24, 24:14
**'900** [3] - 21:1, 23:24, 24:13

**/**

**/s** [1] - 35:23

**1**

**1** [2] - 21:22, 25:21
**10** [1] - 10:3
**102(b** [1] - 22:13
**11** [3] - 10:3, 10:15, 22:18
**12** [1] - 11:8
**12(b)(6** [3] - 9:20, 10:17, 19:8
**13** [4] - 11:16, 11:22, 24:12, 32:13
**14** [4] - 11:20, 11:22, 12:4, 32:20
**15** [2] - 11:23, 13:9
**16** [1] - 13:22
**17** [4] - 14:13, 22:6, 23:22, 26:4
**18** [3] - 14:13, 14:15, 23:22
**19-1126-LPS** [2] - 1:7, 3:19
**1:34** [1] - 2:25

**2**

**2** [2] - 21:22, 22:4
**2009** [1] - 31:11
**2010** [1] - 20:8
**2020** [1] - 1:10
**25** [1] - 1:10
**2:26** [1] - 35:19

**3**

**3** [1] - 21:22
**39** [1] - 22:3

**4**

**4** [3] - 7:7, 21:16, 21:19

**5**

**5** [4] - 7:17, 21:16, 21:19, 22:4

**6**

**6** [3] - 8:2, 20:19, 21:19
**6A** [1] - 21:16

**7**

**7** [2] - 8:9, 21:4

**8**

**8** [2] - 8:23, 21:12

**9**

**9** [3] - 6:9, 9:18, 22:1
**9(b** [1] - 27:16

**A**

**able** [1] - 28:4
**absolutely** [2] - 16:12, 21:22
**acceptable** [1] - 32:9
**access** [1] - 5:19
**accompanied** [1] - 32:19
**accurate** [1] - 35:21
**accurately** [1] - 16:10
**accused** [1] - 34:3
**act** [1] - 16:17
**acting** [1] - 34:3
**ACTION** [1] - 1:4
**Action** [3] - 3:18, 7:14, 8:4
**action** [2] - 8:5, 25:2
**Actions** [1] - 5:7
**actions** [1] - 25:2
**acts** [1] - 20:21
**actual** [1] - 21:4
**add** [4] - 15:14, 26:19, 27:5, 27:10
**address** [1] - 6:7
**addressed** [1] - 12:2
**adequately** [2] - 32:7, 35:1
**advocacy** [4] - 6:3, 18:1, 32:10, 33:22
**affect** [1] - 16:2
**affected** [1] - 33:9
**affidavit** [2] - 8:6,

12:10
**afternoon** [6] - 3:1, 3:3, 3:9, 3:11, 3:14, 18:17
**agree** [3] - 15:19, 16:13, 17:8
**ahead** [1] - 18:16
**Akzo** [3] - 8:11, 8:18, 34:18
**al** [1] - 3:17
**allegation** [7] - 16:4, 16:15, 16:16, 28:16, 33:23, 34:10, 34:13
**allegations** [7] - 5:21, 6:17, 13:20, 27:13, 28:23, 29:8, 35:2
**alleged** [4] - 6:25, 10:22, 17:17, 22:14
**allegedly** [1] - 23:3
**alleges** [1] - 32:7
**alleging** [2] - 31:9, 31:18
**allow** [1] - 29:16
**allowed** [1] - 6:3
**almost** [2] - 10:16, 13:10
**altogether** [1] - 26:6
**ambiguity** [1] - 32:16
**amend** [7] - 4:21, 4:24, 9:21, 9:22, 10:17, 26:19, 30:12
**amended** [6] - 6:15, 21:8, 21:10, 28:25
**amendment** [17] - 8:5, 11:12, 11:17, 11:24, 13:1, 14:10, 15:9, 15:10, 22:19, 23:14, 23:17, 28:11, 31:23, 32:11, 32:13, 33:3, 33:7
**amendments** [12] - 11:15, 11:17, 12:2, 12:5, 12:7, 12:16, 14:7, 20:14, 23:15, 23:16, 32:14, 32:23
**amplified** [1] - 6:8
**analogize** [1] - 34:2
**analogous** [2] - 9:6, 9:16
**analysis** [1] - 19:21
**AND** [4] - 1:2, 1:3, 1:17, 1:20
**Ann** [1] - 2:6
**answer** [1] - 6:15
**anticipate** [1] - 8:20
**apologize** [1] - 21:12
**Apotex** [1] - 19:7
**APPEARANCES** [2] - 1:13, 2:1
**applicant** [6] - 8:18, 9:24, 10:18, 17:16,

21:8, 24:24
**applicants** [3] - 9:22, 19:1, 22:14
**applies** [2] - 24:23, 26:3
**apply** [1] - 9:19
**approach** [1] - 18:25
**Arbor** [1] - 2:6
**arguably** [1] - 18:4
**argued** [2] - 8:18, 10:19
**arguing** [4] - 9:14, 9:17, 10:13, 11:4, 21:19
**Argument** [1] - 1:10
**argument** [20] - 2:25, 3:20, 6:3, 6:21, 9:9, 12:12, 15:17, 15:20, 17:20, 17:22, 18:5, 26:14, 27:24, 29:23, 31:14, 31:19, 31:25, 32:4, 32:9, 35:18
**arguments** [5] - 5:16, 8:12, 9:3, 9:25, 11:6, 18:2, 33:4, 33:18
**arising** [1] - 8:24
**arose** [1] - 4:14
**ARSHT** [1] - 1:15
**art** [43] - 5:8, 5:9, 6:21, 7:21, 8:12, 8:19, 8:21, 9:2, 9:5, 9:15, 9:23, 10:12, 10:13, 10:14, 10:20, 11:3, 11:4, 11:5, 11:11, 14:6, 14:24, 16:18, 16:19, 16:24, 16:25, 17:1, 17:6, 17:9, 18:22, 19:19, 20:10, 20:12, 22:12, 22:22, 28:9, 29:15, 31:24, 33:14, 33:15, 33:18, 33:19, 33:24
**assert** [1] - 30:19
**asserted** [2] - 22:13, 30:2
**asserting** [1] - 30:3
**assuming** [1] - 15:13
**assumptions** [1] - 7:1
**atomic** [1] - 6:1
**attempt** [1] - 30:24
**attempting** [2] - 23:4, 30:19
**attention** [2] - 21:16, 23:18
**attorney** [42] - 5:6, 5:13, 5:17, 6:3, 6:21, 7:20, 8:13, 9:2, 9:9, 9:14, 9:16, 10:7, 10:8, 11:5, 12:14, 14:2, 14:5, 14:6, 14:8, 15:17, 15:20,

16:9, 17:5, 17:16, 17:20, 17:22, 18:4, 19:23, 20:8, 25:14, 25:21, 31:13, 31:19, 31:25, 32:5, 32:9, 33:16, 33:17, 33:20, 33:24, 34:11
**attorney's** [5] - 7:14, 8:11, 10:22, 12:11, 18:1
**attorneys** [2] - 16:7, 17:14
**attorneys'** [1] - 5:16
**authority** [1] - 6:12
**available** [1] - 7:10
**avoided** [1] - 6:2

**B**

**background** [2] - 4:13, 20:4
**banc** [1] - 28:2
**bar** [1] - 5:12
**based** [7] - 5:18, 5:22, 6:6, 11:2, 19:9, 19:18, 20:1
**bases** [1] - 23:23
**basis** [7] - 5:16, 15:2, 16:15, 20:21, 29:3, 31:21, 33:11
**BD** [2] - 5:14, 20:7
**BECTON** [1] - 1:3
**Becton** [2] - 3:7, 3:17
**BEFORE** [1] - 1:12
**beginning** [1] - 2:25
**behalf** [3] - 3:4, 3:12, 18:18
**belied** [1] - 28:9
**belief** [2] - 32:20, 33:10
**believes** [1] - 26:17
**between** [4] - 16:23, 17:20, 17:22, 21:17
**beyond** [1] - 25:9
**bit** [3] - 20:6, 32:12, 33:15
**black** [1] - 11:24
**black-lined** [1] - 11:24
**boilerplate** [11] - 12:1, 12:23, 12:24, 13:3, 13:7, 13:12, 13:15, 14:1, 15:19, 23:4, 33:10
**bomb** [1] - 6:1
**Brian** [4] - 1:24, 3:11, 35:13, 35:23
**BRIAN** [1] - 2:3
**brief** [1] - 20:5
**briefing** [3] - 6:18, 13:4, 30:16

**briefly** [1] - 20:4
**briefs** [1] - 13:7
**broaden** [1] - 15:24
**broadened** [1] - 15:22
**broadening** [4] - 15:10, 16:2, 22:19, 33:3
**broader** [3] - 23:3, 23:25, 24:6
**broadest** [1] - 20:17
**brought** [1] - 20:7
**bucket** [1] - 31:18, 32:1
**burden** [2] - 26:23, 27:16
**Burke** [1] - 18:20
**but-for** [5] - 7:4, 14:14, 14:16, 22:14, 29:3
**BY** [5] - 1:15, 1:18, 1:21, 2:3, 2:5
**bye** [1] - 35:18

# C

**CANADA** [1] - 1:4
**cannot** [7] - 6:21, 6:23, 11:6, 12:12, 18:22, 23:5, 24:9
**cartridge** [3] - 7:25, 22:2, 23:17
**case** [38] - 3:16, 5:4, 5:20, 5:24, 6:4, 6:5, 6:20, 8:7, 8:17, 8:18, 8:22, 9:3, 9:5, 9:20, 9:22, 10:15, 10:16, 10:17, 13:9, 13:10, 13:20, 13:21, 14:10, 17:3, 18:6, 18:10, 18:20, 18:24, 19:17, 24:17, 24:18, 27:15, 28:2, 30:16, 33:11, 34:2, 34:10
**cases** [27] - 6:18, 8:10, 8:11, 8:24, 8:25, 9:8, 9:12, 9:18, 10:9, 11:2, 13:25, 15:19, 16:25, 17:15, 17:21, 17:24, 19:5, 19:13, 19:22, 24:19, 24:22, 26:18, 26:20, 27:2, 29:11, 34:1, 34:15
**catch** [1] - 14:21
**catchall** [1] - 13:1
**causation** [3] - 14:18, 15:1, 15:3
**certain** [4] - 4:12, 8:20, 12:5, 17:15
**certainly** [3] - 16:4, 17:14, 30:17
**certify** [1] - 35:21

**chain** [2] - 14:18, 15:1
**challenge** [3] - 5:23, 10:24, 11:12
**challenged** [3] - 10:5, 10:8, 13:25
**challenger** [2] - 10:1, 10:21
**challenges** [2] - 11:13, 12:16
**challenging** [1] - 5:6
**chamber** [5] - 21:9, 21:14, 22:3, 25:24, 25:25
**chambers** [4] - 21:11, 21:17, 22:7, 22:10
**changed** [2] - 28:8, 28:14
**characterization** [1] - 32:22
**characterize** [3] - 19:1, 33:2, 33:19
**characterizing** [1] - 16:24
**charge** [1] - 19:2
**charged** [2] - 19:14, 19:24
**chart** [1] - 30:18
**Chief** [2] - 1:12, 3:6
**Circuit** [13] - 5:25, 6:8, 6:12, 8:10, 8:23, 9:8, 9:12, 9:19, 13:14, 27:15, 31:10, 31:11, 34:19
**Circuit's** [1] - 8:7
**circumstance** [1] - 17:19
**circumstances** [2] - 12:13, 17:16
**cited** [8] - 6:18, 7:11, 8:20, 9:5, 19:6, 22:3, 30:16, 34:15
**Civil** [1] - 3:18
**CIVIL** [1] - 1:4
**claim** [39] - 5:7, 6:20, 8:16, 9:1, 9:10, 11:7, 11:18, 12:17, 13:17, 16:2, 17:17, 18:22, 19:2, 19:8, 20:14, 20:16, 21:8, 21:10, 22:19, 22:20, 22:24, 22:25, 23:3, 23:14, 23:15, 23:16, 25:8, 26:2, 26:8, 26:22, 28:25, 30:18, 31:5, 31:21, 32:16, 33:5, 33:12
**claimed** [1] - 20:11
**claiming** [1] - 26:1
**claims** [20] - 6:1, 6:3, 6:5, 6:22, 9:6, 10:14, 11:4, 11:12, 14:7,

15:23, 15:24, 16:20, 17:2, 20:11, 20:17, 22:15, 23:21, 33:9, 33:20
**clear** [9] - 6:18, 11:2, 15:18, 16:25, 17:2, 22:16, 22:19, 24:22, 33:7
**clearly** [6] - 12:25, 21:14, 22:22, 24:10, 25:7, 32:18
**CLELAND** [11] - 2:5, 18:17, 19:16, 25:18, 26:13, 26:25, 27:6, 27:9, 35:8, 35:14, 35:16
**Cleland** [2] - 3:13, 18:18
**close** [2] - 27:17, 33:11
**coincidence** [1] - 25:6
**colleague** [2] - 27:23, 28:6
**Columbia** [1] - 1:18
**column** [1] - 10:6
**columns** [1] - 10:6
**combination** [1] - 19:25
**coming** [1] - 33:11
**comment** [1] - 20:3
**comments** [4] - 8:3, 12:9, 13:9, 13:11
**committed** [1] - 20:1
**committing** [2] - 31:15, 34:4
**Company** [2] - 3:8, 3:17
**COMPANY** [1] - 1:3
**comparison** [1] - 21:13
**complaints** [1] - 28:16
**complete** [1] - 21:17
**completed** [1] - 26:14
**completely** [1] - 26:5
**compliant** [1] - 27:14
**comprise** [1] - 22:7
**comprises** [1] - 22:2
**comprising** [1] - 8:1
**conclude** [1] - 29:3
**concluded** [1] - 11:25
**conclusion** [4] - 12:1, 12:6, 13:3, 14:11
**conclusions** [2] - 6:16, 32:3
**conclusory** [2] - 6:25, 12:6
**conduct** [39] - 3:25, 4:16, 5:1, 5:3, 5:21, 6:1, 6:5, 6:16, 9:10, 10:2, 11:6, 13:15, 13:20, 16:16, 17:2,

17:11, 17:18, 18:22, 19:3, 19:8, 19:14, 20:1, 26:10, 26:14, 27:16, 29:19, 30:4, 30:5, 30:8, 31:6, 31:15, 31:21, 32:8, 33:5, 33:6, 33:12, 34:4, 34:14, 34:17
**conference** [1] - 35:19
**confront** [1] - 15:13
**consequences** [1] - 23:8
**consistent** [1] - 34:21
**constituted** [1] - 33:25
**construction** [2] - 13:18
**consult** [2] - 20:13, 20:14
**contemplate** [1] - 10:23
**contemplates** [1] - 10:20
**contend** [1] - 15:10
**content** [3] - 7:21, 11:3, 16:18
**contention** [1] - 15:8
**contentions** [1] - 16:7
**contest** [1] - 16:4
**context** [3] - 6:9, 8:24, 21:5
**continuation** [2] - 21:1, 21:2
**Continued** [1] - 2:1
**contradicted** [2] - 17:25, 22:5
**contradictory** [2] - 5:13, 18:11
**contrary** [5] - 5:25, 10:22, 34:15
**controlling** [1] - 6:12
**correct** [1] - 4:23
**correctly** [1] - 19:17
**corresponding** [1] - 10:7
**Counsel** [3] - 1:22, 2:7, 3:7
**counsel** [3] - 23:11, 28:22, 28:24
**countenance** [1] - 18:24
**counterclaim** [10] - 4:17, 4:22, 26:21, 28:5, 30:1, 30:4, 30:10, 30:13, 30:20, 31:2
**counterclaims** [3] - 5:3, 23:22, 27:11
**couple** [5] - 15:5, 18:14, 27:19, 27:21, 28:1
**course** [8] - 3:15, 7:9,

14:5, 15:23, 29:25, 30:25, 31:17, 33:21
**COURT** [26] - 1:1, 3:1, 3:9, 3:14, 4:5, 4:7, 4:20, 4:25, 15:4, 15:8, 16:6, 17:4, 18:13, 19:12, 25:12, 26:9, 26:20, 27:4, 27:8, 27:18, 29:22, 35:7, 35:9, 35:12, 35:15, 35:17
**Court** [13] - 4:18, 8:3, 9:13, 9:25, 15:12, 15:18, 16:3, 24:22, 24:24, 26:17, 35:23, 35:24
**court** [3] - 3:15, 9:18, 34:20
**Court's** [1] - 7:2
**courts** [1] - 27:3
**cover** [1] - 15:20
**create** [1] - 18:25
**cross** [1] - 32:15
**cross-outs** [1] - 32:15
**crossed** [1] - 17:22
**current** [1] - 26:18
**cursory** [1] - 27:1
**cut** [2] - 10:4, 10:7
**cut-and-pasted** [1] - 10:7
**CUTLER** [2] - 1:17, 1:20
**cycle** [1] - 21:16

# D

**data** [3] - 18:6, 18:8, 18:9
**date** [1] - 17:7
**David** [1] - 3:5
**DAVID** [1] - 1:18
**deceive** [6] - 6:24, 7:5, 24:25, 25:7, 29:13, 34:25
**decide** [1] - 33:8
**decision** [11] - 8:12, 8:15, 24:25, 29:15, 29:24, 30:7, 31:10, 34:17, 34:20, 35:1, 35:4
**decisions** [2] - 34:18, 34:20
**declaration** [2] - 8:6, 12:9
**declaratory** [1] - 30:1
**Defendant** [2] - 1:8, 2:7
**defendant** [14] - 3:10, 3:12, 4:5, 9:21, 27:5, 30:19, 30:22, 30:24, 31:4, 31:23, 33:2,

34:2, 35:7, 35:12
**defendant's** [3] -
16:11, 30:1, 30:3
**defendants** [9] -
14:24, 18:15, 18:18,
28:4, 30:12, 31:8,
31:18, 31:19, 35:15
**defense** [2] - 30:3,
31:2
**defenses** [1] - 5:3
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:9
**delete** [1] - 11:18
**deletion** [1] - 11:13
**deliberate** [2] - 24:25,
29:14
**demonstrated** [1] -
27:24
**denied** [2] - 9:22,
10:17
**deny** [1] - 16:3
**describes** [1] - 12:1
**describing** [1] - 11:14
**detail** [1] - 27:2
**details** [1] - 30:17
**detection** [2] - 22:8,
22:9
**deterred** [1] - 28:20
**DICKINSON** [2] - 1:3,
2:5
**Dickinson** [3] - 3:7,
3:13, 3:17
**difference** [2] - 16:23,
17:20
**different** [5] - 7:18,
8:8, 8:15, 8:24,
23:15
**Digital** [1] - 30:16
**directed** [3] - 12:7,
13:12, 13:13
**directly** [5] - 8:10,
8:11, 10:16, 13:13,
22:5
**disagree** [1] - 16:25
**disagreed** [2] - 5:5,
7:23
**disagreement** [1] -
7:18
**disagreements** [1] -
5:23
**disagrees** [2] - 7:15,
7:24
**disclose** [5] - 7:15,
21:19, 21:21, 22:1,
26:8
**disclosed** [2] - 5:11,
8:15
**discloses** [1] - 21:14
**disclosure** [2] - 21:24,
26:4
**discuss** [3] - 13:1,

13:2, 14:9
**discussed** [3] - 12:8,
13:4, 13:25
**discussing** [1] - 15:20
**discussions** [5] - 3:22,
11:11, 12:3, 12:5,
14:4
**discussions** [1] - 11:3
**dismiss** [7] - 3:23,
4:15, 4:17, 4:21,
30:1, 30:10, 31:1
**dispute** [6] - 7:9, 15:9,
16:23, 18:21, 30:15,
33:14
**disputed** [1] - 5:8
**distinction** [1] - 5:8
**distinguish** [2] - 9:23,
10:18
**distinguishable** [1] -
16:21
**distinguishing** [6] -
6:20, 9:1, 10:12,
11:4, 16:18, 16:24
**DISTRICT** [2] - 1:1, 1:2
**District** [6] - 1:18,
13:21, 17:15, 26:17,
27:14, 35:24
**dive** [1] - 20:4
**Doctrine** [1] - 22:25
**document** [4] - 11:21,
11:23, 13:1
**documents** [2] -
11:22, 19:2
**done** [8] - 5:4, 10:4,
13:22, 15:11, 21:6,
23:7, 30:22, 34:6
**door** [2] - 20:9, 20:13
**DORR** [2] - 1:17, 1:20
**down** [2] - 3:16, 6:11

## E

**effort** [2] - 12:18,
22:21
**either** [2] - 19:8, 22:25
**element** [2] - 22:16,
26:2
**elements** [3] - 7:1,
7:3, 29:19
**embodiment** [2] -
25:22, 25:23
**en** [1] - 28:2
**enable** [1] - 22:8
**end** [1] - 35:11
**ends** [1] - 35:19
**entire** [2] - 12:15,
20:15
**entirely** [1] - 17:10
**entitled** [1] - 25:9
**equally** [1] - 5:19,

25:13
**Equivalents** [1] - 23:1
**especially** [1] - 3:24
**ESQ** [6] - 1:15, 1:18,
1:21, 2:3, 2:5, 2:6
**essentially** [1] - 30:22
**estoppel** [1] - 22:25
**et** [1] - 3:17
**evade** [1] - 29:17
**evidence** [3] - 5:12,
17:24, 18:3
**exactly** [11] - 6:7,
8:16, 8:21, 10:4,
10:24, 11:16, 13:5,
13:21, 23:12, 28:1,
28:21
**Examiner** [32] - 5:17,
7:11, 8:19, 14:20,
17:11, 18:3, 18:12,
18:23, 22:3, 22:12,
23:15, 23:18, 23:19,
24:1, 24:5, 24:11,
25:16, 28:8, 28:10,
28:13, 28:20, 29:1,
32:17, 32:25, 33:1,
33:7, 33:15, 34:5,
34:8, 34:12
**Examiner's** [3] - 8:5,
18:8, 23:18
**example** [2] - 28:8,
34:18
**exception** [1] - 19:22
**excerpt** [1] - 12:4
**exclusively** [1] - 29:12
**excused** [1] - 25:4
**Exergen** [3] - 19:23,
24:23, 25:3
**existed** [1] - 20:16
**existing** [1] - 27:14
**exists** [1] - 5:21
**expect** [1] - 16:13
**expectation** [2] - 9:4,
9:13
**experiments** [1] - 34:5
**explain** [1] - 30:6
**explained** [1] - 6:8
**expressly** [1] - 12:11
**extent** [1] - 16:23
**extrinsic** [1] - 17:24

## F

**face** [2] - 12:25, 17:7
**fact** [13] - 7:4, 7:10,
9:12, 9:14, 9:15,
9:16, 9:17, 17:24,
18:21, 21:22, 28:9,
31:13, 34:9
**factor** [1] - 24:20
**factored** [1] - 19:21

**facts** [5] - 6:16, 6:19,
6:25, 28:13
**factual** [9] - 12:13,
15:1, 16:9, 16:14,
29:2, 31:20, 32:2,
32:22, 33:25
**failed** [2] - 6:14, 31:4,
31:19
**fails** [2] - 12:22, 22:1
**fair** [2] - 16:14, 26:25
**fall** [1] - 32:1
**falls** [3] - 31:18, 31:25,
32:8
**false** [3] - 16:5, 17:12,
26:7
**falsely** [1] - 19:1
**falsity** [3] - 6:24, 7:4,
32:24
**fares** [2] - 12:20, 12:22
**FARNAN** [5] - 2:2, 2:3,
3:11, 4:6, 35:13
**Farnan** [2] - 3:12,
35:13
**fashion** [1] - 32:13
**favor** [1] - 31:14
**fear** [1] - 31:14
**feature** [1] - 26:8
**Federal** [14] - 5:25,
6:8, 6:12, 8:7, 8:10,
8:23, 9:8, 9:12, 9:19,
13:14, 27:15, 31:9,
31:11, 34:19
**field** [1] - 18:5
**Figs** [4] - 21:16, 21:19,
21:22, 22:4
**figures** [3] - 21:19,
25:23
**file** [3] - 5:5, 5:22, 6:6
**first** [9] - 4:1, 7:8,
7:12, 11:1, 11:10,
12:25, 25:22, 25:23,
35:5
**flavor** [1] - 20:6
**flaws** [1] - 34:23
**Flynn** [1] - 3:4
**FLYNN** [3] - 1:15, 3:3,
4:4
**focus** [4] - 4:14, 4:25,
24:7, 30:25
**focused** [2] - 23:15,
23:17
**focuses** [1] - 21:15
**focusing** [2] - 23:19,
23:25
**follow** [1] - 26:20
**followed** [1] - 26:16
**following** [1] - 2:24
**follows** [1] - 12:15
**FOR** [1] - 1:2
**foregoing** [2] - 12:3,
35:21

**form** [2] - 20:21, 23:23
**formed** [1] - 5:15
**forth** [1] - 5:18
**forward** [1] - 6:15
**four** [3] - 20:21, 25:5
**fourth** [1] - 20:25
**frame** [1] - 20:6
**frankly** [1] - 29:6
**free** [3] - 19:1, 31:14,
33:17
**front** [8] - 4:8, 18:3,
18:23, 19:15, 25:17,
33:14, 33:22, 34:7
**fulsome** [1] - 8:14

## G

**Gaffigan** [2] - 1:24,
35:23
**gambit** [1] - 25:1
**GENEOHM** [1] - 1:4
**general** [2] - 31:7,
31:8
**generally** [1] - 15:20
**genuine** [1] - 31:12
**given** [2] - 21:24, 32:6
**goal** [1] - 20:16
**good-bye** [1] - 35:18
**grammar** [2] - 12:18,
15:11, 22:21
**grant** [1] - 30:7
**granted** [4] - 30:11,
30:23, 31:3, 34:22
**granting** [2] - 30:7,
30:12
**gross** [3] - 25:25,
26:5, 27:25
**ground** [1] - 13:16
**group** [1] - 25:2

## H

**HALE** [2] - 1:17, 1:20
**Hale** [1] - 3:6
**Handylab** [1] - 20:7
**HANDYLAB** [1] - 1:4
**have/could** [1] - 28:14
**head** [1] - 19:20
**hear** [3] - 3:20, 4:1,
4:9
**heard** [2] - 28:22,
28:23
**hearing** [1] - 2:25
**heaters** [1] - 23:20
**heightened** [2] - 6:13,
31:5
**held** [2] - 2:25, 9:25
**hereby** [1] - 35:21
**herself** [2] - 17:12,
33:8

**high** [1] - 31:7
**highlighted** [1] - 12:10
**historical** [1] - 4:13
**history** [4] - 5:5, 5:22, 6:6, 22:25
**hit** [1] - 7:2
**Holdings** [3] - 18:20, 19:6, 24:23
**Honor** [31] - 3:3, 3:11, 4:4, 4:6, 4:10, 5:2, 8:25, 14:18, 15:12, 16:17, 17:13, 18:17, 19:16, 20:3, 20:19, 22:18, 25:10, 25:18, 26:13, 26:25, 27:6, 27:9, 27:21, 29:6, 29:20, 35:6, 35:8, 35:11, 35:13, 35:14, 35:16
**HONORABLE** [1] - 1:12

### I

**idea** [1] - 32:25
**identical** [3] - 10:11, 13:10, 14:1
**identified** [3] - 5:4, 14:25, 34:24
**identifying** [1] - 10:12
**ignored** [1] - 26:5
**immediately** [2] - 20:9, 20:15
**immune** [2] - 17:10, 17:14
**immunity** [1] - 19:2
**impact** [1] - 24:11
**implied** [1] - 31:17
**importance** [1] - 14:21
**important** [2] - 21:3, 24:16
**importantly** [3] - 7:9, 32:1, 33:10
**improve** [2] - 12:17, 22:20
**IN** [2] - 1:1, 1:2
**in-District** [2] - 13:21, 27:14
**INC** [3] - 1:4, 1:4, 1:7
**Inc** [1] - 3:18
**incentive** [1] - 18:25
**incidents** [1] - 20:24
**include** [2] - 24:2, 27:2
**included** [1] - 27:11
**includes** [1] - 24:3
**including** [11] - 12:15, 19:6, 19:7, 23:14, 23:16, 24:18, 24:19, 34:24

**incorrect** [1] - 15:14
**incorrectly** [1] - 7:21
**increase** [2] - 12:17, 22:20
**industry** [1] - 9:18
**inequitable** [41] - 3:25, 4:16, 5:1, 5:3, 5:21, 6:1, 6:5, 6:16, 6:22, 9:10, 10:2, 11:6, 13:15, 13:19, 16:15, 17:2, 17:11, 17:18, 18:22, 19:3, 19:8, 19:14, 20:1, 26:10, 26:14, 27:16, 29:19, 30:4, 30:8, 31:2, 31:6, 31:15, 31:21, 32:8, 33:5, 33:6, 33:12, 34:4, 34:14, 34:17
**inequitably** [1] - 34:3
**infer** [1] - 24:24
**inference** [3] - 15:2, 25:13, 25:20
**information** [6] - 5:12, 5:15, 19:13, 19:21, 34:4, 34:5
**informed** [2] - 18:7, 30:15
**infringe** [1] - 30:21
**infringement** [2] - 26:22, 30:18
**Innogenetics** [4] - 13:9, 13:10, 14:1, 14:9
**instance** [7] - 7:12, 10:10, 10:11, 21:7, 21:23, 23:16, 32:13
**instances** [2] - 14:8, 14:11
**instead** [2] - 23:14, 23:25
**instructs** [1] - 6:12
**insufficient** [1] - 29:8
**Intellectual** [1] - 3:7
**intent** [9] - 6:24, 7:5, 24:20, 25:2, 25:3, 25:7, 27:13, 29:13, 34:25
**intentionally** [1] - 17:7
**interaction** [1] - 4:13
**internal** [2] - 5:11, 18:6
**internally** [1] - 5:13
**interpret** [1] - 8:14
**interpretation** [2] - 6:20, 13:17
**interpreted** [1] - 7:21
**invalidate** [1] - 22:15
**invalidated** [1] - 23:21
**invalidity** [1] - 23:23
**invention** [2] - 10:19,

14:3
**inventor** [2] - 17:6, 19:25
**inventors** [2] - 20:10
**involve** [2] - 6:5, 23:24
**IPRs** [1] - 23:24
**irrelevant** [1] - 15:15
**isolated** [1] - 5:6
**Israelsen** [15] - 5:16, 7:20, 8:16, 8:22, 10:5, 10:25, 11:25, 13:4, 13:11, 13:23, 16:1, 20:8, 21:5, 21:15, 21:25
**Israelsen's** [1] - 11:14
**issue** [5] - 6:7, 8:10, 13:18, 15:13, 15:16
**issues** [4] - 4:16, 6:20, 9:11, 13:13, 28:3
**item** [1] - 27:10

### J

**JAMES** [1] - 2:5
**James** [2] - 3:12, 18:18
**Judge** [3] - 1:12, 3:2, 18:20
**judgment** [2] - 6:11, 30:2
**June** [1] - 1:10
**justify** [1] - 24:9

### K

**KAHN** [10] - 4:10, 4:23, 5:2, 15:7, 15:12, 16:17, 17:13, 27:21, 35:6, 35:11
**Kahn** [2] - 3:5, 4:11
**KHAN** [1] - 1:21
**kick** [1] - 6:10
**kind** [1] - 20:6
**knowledge** [3] - 6:23, 7:4, 29:18
**known** [1] - 10:19

### L

**labels** [1] - 6:15
**lack** [1] - 35:2
**lacked** [1] - 34:5
**laid** [3] - 20:15, 27:12, 29:4
**lane** [4] - 7:25, 21:11, 22:1, 22:2
**lanes** [2] - 22:9, 22:10
**language** [7] - 12:23, 13:5, 14:1, 14:2,

21:4, 22:5, 22:19
**largely** [1] - 19:18
**law** [6] - 5:20, 8:7, 17:10, 24:17, 27:15, 31:12
**lay** [2] - 8:9, 20:19
**least** [6] - 12:24, 16:8, 19:24, 20:1, 20:21, 33:11
**leave** [8] - 4:21, 4:23, 9:21, 10:17, 26:18, 30:12, 30:24
**left** [1] - 3:23
**leftmost** [1] - 10:6
**LEONARD** [1] - 1:12
**less** [1] - 22:24
**level** [1] - 31:7
**liability** [2] - 17:11, 17:14
**liable** [1] - 17:16
**lies** [2] - 17:5, 17:7
**Life** [1] - 9:3
**LifeScan** [1] - 34:19
**light** [1] - 26:18
**likelihood** [1] - 24:6
**limit** [1] - 17:4
**limitation** [14] - 8:16, 11:19, 14:20, 15:14, 15:15, 15:22, 15:24, 16:22, 20:25, 21:9, 22:17, 22:24, 26:8
**limitations** [3] - 8:20, 9:1, 10:12
**limited** [1] - 14:22
**line** [3] - 3:5, 17:21, 17:23
**lined** [1] - 11:24
**listed** [2] - 17:6, 22:18
**litigated** [1] - 22:23
**litigation** [3] - 4:14, 6:2, 10:21
**live** [1] - 23:8
**LLP** [4] - 1:15, 1:17, 1:20, 2:2
**look** [3] - 21:4, 21:12, 22:4
**looking** [3] - 5:18, 17:9, 28:10

### M

**Magistrate** [1] - 18:20
**manner** [1] - 27:1
**Masimo** [3] - 13:20, 34:20
**material** [11] - 5:18, 19:3, 23:11, 29:17, 31:12, 31:20, 32:1, 32:21, 32:23, 33:25, 35:3

**materiality** [13] - 6:23, 6:24, 7:4, 7:5, 14:14, 14:16, 22:15, 27:12, 28:7, 29:4, 29:18, 34:25
**materials** [1] - 5:19
**matter** [3] - 16:14, 17:10, 31:8
**mean** [2] - 17:5, 17:8
**meaningless** [1] - 24:10
**means** [3] - 6:9, 16:18, 20:17
**meant** [1] - 18:9
**measure** [2] - 26:21, 26:22
**meet** [1] - 31:4
**memory** [1] - 19:17
**mentioned** [1] - 25:22
**mentioning** [1] - 23:14
**mentions** [1] - 24:2
**merely** [1] - 5:5
**Merit** [1] - 1:24
**meritorious** [1] - 33:12
**merits** [1] - 19:9
**met** [2] - 8:21, 26:23
**meter** [1] - 21:15
**MICHAEL** [2] - 1:15, 2:6
**Michael** [2] - 3:4, 3:13
**Michigan** [1] - 2:6
**microdroplet** [16] - 11:14, 11:18, 13:19, 14:17, 14:20, 14:23, 15:9, 15:14, 15:21, 20:25, 22:17, 24:5, 28:17, 28:19, 31:22, 32:17
**microdroplets** [1] - 28:10
**microfabricated** [1] - 24:4
**microfluidic** [8] - 7:25, 22:2, 23:17, 24:1, 24:2, 24:7, 28:21, 29:1
**might** [2] - 6:10, 33:1
**mind** [3] - 20:6, 31:25, 32:21
**minutes** [2] - 18:14, 27:19
**mischaracterized** [1] - 19:3
**misconduct** [11] - 20:20, 24:17, 24:20, 25:1, 26:5, 29:5, 29:11, 29:12, 29:14, 29:16, 32:5
**misrepresentation** [13] - 7:3, 7:6, 12:13,

17:21, 17:23, 18:2, 18:5, 29:17, 31:12, 31:20, 32:2, 32:24, 35:3
**misrepresentations** [5] - 16:9, 19:10, 20:2, 21:1, 24:9
**missing** [1] - 10:13
**misstatement** [2] - 32:22, 33:25
**mixture** [1] - 22:9
**modules** [2] - 10:21, 10:23
**Molecular** [1] - 3:18
**MOLECULAR** [1] - 1:7
**morning** [1] - 4:10
**Morris** [1] - 3:4
**MORRIS** [1] - 1:15
**most** [1] - 25:19
**motion** [17] - 3:23, 3:24, 4:15, 4:16, 16:3, 19:9, 29:25, 30:7, 30:10, 30:11, 30:14, 10:23, 31:1, 31:3, 34:22
**motions** [1] - 3:21
**move** [1] - 18:4
**MR** [25] - 3:3, 3:11, 4:4, 4:6, 4:10, 4:23, 5:2, 15:7, 15:12, 16:17, 17:13, 18:17, 19:16, 25:18, 26:13, 26:25, 27:6, 27:9, 27:21, 35:6, 35:8, 35:11, 35:13, 35:14, 35:16
**multi** [2] - 7:25, 22:1
**multi-lane** [2] - 7:25, 22:1
**multiple** [3] - 21:11, 22:10
**must** [1] - 6:12

**N**

**narrow** [1] - 33:5
**narrowed** [1] - 24:1
**nature** [1] - 21:24
**necessarily** [2] - 8:25, 32:4
**necessary** [1] - 14:4
**need** [2] - 24:6, 24:24
**negligence** [2] - 25:25, 27:25
**NeuMoDx** [15] - 3:17, 5:4, 5:20, 6:10, 6:14, 6:22, 7:14, 7:17, 7:23, 11:11, 11:13, 12:15, 13:7, 28:4, 28:5
**NEUMODX** [2] - 1:7,

3:18
**NeuMoDx's** [6] - 6:2, 7:8, 7:13, 11:1, 11:9, 16:4
**new** [1] - 20:7
**New** [2] - 1:21
**next** [2] - 21:23, 22:4
**Nichols** [1] - 3:4
**NICHOLS** [1] - 1:15
**NO** [1] - 1:7
**non** [1] - 14:23
**non-microdroplet** [1] - 14:23
**nonfinal** [2] - 8:4, 9:24
**noninfringement** [12] - 3:24, 4:17, 4:22, 26:12, 26:15, 30:2, 30:8, 30:9, 30:11, 30:13, 30:18, 30:20
**NOTE** [1] - 2:24
**note** [3] - 3:16, 24:16, 26:15
**noted** [1] - 22:18
**notes** [2] - 9:13, 35:21
**nothing** [2] - 27:6, 35:11
**notion** [1] - 28:4
**nucleotide** [1] - 22:8
**number** [3] - 19:5, 21:13, 27:12

**O**

**objectively** [1] - 17:9
**obligation** [1] - 29:17
**obtain** [2] - 20:16, 23:3
**obviously** [1] - 33:2
**occurred** [1] - 15:3
**occurs** [1] - 21:15
**OF** [1] - 1:2
**office** [1] - 29:15
**Office** [7] - 5:7, 7:14, 8:4, 21:6, 23:6, 24:25, 25:7
**Official** [1] - 35:23
**OMAR** [1] - 1:21
**Omar** [2] - 3:5, 4:11
**on-sale** [1] - 5:12
**once** [2] - 25:4, 32:3
**one** [9] - 7:11, 7:13, 11:17, 13:6, 19:22, 19:25, 27:10, 30:18, 32:24
**ones** [1] - 34:2
**oOo** [1] - 2:22
**operative** [1] - 26:24
**opinion** [1] - 12:12
**oppose** [2] - 4:21, 4:23

**Oral** [1] - 1:10
**oral** [1] - 2:24
**order** [3] - 9:23, 26:6, 27:15
**otherwise** [1] - 33:2
**outs** [1] - 32:15

**P**

**p.m** [2] - 2:25, 35:19
**page** [1] - 22:6
**pages** [1] - 11:23
**papers** [1] - 4:18
**Paragon** [1] - 24:18
**paragraph** [4] - 22:3, 22:6, 26:4, 32:20
**paragraphs** [1] - 23:22
**parallel** [3] - 22:8, 22:9
**parrot** [1] - 30:21
**part** [5] - 11:21, 11:22, 20:1, 30:14, 30:23
**partially** [1] - 19:24
**particular** [3] - 9:20, 23:10, 26:2
**parties** [1] - 4:12
**party** [4] - 19:14, 34:3, 34:6
**paste** [1] - 10:4
**pasted** [1] - 10:7
**patent** [16] - 6:1, 8:20, 9:6, 11:12, 13:6, 17:6, 17:7, 17:8, 17:10, 20:22, 21:2, 24:13, 24:14, 24:24, 32:15
**Patent** [4] - 21:5, 23:6, 24:25, 25:7
**patentability** [3] - 16:2, 23:8, 33:9
**patentable** [3] - 10:14, 11:5, 31:14
**patentee** [1] - 25:9
**patents** [5] - 13:6, 23:20, 23:24, 24:2, 30:2
**pattern** [12] - 20:19, 20:22, 24:17, 24:19, 25:1, 25:6, 29:5, 29:11, 29:12, 29:14, 29:16, 32:5
**patterns** [1] - 34:9
**pause** [1] - 25:10
**PCR** [8] - 7:16, 8:1, 21:9, 21:15, 21:17, 21:21, 22:2, 25:24
**pending** [1] - 3:21
**perhaps** [1] - 34:5
**permission** [1] - 7:2
**permitted** [1] - 33:21

**person** [3] - 17:6, 19:24, 25:16
**persuaded** [2] - 33:23, 34:22
**perverse** [1] - 18:25
**photovoltaic** [1] - 10:21
**PICKERING** [2] - 1:17, 1:20
**piece** [1] - 26:19
**place** [1] - 20:6
**places** [1] - 25:1
**plague** [1] - 6:2
**plaintiff** [1] - 23:4
**plaintiffs** [11] - 3:2, 3:4, 4:1, 4:3, 4:9, 4:11, 27:19, 34:16, 34:24, 35:5, 35:10
**Plaintiffs** [2] - 1:5, 1:22
**plaintiffs'** [3] - 3:23, 23:11, 29:25
**plausible** [2] - 25:13, 33:23
**plausibly** [1] - 32:21
**plead** [2] - 28:5, 31:20
**pleading** [7] - 6:13, 10:2, 24:21, 31:5, 32:7, 34:24
**pleadings** [1] - 26:24
**pled** [7] - 27:1, 27:15, 32:5, 32:6, 33:12, 34:13, 35:1
**plenty** [1] - 34:15
**PLLC** [1] - 2:5
**plurality** [1] - 22:7
**plus** [2] - 29:7
**point** [10] - 10:16, 13:21, 26:10, 26:23, 27:24, 28:7, 30:22, 31:17, 31:23, 34:16
**portion** [2] - 31:1, 31:3
**position** [1] - 15:11
**positions** [1] - 23:23
**possession** [1] - 19:14
**possible** [2] - 20:17, 25:19
**post** [1] - 6:11
**post-trial** [1] - 6:11
**practice** [1] - 26:16
**preceding** [1] - 13:2
**prefer** [1] - 6:10
**prepared** [1] - 29:23
**present** [3] - 6:4, 9:2, 31:14
**presentation** [1] - 10:3
**presented** [1] - 6:19
**presumptively** [1] - 15:24

**pretty** [2] - 27:13, 27:14
**prevailed** [1] - 19:9
**Princeton** [1] - 30:16
**principles** [1] - 34:21
**problem** [3] - 6:7, 21:18, 24:8
**procedures** [1] - 18:7
**proceeding** [1] - 35:21
**product** [1] - 18:10
**products** [2] - 5:11, 34:7
**prohibits** [1] - 31:12
**projected** [1] - 28:2
**prong** [2] - 25:3, 29:13
**Property** [1] - 3:7
**prosecuted** [2] - 9:7, 13:5
**prosecuting** [13] - 7:20, 17:5, 19:23, 20:8, 25:21, 31:13, 32:5, 33:16, 33:17, 33:20, 33:24, 34:11
**prosecution** [5] - 12:19, 20:15, 22:14, 22:24, 32:14
**protection** [1] - 22:7
**provided** [3] - 5:10, 5:12, 11:21
**PTO** [4] - 19:4, 19:15, 25:14, 33:22
**publications** [2] - 5:14, 18:11
**purported** [1] - 18:9
**purpose** [1] - 12:1
**purposes** [1] - 23:7
**pushed** [2] - 20:9, 20:13
**put** [2] - 6:15, 13:23
**puts** [1] - 20:6
**putting** [1] - 32:25

**Q**

**Quest** [1] - 19:7
**questions** [13] - 4:2, 4:18, 9:14, 9:17, 15:5, 25:11, 26:10, 29:21, 29:22, 35:4, 35:6, 35:8
**quick** [1] - 27:22
**quickly** [1] - 7:2
**quite** [1] - 29:6
**quote** [3] - 18:19, 18:24, 31:16

**R**

**rapid** [1] - 22:8
**reached** [1] - 32:3

**reaction** [12] - 7:16, 8:1, 21:11, 21:14, 21:17, 21:21, 22:3, 22:7, 22:10, 25:24
**read** [5] - 25:22, 25:25, 26:6, 33:7, 33:15
**readability** [2] - 12:17, 22:20
**reading** [1] - 16:14
**really** [9] - 7:19, 20:17, 20:18, 23:5, 23:17, 23:20, 27:24, 30:14, 32:8
**reason** [4] - 8:2, 12:20, 13:8, 14:9
**reasonable** [4] - 9:4, 9:13, 15:2, 25:20
**reasonably** [1] - 24:24
**reasons** [7] - 12:22, 12:24, 25:20, 30:6, 31:7, 32:23
**rebuttal** [2] - 18:14, 27:19
**recently** [1] - 27:3
**record** [4] - 3:16, 7:10, 8:14, 28:23
**recycled** [1] - 13:5
**reduce** [2] - 12:18, 22:21
**refer** [1] - 20:18
**reference** [20] - 7:9, 7:10, 7:11, 7:19, 7:22, 8:15, 9:15, 10:19, 11:2, 12:21, 16:21, 16:22, 20:23, 21:7, 22:13, 26:1, 26:7, 28:17, 29:15
**referenced** [1] - 13:7
**references** [9] - 8:19, 14:3, 14:6, 14:9, 14:23, 14:25, 23:23, 28:16
**regarding** [5] - 4:12, 4:13, 5:7, 7:18, 19:18
**Registered** [1] - 1:24
**reject** [1] - 32:4
**rejection** [2] - 9:24, 9:25
**relate** [2] - 8:25, 14:3
**related** [2] - 9:12, 20:23
**relates** [4] - 7:8, 7:13, 11:12, 21:23
**relating** [1] - 8:12
**relationship** [1] - 33:19
**relative** [2] - 21:7, 24:13
**relevant** [3] - 5:10,

13:14, 14:24
**relies** [1] - 17:24
**remaining** [1] - 3:21
**remark** [1] - 14:17
**remarks** [6] - 11:14, 11:20, 11:25, 13:2, 14:11, 14:17
**remotely** [1] - 2:25
**removal** [2] - 15:22, 15:23
**remove** [1] - 15:15
**removed** [1] - 14:20
**repeat** [1] - 24:15
**repeated** [1] - 5:25
**replead** [1] - 30:24
**replicated** [1] - 11:16
**Reporter** [2] - 1:24, 35:23
**reporter** [1] - 3:15
**REPORTER'S** [1] - 2:24
**representation** [6] - 10:22, 21:23, 21:25, 22:11, 26:6, 26:7
**representations** [4] - 19:18, 20:24, 22:16, 24:13
**request** [1] - 26:18
**require** [2] - 21:8, 22:21
**required** [2] - 12:18, 27:3
**requirement** [1] - 6:24
**requirements** [1] - 6:13
**requires** [1] - 22:9
**requiring** [1] - 30:17
**respect** [10] - 3:23, 4:16, 11:1, 13:18, 29:12, 29:14, 30:8, 30:10, 32:11, 35:2
**responding** [1] - 5:7
**response** [3] - 7:14, 8:4, 8:5
**rest** [4] - 4:18, 14:10, 29:21, 35:1
**results** [1] - 5:10
**rise** [5] - 9:9, 11:6, 13:19, 15:2, 17:2
**Rittman** [1] - 3:6
**road** [1] - 6:11
**Rothman** [4] - 9:5, 9:17, 31:10, 31:11
**Rule** [1] - 6:9
**running** [1] - 15:4

## S

**safe** [1] - 35:18
**sale** [1] - 5:12

**sample** [1] - 18:10
**satisfy** [6] - 6:13, 6:23, 10:1, 25:3, 27:16
**saw** [1] - 25:15
**scent** [2] - 22:12, 33:1
**SCIENCES** [1] - 1:4
**scope** [13] - 20:11, 20:12, 22:22, 22:24, 22:25, 23:3, 23:25, 25:8, 28:8, 31:9, 32:9, 33:4, 33:21
**Scott** [1] - 3:6
**screenshots** [1] - 4:12
**search** [1] - 14:22
**searching** [5] - 23:18, 28:9, 28:14, 28:20, 29:1
**second** [5] - 7:17, 11:9, 13:3, 14:15, 32:20
**secondly** [1] - 26:3
**section** [8] - 11:24, 12:1, 12:6, 12:8, 12:11, 12:15, 13:3, 13:13
**see** [11] - 17:12, 25:15, 26:23, 32:6, 32:7, 32:12, 32:17, 32:23, 33:1, 33:3, 33:11
**seeking** [1] - 30:1
**sees** [1] - 30:18
**sentence** [4] - 7:13, 12:15, 12:16, 13:12
**separate** [3] - 20:23, 20:24, 25:5
**separately** [1] - 6:23
**serves** [1] - 19:17
**set** [3] - 3:20, 26:18
**several** [2] - 6:8, 19:6
**shield** [1] - 23:4
**shifted** [1] - 17:25
**show** [2] - 8:3, 29:17
**showing** [1] - 25:24
**shown** [4] - 11:20, 13:20, 21:22, 25:23
**shows** [1] - 25:7
**side** [5] - 13:24, 27:23, 28:6, 31:25
**similar** [2] - 24:14, 24:19
**similarly** [1] - 33:13
**simply** [5] - 6:25, 10:4, 17:11, 25:22, 30:21
**single** [7] - 6:5, 21:9, 21:14, 21:21, 25:24
**singular** [1] - 32:7
**skill** [1] - 25:16
**Slide** [2] - 20:19, 21:4
**slide** [25] - 4:19, 7:7, 7:17, 8:2, 8:3, 8:9, 8:23, 9:18, 10:15,

11:8, 11:16, 11:20, 11:22, 12:4, 13:8, 13:22, 14:15, 21:12, 22:1, 22:4, 22:18, 24:12, 32:13, 32:20
**slides** [4] - 4:8, 10:3, 14:13, 27:12
**slightly** [2] - 8:7, 8:24
**sold** [1] - 20:7
**solely** [1] - 5:22
**sometimes** [1] - 8:6
**soon** [1] - 20:8
**sorry** [2] - 27:9, 35:14
**sort** [1] - 31:6
**sorts** [1] - 34:9
**sought** [1] - 9:21
**Southco** [3] - 18:10, 19:7, 19:17
**space** [1] - 18:5
**specific** [2] - 17:19, 31:7
**specifically** [4] - 4:15, 12:2, 12:7, 13:2
**SPINK** [1] - 2:6
**Spink** [1] - 3:13
**stack** [1] - 29:8
**standard** [8] - 6:9, 8:8, 9:21, 10:2, 24:21, 24:23, 25:3, 31:5
**standards** [1] - 26:22
**Stark** [1] - 3:2
**STARK** [1] - 1:12
**start** [2] - 7:7, 18:19
**started** [2] - 4:2, 8:9
**starting** [2] - 7:6, 11:11
**state** [1] - 30:13
**statement** [20] - 7:15, 7:18, 7:23, 7:24, 10:25, 12:6, 14:2, 16:5, 17:25, 18:1, 21:6, 21:20, 23:2, 23:6, 23:9, 23:11, 31:23, 32:19, 33:9
**statements** [19] - 5:4, 5:6, 5:13, 5:22, 5:23, 6:6, 9:24, 10:5, 10:7, 10:8, 10:10, 10:11, 13:24, 14:11, 15:16, 18:11, 31:24, 33:13
**STATES** [1] - 1:1
**statute** [1] - 30:21
**stay** [1] - 35:18
**stenographic** [1] - 35:21
**stepped** [1] - 20:9
**steps** [1] - 15:3
**still** [1] - 29:7
**stop** [4] - 15:5, 18:14, 19:12, 21:18
**strategy** [1] - 20:16

**streamline** [1] - 3:22
**strike** [5] - 3:24, 4:15, 30:3, 31:1, 32:16
**strike-out** [1] - 32:16
**strong** [1] - 24:20
**studies** [1] - 34:6
**subject** [2] - 6:21, 8:7
**submit** [1] - 12:21
**submitted** [2] - 4:8, 11:25
**substance** [1] - 20:5
**substrate** [1] - 22:6
**success** [2] - 9:4, 9:13
**sufficiency** [1] - 26:21
**sufficient** [3] - 6:4, 26:17, 29:9
**suggest** [1] - 29:9
**suggested** [1] - 10:20
**suggestion** [4] - 28:12, 28:15, 28:19, 29:6
**suggests** [1] - 28:13
**summary** [1] - 6:11
**SunPower** [4] - 9:20, 10:15, 17:3, 34:19
**support** [3] - 6:16, 7:1, 34:17
**suppose** [1] - 31:6
**survived** [1] - 19:8
**sustain** [1] - 28:5
**sustained** [1] - 5:22
**sword** [1] - 23:2

## T

**teach** [3] - 7:25, 19:19, 26:2
**teaches** [1] - 8:14
**teachings** [2] - 9:19, 9:23
**Techs** [1] - 9:3
**telephone** [1] - 35:19
**telephonic** [1] - 2:24
**Telephonic** [1] - 1:10
**term** [8] - 11:13, 11:18, 28:20, 28:21, 28:24, 28:25, 29:2, 32:16
**terminology** [2] - 24:3
**terms** [3] - 5:7, 15:21, 16:6
**test** [2] - 5:9, 19:23
**testing** [3] - 18:6, 18:8, 18:9
**THE** [27] - 1:1, 1:2, 3:1, 3:9, 3:14, 4:5, 4:7, 4:20, 4:25, 15:4, 15:8, 16:6, 17:4, 18:13, 19:12, 25:12, 26:9, 26:20, 27:4,

27:8, 27:18, 29:22,
35:7, 35:9, 35:12,
35:15, 35:17
**theory** [16] - 7:8, 7:13,
7:19, 7:20, 11:1,
11:9, 11:10, 12:21,
12:22, 13:23, 14:16,
23:12, 23:13, 27:25,
28:1
**Therasense** [1] - 28:2
**therefore** [1] - 34:13
**thermocycling** [3] -
7:16, 21:9, 21:21
**they've** [1] - 29:4
**third** [2] - 20:25, 34:6
**thorough** [1] - 27:13
**throwaway** [2] - 13:12
**Thursday** [1] - 1:10
**title** [1] - 17:8
**today** [2] - 6:13, 30:25
**today's** [1] - 3:22
**took** [1] - 24:7
**top** [2] - 19:20, 29:8
**traditional** [1] - 26:16
**transcript** [1] - 35:21
**traverse** [1] - 9:24
**trial** [1] - 6:11
**tried** [2] - 10:18, 34:2
**true** [3] - 12:23, 17:9,
35:21
**try** [4] - 23:3, 25:8,
30:6, 30:12
**TUNNELL** [1] - 1:15
**turn** [4] - 11:8, 14:13,
18:15, 21:3
**turning** [1] - 24:12
**turns** [1] - 12:25
**twice** [2] - 13:5, 25:4
**two** [15] - 8:11, 8:19,
8:23, 9:18, 10:6,
12:24, 19:18, 20:22,
20:23, 20:24, 21:17,
23:20, 23:22, 23:23,
25:20
**type** [2] - 6:4, 27:2
**types** [1] - 33:3
**typically** [1] - 32:14

## U

**U.S** [1] - 35:24
**ultimately** [1] - 6:14
**under** [5] - 8:6, 12:12,
13:9, 17:15, 27:16
**underlining** [1] -
32:15
**underlying** [1] - 5:15
**undermined** [1] - 28:5
**undisputed** [1] - 32:12
**unfounded** [1] - 28:12

**UNITED** [1] - 1:1
**unless** [1] - 4:17
**unsupported** [1] -
28:13
**up** [1] - 25:8
**uses** [1] - 28:25

## V

**version** [1] - 4:21
**versus** [1] - 3:17
**view** [5] - 5:25, 11:10,
15:12, 16:11, 31:4
**viewed** [1] - 32:21
**views** [1] - 18:8
**virtually** [2] - 10:11,
14:1

## W

**Washington** [1] - 1:18
**waste** [1] - 20:15
**ways** [1] - 23:5
**well-pled** [3] - 32:5,
33:12, 34:13
**whatsoever** [1] - 29:3
**Wilding** [28] - 7:8,
7:10, 7:11, 7:15,
7:19, 7:21, 7:24,
11:2, 12:21, 13:23,
16:8, 16:11, 16:12,
20:23, 21:7, 21:13,
21:20, 21:24, 22:1,
22:5, 22:15, 25:15,
25:16, 25:22, 26:7,
31:24, 33:13, 34:11
**Wilmer** [1] - 3:6
**WILMER** [2] - 1:17,
1:20
**Wilmington** [1] - 1:9
**withheld** [4] - 5:9,
18:4, 18:7, 18:12
**withhold** [1] - 29:15
**Woodring** [2] - 10:19,
10:23
**word** [1] - 28:17
**words** [1] - 12:10
**worse** [4] - 11:9,
12:20, 12:23, 13:8
**worth** [1] - 14:15
**WRIGHT** [1] - 2:5
**Wright** [1] - 3:13
**Wyeth** [4] - 18:6,
18:20, 19:6, 24:23
**Wyeth's** [1] - 18:25

## Y

**yesterday** [2] - 3:22,

4:8
**YIN** [1] - 1:18
**Yin** [1] - 3:5
**York** [2] - 1:21
**Young** [3] - 8:11, 8:13,
34:18

## Z

**zero** [4] - 29:7
**zone** [1] - 21:21
**Zou** [7] - 14:25, 23:20,
24:2, 28:15, 28:17,
28:24, 29:2
**ZOU** [1] - 14:25