

November 4, 2020

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124, Unit 26
Wilmington, DE 19801-3556

      RE:   *Becton, Dickinson and Company, et al. v. NeuMoDx Molecular, Inc*.
             **C.A. No. 19-cv-1126-LPS**

Dear Chief Judge Stark:

      Pursuant to Paragraph 7(c) of the Scheduling Order, the parties have met and conferred concerning the initial narrowing of asserted claims and prior art references. The parties have reached agreement on all aspects of initial case narrowing except the number of claims Plaintiffs may assert. Plaintiffs propose 120 claims and Defendant proposes 40 claims. The parties' arguments in support of their respective positions are set forth below. With respect to prior art, the Parties have agreed to the following:

    (1) Plaintiffs may assert no more than 14 claims from a single patent.

    (2) The number of prior art references asserted by Defendant shall be no more than two times the number of asserted claims.

    (3) Defendant is limited to a number of combinations of prior art per patent that is no more than three times the maximum number of asserted claims per patent (which limit on asserted claims is 14 per patent as set forth in (1) above). A combination of prior art means the application of a single prior art reference or a combination of prior art references against one or more claims of the patents-in-suit. For example, if prior art reference A is applied to one or more claims of the asserted patents, and the combination of references A + B is also applied to one or more claims of the patents, it would count as 2 combinations of prior art. A + C or A + D would be two combinations (A + C and A + D) because of the "or."

    (4) Defendant will assert no more than 6 prior art references in a single combination.

    (5) An invalidity argument based upon a prior art product or use counts as a single reference that includes all corroborating evidence used to show how the product or use functioned.

    (6) Limitations on prior art combinations do not extend to prior art references used to illustrate the state of the art, the knowledge possessed by a person of ordinary skill, or to address alleged secondary considerations of non-obviousness.

**Defendant's Position**

Plaintiffs initially asserted 311 claims against Defendant. Plaintiffs subsequently reduced the number of asserted claims to 120 after Defendant provided invalidity contentions and identified its claim terms for construction. After meeting and conferring pursuant to the Scheduling Order, the parties reached agreement on prior art reductions, but the parties could not agree on the appropriate reduction of Plaintiffs' asserted claims. Accordingly, the only issue before the Court is how many claims Plaintiffs should be allowed to assert against Defendant at this time.

Plaintiffs' proposed reduction to 120 claims makes only a very small dent in the scope of this case. Plaintiffs' proposal exceeds the number of asserted claims generally allowed in Delaware prior to claim construction, even in a case involving a substantial number of patents as here. 120 asserted claims at this stage represents an impractical number of claims that will substantially increase the time, effort and expense to litigate this case.

Defendant proposes that Plaintiffs should reduce their number of asserted claims at this time to 40. Defendant's proposal aligns with the standard practice in Delaware and this Court. The below chart summarizes a number of Delaware District Court cases that required claim reduction prior to claim construction with a significant number of patents at issue:

| Exhibit | | # of Patents in Suit | Pre-Markman Asserted Claims Reduced to |
|---|---|---|---|
| 1 | *Integra Lifesciences v. Hyperbranch Medical Technology*, C.A. 15-819-LPS-CJB (D. Del. Sept. 2, 2016), Order at 1. | 6 | 36 |
| 2 | *Preservation Technologies LLC v. NFL Enterprises*, C.A. 14-1295-SLR-SRF (D. Del. Nov. 17, 2015), Tr. at 5-6, 34. | 9 | 30 |
| 3 | *TQ Delta LLC v. Comcast Corporation*, C.A. 15-611-RGA-MPT (D. Del. Oct. 23, 2015), Order at 5. | 8 | 40 |
| 4 | *TQ Delta LLC v. Pace PLC*, C.A. 13-1835-RGA- (D. Del. Mar. 21, 2014) Tr. at 17-18. | 32 | 64 |
| 5 | *Impulse Technology, Inc. v. Microsoft Corp.*, C.A. 11-586-RGA-CJB (D. Del. Aug. 2, 2012), Tr. at 38. | 7 | 30 |
| 6 | *Nuance Communications Inc. v. MMODAL LLC, et al.*, C.A. 17-1484-MN-SRF (D. Del. Aug. 3, 2018), Order at 2-3. | 6 | 23 |
| 7-8 | *Intellectual Ventures v. AT&T Mobility*, C.A. 12-193-LPS (D. Del. Mar. 24, 2015), Mem. Op. at 3-4 & (D. Del. May 12, 2015), Order at 4. | 16 | 67 |

| | | | |
|---|---|---|---|
| 9 | *VLSI Technology v. Intel Corporation*, C.A. 18-966-CFC-CJB (D. Del. Aug. 3, 2020), Mem. Order at 1. | 5 | 25 |

The above chart shows Defendant's proposal of 40 claims is reasonable and consistent with this District's past rulings, while Plaintiffs' proposal of 120 claims would be an outlier. For example, in *TQ Delta v. Comcast Corp.*, the Court ordered 152 asserted claims to be reduced to 40 across 8 patents before construction. In *Integra Lifesciences v. Hyperbranch*, the Court reduced the asserted claims from 105 to 36 in order to assist the parties in identification of terms for claim construction. In *Preservation Technologies v. NFL Enterprises*, 300 asserted claims across 9 patents were reduced to 30 claims pre-claim construction.

Defendant's proposal is in-line with the Court's intent to reduce the scope of this case right now, including (1) the Scheduling Order's instruction that the parties reduce asserted claims and prior art before exchanging and briefing claim terms for construction, and (2) the Court's instruction that the parties will be limited to 10 claim term disputes for 13 patents at the Markman hearing (less than one claim term per patent)., absent leave of the Court. Defendant's proposal also keeps an eye on additional reductions that will be required after claim construction by the Scheduling Order, and the practice of this Court.

The *Sunoco* and *Thermo Fisher* cases cited by Plaintiffs are in-line with Defendant's proposed narrowing. In *Sunoco*, the Court required plaintiff to reduce the number of claims asserted to 45 claims pre-*Markman*. The Court cited to the "benefit of appropriately narrowing the scope of a large, five-patent case early enough before trial so as to promote efficiency." The Court also noted that plaintiff's concerns about reducing claims – the same concerns raised by Plaintiffs here – "can be mitigated by the good cause option discussed in *Katz*." In *Thermo Fisher*, the Court required plaintiff to reduce the number of asserted claims to 40 pre-*Markman*, again subject to *In re Katz*. Even the Court in *Collegium* reduced the number of asserted claims to 66, approximately one-half of Plaintiffs' proposed 120. There is no support for Plaintiffs' request to assert 120 claims through claim construction proceedings. While Plaintiffs argues that Defendant reduced its initial proposal from 52 claims in the draft scheduling order to 40 claims, Plaintiffs' 120 claim proposal is a 50% increase from its initial proposal of 80 claims in the draft scheduling order. (D.I. 47 at 5.) Unlike Plaintiffs' 120-claim proposal, Defendant's 40-claim proposal is justified by the overwhelming majority of Delaware district court rulings and consistent with further case narrowing required during and after claim construction.

Plaintiffs' other complaints have no merit. Defendant has produced over 100,000 pages of its most sensitive technical documents, and provided detailed invalidity contentions totaling over 900 pages that satisfy any measure of adequacy. Plaintiffs' arguments for why they need 120 claims are no different than any other plaintiff which must reduce the number of claims prior to *Markman*. Every plaintiff believes that each claim presents distinct questions of infringement, damages or liability. And nearly every plaintiff faces invalidity defenses, IPRs and discovery. Should Plaintiffs seriously wish to engage in further discovery prior to claim reduction, the case schedule should be modified to push claim construction back. If Plaintiffs wish to wait until IPRs are resolved to reduce claims, this case should be stayed.

Defendant proposes that claim reductions are required to be served on Defendant by no later than 1 week after the Court's ruling

**Plaintiffs' Position**

Plaintiffs independently narrowed the asserted claims by over 60%, but NeuMoDx now seeks to arbitrarily force another 66% reduction. NeuMoDx's request should be rejected because Plaintiffs lack basic information—*e.g.,* adequate invalidity contentions, *any* non-infringement contentions, *any* discovery regarding NeuMoDx's new "license" defense—to make an informed decision as to further narrowing at this stage. Additionally, further narrowing is not necessary to efficiently proceed to the next phases of the case, *e.g.,* claim construction.

Factual Background. The 13 asserted patents include a total of 356 claims. After NeuMoDx produced certain core technical documents, Plaintiffs served initial contentions showing extensive infringement, *i.e.,* the two accused systems (*see* D.I. 83, Exs. 1, 7) infringe 311 claims. NeuMoDx served initial invalidity contentions on October 2, but those contentions—as NeuMoDx finally admitted this past Thursday—were not adequate. *See* D.I. 83 at 3; Ex. A. That issue has now been presented to the Court but, back in mid-October, Plaintiffs undertook to narrow the claims unaided by NeuMoDx and based on their independent understanding of the prior art and NeuMoDx's defenses. On October 17, Plaintiffs identified a set of at least 120 claims that it believed, at that time, presented "unique issues as to liability or damages." *In re Katz*, 639 F.3d 1303, 1310-12 (Fed. Cir. 2011). Plaintiffs' reduction to 120 asserted claims—less than two weeks ago—already represents an over 60% reduction since the initial contentions.

Further Narrowing Is Not Warranted At This Stage. To further refine what claims present "unique" issues, Plaintiffs require basic discovery that NeuMoDx has not provided. Since Plaintiffs' last narrowing, NeuMoDx has (1) refused to supplement its invalidity contentions to correct certain deficiencies (Ex. A); (2) as to other portions that NeuMoDx *agrees* must be supplemented, refused to supplement until after further claim narrowing (*id.*); (3) not produced additional technical documents as requested; (4) failed to provide any non-infringement contentions as requested (Ex. B, 10); (5) after Plaintiffs narrowed to 120 claims, interposed a new "license" defense, as to which NeuMoDx, aside from identifying the title of the agreement, has not explained the factual basis for the defense (*id.*, 11-13); and (6) maintained IPR petitions against four of the patents, which are still pending institution decisions (Ex. C, D, E, F). While NeuMoDx has *added* unique legal issues and stalled basic discovery into its defenses, Plaintiffs have received no meaningful information since its initial contentions that could inform another reduction.[1]

Requiring Plaintiffs to narrow further at this early stage in the case—and with no additional discovery—would simply force Plaintiffs to arbitrarily dismiss claims that present distinct legal questions of infringement, validity, damages, or entitlement to an injunction; and may potentially preclude Plaintiffs from obtaining discovery needed to revive them. It would also unfairly reward NeuMoDx for stalling their contentions and interrogatory responses, preventing Plaintiffs from understanding even the basic contours of the non-infringement, invalidity, and license issues. Nor should Plaintiffs be required to further narrow before the PTAB decides whether to institute the

---

[1] Plaintiffs once estimated 80 asserted claims might be sufficient (D.I. 51 at 5), but that proved optimistic due to NeuMoDx's pervasive infringement and its inadequate discovery responses.

4

pending IPRs.[2] Further reductions would "come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity." *Katz*, 639 F.3d at 1313 n.9.

Moreover, further claim narrowing is not needed to simplify the case at this stage. The Court determined that the amendment of the complaint to add seven patents "does not have much impact on how the case should proceed." D.I. 52. Claim narrowing will not affect the pending *Markman* process, because the Court stated that only 10 terms will be construed at the January 2021 *Markman* (D.I. 91 at 33) and, on October 29, NeuMoDx purported to provide the list of claim terms it proposes to brief. Further claim narrowing now will not affect the claim terms in dispute, because the terms NeuMoDx selected would appear in any set of narrowed claims.

Plaintiffs' request for 120 asserted claims is also supported by this Court's prior decisions, which permitted 9 or 10 claims-per-patent at the pre-*Markman* stage. *See, e.g., Thermo Fisher v. Agilent*, No. 17-600-LPS-CJB (D. Del. Feb. 5, 2018) (13 claims per patent) (Ex. G); *Sunoco Partners v. Powder Springs Logistics*, No. 17-1390-LPS-CJB (D. Del. Nov. 1, 2018) (9 claims per patent) (Ex. H). Furthermore, Plaintiffs' selection reflects the Federal Circuit's guidance regarding selecting claims that "raise[] non-duplicative issues," to preserve due process rights and prevent future preclusion. *Katz*, 639 F.3d at 1309-1310; *Nuance v. ABBYY*, 813 F.3d 1368, 1376 (Fed. Cir. 2016) (exclusion of claims that "presented unique legal issues … could violate due process"). Plaintiffs should not be penalized simply because NeuMoDx's infringement is extensive, and because Plaintiffs attempted to consolidate the issues rather than filing multiple smaller suits.

NeuMoDx's Request Is Arbitrary And Unsupported. Even if the Court were to require further reduction now, NeuMoDx's proposal of 40 claims is wholly arbitrary and unsupported by the cases cited by NeuMoDx. NeuMoDx does not dispute that the 120 claims identified by Plaintiffs present unique issues. And there is no case in which a plaintiff—on an opposed motion and in a case involving anywhere near 13 patents—has been ordered to a pre-*Markman* reduction of 40 claims. Indeed, NeuMoDx's cases support *more* claims per patent—*e.g.*, *Integra*, *Comcast*, and *VLSI* involved 5-6 claims per patent. NeuMoDx's cases are also inapposite for other reasons, most notably because most of the plaintiffs in those cases *agreed* to the relevant limits and because none of them (including in *Thermo* and *Sunoco*) contended they were missing basic discovery needed to inform a rational narrowing and vindicate due process rights.[3] The numerous distinctions between this case and NeuMoDx's samples illustrate the arbitrariness of divining some claim narrowing formula from a cherry-picked set of cases.[4]

---

[2] For the petitions not currently time-barred, decisions are expected between 12/20 – 1/21.

[3] Unlike here, NeuMoDx's cases involve (1) plaintiffs who **agreed** to those limits, *e.g., TQ Delta/Comcast*, *TQ Delta/Pace*, *Nuance, Preservation*; (2) non-direct competitors, who did not present the complexity of a differentiated damages case, *e.g.*, *Preservation, TQ Delta, Impulse, Intellectual Ventures, VLSI*; (3) more complexity, including multiple defendant groups and dozens of products, *e.g.*, *Intellectual Ventures*, Ex. 7 at 7 ("massive" case with 10 defendants).

[4] If the Court were to require narrowing beyond 120 claims, it should not limit Plaintiffs to less than 80 claims at this stage, consistent with what this Court did in another case with a direct competitor who knew its actions would lead to a multi-patent suit. *Collegium v. Teva*, No. 18-cv-300-LPS-CJB (D. Del. Aug. 6, 2018) (66 claims for 11 patents) (Ex. I); D.I. 54 ¶¶ 17, 31. While this case warrants more claims—because, *e.g.*, Collegium did not attempt to identify claims based on unique issues and it appeared to have adequate visibility into invalidity defenses—the floor for this 13-patent case should be 6 claims per patent, or roughly 80 total claims, as in *Collegium*.

<u>Plaintiffs' Proposal</u>. Plaintiffs respectfully request that the Court allow 120 asserted claims at this stage,[5] with no more than 14 claims from any given patent, and also permit Plaintiffs to modify that limit upon a showing of good cause or upon showing that additional claims present unique issues.  *See In re Katz*, 639 F.3d at 1313.  Pursuant to the Scheduling Order, the parties are already required to confer following the Court's *Markman* order to discuss further narrowing.

The parties are available at the Court's convenience should Your Honor have any questions.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (Via E-Mail)

---

[5] To the extent the Court requires Plaintiffs to narrow beyond 120 claims, Plaintiffs reserve their right to bring those claims in a second case given that those claims present unique issues.