**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., | | |
| Plaintiffs, | | C.A. No. 19-cv-1126-LPS |
| v. | | |
| NEUMODX MOLECULAR, INC., QIAGEN GMBH, and QIAGEN NORTH AMERICAN HOLDINGS, INC., | | |
| Defendants. | | |

**DEFENDANTS NEUMODX MOLECULAR, INC., QIAGEN GMBH, AND QIAGEN NORTH AMERICAN HOLDINGS, INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO SEVER PURSUANT TO FED. R. CIV. P. 21 AND TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Dated: May 13, 2021

Of Counsel:

James K. Cleland
Michael Spink
Keith Weiss
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
Tel. 734-436-7356

Alan G. Carlson
Gary J. Speier
Samuel T. Lockner
Jonathan D. Carpenter
Alexandra J. Olson
Peter M. Kohlhepp
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

Page

I.    NATURE & STAGE OF THE PROCEEDINGS ................................................................ 1

II.    SUMMARY OF ARGUMENT ......................................................................................... 3

III.    BACKGROUND AND STATEMENT OF FACTS ........................................................ 4

    A.    The Parties ........................................................................................................... 4

    B.    The New Allegations Giving Rise to Plaintiffs' Trade Secret-Related Counts ........... 5

    C.    The Trade Secret-Related Allegations Are Grounded in the EDM, Not Delaware ...... 6

IV.    ARGUMENT ................................................................................................................... 7

    A.    The Trade Secret and Related State Law Claims Should Be Severed In Order to Ensure the Fair and Efficient Administration of Justice ............................................... 7

        1.    The Rule 20 Factors Favor Severing ...................................................... 8

        2.    The Other Factors—Prejudice, Avoiding Delay, Ensuring Judicial Economy, and Safeguarding Fairness—Also Favor Severing ...................................... 11

    B.    The Trade Secret and Related State Law Claims Should Be Transferred to the EDM Pursuant to 28 U.S.C. § 1404(a) ................................................................. 15

        1.    The Private Interest Factors Counsel in Favor of Transfer .................................. 15

        2.    The Public Interest Factors Counsel in Favor of Transfer ................................... 18

V.    CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

***Cases***                                                                                            ***Page(s)***

*Advanced Neuromodulation Sys. v. Advanced Bionics Corp.*,
  No. 4:04cv131, 2005 U.S. Dist. LEXIS 47695 (E.D. Tex. May 18, 2005) ............................ 11

*Ajuba Int'l, L.L.C. v. Saharia*,
  871 F. Supp. 2d 671 (E.D. Mich. 2012)..................................................................................... 9

*ANI Pharm., Inc. v. Method Pharm., LLC*,
  No. 17-1097, 2019 U.S. Dist. LEXIS 5855 (D. Del. Jan. 11, 2019) ........................................ 15

*AstraZeneca AB v. Mylan Pharm. Inc.*,
  No. 18-1562-CFC, 2019 U.S. Dist. LEXIS 180264 (D. Del. Oct. 18, 2019) .................... 15, 20

*Auto. Techs. Int'l, Inc. v. OnStar, LLC*,
  No. 11-2490 (SRC), 2011 U.S. Dist. LEXIS 144824 (D.N.J. Dec. 15, 2011) ........................ 20

*Bavarian Nordic A/S v. Acambis, Inc.*,
  486 F. Supp. 2d 354 (D. Del. 2007)......................................................................................... 20

*Blackbird Tech LLC v. TuffStuff Fitness Int'l, Inc.*,
  No. 16-733-GMS, 2017 U.S. Dist. LEXIS 63752 (D. Del. Apr. 27, 2017)............................. 16

*British Telcoms. PLC v. IAC/Interactivecorp*,
  No. 18-366-WCB, 2019 U.S. Dist. LEXIS 67999 (D. Del. Apr. 22, 2019) ............................ 11

*ChriMar Sys. v. Cisco Sys.*,
  No. 11-1050-GMS, 2013 U.S. Dist. LEXIS 30205 (D. Del. Mar. 6, 2013) ...................... 17, 18

*Dearden v. FCA U.S. LLC*,
  No. 5:16-cv-00713, 2017 U.S. Dist. LEXIS 48751 (E.D. Pa. Mar. 31, 2017) ........................ 14

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
  No. 08-4168 (MLC), 2012 U.S. Dist. LEXIS 1024 (D.N.J. Jan. 4, 2012) .................... 8, 12, 13

*FTC v. Endo Pharm., Inc.*,
  No. 16-1440, 2016 U.S. Dist. LEXIS 145329 (E.D. Pa. Oct. 20, 2016) ................................. 11

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012) ................................................................................. 7, 8, 10, 11

*In re Innotron Diagnostics*,
  800 F.2d 1077 (Fed. Cir. 1986) ................................................................................................. 8

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011) ......................................................................................... 16, 18

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ................................................................... 15

*Karlo v. Pittsburgh Glass Works, LLC*,
    No. 2:10-cv-1283, 2015 U.S. Dist. LEXIS 141057 (W.D. Pa. Oct. 16, 2015).................. 10, 14

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
    No. 09-80-JJF-MPT, 2010 U.S. Dist. LEXIS 23057 (D. Del. Mar. 11, 2010) ........................ 13

*MEC Res., LLC v. Apple, Inc.*,
    269 F. Supp. 3d 218 (D. Del. 2017)................................................................... 17, 18

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    587 F. Supp. 1112 (D. Del. 1984)................................................................... 10

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*,
    330 F.R.D. 143 (D. Del. 2019) ............................................................ passim

**Statutes**

18 U.S.C. § 1839.................................................................................................. 9

28 U.S.C. § 1404.............................................................................................. 4, 15

**Other Authorities**

4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL § 21.05-06 (2021).......... 11, 14

**Rules**

Fed. R. Civ. P. 20............................................................................................. 7, 8, 11

Fed. R. Civ. P. 21................................................................................................... 7

Mich. Comp. Laws § 445.1902................................................................................. 9

Mich. Comp. Laws § 445.1908............................................................................... 19

Defendants NeuMoDx Molecular, Inc. ("NeuMoDx"), and QIAGEN GmbH and QIAGEN North American Holdings, Inc. ("Qiagen") (collectively, "Defendants"), move for an order severing "Counterclaims-In-Reply" Nos. 1-11 (collectively, "the trade secret-related claims") recently filed by Plaintiffs' Becton, Dickinson and Company, GeneOhm Sciences Canada, Inc., and HandyLab, Inc. (collectively, "Plaintiffs").  NeuMoDx also moves to transfer these counts to the Eastern District of Michigan ("EDM").

This patent infringement lawsuit is nearly two years old.  Plaintiffs now seek to open an entirely different front: eleven new claims based on allegations that NeuMoDx and its individually-named officers, Sundaresh Brahmasandra and Jeff Williams, misappropriated Plaintiffs' trade secret and confidential information.  Plaintiffs did not seek leave to add the new counts or new parties, and Defendants have filed a concurrent motion to strike, dismiss, or otherwise disallow what are untimely amendments to the complaint.  If the Court grants Defendants' concurrent motion to strike, this motion is mooted.

However, if the Court finds the new counts and parties are proper, the Court should sever the new claims into a separate case.  In addition, the new claims should be transferred to the EDM, the locus of the trade secret controversy.  A transfer is particularly appropriate because venue in Delaware is improper for two of the three trade secret count defendants (Brahmasandra and Williams), in view of a motion to dismiss filed by those defendants.

## I.      NATURE & STAGE OF THE PROCEEDINGS

This patent lawsuit was initially filed in June 2019 against only NeuMoDx, asserting six patents.  D.I. 1.  In June 2020, Plaintiffs sought and obtained leave to expand the case to add seven additional patents.  D.I. 52.  After Qiagen acquired NeuMoDx in September 2020, Plaintiffs sought and obtained leave to add Qiagen to the case in February 2021.  D.I. 164.

As of April 14, 2021, Plaintiffs' claims consisted of thirteen counts of patent

infringement against NeuMoDx and Qiagen.  D.I. 169, ¶¶ 67-189.  Defendants' responsive pleadings consist of various defenses to patent infringement, as well as four counterclaims (the first three filed in August 2019).  D.I. 191, Countercl. ¶¶ 10-77.  Three of the counterclaims are for declaratory judgment of non-infringement, invalidity, and license.  *Id.*  The remaining counterclaim concerns Plaintiffs' breach of an Amended Agreement waiving a non-compete provision for Mr. Brahmasandra, HandyLab's former Vice President of Assay Development who later became an officer of NeuMoDx.  *Id.*

On April 15, 2021, Plaintiffs finally answered Defendants' counterclaims, the first three of which had remained unanswered for over a year and a half.  D.I. 209 at 1-10.

Plaintiffs' April 15 pleading also asserted eleven new counts, calling them "counterclaims-in-reply": misappropriation of trade secrets under federal law (Count 1); violation of the Michigan and Delaware state trade secrets acts (Count 2); unfair competition (Count 3); conversion (Count 4); trespass to chattels (Count 5); unjust enrichment (Count 6); breach of contract (Count 7); breach of fiduciary duties (Count 8); fraud in the inducement (Count 9); silent fraud (Count 10); and tortious interference with contract (Count 11).  D.I. 209 at 10-53.[1]  Plaintiffs also added Brahmasandra and Williams as new defendants.  Plaintiffs asserted counts 1-2 against NeuMoDx, Brahmasandra and Williams, counts 3-6 and 11 against NeuMoDx only, and counts 7-10 against Brahmasandra and Williams, or Brahmasandra only.  *Id.*  The Qiagen defendants are not named in any of the eleven trade secret-related claims, and none of the allegations supporting them relate to Qiagen.

---

[1] Plaintiffs' April 15 pleading also included a twelfth "counterclaim-in-reply" that, unlike the other eleven trade secret-related counts, is related to the existing patent case.  D.I. 209, Countercl.-in-Reply ¶¶ 157-61. Qiagen is filing an answer to it concurrently with this motion.

Plaintiffs presently assert 120 patent claims from among 13 patents against over 50 products.  Declaration of Peter Kohlhepp ("Kohlhepp Decl."), Ex. 1; *id.* Ex. 2.  The Court just issued its claim construction order.  Final infringement contentions are due May 31 and final invalidity contentions are due June 14.  D.I. 194 at 2.  Fact discovery is currently scheduled to close June 21.  *Id.*  Expert reports are scheduled for July and dispositive motions for November. *Id.*  Trial is scheduled for April 11, 2022.  D.I. 51.

## II.    SUMMARY OF ARGUMENT

Pursuant to Federal Rule of Civil Procedure 21, Plaintiffs' new trade secret-related claims ("counterclaims-in reply" Nos. 1-11) should be severed and resolved in a separate case.[2] Severance is appropriate because joinder of the trade secret and related state law claims are not consistent with the requirements of Rule 20.  They are based on a new set of factual allegations and legal theories that are different from the issues at the core of the existing patent infringement lawsuit, and they do not implicate the existing Qiagen defendants.  Moreover, the other considerations in a motion to sever—prejudice to parties, fundamental fairness, and judicial efficiency—strongly favor severance.  Inserting a litany of complex trade secret and related state law claims into an already-complicated thirteen-patent case near the end of fact discovery will cause substantial delay (likely a year or more)[3] and result in prejudicial jury confusion.  It will also highly prejudice Qiagen, who is not implicated by any of the new counts.  In addition, venue in Delaware is improper as to two of the three defendants named by the new counts

---

[2] For judicial economy, Defendants suggest that Defendants' Counterclaim No. 3 (D.I. 191, Countercl., ¶¶ 52-64) could be severed along with Counterclaims-In-Reply Nos. 1-11.

[3] Due to a number of issues, including the addition of the Qiagen entities in February 2021, it is likely that a modest extension (e.g., 2-3 months) to the current schedule will be necessary to complete fact discovery for the patent case.  This pales in comparison to the substantial extension that would be necessary should the trade secret and related state claims be added.

(Brahmasandra and Williams), further favoring severance so that the trade secret-related claims can be efficiently adjudicated in one action where venue is proper as to all three defendants.

The severed claims should also be transferred to the EDM pursuant to 28 U.S.C. § 1404(a). All three defendants named in those claims either reside in or are located in the EDM. The allegations at the heart of those claims pertain to conduct of NeuMoDx's former officers and/or employees at NeuMoDx's facilities, which are located in the Eastern District of Michigan. Most of the counts implicate Michigan state law. The EDM has a strong interest in adjudicating this dispute locally. Unlike in Delaware, venue in the EDM is proper for all three defendants. Judicial economy further counsels in favor of transfer—the District of Delaware is three times more congested than the EDM.

## III.   BACKGROUND AND STATEMENT OF FACTS

### A.  The Parties

The thirteen patents in suit are assigned to Plaintiff HandyLab, Inc. ("HandyLab"). HandyLab was founded in 2000 by Mr. Brahmasandra and Mr. Kalyan Handique.  Mr. Williams later joined as CEO.  Plaintiff Becton, Dickinson and Company ("BD") acquired HandyLab on November 19, 2009. Shortly after the acquisition, Mr. Williams left HandyLab.

Defendant NeuMoDx Molecular, Inc. (originally named Molecular System Corporation) was founded in Ann Arbor, Michigan by Mr. Williams, and incorporated as a Delaware corporation in 2012.  From its formation to 2018, NeuMoDx researched, invented, developed, and refined a new design for a fully automated molecular diagnostic system.  Declaration of Kimberlee Kochan, filed herewith ("Kochan Decl."), at ¶¶ 3-4, 8-9.  Unlike the HandyLab system and other competitors, NeuMoDx's new system used a combination of novel system architecture, chemistry, sample preparation techniques and processes, and a novel microfluidic cartridge that performed magnetic bead separation, amplification and detection with different

4

components and different controls.  NeuMoDx made sure all reagents and consumables were on

board in the fully automated system, requiring an operator only to load samples into the

instrument.  To date, NeuMoDx's innovative system has been awarded at least 21 issued patents,

with additional patents pending.  Kochan Decl., ¶ 11.  In 2018, NeuMoDx obtained CE approval

for the systems.  The NeuMoDx systems allow rapid, automated diagnostic testing using the

polymerase chain reaction ("PCR") technique, a highly accurate means to test samples for the

presence of specific viral or bacterial pathogens such as HIV or *Streptococcus*.  In March 2020,

NeuMoDx obtained an emergency use authorization from the United States FDA for its

coronavirus (SARS-coV-2) PCR test assay.  *Id.*, ¶ 12.

Defendant Qiagen GmbH is a German company. D.I. 191 at 2.  Defendant Qiagen NA is

a California corporation with a principal place of business in Maryland.  *Id.* Qiagen is a leading

provider of molecular testing equipment and technology.  Qiagen entered into a stock purchase

agreement with NeuMoDx and in 2018 became a 19.9% stockholder in NeuMoDx with an

option to acquire the remaining NeuMoDx shares. D.I. 191 at 5.  Qiagen acquired the remaining

stock on September 17, 2020.  *Id.*  Following the acquisition of NeuMoDx by Qiagen, Mr.

Williams (NeuMoDx's CEO) and Mr. Brahmasandra (NeuMoDx's President and COO), left

NeuMoDx (Mr. Brahmasandra remained with NeuMoDx for a short time after the acquisition).

### B.  The New Allegations Giving Rise to Plaintiffs' Trade Secret-Related Counts

The eleven new trade secret-related counts arise out of a new set of allegations.

Specifically, when Plaintiff Becton, Dickinson and Company ("BD") acquired Plaintiff

HandyLab in November 2009, Mr. Brahmasandra was HandyLab's Vice President of Product

Development.  Mr. Brahmasandra remained with HandyLab after the acquisition as an employee

of BD until March 2011.  In 2012, after BD agreed to waive the remaining period of the non-

compete provision from Mr. Brahmasandra's employment agreement with BD, Mr.

Brahmasandra joined Molecular Systems Corp. (later called NeuMoDx).

Plaintiffs now allege that information recently produced by NeuMoDx shows that Mr. Brahmasandra retained and/or improperly acquired Plaintiff's trade secret and confidential information after his employment with HandyLab ended. *E.g.,* D.I. 209, Countercl.-in-Reply ¶ 14. Plaintiffs further allege that Mr. Brahmasandra and Mr. Williams misappropriated "Plaintiffs' trade secret and confidential proprietary technical and nontechnical information and materials" and "disseminated" it "to other NeuMoDx employees who were involved in the development of NeuMoDx's competing products and business." *Id.* at ¶ 13. Plaintiffs also allege that Mr. Brahmasandra and Mr. Williams breached contractual obligations in the employment contracts they had with BD after BD acquired HandyLab. *Id.* at ¶ 14. Plaintiffs also allege that Mr. Brahmasandra engaged in fraud during negotiation regarding the non-compete provision of his employment contract with BD. *Id.* at ¶¶ 140, 145. Each new count against NeuMoDx, Mr. Brahmasandra, and/or Mr. Williams is based on this new set of allegations. *Id.* at ¶¶ 80-156.

**C. The Trade Secret-Related Allegations Are Grounded in the EDM, Not Delaware**

The new counts are centered on allegations regarding entities residing in, and activities occurring in, the EDM. NeuMoDx's sole facilities are (and always have been) in Ann Arbor, Michigan. D.I. 209, Answer ¶ 1; Kochan Decl., at ¶ 4. Mr. Brahmasandra and Mr. Williams have both continuously resided in or just outside of Ann Arbor, Michigan since at least 2000. D.I. 209, countercl. ¶¶ 3-4; Decl. of Sundaresh Brahmasandra ("Brahmasandra Decl."), ¶ 2; Declaration of Jeffrey Williams ("Williams Decl."), ¶ 2.[4]

All of NeuMoDx's business was conducted from or controlled out of its Ann Arbor,

---

[4] The Brahmasandra Declaration and Williams Declarations were filed in support of those defendants' Motion to Dismiss.

Michigan facilities.  Kochan Decl., at ¶¶ 4, 7.  All of NeuMoDx's documents are and always have been located at its Ann Arbor, Michigan facilities.  Kochan Decl., at ¶ 5.  Nearly all of NeuMoDx's employees work and always have worked out of its Ann Arbor, Michigan facilities (with the exception of several employees who have worked remotely, though none from Delaware).  Kochan Decl., at ¶ 6.  The research, invention, and development work resulting in the NeuMoDx<sup>TM</sup> 96 and NeuMoDx<sup>TM</sup> 288 molecular systems, including instruments, cartridges, and assays, was conducted at or controlled out of NeuMoDx's Ann Arbor, Michigan facilities.  Kochan Decl., at ¶ 9.  All of NeuMoDx's products, including instruments, cartridges, and assays, are made or assembled in, and shipped from NeuMoDx's Ann Arbor, Michigan facilities.  Kochan Decl., at ¶ 10.  The allegations underlying the eleven new trade secret-related counts concern the design and development of the NeuMoDx products and NeuMoDx's business activities; thus the counts allege activities occurring almost exclusively in the EDM.

## IV.   ARGUMENT

### A.   The Trade Secret and Related State Law Claims Should Be Severed In Order to Ensure the Fair and Efficient Administration of Justice

Federal Rule of Civil Procedure 21 permits courts to "sever any claim against a party." Federal Circuit law governs motions to sever in patent cases.  *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 147 (D. Del. 2019).  Because Rule 21 does not provide a standard for courts to use when assessing motions to sever, the Federal Circuit has endorsed the practice of consulting Rule 20 for guidance.  *Id.* (citing *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012)).  Rule 20 sets forth two requirements for joining defendants in a single action: (i) the claims in a single action must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (ii) there must be a "question of law or fact common to all defendants."  Fed. R. Civ. P. 20(a)(2).

Even if the requirements of Rule 20 are met, joinder may still be refused "in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Westinghouse*, 330 F.R.D. at 147 (quoting *In re EMC Corp.*, 677 F.3d at 1360). In deciding whether separate trials will best serve the interests of the Court and the parties, "the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986).

Here, the requirements of Rule 20 to join parties and counts are not satisfied. Moreover, severance should be granted in order to ensure a fair disposition of the disputes and avoid substantial delay, jury confusion and prejudice to Defendants.

### 1.    The Rule 20 Factors Favor Severing

In determining whether the trade secret-related claims arise out of the same transaction or occurrence as the patent claims, the Court must evaluate "whether there is a 'logical relationship between the separate causes of action' such that 'there is substantial evidentiary overlap in the facts giving rise to the' different sets of claims or the claims 'share an aggregate of operative facts.'" *Westinghouse*, 330 F.R.D. at 148 (quoting *In re EMC Corp.*, 677 F.3d at 1358-59). Severance into separate proceedings is appropriate where prevailing on one set of claims will require proof of different elements and different evidence than a second set of claims. *Westinghouse*, 330 F.R.D. at 148-49 (severing defendant's six antitrust-related counterclaims from plaintiff's patent infringement claims); *see also Eisai Inc. v. Sanofi-Aventis U.S., LLC,* No. 08-4168 (MLC), 2012 U.S. Dist. LEXIS 1024, at *34 (D.N.J. Jan. 4, 2012) (denying leave to amend an antitrust lawsuit to add claims for trade secret misappropriation, unfair competition, tortious interference of contract, breach of contract, and breach of duties of good faith and loyalty because the claims were "not offshoots of the same basic controversy between the parties"). That is the case here. The elements Plaintiffs will have to prove for the trade secret-

related claims and the evidence they need for those elements will be largely different from the elements and evidence at the core of the current patent infringement claims and defenses.

For example, to prove trade secret misappropriation under Michigan state law (Count 2), Plaintiffs must prove "(1) [the plaintiff] has protectable trade secrets and (2) the defendant improperly acquired, disclosed, or used those trade secrets." *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 691 (E.D. Mich. 2012). To prove a protectible trade secret, Plaintiffs must show the existence of information that (i) "derives independent economic value . . . from not being generally known," (ii) is "not being readily ascertainable by proper means by [] other persons who can obtain economic value from its disclosure or use," and (iii) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Mich. Comp. Laws § 445.1902(d). The required elements under the federal Defend Trade Secrets Act are similar. *E.g.,* 18 U.S.C. § 1839(3) (defining "trade secret"). In contrast, to prove patent infringement, Plaintiffs must show that each of the asserted claims of the thirteen asserted patents, properly construed, covers each of the 50+ accused products of Defendant NeuMoDx. Some of the elements Defendants may show to establish a defense to the patent infringement allegations include that the asserted claims are invalid in view of the prior art or that the asserted claims are licensed. The facts underlying these elements are fundamentally different than the facts that Plaintiffs must establish to prove trade secret misappropriation. Resolving whether Plaintiffs have proven that they have a protectable trade secret, and if so whether Defendant NeuMoDx misappropriated that trade secret, does not require consideration of the legal elements of patent infringement or defenses to patent infringement such as invalidity or the existence of a license.

As another example, to prove unjust enrichment under Michigan law (Count 6), Plaintiffs must show "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting

to plaintiff because of the retention of the benefit by the defendant." *Ajuba Int'l,* 871 F. Supp. 2d at 692.  To prove tortious interference with contract under Michigan law (Count 11), Plaintiffs must prove "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Id.* at 690.  Again, the elements and the facts underlying them are fundamentally different than the core issues of a patent infringement case.

Plaintiffs will undoubtedly argue that some issues in the existing patent case, such as Plaintiffs' willful infringement allegation or the equitable estoppel defense pleaded by Defendants, implicate some facts alleged in support of the new trade secret-related claims.  But any factual overlap is likely to be small relative to the factual issues that are distinct.  And even some factual overlap does not show a "substantial evidentiary overlap in the facts giving rise" to the patent infringement-related claims and defenses and the trade secret-related claims.  *E.g.*, *In re EMC Corp.*, 677 F.3d at 1357-58 ("[T]he existence of a single common question of law or fact alone is insufficient to satisfy the transaction-or-occurrence requirement"); *Westinghouse*, 330 F.R.D. at 149 ("Although there would likely be some common questions of law or fact, the significant difference in legal and factual issues still suggests that severance is appropriate"); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1115 (D. Del. 1984) (finding "very little" overlap between patent infringement and misappropriation of trade secrets claims and ordering separate trials).  Here the new trade secret-related counts and the existing patent infringement claims and defenses are, on the whole, disparate legal claims with distinct underlying theories and facts, and they should be adjudicated in separate proceedings.  Similarly, the mere fact that there is some overlap in witnesses in this case is insufficient to justify joining claims together.  *E.g.*, *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 U.S. Dist. LEXIS 141057, at *6, *9 (W.D. Pa. Oct. 16, 2015)

(severing claims despite Plaintiffs' stated intent to call at least five common witnesses).

A second reason why Rule 20 strongly favors severance is because Plaintiffs' new trade secret-related counts do not allege a question of law or fact that applies to Qiagen.  *See* Fed. R. Civ. P. 20(a)(2)(B); *e.g.*, *British Telcoms. PLC v. IAC/Interactivecorp*, No. 18-366-WCB, 2019 U.S. Dist. LEXIS 67999, at *5 (D. Del. Apr. 22, 2019) (granting motion to sever because "[the plaintiff] points to nothing that directly connects the claims against Vimeo with the claims against the Match Group defendants").  Qiagen is not named for any of the eleven trade-secret related counts.  All of Plaintiffs' allegations supporting the trade secret-related counts relate to occurrences *before* Qiagen acquired NeuMoDx in September 2020.  *E.g.*, D.I. 209, Countercl.-in-Reply ¶¶ 69-72 (citing 2012 and 2013 emails), ¶ 73 (citing Ex. 19, a 2013 email).  As discussed below, forcing Qiagen to litigate its patent dispute together with trade secret allegations it is not accused of participating in would be extremely prejudicial, would cause substantial delay to the resolution of the patent case, and would likely confuse the jury and infect the jury's evaluation of the claims that are alleged against Qiagen.

### 2.	The Other Factors—Prejudice, Avoiding Delay, Ensuring Judicial Economy, and Safeguarding Fairness—Also Favor Severing

Even if the requirements under Rule 20 are met, a court may sever claims 'in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.'"  *Westinghouse*, 330 F.R.D. at 147 (quoting *In re EMC Corp.*, 677 F.3d at 1360); *see also FTC v. Endo Pharm., Inc.*, No. 16-1440, 2016 U.S. Dist. LEXIS 145329, at *14 (E.D. Pa. Oct. 20, 2016) (same); *Advanced Neuromodulation Sys. v. Advanced Bionics Corp.*, No. 4:04cv131, 2005 U.S. Dist. LEXIS 47695, at *3-4 (E.D. Tex. May 18, 2005) (granting motion to sever because adding two new patents would cause delay, prejudice, and unnecessarily confuse the jury); 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL § 21.05

(2021).  A court may also sever claims in order to transfer to a more appropriate venue.  4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL § 21.06 (2021) ("[T]he fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance . . . . [T]he court may sever claims and transfer to cure defects in venue.").

Maintaining the new trade secret-related counts in this action would substantially delay resolution of the patent case, prejudicing Defendants Qiagen and NeuMoDx.[5]  *See Westinghouse*, 330 F.R.D. at 150 (D. Del. 2019) ("[D]isentangling Wabtec's earlier-filed patent infringement allegations from Siemens' Amended Counterclaims will at least help Wabtec's patent case get to resolution on a much speedier timetable"); *Eisai*, 2012 U.S. Dist. LEXIS 1024, at *32-34 (denying leave to add new claims "in light of the progress of this matter to date and the substantial delay in reaching an ultimate resolution that would likely result").  This patent litigation was initiated nearly two years ago, and the deadline to add parties and amend pleadings has passed (D.I. 51 at 2).  NeuMoDx, as well as the new defendants, Brahmasandra and Williams (who have not yet participated in this case as parties), are entitled to conduct the full discovery necessary to defend themselves from the new counts.  As explained above, the trade secret-related claims concern legal elements and factual disputes that are new to the case, which will require new document requests, new interrogatories, and additional depositions.  It is also likely to implicate different damages theories, additional experts, and different dispositive motions.  All this would necessitate fundamentally revamping the case schedule.

The trade secret-related claims would also vastly increase the complexity of the case, creating a sprawling set of disjointed disputes likely to confuse the jury.  This case was already strikingly complex, involving infringement and validity of *thirteen different patents*, over 50

---

[5] *See supra* at n. 3.

accused products and associated technical issues, and related patent defenses, licenses, and counterclaims.  That alone is daunting for even the best-prepared jury pool.  Plaintiffs' eleven new trade secret-related counts would take the case to a whole new level.  On top of the thirteen-patent lawsuit, Plaintiffs add theories of trade secret misappropriation under both state and federal law, unfair competition, breach of contract, conversion, tortious interference with a contract, and fraud.  D.I. 209 at 10-53.  There is no conceivable way such disparate, complex claims and defenses could be presented to a jury in a way that is not unduly prejudicial to Defendants. Courts have recognized that severance or bifurcation is necessary in such circumstances.  *E.g.*, *Eisai*, 2012 U.S. Dist. LEXIS 1024, at *38 (concluding that simultaneous presentation of plaintiffs antitrust claims with defendants' unfair competition claim "could well confuse the jury"); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80-JJF-MPT, 2010 U.S. Dist. LEXIS 23057, at *6-8 (D. Del. Mar. 11, 2010) (finding that trying antitrust claims with patent infringement claims would "inevitably lead to juror confusion" and that allegations of monopolization could "bias the jury" as it evaluates the patent claims).  The same is true here. Presenting complicated trade secret and related state law claims to a jury at the same time as patent infringement claims and defenses would inevitably lead to prejudicial confusion.  In addition, presenting allegations of theft of trade secrets, unfair competition, tortious interference with contract, fraud, and the like to the jury could bias the jury as it evaluates the patent infringement claims and defenses.

This jury confusion will prejudice all Defendants, but it will be especially prejudicial to Qiagen, who is not a party to any of the trade secret-related claims.  Indeed, the allegations of trade secret theft and misappropriation of confidential information concern time periods long before Qiagen acquired NeuMoDx, underscoring that these claims are completely unrelated to

Qiagen.  Trying these unrelated trade secret misappropriation and related state law claims in the same patent infringement suit Qiagen is defending will undoubtedly confuse the jury, who will have difficulty separating the actions of various defendants and which claims those actions relate.  It is also highly likely that allegations of the non-Qiagen defendants' business conduct would bias the jury against Qiagen when evaluating the patent claims.  *See Karlo*, 2015 U.S. Dist. LEXIS 141057, at *7-8 (severing in part due to the prospect that "[t]he jury may simply resolve the confusion by considering all the evidence to pertain to all the plaintiffs' claims, even when it is relevant to only one plaintiff's case.").

In contrast, severance will not prejudice Plaintiffs.  Plaintiffs just filed these new claims, so severance will not cause any delay in resolution of those claims.  And whether in this case or another, both parties will be starting from scratch on Plaintiffs' trade secret and related state law claims.  The additional work and expense of new discovery, analysis and argument regarding new legal theories, and trial preparation will be incurred regardless of whether the trade secret and state law claims are severed.  Thus, balancing the lack of prejudice to Plaintiffs with the serious prejudice to Defendants that will occur if severance is not granted, severance is the only way to ensure fundamental fairness.

Finally, two of the three defendants to the trade secret-related counts, Brahmasandra and Williams, maintain in a concurrent motion to dismiss that venue in Delaware is improper.  "The fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Dearden v. FCA U.S. LLC*, No. 5:16-cv-00713, 2017 U.S. Dist. LEXIS 48751, at *17 (E.D. Pa. Mar. 31, 2017)*, quoting* 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL § 21.06.  Here, the fact that venue is improper as to two of the three defendants to the trade secret claims (counts 1 and 2), as well as to the additional related claims brought

only against those two defendants (counts 7-10) counsels strongly in favor of severing all eleven trade secret-related claims from this case.  Severance of those eleven counts, all arising from the same set of new factual allegations, into a separate proceeding would allow the Court to efficiently manage the case.  In the event the Court transfers, rather than dismisses, the claims against individual defendants Brahmasandra and Williams, it would be inefficient and wasteful to proceed with the same claims, based on the same set of allegations, against NeuMoDx, Brahmasandra, and Williams in two parallel actions.  The far more efficient course would be to also sever the trade secret-related counts against NeuMoDx (Counts 1-6, 11) and address all eleven trade secret-related counts in a single action separate from this case.

**B.  The Trade Secret and Related State Law Claims Should Be Transferred to the EDM Pursuant to 28 U.S.C. § 1404(a)**

"[A] district court may transfer any civil action to any other district or division where it might have been brought" where such transfer is "[f]or the convenience of the parties and witnesses," and "in the interests of justice." 28 U.S.C. § 1404(a).  In addition to the factors recited in the statute, courts deciding whether to transfer a case are free to consider other relevant factors. *AstraZeneca AB v. Mylan Pharm. Inc.*, No. 18-1562-CFC, 2019 U.S. Dist. LEXIS 180264, at *17-19 (D. Del. Oct. 18, 2019).  While there is "no definitive formula or list of the factors to consider," the Third Circuit has identified twelve interests protected by Section 1404(a), splitting them into "private interests" and "public interests."  *Id.* (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).  On balance, both the private and public interest factors strongly favor transfer of the trade secret-related counts alleged to the EDM.

**1.    The Private Interest Factors Counsel in Favor of Transfer**

Factor 1—the plaintiffs' choice of forum—usually weighs against transfer and "should not be lightly disturbed." *Jumara,* 55 F.3d at 879.  However, that changes when, as is the case

here, proper venue cannot be assumed.  *E.g.*, *ANI Pharm., Inc. v. Method Pharm., LLC*, No. 17-1097, 2019 U.S. Dist. LEXIS 5855 at *19 (D. Del. Jan. 11, 2019) (finding factor 1 to weigh in favor of transfer because the court lacked jurisdiction over at least one defendant).  Venue is not proper at least for Counts 1-2 and 7-10 against Brahmasandra and Williams according to the motion to dismiss they filed.  Thus, it would be inefficient for the parties and the judicial system to adjudicate Plaintiffs' trade secret-related counts in parallel cases in different venues. *See id.*

Deference to a plaintiff's choice of forum is further eroded when the plaintiff is foreign. *E.g.*, *Blackbird Tech LLC v. TuffStuff Fitness Int'l, Inc.*, No. 16-733-GMS, 2017 U.S. Dist. LEXIS 63752, at *16-17 (D. Del. Apr. 27, 2017); *see also In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) ("When a plaintiff brings its charges in a venue that is not its home forum, however, that choice of forum is entitled to less deference.").  Two of the three plaintiffs are foreign—BD is organized in and based out of New Jersey and GenOhm is organized in and based out of Canada.  D.I. 209, Answer ¶¶ 4, 6.  HandyLab is a wholly owned subsidiary of BD, and while it is incorporated in Delaware, its operations are directed and controlled out of New Jersey.  *Id.* ¶ 5.

Private interest factors 2-6 each counsel in favor of transfer.  Factor 2 (the defendant's forum preference), favors a transfer because Defendants prefer the EDM where they reside. Kochan Decl., at ¶ 4.  Factor 3 (whether the claims arose elsewhere) likewise strongly favors transfer. The new trade secret-related claims relate to allegations arising almost entirely in the EDM.  The allegations concern the activities of NeuMoDx and its former officers, Mr. Brahmasandra and Mr. Williams, while at NeuMoDx.  *E.g.,* D.I. 209, Countercl.-in-Reply ¶¶ 12-79.  NeuMoDx always has been located in the EDM.  Kochan Decl., at ¶¶ 4, 7-10.

Factor 4 (the convenience of the parties as indicated by their relative physical and

16

financial condition) also supports transfer.  When evaluating factor 4, this court has asked which forum would be more convenient for the parties in view of: (1) the parties' physical location; (2) the logistical and operational costs to the parties' employees in traveling to the forum for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.  *ChriMar Sys. v. Cisco Sys.*, No. 11-1050-GMS, 2013 U.S. Dist. LEXIS 30205, at *16-17 (D. Del. Mar. 6, 2013).  Here, NeuMoDx's facilities are all in the EDM. Kochan Decl., at ¶ 4.  Requiring a Michigan-based party to litigate in Delaware will subject it to substantial additional expenses.  *See ChriMar Sys.*, 2013 U.S. Dist. LEXIS 30205 at *16-18.  In contrast, Plaintiffs' businesses are based in New Jersey and Canada (D.I. 209, Answer ¶¶ 4-6), and thus will have to travel regardless of whether these claims are litigated in Delaware or Michigan.  *See id.*  By choosing to file their claims in Delaware, where they are not physically located, Plaintiffs have already accepted the costs of travel and the inconvenience of a non-local venue.  *See MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226 (D. Del. 2017).  Factor 4 thus counsels in favor of transfer.

Factor 5 (convenience of witnesses) also strongly favors transfer.  NeuMoDx's employees, potential witnesses for the trade secret-related claims, are located at its Ann Arbor, Michigan facility; none reside in Delaware.[6]  Kochan Decl., at ¶ 6.  In fact, Plaintiffs have already begun broad, vigorous discovery in Michigan.  Immediately after filing the trade secret-related claims, Plaintiffs personally subpoenaed *twelve* current or former NeuMoDx employees, *all* in Michigan: Patrick Duffy, Elizabeth Craig, Betty Wu, Michelle Mastronardi, Kimberlee Kochan, Jamie Olson, Pete Vachon, Jill Lippens, Jennifer Ruth, Sandra Pelchat, Carmin Olson,

---

[6] As noted above, a handful of employees have worked remotely, though none in Delaware. Kochan Decl., at ¶ 6.

and David Adams.  *See* D.I. 212.  Moreover, some potential witnesses, such as former NeuMoDx employees living in Michigan, may not be compelled to appear at trial in Delaware.  Mr. Williams and Mr. Brahmasandra, who Plaintiffs allege acted as NeuMoDx's "agents" in their capacities as officers of NeuMoDx, are located in the EDM.  Brahmasandra Decl., ¶ 2; Williams Decl., ¶ 2.  It is indisputably more convenient for these witnesses to appear in the EDM where they reside.  As stated above, Plaintiffs are based in New Jersey and Canada, so witnesses for Plaintiffs who have relevant knowledge (*e.g.*, whether the alleged "trade secret" information was actually maintained as a trade secret) are not located in Delaware or Michigan and would have to travel regardless.

Although technology has somewhat reduced the importance of factor 6 (the location of books and records), the Federal Circuit has cautioned "it is improper to ignore them entirely."  *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011); *see also ChriMar Sys.*, 2013 U.S. Dist. LEXIS 30205, at *20-21.  NeuMoDx's books and records are located in the EDM.  Kochan Decl., at ¶ 5.  Indeed, as noted above Plaintiffs have already subpoenaed twelve current or former NeuMoDx employees, all in Michigan, for documents.  Further, NeuMoDx's principal (and only) place of business is in the EDM.  Kochan Decl., at ¶ 4.  Thus "it is reasonable to presume that much of the evidence will be found there."  *MEC Res., LLC*, 269 F. Supp. 3d at 226-27.  Thus, factors 5 and 6 also counsel in favor of transfer.

### 2.     The Public Interest Factors Counsel in Favor of Transfer

Factor 8 (practical trial considerations) favors transfer because the witnesses Mr. Brahmasandra and Mr. Williams are located in the EDM, NeuMoDx's only facilities are in the EDM, and its employees are located in the EDM.  Brahmasandra Decl., ¶ 2; Williams Decl., ¶ 2; Kochan Decl., at ¶¶ 4, 6.  Again, Plaintiffs' businesses and their witnesses are not located in either Delaware or Michigan, so they will have to travel regardless.  Thus, trial will be less

expensive in the EDM.  *See MEC Res., LLC*, 269 F. Supp. 3d at 227.  Furthermore, transferring the trade secret and state law claims to Michigan will avoid duplicative litigation and result in judicial economy because, as explained above, the trade secret and state law claims are largely discrete from the patent infringement claims that will continue before this Court.

Factor 9 (administrative difficulty due to court congestion) strongly favors transfer.  The most recent data show 903 weighted filings per judge in this District in the 12-month period ending September 30, 2020, compared to 278 weighted filings per judge in the EDM during the same period.  Kohlhepp Decl., Ex. 3 at 14, 40.  Weighted filings "account for the different amounts of time district judges require to resolve various types of civil and criminal actions." Kohlhepp Decl., Ex. 4 ("Explanation of Selected Terms") at 1.  Cases requiring more judicial resources because of their complexity and scope are weighted higher than an average civil case. The weighted filings data indicate that Delaware courts are more than three times more congested than the EDM, which strongly counsels in favor of transfer.

Factor 10 (local interest) also strongly favors of transfer.  Mr. Brahmasandra and Mr. Williams reside in the EDM, HandyLab was founded in the EDM, and NeuMoDx is (and always has been) headquartered in the EDM.  Brahmasandra Decl., ¶¶ 2, 4; Williams Decl., ¶¶ 2, 4.; Kochan Decl., at ¶ 4.  The only ties to Delaware is the fact that two parties are incorporated in Delaware.  This controversy is local to the EDM.

Factor 12 (familiarity of the trial judges with state law) favors transfer.  Michigan state law applies to many of the new trade secret-related claims.  Count 2 alleges misappropriation under and violation of the Michigan Uniform Trade Secrets Act.  D.I. 209 at 41. The MUTSA also contains preemption provisions relevant to the disposition of the severed claims.  *See* Mich. Comp. Laws § 445.1908.  The breach of contract counts against Mr. Williams and Mr.

Brahmasandra (Count 7) involve Michigan law, as the contracts specify that Michigan law applies.  D.I. 209-1, Ex. 4 at 12 and Ex. 5 at 12.  The remaining tort claims against NeuMoDx (and those against Brahmasandra/Williams) will also likely be subject to Michigan law.  To determine the governing law for tort claims, Delaware applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 145(1).  *E.g.*, *Bavarian Nordic A/S v. Acambis, Inc.*, 486 F. Supp. 2d 354, 366 (D. Del. 2007) (unfair competition).

Factors 7 and 11 are neutral.  Factor 7 concerns enforceability of the judgment, which should not differ significantly between the two fora.  As for Factor 11, Delaware public policy encourages Delaware corporations to resolve their disputes in Delaware courts.  *AstraZeneca*, 2019 U.S. Dist. LEXIS 180264, at *24-25.  Again, of all the parties, only NeuMoDx and HandyLab are Delaware entities.  Any policy interest Delaware has in adjudicating this dispute is counterbalanced by the interest the Michigan court has in adjudicating this Michigan controversy that implicates Michigan law.  *See Auto. Techs. Int'l, Inc. v. OnStar, LLC*, No. 11-2490 (SRC), 2011 U.S. Dist. LEXIS 144824, at *13 (D.N.J. Dec. 15, 2011) ("Also weighing in favor of transfer to Michigan is the fact that judges and juries in the community where these events took place are the preferred arbiters.").  The parties' Delaware incorporation, at most, weighs against transfer "only slightly."  *AstraZeneca*, 2019 U.S. Dist. LEXIS 180264, at *25.

Nearly every *Jumara* factor supports transfer; none weigh against and only two are neutral.  On balance, the factors strongly favor transferring the severed claims to the EDM.

## V.   CONCLUSION

For the reasons explained above, Defendants respectfully request that Counts 1-11 of Plaintiffs' "counterclaims-in-reply" be severed from this action.  Defendant NeuMoDx further requests that the severed counts be transferred to the EDM, where all three defendants are located and where the misappropriation is alleged to have occurred.

Dated:  May 13, 2021

Of Counsel:

James K. Cleland
Michael Spink
Keith Weiss
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
Tel. 734-436-7356
jcleland@dickinson-wright.com

Alan G. Carlson
Gary J. Speier
Samuel T. Lockner
Jonathan D. Carpenter
Alexandra J. Olson
Peter M. Kohlhepp
CARLSON, CASPERS, VANDENBURGH &
LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
Facsimile: (612) 436-9605

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants*