# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NEUMODX MOLECULAR, INC., QIAGEN GMBH, and QIAGEN NORTH AMERICAN HOLDINGS, INC., <br><br> Defendant. | C.A. No. 19-cv-1126-LPS |

### DEFENDANTS' LETTER REGARDING MODIFICATION AND CLARIFICATION OF THE SCHEDULING ORDER

Dated: June 2, 2021

Of Counsel:

James K. Cleland
Michael Spink
Keith Weiss
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
Tel. 734-436-7356
jcleland@dickinson-wright.com

Alan G. Carlson
Gary J. Speier
Samuel T. Lockner
Jonathan D. Carpenter
Alexandra J. Olson
Peter M. Kohlhepp
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant*

Dear Chief Judge Stark:

Defendants NeuMoDx Molecular, Inc. ("NeuMoDx") and Qiagen GmbH and Qiagen North American Holdings, Inc. (jointly "Qiagen") write pursuant to D.I. 290 for two reasons: (1) to request the Court to extend the current case schedule for the patent-related claims; and (2) confirm that the plain language of the Court's scheduling order relating to the parties' contentions controls. Since Plaintiffs filed this action, they have added new patents, added new claims, and even added new parties, which have significantly expanded this lawsuit's scope and complexity. At the same time, Plaintiffs have shown a voracious appetite for discovery, making the Court's current deadlines unworkable despite the parties' diligence. Even assuming Plaintiffs' 11 new trade secret-related "counterclaims-in-reply" are dismissed or severed, Defendants submit that good cause exists for a 4-month extension to fact discovery period and downstream deadlines as set forth in Exhibit A. Absent this extension, despite their diligence, Defendants will be irreparably prejudiced by having insufficient time to pursue and complete fact discovery.[1]

1. **Defendants' Request for Extension**

Plaintiffs originally asserted 6 patents against NeuMoDx and identified 7 accused products. D.I. 1, ¶¶18-23, 26. Roughly a year later, Plaintiffs expanded the lawsuit to 13 patents and more than 60 accused products, with over 300 claims asserted. D.I. 169, ¶¶28-40, 45. The 13 patents relate to complicated molecular diagnostic systems and methods, comprise 6 separate patent families, at least 3 technology areas, and name 13 inventors most of whom are third parties. D.I. 169, ¶¶28-40. Around early January 2021, Plaintiffs moved to add four new defendants to this lawsuit, with two being foreign entities. D.I. 126. To avoid Rule 12 motions, an agreement was reached to allow Plaintiffs to add two Qiagen entities, while dismissing the other two. D.I. 159. Plaintiffs filed an amended complaint on Feb. 25, 2021, which Defendants answered and counterclaimed on March 18, 2021. D.I. 169, 191. Plaintiffs answered Defendants' counterclaims on April 15, 2021, by asserting 12 new "counterclaims-in-reply," involving claims dating back at least 10 years, and naming 2 new individuals as defendants. D.I. 209.

   A. **Patent Case Discovery**

Plaintiffs' patent-related discovery demands were expansive even before the frenetic 5 months that commenced with the addition of Qiagen. Plaintiffs had served 205 requests for production of documents (D.I. 101), resulting in NeuMoDx's production of more than 560,000 documents and totaling over 2.7 million pages. Plaintiffs are not finished; they are still demanding NeuMoDx run additional ESI search terms (unrelated to its new claims and defendants). Plaintiffs' new ESI searches may result in NeuMoDx producing an additional 20K-50K+ documents. Ex. B (6/1/21 Cleland email and attachment, 9:42am). In the same time period, Plaintiffs have produced more than 210,000 documents, totaling over 1.2 million pages, and may need to produce an additional 20K-50K+ documents in response to Defendants' requested supplemental ESI searches. Ex. C (5/24/21 Yin email, 12:35pm). Thus, neither Plaintiffs nor NeuMoDx has completed their document discovery—and fact discovery closes on June 21, 2021.

Plaintiffs' addition of Qiagen to this lawsuit just three months ago—and with less than four months of discovery left—has made any chance of completing discovery unworkable. Indeed, at the time, NeuMoDx emphasized its concern to Plaintiffs about sufficient time and potential

---

[1] This extension request is for the patent-related claims only. As explained in Defendants' pending motion to sever and transfer (D.I. 242), if Plaintiffs' 11 new trade secret-related claims remain in this lawsuit, it would be equivalent to starting a whole new case. An entirely new schedule would be needed to address the new issues raised by the 11 new claims.

prejudice. *See* D.I. 133 at 3-4. But the parties reached agreement on a revised schedule **based on** Plaintiffs' representations that they would seek only "narrow discovery" from Qiagen. Ex. D (2/18/21 Khan email, 8:40am (Plaintiffs identifying four narrow categories of documents)). Even with that representation from Plaintiffs, Defendants remained concerned about meeting the discovery deadline, and **repeatedly** warned Plaintiffs that, if Plaintiffs sought broader discovery, a longer case schedule would be necessary. *See, e.g.*, Ex. D (2/25/21 Lockner ("STL") email, 10:04am; 3/2/21 STL email, 6:12pm ("should BD expand the scope of its discovery demands or otherwise delay, the need for additional schedule changes will significantly increase…."); 3/19/21 STL email, 10:14am).

  Qiagen acted with diligence from the outset, proposing its own search terms, and informing Plaintiffs they should serve targeted interrogatories. Ex. D (3/2/21 STL email, 6:12pm). Qiagen repeatedly asked Plaintiffs to collaborate to reach agreement on the scope of Qiagen discovery. Ex. D (3/2/21 STL email, 6:12pm; 3/11/21 STL email, 5:26pm). Qiagen also promptly served its initial disclosures and ESI disclosures within 9 business days of being added, which identified a limited number of individuals, commensurate with Plaintiffs' alleged narrow discovery. (D.I. 185.) Defendants reiterated that the biggest hurdle to making the current trial date hold was to reach agreement on the scope of Qiagen discovery and that "a rate limiting step is that Plaintiffs must agree to search terms to avoid iterative, time consuming, and inefficient document collection." Ex. D (3/11/21 STL email, 5:26pm; 3/15/21 STL email, 3:19pm).

  In parallel, the parties negotiated a stipulated extension to the case. D.I. 194. Defendants agreed to try to keep the Court's deadlines **based on** Plaintiffs' representations that they would conduct narrow discovery but expressed concerns. D.I. 194, fn.1. And immediately after the stipulation was filed, Plaintiffs abandoned their "narrow" discovery and demanded that Qiagen provide a full list of 10 ESI custodians for discovery (i.e., Plaintiffs sought standard DE ESI discovery). Ex. D (3/19/21 Yin email, 11:45am). Plaintiffs also refused to collaborate on defining a narrow scope of Qiagen discovery (Ex. D, 3/22/21 STL email, 5:00pm), and insisted on broad document collection. Ex. D (3/22/21 Yin email, 5:53pm). Knowing motion practice would cause delay, Defendants tried to get the work done. Ex. D (3/23/21 STL email, 5:33pm). Defendants did so with diligence. *See* Ex. D (4/15/21 STL email, 5:40 pm).

  Despite its concerns, Qiagen initiated a broad document collection effort that has been complicated and slowed by the scope demanded by Plaintiffs and the fact that Qiagen (and its documents) are located in Germany. Ex. D (5/4/21 JDC email, 5pm; 4/30/21 JDC email, 3:31pm; 4/27/21 STL email, 5:04 pm). When Plaintiffs' search terms were finally provided, they confirmed Plaintiffs' appetite for discovery as they returned more than 750,000 documents when run on just a portion of Qiagen's ESI collection. Ex. G (5/17/21 JDC email, 3:53pm.) Plaintiffs certainly did not adhere to their pledge of "narrow discovery" when they served much more expansive written discovery. (*See also*, compare Ex. D (2/18/21 Khan email, 8:40am) with Ex. E, Rog. No. 26, and Ex. F, RFP No. 297 (requesting all emails from all custodians in Defendants' disclosures "relating to BD…" and broad list of additional topics)). And just 30 days ago, with roughly 7 weeks of discovery to go, Plaintiffs served another roughly 100 RFPs on NeuMoDx and 37 on Qiagen. D.I. 222.

### B. Additional Concurrent Discovery Work

  Most of the work described above has occurred over the past four months. During that time, the parties engaged in other time consuming discovery disputes. Concurrent with their addition of the 11 new trade secret-related "counterclaims-in reply" in mid-April, Plaintiffs demanded that Defendants immediately undertake an extensive investigation or face motion

practice. Ex. H. Defendants undertook this unanticipated investigation, which involved numerous interviews and basically redoing much of the document review and investigatory work Defendants had already done over the prior 3-6 months. Ex. I (4/27/21 STL email, 4:45pm).

Plaintiffs also subpoenaed 22 third parties. Defendants have facilitated objections and responses on behalf of many of them. Defendants likewise subpoenaed 10 individuals (9 3rd party inventors) and only recently (on May 28) received documents from a few of the 10. The parties have engaged in countless meet and confers where each side has debated the thoroughness of the others' productions and responses to written discovery.

The past 3 months also included claim construction and supplemental claim construction briefing, motion practice and supplemental productions relating to Defendants' common interest privilege assertion, supplemental contentions, and various other discovery disputes. In May, Defendants have been busy with motion practice in light of Plaintiffs' new assertion of 11 counterclaims in reply against NeuMoDx and two new defendants. D.I. 237, 239, and 241.

### C. Discovery that Remains to be Completed

Despite Defendants' diligence, the scheduling deadlines cannot be met. Plaintiffs admit this. D.I. 292. A massive amount of discovery remains, and most will inure to Defendants' benefit. Both NeuMoDx and Plaintiffs have outstanding disputes regarding additional ESI search terms that will likely result in the review and production of 20K-50K documents by each. Qiagen must complete its broad collection, review and produce 100K+ documents. The majority of the third parties who received subpoenas just produced or still need to produce documents. D.I. 292. And Plaintiffs just served another roughly 100 RFPs, which may require even more production. The parties have collectively noticed over 30 individual depositions, and likely will notice 10 or more additional depositions. *No party has taken any depositions yet*. The current discovery deadline of June 21 (19 days away) is impractical given how this case has iteratively morphed from a 6-patent, 7 accused products, and 1 defendant lawsuit to a massive 13-patent, 60 accused products, 3 defendant lawsuit with claims dating back to 2008 and implicating foreign discovery.

While the ever-expanding scope of this case has been driven by Plaintiffs, they will likely argue Defendants' have "engaged in self-help" or "stopped participating in discovery." Neither is true. The record shows that Defendants have engaged Plaintiffs on all issues throughout and undertaken diligent efforts to meet the case deadlines—even when Plaintiffs abandoned their "narrow discovery" representation. A significant disruptor to this case was the addition of Qiagen, which Plaintiffs inexplicably delayed. Qiagen purchased NeuMoDx on September 17, 2020, and Plaintiffs' infringement claims against Qiagen go back at least that far. Any argument by Plaintiffs that Qiagen should have been prepared to be dragged into this litigation is unrealistic and deflects from their unexplained delay and inaction.

### 2. Meaning of "Narrowing" for Prior Art and Invalidity Combinations

The scheduling order allows Defendants to modify their prior art and invalidity combinations prior to the deadline for Final Invalidity Contentions. Plaintiffs now attempt to impose a good cause standard on Defendants to alter their prior art or combinations based on the requirement to meet and confer on "narrowing of the asserted claims and prior art references and/or combinations." D.I. 51, ¶7(f); D.I. 108. But that is inconsistent with the scheduling order. The scheduling order allows Defendants to supplement their invalidity references after Plaintiffs provide their infringement contentions, and before Defendants provide final invalidity contentions. D.I. 51 at ¶¶7(g), 16; D.I. 273. The scheduling order thus contemplates the possible addition of new prior art, and thus combinations, and should be reaffirmed over Plaintiffs' attempt to manufacture a good cause limitation at this stage of the litigation.

3

                                                                                           Respectfully submitted,

                                                                                           /s/ Michael J. Farnan

cc: Counsel of Record (Via E-File)               Michael J. Farnan