IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY, ) <br> GENEOHM SCIENCES CANADA, INC. ) <br> and HANDYLAB, INC., ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> NEUMODX MOLECULAR, INC., ) <br> QIAGEN GMBH, QIAGEN NORTH ) <br> AMERICAN HOLDINGS, INC., ) <br> SUNDARESH BRAHMASANDRA and ) <br> JEFFREY WILLIAMS, ) <br>  ) <br> Defendants. ) | C.A. No. 19-1126 (LPS) <br><br> **REDACTED -** <br> **PUBLIC VERSION** |

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS NEUMODX MOLECULAR, INC., QIAGEN GMBH, AND QIAGEN NORTH AMERICAN HOLDINGS, INC.'S LETTER BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE, DISMISS, AND/OR DISALLOW PLAINTIFFS' 'COUNTERCLAIMS-IN-REPLY' NUMBERS 1-11**

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
David P. Yin
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Omar A. Khan
Barish Ozdamar
Laura Macro
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

Original Filing Date: May 27, 2021
Redacted Filing Date: June 8, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
amoshos@morrisnichols.com

*Attorneys for Plaintiffs*

Dear Chief Judge Stark:

Plaintiffs respectfully request that the Court deny NeuMoDx's and Qiagen's Motion to Strike Plaintiffs' counterclaims-in-reply. Plaintiffs asserted these claims at their first opportunity, after Defendants produced evidence revealing widespread and extensive misappropriation of Plaintiffs' trade secret and confidential proprietary information by NeuMoDx and its employees. D.I. 209, ¶¶ 60-91. Defendants do not argue lack of diligence, and even acknowledge that "Plaintiffs are entitled to seek to litigate their trade secret-related claims." D.I. 240, at 1. Rather, Defendants simply prefer that those claims be litigated in Michigan, even though the parties already are litigating in this Court many of the same facts and issues (including the same accused products and technologies), and will be doing so using much of the same evidence and witnesses. Additionally, this Court already is well familiar with the parties and technology-at-issue such that this Court can address these claims in the most efficient manner. As explained in more detail below, Defendants have not carried their heavy burden of showing that the Court should strike the counterclaims-in-reply under Rule 12(f), Rule 12(b)(6) or the Court's inherent powers.

**I. The Motion To Strike Is Procedurally Improper.** Defendants style their Motion as seeking dismissal pursuant to "Rule 12(f), 12(b)(6) and/or the Court's inherent power to manage its docket." None of these bases applies. Defendants do not argue that the counterclaims-in-reply include any "redundant, immaterial, impertinent, or scandalous matter," as required for Rule 12(f). Rather, they take issue with its timing and effect on this case generally, but Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." *Jordan v. Wilkes-Barre Gen. Hosp.*, 2008 WL 3981460, at *5 (M.D. Pa. Aug. 22, 2008) (quoting Wright & Miller, 5A Fed. Prac. and Proc. § 1380 (2d ed. 1990)); *see also Microsoft Mobile Inc. v. Interdigital, Inc.*, 2016 WL 1464545, at *4 (D. Del. Apr. 13, 2016) (Rule 12(f) motions "are viewed with disfavor and are infrequently granted"). Nor does Rule 12(b)(6) apply, which allows Defendants to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." As Defendants readily admit, "Plaintiffs are entitled to seek to litigate their trade secret-related claims"; they just do not want them asserted in this action. D.I. 240 at 1. Finally, Defendants offer no support for their argument that the Court may dismiss Plaintiffs' counterclaims-in-reply based simply on the Court's inherent powers. Rule 12(f) outlines when a court may strike a pleading, while "a district court has the inherent power to strike a party's submissions ***other than pleadings***." *Laghaei v. Fed. Home Loan Mortg. Corp.*, 2012 WL 5398874, at *1 (D. Nev. Nov. 2, 2012). On this basis alone, the Court should deny Defendants' Motion.

**II. Plaintiffs Properly Asserted Their Counterclaims-in-Reply.** If the Court addresses the merits, Defendants' Motion fails, given Plaintiffs filed their counterclaims-in-reply as a matter of right as compulsory counterclaims, and in any event good cause exists for maintaining them.

**A. Plaintiffs Asserted Their Counterclaims-in-Reply As Of Right.** Plaintiffs' first pleading response to Defendants' counterclaims was its April 15, 2021 Answer to Defendants' Counterclaims and Counterclaims in Reply. D.I. 209. As a result, the applicable rule is Rule 13(a), governing counterclaims, and not Rule 15, governing amended and supplemental pleadings. Pursuant to Rule 13(a)(1)(A), Plaintiffs were required to "state as a counterclaim any claim that— at the time of [the pleading's] service—[Plaintiffs] had" if the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *See also Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 418-19 (D. Del. 1970) ("That a plaintiff may counterclaim in his reply is established both in the case law and the texts[]. … Rule 13(a) commands that a pleader assert at the time of serving 'the pleading' any [compulsory

The Honorable Leonard P. Stark                                                                                                    Page 2
May 27, 2021

counterclaims]. …"). That is precisely what Plaintiffs did, and "there is nothing suspicious about [Plaintiffs counterclaims-in-reply] when the Rules required [Plaintiffs] to assert them or risk waiving them." *Berrada v. Cohen*, 792 F. App'x 158, 164 (3d Cir. 2019).[1]

      As Plaintiffs explain in their opposition to the Motion to Dismiss for Improper Venue, the counterclaims-in-reply are logically related to the claims already before the Court, involve "substantial evidentiary overlap," and raise common issues of law and fact. *See also Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389-90 (3d Cir. 2002) ("the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim'"). As to Defendants' counterclaim for breach of contract, Plaintiffs' breach of contract counterclaim-in-reply (Count VII) raises the same transactions, facts, and legal issues by alleging that Brahmasandra had previously breached and continued to breach the *same employment agreement* that is the subject of NeuMoDx's counterclaim. Similarly, Plaintiffs' fraud in the inducement, silent fraud, and breach of fiduciary duties counterclaims-in-reply (Counts VIII-X) allege that Brahmasandra procured the Amendment to Employment Agreement's non-compete waiver through fraud, and NeuMoDx cannot enforce a contract obtained through deception. Finally, Plaintiffs' counterclaims-in-reply sounding in tort against Defendants (Counts I-VI, XI) and the claims against Williams (Counts VII-VIII) are all based on their misappropriation of BD's trade secrets and violation of the confidentiality provisions of Williams's and Brahmasandra's agreements with Plaintiffs, and likewise raise the same factual issues as NeuMoDx's breach of contract counterclaim. Plaintiffs' charge that they acquired, retained, used, and/or disclosed Plaintiffs' trade secrets—in violation of their contractual commitments and fiduciary duties to HandyLab—undermines NeuMoDx's expansive theory that a non-compete waiver effectively granted NeuMoDx's employees carte blanche to take any of Plaintiffs' intellectual property in developing NeuMoDx's technology. As to NeuMoDx's counterclaims for declaratory judgment of non-infringement and invalidity, misappropriation is relevant to NeuMoDx's course of infringing conduct, willful infringement, and secondary considerations of nonobviousness, especially where misappropriation is directed to the same products as the patent claims.

      For all these claims, the same parties and witnesses (Brahmasandra and Williams) will be called to testify and the same or similar evidence will be presented in this Court regarding NeuMoDx's design of the Accused Products and related technologies, the obligations to HandyLab and BD, and their history of copying and misappropriation of Plaintiffs' confidential information in the course of designing those products. Thus, Plaintiffs' counterclaims-in-reply are compulsory.

      **B. Plaintiffs Have Good Cause For Asserting Their Counterclaims-in-Reply.** If the Court chooses to view Plaintiffs' counterclaims-in-reply as a request to amend the Complaint under Rules 15 and 16, Plaintiffs have good cause for asserting them now and as part of this action.

      "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P.

---

[1] Defendants are mistaken that *Se. Indus. Tire Co. v. Duraprene Corp.*, 70 F.R.D. 585, 586 (E.D. Pa. 1976), suggests that leave of Court was required. D.I. 240 at 2. *Se. Indus. Tire* acknowledged that a "counterclaim in reply is a cognizable pleading under the circumstances of this case," but expressed its belief "that, for reasons of clarity and practicality, it would be better to treat the counterclaim in reply as an amendment to the complaint." 70 F.R.D. at 588. Because the plaintiff sought leave to amend in the alternative, the district court ***granted*** the alternative request. *Id.*; *see also Janssen Pharmaceutica, N.V. v. Mylan Pharms. Inc.*, 2016 U.S. Dist. LEXIS 192881, at *44 (D. Del. July 28, 2016) (recommending court deny motion to dismiss, strike, or sever counterclaims-in-reply even where plaintiff did not seek leave to amend prior to filing).

15(a)(2). "The Third Circuit has adopted a liberal approach to the amendment of pleadings," which means that in "the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party." *Frederick v. Avantix Labs., Inc.*, 773 F. Supp. 2d 446, 449 (D. Del. 2011). The Court should weigh Plaintiffs' reasons for not amending sooner, as well as the hardship to Defendants if amendment is permitted. *Id.* Further, where the pleading deadline has passed, Plaintiffs must show good cause under Rule 16(b)(4). *Carrier Corp. v. Goodman Glob., Inc.*, 49 F. Supp. 3d 430, 433 (D. Del. 2014). "The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Roquette Frères v. SPI Pharma, Inc.*, 2009 WL 1444835, at *4 (D. Del. May 21, 2009).

**1. Good Cause Exists Where Plaintiffs Could Not Have Asserted Its Counterclaims-In-Reply Earlier**. Defendants do not dispute—because there can be no reasonable dispute—that Plaintiffs were diligent in asserting their counterclaims, thereby showing good cause under Rule 16(b)(4). *Roquette*, 2009 WL 1444835 at *5 (good cause where amendment filed roughly one month after relevant depositions and nonmovant was aware of motion before the close of discovery); *Cornell Univ. v. Illumina, Inc.*, 2016 WL 3046258, at *5 (D. Del. May 27, 2016) (good cause where new allegations were based on "a new set of facts obtained and confirmed during discovery which took place after the Scheduling Order's deadline for amending pleadings"). At the time Plaintiffs filed this action, Plaintiffs had no basis to allege that Defendants had taken their confidential and proprietary information. It was not until NeuMoDx finally produced the bulk of its documents that Plaintiffs discovered the misappropriation. NeuMoDx produced over 2 million pages on or after February 1, 2021 and over 1 million pages on or after the February 12, 2021 deadline for substantial completion of documents. *See* Ex. Yin Decl. ¶ 3.[2] In the course reviewing these productions, Plaintiffs found that NeuMoDx misappropriated Plaintiffs' trade secret and confidential proprietary information throughout the research and development, design, testing, manufacture, and market-planning of the Accused Products.[3] Plaintiffs immediately sent NeuMoDx (and later Qiagen) a cease-and-desist letter on April 13, 2021. Ex. 5. Three days later, on April 15, Plaintiffs promptly and timely filed their Answer and/or Reply and Counterclaims-in-Reply in response to Defendants' Answer. Given the scope of Defendants' production at the substantial production deadline, Plaintiffs brought these claims with extraordinary diligence.

**2. Good Cause Exists Where Plaintiffs Risk Waiver.** Plaintiffs also have good cause for asserting these claims now where they are compulsory such that failure to raise them would result in waiver. *See* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1188 (3d ed. 2021) ("[P]laintiff must assert [a compulsory counterclaim-in-reply] in the answer to the counterclaim or risk being barred from bringing a later action on it."). Indeed, courts have recognized that waiver provides good cause for compulsory counterclaims, so long as Plaintiffs were diligent. *See, e.g.*, *Myers v. Vill. of New Holland*, 2020 WL 7767622, at *2 (S.D. Ohio Dec. 30, 2020) (allowing amendment after deadline where claims overlap); *SFM Corp. v. Sundstrand Corp.*, 99 F.R.D. 101, 107-08

---

[2] Plaintiffs cite to the May 27, 2021 Declaration of David Yin and exhibits submitted with Plaintiffs' Response Brief in Opposition to the Motion to Strike.

[3] NeuMoDx produced the large majority of the documents evidencing misappropriation after the substantial completion of document production deadline. Plaintiffs' Counterclaims-in-Reply and Plaintiffs' subsequent correspondence with NeuMoDx identified 144 misappropriation documents that Plaintiffs requested NeuMoDx immediately investigate and sequester—110 of them were produced *after* the substantial completion deadline. *See* Yin Decl. ¶ 4.

The Honorable Leonard P. Stark  Page 4
May 27, 2021

(N.D. Ill. 1983) (denying motion to strike amended counterclaim filed after completion of substantial discovery in view of compulsory nature of additional claims).

**3. Defendants' Arguments Of Prejudice Are Unsupported.** Defendants argue that the claims relate only indirectly to the current issues in this action. Not so. As explained above, Defendants inserted Brahmasandra's employment agreement into this action, and Plaintiffs are asserting counterclaims that: (1) raise breach of the same agreement (Count VII); (2) provide bases for why that agreement is unenforceable (Count VI-X asserting fraud and breach of duties); and (3) raise the same issues of the parties' duties under the agreement and to each other, including whether NeuMoDx can use Plaintiffs' intellectual property (Counts I-VI, XI). As to NeuMoDx's counterclaims directed to non-infringement and invalidity, misappropriation is relevant to NeuMoDx's course of infringing conduct, willful infringement, and secondary considerations of nonobviousness where the trade secrets are directed to the same products at issue for the patent claims. The Court will need to address the issues raised in Plaintiffs' counterclaims-in-reply regardless of whether they stay in this action.

Defendants are also wrong that the counterclaims-in-reply will significantly delay this case. Defendants have had, and will have had, sufficient time to prepare their defense. In the first proposed scheduling order submitted to the Court, both parties agreed on a deadline to join parties or amend pleadings that was 82 days after the substantial completion deadline, and 72 days before the close of fact discovery. D.I. 32 at 2, 5. In the second proposed scheduling order, Defendants proposed a deadline to join parties or amend pleadings that was 83 days after the substantial completion deadline, and 73 days before the close of fact discovery. D.I. 47 at 2, 7. Here, Plaintiffs asserted counterclaims-in-reply on April 15, 2021—just 62 days after the substantial completion deadline, and 67 days before the close of fact discovery. D.I. 209. In other words, even under Defendants' *own standard of reasonable notice*, Plaintiffs brought the counterclaims-in-reply closer to the substantial completion deadline, and with just 5-6 days less time before the close of fact discovery. Even that latter comparison supports Plaintiffs where (1) Plaintiffs objected to Defendants' refusal to extend the deadline for motions to amend, even though the parties agreed to extend the deadline for fact discovery by *over 50 days* just to accommodate Qiagen (*see* D.I. 194; Ex. 9; and (2) Defendants are now seeking *additional* time for fact discovery to accommodate their own self-created discovery delays.

Further, any marginal additional discovery for Plaintiffs' counterclaims-in-reply "are not sufficient to show prejudice." *Roquette*, 2009 WL 1444835, at *5 (concerns that the non-moving party "would have to address a new issue and rework its case, thereby incurring additional costs[,] … are not sufficient to show prejudice"). Additional discovery should be modest where the issues overlap with the claims already before the Court, and Plaintiffs and NeuMoDx have substantially completed document production on those claims. *See Chkrs, LLC v. City of Dublin, Ohio*, 2019 WL 3975447, at *13 (S.D. Ohio Aug. 22, 2019) (no undue prejudice where "granting leave to amend will not require Defendants to expend significant additional resources to conduct discovery and prepare for trial"). Indeed, the basis for Plaintiffs' counterclaims-in-reply came from NeuMoDx's *existing* document productions. NeuMoDx has already collected and produced custodial records from Williams (over 16,000 documents produced) and Brahmasandra (over 47,000 documents produced). Yin Decl. ¶ 6. And, as NeuMoDx acknowledges, Williams and Brahmasandra are the most knowledgeable witnesses on issues that cut across all of the parties' claims, including "the facts and circumstances relating to the conception, design, development, testing and launch of the Accused Products" (Interrogatory No. 3); "NeuMoDx's affirmative defense and counterclaim that BD breached the Amendment to Employment Agreement"

The Honorable Leonard P. Stark                                                                           Page 5
May 27, 2021

(Interrogatory No. 8); and "enhanced or increased damages [and whether] NeuMoDx has not willfully infringed" (Interrogatory No. 13). *See* Ex. 4. At the same time, these witnesses have yet to be deposed in this action – in fact, the parties have yet to take any depositions – such that allowing Plaintiffs' counterclaims-in-reply at this stage will not require duplication of discovery. *Am. Shooting Ctr., Inc. v. Secfor Int'l LLC*, 2014 WL 5112050, at *1 (S.D. Cal. Oct. 10, 2014) (granting leave to amend counterclaims to "add two new parties and sixteen counterclaims" where "no depositions have yet been taken in the case, so prejudice from delay is likely to be minimal").[4] Where Defendants are already seeking a "modest extension" to the schedule (D.I. 242, at 3) regardless of the outcome of their Motions, the parties can incorporate time for these counterclaims-in-reply if and when revisiting the schedule.

      Nor do these claims present any specific prejudice to Qiagen. Qiagen is the parent of NeuMoDx, having acquired NeuMoDx on September 17, 2020. D.I. 169, ¶ 19. Prior to the acquisition, Qiagen knew of NeuMoDx's likely infringement through extensive diligence it conducted in or around the mid-to-late 2018 timeframe. *Id.* ¶¶ 22, 42. Indeed, Qiagen reached out to Plaintiffs in late 2018, noted its relationship with NeuMoDx, sought an agreement regarding certain asserted patents, and then filed IPRs in December 2018 before any agreement could be reached. *Id.* ¶ 22. Qiagen has controlled and managed this litigation (including by representing itself as the "decisionmaker" in a Court-ordered mediation conference, and by virtue of its outside counsel entering appearances on behalf of NeuMoDx in October (*see* D.I. 82)); controlled, directed, and induced NeuMoDx's infringing conduct with respect to the accused products; and itself sold, offered, distributed, marketed, and provided support for those products, including under its "Qiagen" brand. *See* D.I. 169, ¶¶ 21-24, 60-64. Regardless, Defendants fail to address why jury instructions or verdict forms cannot address this concern.

      The Court should likewise reject Defendants' argument that including Plaintiffs' counterclaims-in-reply with the patent claims "would ask too much of a jury to decide." D.I. 240, at 3. These claims raise factual and legal issues that will already be before the jury (e.g., whether Brahmasandra breached his agreement with Plaintiffs by taking their confidential materials for Defendants (for purposes of Defendants' breach of contract counterclaim), whether Defendants misappropriated Plaintiffs' technology (for purposes of willful infringement)). Indeed, the jury would be confused why the obvious counterclaims-in-reply *aren't* part of this action. Juries have addressed more complicated cases than this action, and can follow proper instructions. *See Synopsys, Inc. v. Magma Design Automation*, 2006 WL 1452803, at *4 (D. Del. May 25, 2006) ("[J]urors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios. Therefore, the court will not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in this case."). In any event, Defendants should not speculate as to what issues will ultimately before the jury where the parties are engaging in claim narrowing on the patent claims, and this case may be further narrowed pending the outcome of IPRs and dispositive motions, which will not be heard until January 2022.

      Plaintiffs therefore respectfully request that the Court deny Defendants' motion to strike.

---

[4] Defendants cite *Rates Tech., Inc. v. Nortel Networks Corp.* for the proposition that "the fact that the deadline for amending pleadings and adding parties has passed is a reason in itself to strike." D.I. 240, at 3. *Rates Tech.* involved very different facts—plaintiff filed a counterclaim-in-reply naming a new party in a patent infringement action in response to a motion to dismiss for lack of personal jurisdiction filed by the original defendant. 399 F.3d 1302, 1309-10 (Fed. Cir. 2005).

The Honorable Leonard P. Stark  Page 6
May 27, 2021

Respectfully,

Michael Flynn (# 5333)

cc:   Clerk of Court
      All counsel of record