# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, | ) | |
| GENEOHM SCIENCES CANADA, INC. | ) | |
| and HANDYLAB, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 19-1126 (LPS) |
| v. | ) | |
| | ) | **CONFIDENTIAL** |
| NEUMODX MOLECULAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL RESPONSES TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES TO
<u>DEFENDANT NEUMODX MOLECULAR, INC. (NOS. 1-15)</u>**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, NeuMoDx

Molecular, Inc. (NeuMoDx) through its attorneys, hereby responds and objects to Plaintiffs'

First Set of Interrogatories to NeuMoDx Molecular, Inc.

In providing information in response to these Interrogatories, NeuMoDx does not

concede the relevancy, materiality or admissibility of any such information and hereby reserves

all such objections. The fact that any Interrogatory herein has been answered should not be taken

as an admission or acceptance of the existence of any facts set forth or assumed by such

Interrogatory, or that such answer constitutes admissible evidence. Except as otherwise

indicated, an objection and/or answer to an Interrogatory does not imply that facts or documents

responsive to the Interrogatory exist.

The objections and answers herein reflect the present state of NeuMoDx's investigation

and the present state of discovery. NeuMoDx reserves the right to revise, correct, modify,

supplement, amend, and/or clarify the objections and answers herein.

<u>GENERAL
OBJECTIONS</u>

NeuMoDx's Answers are made subject to and in reliance on the General Objections set

forth below. The recitation of one or more specific objections to any Interrogatory is not to be

– 299; all factual and legal bases for any contention that NeuMoDx is entitled to damages on account of BD's alleged breach of the Amendment to Employment Agreement; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**RESPONSE:**

In addition to the General Objections set forth above, NeuMoDx objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks all details for all damages theories.  NeuMoDx objects to this interrogatory as it prematurely seeks information that is to be disclosed in expert reports on damages according to the deadlines specified in the Scheduling Order entered by the Court.  NeuMoDx will disclose such information in accordance with the Scheduling Order.  NeuMoDx also objects to this interrogatory as improperly calling for the legal bases of NeuMoDx's damages contentions.  NeuMoDx further objects as this interrogatory comprises at least six separate interrogatories.  NeuMoDx will answer the multiple interrogatories, but will count this interrogatory as six interrogatories for purposes of interrogatory limits under the Scheduling Order.

Subject to and without waiving the foregoing objections, NeuMoDx contends that it does not infringe the asserted patents, that the asserted patents are invalid, that it has BD's permission to make, use, sell and offer for sale the Accused Products (amongst other defenses alleged in NeuMoDx's answer and affirmative defenses and alleged herein), and thus there are no damages.  To the extent there is a finding of liability, NeuMoDx will provide its expert report on damages report in accordance with the Scheduling Order.  Limitations on damages include Plaintiffs' failure to mark; the lack of actual notice prior to filing of the complaint; the HandyLab Supply and License Agreement with Qiagen and Amendment No. 1 to the HandyLab Supply and License Agreement with Qiagen; the lack of competition between NeuMoDx and BD; the majority of NeuMoDx's sales of Accused Products are for COVID or otherwise COVID-related.

With respect to NeuMoDx's claim for damages for BD's breach of the Amendment to the Employment Agreement, BD gave NeuMoDx express permission in a contract to design, develop, make, use and sell the very systems that it is accusing of infringement in this lawsuit. BD did so in order to reap the benefit of NeuMoDx's efforts, if it wished.  NeuMoDx contends that it has been harmed and suffered damages as a result of BD's breach of contract, including the time, resources, attorney's fees, costs and expenses incurred in defending the present lawsuit filed by BD against NeuMoDx, as well as any reputational damages and lost opportunities resulting from a lawsuit that never should have been filed in the first place.

Sundu Brahmasandra and Jeff Williams and are knowledgeable about the subject matter of this interrogatory.

**INTERROGATORY NO. 13:**

Describe in detail all factual and legal bases relating to any contention that Plaintiffs are

not entitled to enhanced or increased damages. This includes but is not limited to identifying and describing in detail any contention that NeuMoDx has not willfully infringed and/or is not willfully infringing the Asserted Patents, including but not limited to identifying and describing any opinions of counsel on which NeuMoDx intends to rely to support its claim, including opinions relating to infringement, validity, or enforceability of the Asserted Patents; any communications relating to such contentions; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**RESPONSE:**

In addition to the General Objections set forth above, NeuMoDx objects to this interrogatory as prematurely seeking contentions relating to willful infringement, enhanced damages or increased damages prior to receiving Plaintiffs' basis for its contention that they are entitled to enhanced or increased damages. Plaintiffs have not identified any such contentions. NeuMoDx also objects to this interrogatory as vague, ambiguous and undefined with respect to "any contention that Plaintiffs are not entitled to enhanced or increased damages." NeuMoDx objects to this interrogatory as calling for information that is privileged or protected from disclosure by the attorney-client privilege, the attorney work product doctrine and/or any other constitutional, statutory, or common law privilege or protection. NeuMoDx objects to this interrogatory as calling for legal conclusions and expert testimony. NeuMoDx further objects as this interrogatory comprises at least two separate interrogatories. NeuMoDx will count this interrogatory as two interrogatories for purposes of interrogatory limits under the Scheduling Order.

Subject to and without waiving the foregoing objections, and based upon BD's limited assertions of willfulness and enhanced damages, NeuMoDx provides the following based upon its investigation to date. As part of launching NeuMoDx back in 2011 and 2012, NeuMoDx notified BD of its plans and received BD's permission and authorization to proceed with developing the Accused Products. NeuMoDx notified BD of its product development progress on a continuous, at least annual basis, and even shared with BD its confidential product design, development and planning information at every step of the development, including visits by BD to NeuMoDx's facility in Ann Arbor, Michigan. NeuMoDx was open and up front at all times, and the timeline and events are contained in NeuMoDx's responses to Interrogatory Nos. 7 and 8 above. Despite knowing the exact products NeuMoDx developed, BD never raised any issues, including the issue of infringement. In fact, BD encouraged NeuMoDx's development of the accused products because BD wanted to maintain the option of obtaining access to NeuMoDx's technology, whether through sale, license or otherwise.

Additionally, NeuMoDx performed freedom to operate searches relative to its products. NeuMoDx was not aware of any of the asserted patents until the second half of 2018, and did not copy the asserted patents. In fact, NeuMoDx intentionally designed away from the products that HandyLab developed before its sale to BD, including designing the NeuMoDx systems and consumables based upon many common, prior art components. NeuMoDx took particular care to ensure that its products do not infringe third party patents, including those belonging to BD and HandyLab given the relationship between BD/HandyLab and NeuMoDx. When NeuMoDx

became aware of asserted patents, it obtained opinions of counsel, which are subject to the attorney-client and/or work product privileges.

NeuMoDx has proceeded to defend itself in good faith in both the district court and PTAB at all times since learning of the asserted patents (which defenses are incorporated into this response by reference), based upon its belief that it does not infringe the asserted patents; that the asserted patents are invalid; that it had permission to make, use, sell and offer to sell the Accused Products per its agreement with BD and BD's complete and total knowledge and understanding of NeuMoDx's development activities relative to the Accused Products at every step of the way since formation of NeuMoDx in 2012; and now that the manufacture, use, sale and/or offer sell of the accused products is covered by the HandyLab Supply and License Agreement with Qiagen and Amendment No. 1 to the HandyLab Supply and License Agreement with Qiagen described in response to Interrogatory No. 15 below.  NeuMoDx has likewise not engaged in any sort of conduct warranting enhanced damages, including any conduct or activity that can be described as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful or flagrant.  NeuMoDx's investigation continues.  Sundu Brahmasandra and Jeff Williams are knowledgeable about the subject matter of this interrogatory.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:

Subject to and without waiving the foregoing objections, and based upon BD's limited assertions of willfulness and enhanced damages, NeuMoDx provides the following based upon its investigation to date.  As part of launching NeuMoDx back in 2011 and 2012, NeuMoDx notified BD of its plans and received BD's permission and authorization to proceed with developing the Accused Products.  NeuMoDx notified BD of its product development progress on a continuous, at least annual basis, and even shared with BD its confidential product design, development and planning information at every step of the development, including visits by BD to NeuMoDx's facility in Ann Arbor, Michigan.  NeuMoDx was open and up front at all times, and the timeline and events are contained in NeuMoDx's responses to Interrogatory Nos. 7 and 8 above.  Despite knowing the exact products NeuMoDx developed, BD never raised any issues, including the issue of infringement.  In fact, BD encouraged NeuMoDx's development of the accused products because BD wanted to maintain the option of obtaining access to NeuMoDx's technology, whether through sale, license or otherwise.

NeuMoDx performed freedom to operate searches relative to its products in at least 2012 and 2018.  NeuMoDx first became aware of the '708, '900, '308, '069 patents in approximately 2012.  NeuMoDx first became aware of the '787 and '103 patents between the second half of 2017 and the second half of 2018, although both the '787 and '103 patents were believed to have been cited or listed in the prosecution of NeuMoDx patent applications earlier in 2014 or 2015.  NeuMoDx did not become aware of the '456, '088, '663 and '788 patents until after the lawsuit was filed when BD identified them in Plaintiffs' First Amended and Supplemental Initial Disclosure of Accused Products and Asserted Patents on April 13, 2020.  NeuMoDx did not become aware of the '261, '262 and '466 patents until BD identified them in Plaintiffs' Second Amended and Supplemental Initial Disclosure of Accused Products and Asserted Patents on May 15, 2020.  NeuMoDx did not copy the asserted patents.  In fact, NeuMoDx intentionally designed away from the products that HandyLab developed before its sale to BD, including designing the NeuMoDx systems and consumables based upon many common, prior art components.  NeuMoDx also designed away from the asserted patents and/or Plaintiffs' molecular diagnostic systems in designing and developing its entire system, including but not limited to a different system architecture, different system configuration and lay-out, different liquid handling system, and different system components including but not limited to a different microfluidic chip and cartridge, different valves and valve arrangements, different heaters and heater arrangements, different extraction chemistry, different optical detection, and different controls over the system and the various components in the system.  These differences are reflected in NeuMoDx's 96 and 288 systems, including in the core technical documents produced by NeuMoDx at document control numbers NMDX0000001-NMDX0091999, NMDX0092001-NMDX0098441. NeuMoDx took particular care to ensure that its products do

not infringe third party patents, including those belonging to BD and HandyLab given the relationship between BD/HandyLab and NeuMoDx.  When NeuMoDx became aware of asserted patents, it obtained opinions of counsel.

As detailed in NeuMoDx's response to Interrogatory No. 15, Qiagen has a license to the asserted patents by way of the HandyLab Supply and License Agreement with Qiagen (2008) and Amendment No. 1 to the HandyLab Supply and License Agreement with Qiagen (2009). To the extent NeuMoDx made changes to the design, features, or functionality of the Accused Products from conception to the present, those are too numerous to list and can only be reflected accurately in the technical documents produced by NeuMoDx to date pursuant to Rule 33(d), including document control numbers NMDX0000001-NMDX0091999, NMDX0092001-NMDX0098441.

NeuMoDx has proceeded to defend itself in good faith in both the district court and PTAB at all times since learning of the asserted patents (which defenses are incorporated into this response by reference), based upon its belief that it does not infringe the asserted patents; that the asserted patents are invalid; that it had permission to make, use, sell and offer to sell the Accused Products per its agreement with BD and BD's complete and total knowledge and understanding of NeuMoDx's development activities relative to the Accused Products at every step of the way since formation of NeuMoDx in 2012; that BD knew about NeuMoDx's accused system since at least 2013, was updated every year or nearly every year on the NeuMoDx's accused system, specifically requested access to NeuMoDx's accused system from 2012-2019 and provided NeuMoDx with complimentary, positive feedback about its accused system, and overall led NeuMoDx to believe that BD did not intend to pursue any action for patent infringement or otherwise against NeuMoDx; and now that the manufacture, use, sale

and/or offer sell of the accused products is covered by the HandyLab Supply and License Agreement with Qiagen and Amendment No. 1 to the HandyLab Supply and License Agreement with Qiagen described in response to Interrogatory No. 15 below. NeuMoDx has likewise not engaged in any sort of conduct warranting enhanced damages, including any conduct or activity that can be described as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful or flagrant. NeuMoDx's investigation continues. Sundu Brahmasandra and Jeff Williams are knowledgeable about the subject matter of this interrogatory

**INTERROGATORY NO. 14:**

Describe in detail the facts and circumstances relating to the finances and financial information relating to the Accused Products and components thereof, separately for each Accused Product and each component thereof (and by customer to the extent such information exists) on a monthly, quarterly, and annual basis since the founding of NeuMoDx through the expiration of the Asserted Patent that is the last to expire (and in chart form). This includes but is not limited to identifying and describing in detail the number of units made or projected to be made; number of units used or projected to be used; number of units sold, leased, licensed, or distributed or projected to be sold, leased, licensed, or distributed; number of units supplied in or imported into the United States or projected to be supplied in or imported into the United States; number of units exported or supplied from the United States or projected to be exported or supplied from the United States; all revenue, costs (including costs of goods sold and any costs allocated to the Accused Products); profits (gross and net), margins (gross and net), and any other financial benefit You have realized or project to realize associated with the categories above; all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**RESPONSE:**

In addition to the General Objections set forth above, NeuMoDx objects to this interrogatory as vague, ambiguous, overly broad and unduly burdensome with respect to the request to "Describe in detail the facts and circumstances relating to the finances and financial information relating to the Accused Products and components thereof." This the meaning and scope of this request are unclear. NeuMoDx objects to this interrogatory as it seeks a written answer or explanation where the answer to an interrogatory may be derived or ascertained from the business records, including electronically stored information, of the parties and the burden of deriving the answer is substantially the same for the parties, pursuant to Federal Rule of Civil Procedure 33(d). NeuMoDx further objects as this interrogatory comprises at least four separate interrogatories. NeuMoDx will answer the multiple interrogatories, but will count this interrogatory as four interrogatories for purposes of interrogatory limits under the Scheduling Order.

# EXHIBIT 2

**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Wednesday, June 2, 2021 12:43 PM
**To:** Yin, David <David.Yin@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N.
Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Gary J Speier <GSpeier@carlsoncaspers.com>;
Alexandra J Olson <AOlson@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>;
mflynn@mnat.com; jblumenfeld@mnat.com
**Subject:** RE: EXTERNAL: RE: Response to BD's Request for Documents Pursuant to Defendants'
Investigation

EXTERNAL SENDER

David,

Your response below is blatantly misleading and frankly, in bad faith.  Your April 13, 2021 letter stated
the exact same demands/steps (1)-(4) contained in your subsequent correspondence.  Each of those 4
demands are reproduced below word-for-word in their entirety, not in the truncated version you
offered below in an attempt to contort the facts:

- "Identify all documents, communications and tangible things in NeuMoDx's
  possession, custody or control that constitute, contain or otherwise refer to
  confidential or proprietary HandyLab or BD information or material
  ("Confidential Information");
- Identify all sources, places or locations where Confidential Information is
  sourced, placed, or located, including identifying all custodial and non-custodial
  sources ("Locations of Confidential Information");
- Sequester and restrict all access to Confidential Information;
- Refrain from all further use, dissemination, or other disclosure of Confidential
  Information"

As stated below, and repeated from our prior correspondence, we have complied with your
demands/steps (1)-(4).  We repeatedly stated on multiple occasions that we needed to complete our
investigation prior to any further discussion of steps (5)-(7) (which you selectively cherry pick from in
your email below).  Plaintiffs, of course, then filed the new trade secret and related claims, and issued
both new interrogatories and new document requests seeking the same information you demand now
in your email below.  That discovery is broad-ranging and far-reaching, and effectively amounts to new
discovery, for new trade secret and related claims, in a new case.  Despite our repeated requests that
Plaintiffs identify any authority that requires Defendants to respond to discovery requests before they
come due, Plaintiffs have still provided nothing.  Once again, Defendants intend to respond to Plaintiffs'
document requests in due course by our agreed upon deadline.

To the extent Plaintiffs' prior RFPs call for documents relating to BD and HandyLab, we have searched
for, collected, produced and will continue to produce those documents consistent with our responses as
part of our ongoing discovery efforts, and our investigation.  Those efforts have included manual

1

collections as well as the use of the broad key words "Becton Dickinson", "BD" and "HandyLab".  To suggest that NeuMoDx has not searched for and produced documents relating to BD or HandyLab, including documents responsive to Plaintiffs' prior requests, is simply false in view of the documents that NeuMoDx has produced.  NeuMoDx has not withheld documents on the basis that they are allegedly only relevant to the trade secrets and related claims – please stop falsely insinuating that.  To the extent that BD has raised other specific document production issues related to prior RFPs as I said in my email below, we will address those separately.

Your attempt to intentionally mischaracterize the record is utterly frivolous, without merit, and calculated solely to engage in vexatious litigation tactics.  Defendants have not delayed – indeed the record shows that Defendants immediately initiated the investigation requested by Plaintiffs, and worked diligently to take reasonable steps to identify any alleged HandyLab or BD documents and/or information and further implemented efforts to preserve and restrict access to any such information in compliance with Plaintiffs demands.  We will continue to comply with our discovery requirements.

Jim

*For docketing purposes of patent & trademark matters only*, please add the appropriate email of dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being sent to our office. Thank you.

**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

| Profile | V-Card |

Phone 734-436-7356
Fax    844-670-6009
Email  JCleland@dickinson-wright.com



DICKINSON WRIGHT PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Tuesday, June 1, 2021 9:19 PM
**To:** James K. Cleland <JCleland@dickinson-wright.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Gary J Speier <GSpeier@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>; mflynn@mnat.com; jblumenfeld@mnat.com
**Subject:** EXTERNAL: RE: Response to BD's Request for Documents Pursuant to Defendants' Investigation

Jim,

Your response ignores that Plaintiffs' April 13 letter expressly mentioned and requested: (1) "all documents, communications and tangible things in NeuMoDx's possession, custody or control that constitute, contain or otherwise refer to confidential or proprietary HandyLab or BD information or material ('Confidential Information')"; (2) "all sources, places or locations where Confidential Information is sourced, placed, or located, including identifying all custodial and non-custodial sources ("Locations of Confidential Information"); and (3) that NeuMoDx "*[p]rovide* native copies of all of Locations of Confidential Information to HandyLab's and BD's outside counsel of record in this litigation."  We repeatedly followed up on that letter to request Bates-stamped production copies of all Confidential Information, and all documents within Locations of Confidential Information; as well as native-copies of all Confidential Information, and all documents within Locations of Confidential Information; on at least June 1, May 26, May 24, and May 13.  Your response also ignores, and apparently does not dispute, that the cited, existing, and prior RFPs in the above-referenced correspondence all call for the production of those documents, and you have failed to produce those documents in response to those RFPs.  Moreover, you have already agreed to produce similar documents and discovery in connection with the subpoenas served on NeuMoDx's current and former employees.  Thus, as with the parties' dispute with respect to the subpoenas, if Plaintiffs are forced to include this issue in their letter to the Court tomorrow, we reserve the right to seek fees and costs.

With respect to Defendants' failure to produce documents relating to or referring to an "Electronic Document Vault"; and all engineering drawings or CAD files relating to or referring to BD or HandyLab; they are part and parcel of the same issue—namely, Defendants' unilateral refusal to produce relevant documents based on Defendants' sole judgment that they are only related to trade secret and related claims, rather than the prior claims and counterclaims in the case.

Thus, Defendants positions are utterly frivolous and without merit, calculated solely to engage in vexatious litigation tactics and to delay these proceedings.  We will offer you until noon ET tomorrow to indicate that (i) Defendants will produce the materials described in my June 1 email below (and also in at least the May 28, May 26, May 24, May 13 and April 13 emails and letters); and (ii) will do so by end of week, i.e. June 4.  Otherwise, if we are forced to seek relief from the Court, we reserve all rights and will seek full redress from the Court.

Thanks,
David


**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Tuesday, June 1, 2021 5:43 PM
**To:** Yin, David <David.Yin@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Gary J Speier <GSpeier@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>; mflynn@mnat.com; jblumenfeld@mnat.com
**Subject:** Response to BD's Request for Documents Pursuant to Defendants' Investigation

EXTERNAL SENDER

David,

With respect to the issue referred to in your June 1, 2021 email, your May 28, 2021 email and during our meet and confer, your request has changed from its original form in your April 13, 2021 email.  On April 13 and in subsequent correspondence, including your email of April 16, and prior to Plaintiffs' addition of new claims and parties to this case, you requested that Defendants take a number of steps in response to your letter.  We have confirmed on numerous occasions that we have complied with your steps (1)-(4).  As we have explained, including in our emails of April 27, May 5, and May 25, we have undertaken reasonable steps to identify any alleged HandyLab or BD documents and/or information and further implemented efforts to preserve and restrict access to any such information.

Your May 28, 2021 email below now demands that Defendants produce: (1) Bates-stamped production copies of all Confidential Information, and all documents within Locations of Confidential Information; (2) native-copies of all Confidential Information, and all documents within Locations of Confidential Information.  These are not only new demands different from your prior demands, but these demands come after Plaintiffs' addition of new trade secret and related claims to the lawsuit and mirror Plaintiffs' new discovery requests to NeuMoDx and Qiagen (see, e.g., Plaintiffs' Fifth Set of Requests for Production of Documents, Nos. 212-225).  We are unaware of any authority that requires Defendants to respond to these discovery requests prematurely.  When we asked Plaintiffs to identify any such authority, Plaintiffs could not.  Please let us know if that has changed.  Defendants intend to respond to Plaintiffs' document requests in due course by our agreed upon deadline.

With respect to the other issues raised in your email below, those were not discussed during our meet and confer and are separate issues that will require a separate response.  We will endeavor to respond to those issues in the next day or two.

Jim

*For docketing purposes of patent & trademark matters only*, please add the appropriate email of dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being sent to our office. Thank you.

**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

| Profile | V-Card |

Phone  734-436-7356
Fax    844-670-6009
Email  JCleland@dickinsonwright.com

DICKINSON WRIGHT PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Tuesday, June 1, 2021 9:48 AM
**To:** James K. Cleland <JCleland@dickinson-wright.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N.
Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Gary J Speier <GSpeier@carlsoncaspers.com>;
Alexandra J Olson <AOlson@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>;
mflynn@mnat.com; jblumenfeld@mnat.com
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

The parties committed in the joint status report to attempt to resolve the issue below without the
Court's intervention.  We expect to hear from you no later than today—as you committed—on whether
or not Defendants will produce the materials described in my May 28 email below (and also in at least
the May 26, May 24, May 13 and April 13 emails and letters).  This, of course, also includes all
documents relating to or referring to an "Electronic Document Vault," which are responsive to at least
RFP Nos. 10, 46, 70, 71, 129, 130, 131; and all engineering drawings or CAD files relating to or referring
to BD or HandyLab, which are responsive to at least RFP Nos. 70, 71, 72, 132, 137, 210.

To the extent NeuMoDx does commit to producing the foregoing materials, please produce those
materials by end of week, i.e. June 4.  Because these materials were the subject of NeuMoDx's
investigation pursuant to my April 13 letter, they should be readily available and should be produced
immediately.

We do not believe any further meet-confer is required but, if you do, please provide by 11:30am ET your
availability for a meet-and-confer today.

Thanks,
David

**From:** Yin, David
**Sent:** Friday, May 28, 2021 5:12 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Peter M Kohlhepp'
<PKohlhepp@carlsoncaspers.com>; 'Jon D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Michael N.
Spink' <MSpink@dickinson-wright.com>; 'Keith D. Weiss' <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; 'Gary J Speier' <GSpeier@carlsoncaspers.com>;
'Alexandra J Olson' <AOlson@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>;
'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

On our meet-and-confer this afternoon, NeuMoDx agreed to confirm by this coming Tuesday, one way
or another, whether it will commit to producing: (1) Bates-stamped production copies of all Confidential

Information, and all documents within Locations of Confidential Information; (2) native-copies of all Confidential Information, and all documents within Locations of Confidential Information (as those terms were defined, e.g., in my April 13 letter and our subsequent correspondence regarding that letter).  To the extent NeuMoDx does commit to producing the foregoing materials, please produce those materials by end of next week, i.e. June 4.  Because these materials were the subject of NeuMoDx's investigation pursuant to my April 13, they should be readily available and should be produced immediately.

To the extent you believe any further meeting-and-conferring is required, please let us know today what times you are available on the afternoon of Tuesday, June 1, so that we can reserve time on our calendars, and so that we may have time to adequately prepare our opening letter to the Court due on Wednesday, June 2.

Thanks,
David

**From:** Yin, David
**Sent:** Wednesday, May 26, 2021 5:19 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; 'Alexandra J Olson' <AOlson@carlsoncaspers.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Peter M Kohlhepp' <PKohlhepp@carlsoncaspers.com>; 'Jon D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Michael N. Spink' <MSpink@dickinson-wright.com>; 'Keith D. Weiss' <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>; 'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com; 'Gary J Speier' <GSpeier@carlsoncaspers.com>; Yin, David <David.Yin@wilmerhale.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

Based on your lack of response to my May 13 and May 24 emails, and your position at this morning's meet-and-confer regarding the relevancy of the documents called for by Plaintiffs' subpoenas to the 14 individual NeuMoDx employees, we understand that Defendants are refusing to produce (1) Bates-stamped production copies of all Confidential Information, and all documents within Locations of Confidential Information; (2) native-copies of all Confidential Information, and all documents within Locations of Confidential Information (as those terms were defined, e.g., in my April 13 letter and our subsequent correspondence).  If you are not refusing produce those documents, please confirm by tomorrow COB and provide a date certain for when that production will occur, or we will raise this issue with the Court.

We also note that we still await responses regarding the other categories of documents outlined below in my March 3, March 19, April 27, or May 13, and May 24 emails, some of which have been pending for several months.  Please provide responses to those items by tomorrow COB as well and provide your availability for a meet-confer on Friday.  Absent a response, we will assume that Defendants do not intend to comply and will seek relief on those items as well.

Thanks,

David

**From:** Yin, David
**Sent:** Monday, May 24, 2021 8:28 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; 'Alexandra J Olson'
<AOlson@carlsoncaspers.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Peter M Kohlhepp'
<PKohlhepp@carlsoncaspers.com>; 'Jon D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Michael N.
Spink' <MSpink@dickinson-wright.com>; 'Keith D. Weiss' <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com; 'Gary J Speier'
<GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

You have not responded to any of my March 3, March 19, April 27, or May 13 emails.  Please provide the
requested confirmations to each topic, in writing, by <u>tomorrow COB</u>.  We have already met and
conferred on most of these topics, and we need your responses to provide an update to the Court on
the status of the parties' discovery.

In particular, please confirm when NeuMoDx and Qiagen will each produce (1) Bates-stamped
production copies of all Confidential Information, and all documents within Locations of Confidential
Information; (2) native-copies of all Confidential Information, and all documents within Locations of
Confidential Information, which we have discussed on numerous calls and which are, as explained in my
May 13 email, responsive to at least RFP Nos. 10, 46, 70, 71, 129, 130, 131, 213-226, 234-238.

Thanks,
David

**From:** Yin, David
**Sent:** Thursday, May 13, 2021 6:43 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; 'Alexandra J Olson'
<AOlson@carlsoncaspers.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Peter M Kohlhepp'
<PKohlhepp@carlsoncaspers.com>; 'Jon D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Michael N.
Spink' <MSpink@dickinson-wright.com>; 'Keith D. Weiss' <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com; 'Gary J Speier'
<GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

You have not responded to my March 19 and March 3 emails.  Please provide the requested
confirmations to each topic in those emails, in writing, by Friday COB or we will treat NeuMoDx's

months-long silence as refusals, and raise the issues with the Court—as the parties have already met-and-conferred on all the topics therein.

I also write to raise additional deficiencies with NeuMoDx's document production.  Please provide written responses to the below and to the issues raised in my April 27 e-mail by COB on Monday, May 17.  We request to meet-and-confer on NeuMoDx's document production deficiencies, including the ones listed here and in my April 27 e-mail, next week.  Please provide specific times you are available on Tuesday or Wednesday of next week (May 18 or 19).

1. <u>NeuMoDx's Sales Report and Exemplary Invoices</u> – As noted in my March 3 email, NeuMoDx proposed to produce a sales report that includes certain sales data, in lieu of all individual purchase orders/invoices.  Please confirm that NeuMoDx has completed producing sales reports for <u>all</u> relevant periods that includes all information requested.  Furthermore, the one instance of a sales report that we discovered (which does not cover all relevant time periods) does not appear to have sufficient information and/or all requested information.  Please also produce, for each of Defendants' customers or distributors, <u>all</u> purchase agreements, <u>all</u> supply agreements, <u>all</u> distribution agreements, <u>all</u> customer agreements; and at least exemplary sales orders, purchase orders, and/or invoices for <u>each</u> customer and <u>each</u> distributor.  Please also produce information regarding the Standard Costs of COGS for each product no./SKU.  The foregoing is responsive to at least RFP Nos. 5, 153, 162-165, 170, 174, 176-178.

2. <u>NeuMoDx's Board of Directors</u> – As noted in my March 3 email, NeuMoDx agreed to produce <u>all</u> organizational charts.  Please produce documents/organizational charts sufficient to show the composition of NeuMoDx's board of directors over time.  The foregoing is responsive to at least RFP Nos. 105 and 106.

3. <u>NeuMoDx's Temperature-Related Documents</u> – NMDX0810225 discusses "imaging views" of "PCR chambers."  Please confirm you have produced <u>all</u> documents leading to or related to the "imaging" references in NMDX0810225 and identify where in NeuMoDx's production that specific "imaging" documents have been produced—because we have been unable to locate it.  NMDX2481395 and NMDX0872916 discuss temperature "uniformity" (e.g., "utilizes silicon heating element for temperature… uniformity," how "uniform temperature is accomplished with use of single heater" and how "temperature uniformity is achieved using inherent property of silicon rather than elaborate heater arrangements").  Please confirm you have produced <u>all</u> testing, experiments, data, analyses, and/or other documents relating to or leading to the "uniformity" statements in NMDX2481395 and NMDX0872916--and identify where in NeuMoDx's production that specific testing, data, analyses, and other documents have been produced—because we have been unable to locate it.  The foregoing is responsive to at least RFP Nos. 11, 12, 37, 47.

4. <u>Technical Drawings</u> – Please produce or confirm you have produced <u>all</u> engineering drawings or CAD files relating to or referring to BD or HandyLab.  The foregoing is responsive to at least RFP Nos. 70, 71, 72, 132, 137, 210.

5. <u>Specifications</u> – Please produce or confirm you have produced <u>all</u> Product Specifications, Product Requirements Documents, Protocols, Process Work Instructions, Assay Validation Protocols, Informal Validation Plans, Reports, and Failure Mode Effect Analyses, including <u>all</u> drafts, relating to the design, development, validation, verification, function and/or operation of

MSC's or NeuMoDx's GBS Assay, and of MSC's or NeuMODx's CT/NG Assay.  The foregoing is responsive to at least RFP Nos. 13, 15, 16, 19, 23, 47, 64.

6. <u>Product Requirements</u> - Please produce or confirm you have produced <u>all</u> Product Requirements Documents and <u>all</u> Acceptance Tests, including <u>all</u> drafts, relating to the Gazalle MDx System and/or the NeuMoDx systems and prior versions or prototypes thereof (including the NMDX 500, N288, N96, NeuMoDx 288, and NeuMoDx 96 Molecular Systems).  The foregoing is responsive to at least RFP Nos. 19, 25, 28, 38, 40.

7. <u>"Electronic Document Vault"</u> – Please produce or confirm you have produced <u>all</u> documents relating to or referring to an "Electronic Document Vault."  The foregoing is responsive to at least RFP Nos. 10, 46, 70, 71, 129, 130, 131.

8. <u>Prior Versions of NeuMoDx's Website</u> – Please confirm NeuMoDx is producing <u>all</u> prior versions of its website, including any prior versions of <u>all</u> descriptions of NeuMoDx's Accused Products or technology, and <u>all</u> videos embedded therein.  The foregoing is responsive to at least RFP Nos. 57, 155, 158.

9. <u>Opinions of Counsel</u> – NeuMoDx has asserted reliance on opinions of counsel including in its response, and in its supplemental response, to Plaintiffs' Interrogatory No. 13 regarding willful infringement.  Please confirm that NeuMoDx has produced <u>all</u> freedom to operate searches, opinions of counsel, and other analyses, investigations, or studies of potential patent infringement or validity (including the Asserted Patents) and <u>all</u> documents (including communications) related thereto.  The foregoing is responsive to at least RFP Nos. 133-136.

To the extent you believe you have completed producing all documents and materials responsive to the above topics (as well as the topics in our April 27, March 19 and March 3 emails), please provide Bates numbers for <u>all</u> such responsive documents (rather than pointing to isolated instances).

Lastly, NeuMoDx and Qiagen have represented they have been diligently identifying, sequestering, and restricting access to BD and/or HandyLab "Confidential Information" and to "Locations of Confidential Information" (as those terms were defined, e.g., in my April 13 letter and our subsequent correspondence).  We request that NeuMoDx and Qiagen each produce (1) Bates-stamped production copies of all Confidential Information, and all documents within Locations of Confidential Information; (2) native-copies of all Confidential Information, and all documents within Locations of Confidential Information.  The foregoing is responsive to at least RFP Nos. 10, 46, 70, 71, 129, 130, 131, 213-226, 234-238.

Thanks,
David


**From:** Yin, David
**Sent:** Tuesday, April 27, 2021 10:38 AM
**To:** 'James K. Cleland' <<u>JCleland@dickinson-wright.com</u>>; 'Alexandra J Olson'
<<u>AOlson@carlsoncaspers.com</u>>
**Cc:** 'Samuel T Lockner' <<u>SLockner@carlsoncaspers.com</u>>; 'Peter M Kohlhepp'
<<u>PKohlhepp@carlsoncaspers.com</u>>; 'Jon D Carpenter' <<u>JCarpenter@carlsoncaspers.com</u>>; 'Michael N. Spink' <<u>MSpink@dickinson-wright.com</u>>; 'Keith D. Weiss' <<u>KWeiss@dickinson-wright.com</u>>;
<u>mfarnan@farnanlaw.com</u>; <u>bfarnan@farnanlaw.com</u>; Khan, Omar <<u>Omar.Khan@wilmerhale.com</u>>;
'mflynn@mnat.com' <<u>mflynn@mnat.com</u>>; <u>jblumenfeld@mnat.com</u>; 'Gary J Speier'

<GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

I write to follow up NeuMoDx's document productions.  You did not respond to Plaintiffs' February 10 letter or my March 19 and March 3 emails.  Please provide the requested confirmations, which you agreed to do at our March 11 meet-and-confer, by COB on Wednesday.

In addition, we write to identify additional deficiencies in NeuMoDx's document production.

1.  In RFP Nos. 11, 12, and 37, we requested various documents related to testing of temperature and temperature uniformity of the PCR heaters and to the PCR chambers of the XPCR cartridge.  However, NeuMoDx did not produce the documents related to attempts to measure temperature within PCR chambers using, for example, thermocouples or temperature sensitive dye, which are referenced in at least NMDX0828475-NMDX0828480, NMDX2422773-NMDX2422774, and NMDX1201696.  Furthermore, in Interrogatory 22, we requested that NeuMoDx identify "the facts and circumstances relating to analyses, opinions, assessments, studies, reports, research, tests, experiments, investigations, simulations, measurements, evaluations and/or examinations relating to the temperature, temperature uniformity, temperature variance, temperature distribution, temperature gradient, and/or any temperature-related parameter…of any…PCR reaction chamber…"  But the documents cited in Defendant's Supplemental Response to Interrogatory No. 22 do not provide a sufficient response and do not, for example, provide the requested information about the temperature in the PCR reaction chamber.

2.  In RFP Nos. 29 and 30, we requested documents related to timing and sequencing of components of the XPCR module and thermal cycling profiles. However, NeuMoDx did not produce the documents describing the synchronization, staggering, and scheduling of these components, nor any documents describing limits on range, timing, and sequencing of thermal cycling profiles."  Although the existence of such scheduling is referenced, for example, in NMDX0006210, the produced documents provide no description of the scheduling.

3.  In RFP No. 47, we requested all documents related to testing or analysis of the Accused Products, including by third-parties.  In RFP No. 44, we requested all documents related to the research, design, testing, and development of the Accused Products.  In RFP No. 62, we requested all documents regarding any association between the University of Michigan and NeuMoDx's products.  However, NeuMoDx did not produce the documents showing third party design, development, testing or analysis of heaters, wafers, and/or masks, although such work is referenced at least in documents NMDX0878508, NMDX0877548, NMDX1145796, NMDX2551527,NMDX1652546, NMDX1652531.

4.  In RFP No. 49, we requested all "documents and things related to the mechanical, physical, operational, and functional characteristics of any vent(s) contained in the microfluidic cartridge."  However, the documents produced do not include documents showing the operation of valve 8 in the XPCR module in the NeuMoDx 96 and NeuMoDx 288 systems, or the functional characteristics related to the coordination and/or sequencing of the operation of the valves and optics when detecting the presence of samples (e.g., in the fill check).  Such work is

10

referenced, for example, at least in documents NMDX0874539-NMDX0874568, NMDX0003646-NMDX0003671, NMDX0003672-NMDX0003688, NMDX0033305-NMDX00333728, NMDX0000132-NMDX0000245, NMDX0000246-NMDX0000433, NMDX0000434-NMDX0000627, NMDX0000628-NMDX0000991, NMDX0000992-NMDX0001357.

5. In RFP No. 19, we requested documents sufficient to show the function, operation, and performance characteristics for each Accused Product or any part or component thereof, and specifically referenced the structure and operation of the process controller, "including operating, configuration, performance and control parameters of the NeuMoDx computer in sample processing, including all descriptions of information flow between the processor(s) and the functional components of the NeuMoDx 96 and 288 apparatuses." However, However, NeuMoDx did not produce documents sufficient to show the connections and communications between the internal computer running the graphical user interface and components of the instrument, including the XPCR modules, release heater, heater assembly, magnet heater, extraction plate heater module, syringe pump, and liquid handling robot, despite documents indicating such a relationship exists, including, for example, NMDX0019725 (e.g., NMDX0019732, NMDX0019766-NMDX0019769, NMDX0019778-NMDX10790), NMDX2440184, NMDX0006210.

6. In RFP No. 8, we requested "three samples of each Accused Product." We have not received any products to date.

7. In RFP Nos. 15 and 23, we requested "all technical specifications, including without limitation … [for] test/assay strips" and "all product specification documents." However, NeuMoDx's document production is missing product specification documents, including for the NeuMoDx HCV Quant Test Strip, NeuMoDx TV/MG Test Strip, NeuMoDx Strep A/C/G Vantage Test Strip.

Please confirm by Wednesday COB that NeuMoDx will produce and provide the foregoing documents and information, and the date by which NeuMoDx will do so. Please also provide specific times you are available to meet-and-confer regarding the foregoing on Thursday or Friday of this week.

Thanks,
David

**From:** Yin, David
**Sent:** Friday, March 19, 2021 12:17 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; 'Alexandra J Olson'
<AOlson@carlsoncaspers.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Peter M Kohlhepp'
<PKohlhepp@carlsoncaspers.com>; 'Jon D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Michael N. Spink' <MSpink@dickinson-wright.com>; 'Keith D. Weiss' <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com; 'Gary J Speier'
<GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

In our March 3 email, Plaintiffs requested that NeuMoDx confirm it has completed production of certain categories of documents it has agreed to produce, or provide a date certain by which it will do so.  The categories listed in our March 3 email included, *e.g.*, NeuMoDx's production of all versions of responsive technical documents; NeuMoDx's production of all organizational charts; NeuMoDx's production of agreements and correspondence with its vendors; documents relating to NeuMoDx's relationship with Qiagen (including agreements between Qiagen and NeuMoDx; deal documents; and policies, memos, understandings, guidance, manuals, charts or lists, and minutes regarding NeuMoDx's relationship with Qiagen); a sales report; a date, in March, by which NeuMoDx would determine whether it will rely or withdraw its reliance on opinions of counsel; work arounds or design arounds; and documents relating to Plaintiffs' patents and patent applications in the same families as the Asserted Patents.

At our March 11 meet-and-confer last week, NeuMoDx agreed to respond to the March 3 email, and make those confirmations, in writing.  We ask that you please make those confirmations in writing by no later than Monday, March 22.

Thanks,
David


**From:** Yin, David
**Sent:** Wednesday, March 10, 2021 1:07 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>; mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Hi Jim,

Yes, I will change the invite to 4pm ET on Thursday afternoon.

Thanks,
David

**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Wednesday, March 10, 2021 11:59 AM
**To:** Yin, David <David.Yin@wilmerhale.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>; mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

EXTERNAL SENDER

David,

5 pm ET on Thursday is a conflict.  We could either do 3 pm or 4 pm ET Thursday afternoon, or after 11 am ET on Friday.  Does one of these options work?

Jim

*For docketing purposes of patent & trademark matters only*, please add the appropriate email of dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being sent to our office. Thank you.

**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

| Profile | V-Card |

Phone  734-436-7356
Fax       844-670-6009
Email    JCleland@dickinsonwright.com

DICKINSON WRIGHT PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Tuesday, March 9, 2021 9:41 PM
**To:** James K. Cleland <JCleland@dickinson-wright.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>; mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Hi Jim,

Sure, we are available at 5:00pm ET on Thursday.  I can revise the calendar invite.

Thanks,
David

**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Tuesday, March 9, 2021 3:41 PM

**To:** Yin, David <David.Yin@wilmerhale.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>;
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N.
Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

**EXTERNAL SENDER**

David,

I apologize, my Wednesday afternoon filled up prior to your email below.  Are you available to do the
call Thursday morning (or Thursday afternoon if preferred)?  Thanks.

Jim

*For docketing purposes of patent & trademark matters only*, please add the appropriate email of
dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being
sent to our office. Thank you.

**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

| Profile | V-Card |

Phone   734-436-7356
Fax        844-670-6009
Email    JCleland@dickinsonwright.com

DICKINSON WRIGHT PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Tuesday, March 9, 2021 1:01 PM
**To:** James K. Cleland <JCleland@dickinson-wright.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N.
Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

We can do 3:00pm ET tomorrow.  I will shortly circulate a calendar invite with a dial-in.

Thanks,
David

**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Monday, March 8, 2021 10:20 AM
**To:** Yin, David <David.Yin@wilmerhale.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N.
Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

<mark>EXTERNAL SENDER</mark>

David,

Wednesday works better for us for the next meet and confer.  Please let us know when you are
available.  We will send our list of items in advance of the conference.  Thanks.

Jim


*For docketing purposes of patent & trademark matters only*, please add the appropriate email of
dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being
sent to our office. Thank you.


**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

| Profile | V-Card |

Phone  734-436-7356
Fax      844-670-6009
Email   JCleland@dickinson-wright.com

**DICKINSON WRIGHT** PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO


**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Friday, March 5, 2021 5:07 PM
**To:** James K. Cleland <JCleland@dickinson-wright.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>

**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N.
Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim and Alex,

You have not responded to our February 16 or March 3 requests to meet-and-confer. Please provide
specific times you are available to meet-and-confer on Monday or Tuesday.

Thanks,
David

**From:** Yin, David
**Sent:** Wednesday, March 3, 2021 10:06 AM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; 'Alexandra J Olson'
<AOlson@carlsoncaspers.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Peter M Kohlhepp'
<PKohlhepp@carlsoncaspers.com>; 'Jon D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Michael N.
Spink' <MSpink@dickinson-wright.com>; 'Keith D. Weiss' <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com; 'Gary J Speier'
<GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim and Alex,

I write to memorialize the parties' agreements from the February 3, 8, and 16 meet-and-confers, and to
request a further conference on the parties' discovery disputes. Please provide specific times on
Thursday or Friday during which you can meet-and-confer, including on the remaining issues raised in
Plaintiffs' Feb. 2 email and the issues raised in Plaintiffs' Feb. 10 letter, to which we received no
response.

At our February 3 meet-and-confer, we raised the parties' dispute regarding NeuMoDx's production of
all versions of responsive technical documents; you stated that NeuMoDx will be producing all prior
versions of all technical documents. We also raised NeuMoDx's production of organizational charts; you
stated you had produced all of NeuMoDx's organizational charts. We also raised NeuMoDx's production
of agreements and correspondence with its vendors (i.e., including distributors, contractor
manufacturers, suppliers); you confirmed that you would produce a list of NeuMoDx's vendors, would
produce any responsive correspondence with NeuMoDx's vendors, and would produce any agreements
with NeuMoDx's vendors. We also raised documents relating to NeuMoDx's relationship with Qiagen;
you agreed to produce all agreements between Qiagen and NeuMoDx that governed their relationship
prior to the Sept. 2020 acquisition, and the deal documents from the Sept. 2020 acquisition. We also
requested that you produce other documents that contain this information including policies, memos,
understandings, guidance, manuals, charts or lists, and minutes; you agreed to produce those to the

extent they exist and can be found.  As to NeuMoDx's purchase orders and sales orders, NeuMoDx proposed to produce a sales report that includes sales data in lieu of individual purchase orders/invoices, and Plaintiffs agreed to consider that proposal and specify data points that should be included in that sales report.  Plaintiffs believe a sufficient sales report should include information on a sale-by-sale basis, and should include, at minimum:

- Date
- Purchase Order or Invoice Number
- Customer Name
- Customer Type / Category
- Customer Region
- Customer Country
- Customer Address
- Selling Entity
- Product Name
- Product No. / SKU
- Sales Price
- Sales Quantity
- Total Amt of Sale
- Standard Costs of COGS

Please confirm you have completed all of the above items or give us date(s) certain by which you will complete all of the above items.  We also raised NeuMoDx's deficient responses to RFPs Nos. 21, 51, 58, 60, 66, 96, 126, 147, 159, 167, 178, 188, 205; 46, 115, 116, 120, 121, 197; 10, 14, 64, 70, 85, 146, 149, 171, and 173.  (*See* Feb. 2, 2021 Email.)  You stated you would review these and supplement your responses to those RFPs.

At our February 8 meet-and-confer, we raised NeuMoDx's reliance on opinions of counsel; you stated that you would provide a date, in March, by which NeuMoDx would determine whether it will rely or withdraw its reliance on opinions of counsel.  We also re-raised NeuMoDx's deficient responses to the aforementioned RFPs; you stated that you would revise and/or supplement your response to those RFPs by the week of February 15.  Please confirm date(s) certain by which you will complete the above.

At our February 16 meet-and-confer, we raised NeuMoDx's written discovery responses that it would only produce documents "in NeuMoDx's possession"; you stated that NeuMoDx would produce responsive documents in NeuMoDx's possession, custody, or control, but that NeuMoDx would not even ask any third-parties for documents.  The parties are thus at an impasse on that issue.  We also raised NeuMoDx's responses that it will only produce responsive documents related to "the specific products identified in paragraph 33 of Plaintiffs' First Amended Complaint," rather than the Accused Products defined in Plaintiffs' RFPs; you stated that the scope of NeuMoDx's collection and responsiveness review would encompass all of the products that NeuMoDx makes or sells.  We also raised NeuMoDx's refusal to produce documents related to BD Patents, HandyLab Patents, or Plaintiffs' Products; you stated that NeuMoDx would produce any documents related to Plaintiffs' MAX, COR, Viper, Jaguar, Raider, and Lynx systems.  As to related BD and HandyLab patents, which we explained were patents and patent applications in the same families as the Asserted Patents, you stated you would consider and respond later.  We also raised NeuMoDx's deficient response with respect to requests for work arounds or design arounds; you stated that NeuMoDx would produce any documents relating to attempts to avoid infringement of the Asserted Patents, including work arounds or design arounds.  Please confirm you

have completed the above or give us date(s) by which you will complete the above; please also confirm that NeuMoDx will produce any documents relating to related BD and HandyLab patents.

Thanks,
David


**From:** Yin, David
**Sent:** Tuesday, February 16, 2021 4:50 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; 'Alexandra J Olson' <AOlson@carlsoncaspers.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Peter M Kohlhepp' <PKohlhepp@carlsoncaspers.com>; 'Jon D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Michael N. Spink' <MSpink@dickinson-wright.com>; 'Keith D. Weiss' <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>; 'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com; 'Gary J Speier' <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim and Alex,

Thanks for speaking with us today.  At the end of the call, we discussed setting up another meet-and-confer.  Could you provide specific times you are available to meet-and-confer on Friday or Monday?

Thanks,
David

**From:** Yin, David
**Sent:** Monday, February 15, 2021 4:16 PM
**To:** 'James K. Cleland' <JCleland@dickinson-wright.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>; mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

3pm ET tomorrow works.  We can use this dial-in:

Call: 917-210-2626
Code: 730805186#

Thanks,
David

# EXHIBIT 3

| | |
|---|---|
| **From:** | Yin, David |
| **To:** | "Jonathan D Carpenter"; Peter M Kohlhepp; Jim Cleland - Dickinson-Wright |
| **Cc:** | Samuel T Lockner; Alexandra J Olson; Caroline L Marsili; Michael N. Spink; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J.; jblumenfeld@mnat.com; Derek Vandenburgh; Khan, Omar |
| **Subject:** | RE: BD/NeuMoDx - post-Markman reduction of asserted claims |
| **Date:** | Friday, May 28, 2021 10:10:00 AM |

John,

My email below is not the first time we raised the issue; we told you we disagreed with your views regarding the advice-of-counsel issue on the meet-and-confer earlier this week on Wednesday morning, and in the draft status report to the Court that we sent you on Wednesday afternoon. Moreover, the fact that you sent your email within 2 hours suggests that no such statement or discussion was made, given that (if as you say that discussion occurred) there would have been no need to "correct the record"; your email was an obvious effort to manufacture a record where none existed and to further stall and delay discovery in this case.  My colleague Omar Khan dropped off the call, but our local counsel were still on and they also have no memory or notes of your purported statement.

In any event, your complaints are a pure smokescreen and distraction.  The material prejudice arises from Defendants' unilateral efforts to delay discovery.  Your colleague, Mr. Cleland, informed us during our **February 8** meet-and-confer that Defendants would provide a date, **in March**, by which NeuMoDx would determine whether it would rely on or withdraw its reliance on opinions of counsel.  *See* March 3, 2021 Email to Mr. Cleland.  Then, when you failed to do so and when we repeatedly objected, you then stated **in writing on May 14**, that Defendants "**will provide** Plaintiffs with Defendants' position **by May 26**.  …  If Defendants decide to rely on advice of counsel, **we will target producing documents within 2 weeks after May 26**."  *See* May 14, 2021 Email from Mr. Carpenter.  The record is clear that you have unilaterally and unreasonably delayed compliance with your own promises for months.  Finally, Defendants were supposed to provide their statement on whether they were relying on advice of counsel two days ago, but again changed their mind unilaterally and decided not to abide by their own schedule.  The rest of the case schedule has nothing to do with the dates to which Defendants **themselves agreed** to provide the statement and to provide the documents—which were already late and which have already prejudiced Plaintiffs.  Given the time that has passed on the issues, which we have been raising for at least 3-4 months, we will seek relief from the Court.

You have until noon ET today to provide your statement, and confirm that Defendants will produce any advice-of-counsel documents by "two weeks after May 26," or we will include this in the letter to the Court.

Best,
David

---

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Friday, May 28, 2021 9:08 AM

**To:** Yin, David <David.Yin@wilmerhale.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

<mark>**EXTERNAL SENDER**</mark>

David:

We undoubtedly told Plaintiffs this during the call, which is likely why you felt necessary to qualify your false statement with "much less clearly state." Our statement was made as we were covering the last few items and after your colleague, Mr. Khan, dropped off for a different obligation.  So it is not surprising that it did not appear in his notes.  Regardless, it is inappropriate for you to accuse us of making this up.  Although it would be unfortunate if it were to come to this, we will evaluate whether we need to record any calls where you are involved in the future if you make such a false accusation again.

Your demand for us to provide a response by 10 ET is inappropriate too – particularly in light of the fact it took you over **two days** to provide your below responsive email.  Note that we provided our clarification email within **two hours** of your email—because it was important to us to immediately correct the record to reflect the truth.

As we explained during our call in connection with this very issue, the parties ongoing document production makes this issue difficult and premature particularly in light of the uncertain case schedule issue.  If Plaintiffs have a response to that stated concern, please provide it.

Regards,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Thursday, May 27, 2021 6:03 PM

**To:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-
wright.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Michael N. Spink
<MSpink@dickinson-wright.com>; Michael Farnanlaw <mfarnan@farnanlaw.com>; Brian E. Farnan
<bfarnan@farnanlaw.com>; Flynn, Michael J. <michael.flynn@morrisnichols.com>; Jack B.
Blumenfeld <jblumenfeld@mnat.com>; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>;
Khan, Omar <Omar.Khan@wilmerhale.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon,

Your assertion is not correct.  You did not state – much less clearly state -- that NeuMoDx planned
on missing its own, already-late May 26 deadline for asserting reliance on advice of counsel, and
NeuMoDx's own, already-late deadline for then producing related documents two weeks later (i.e.,
June 9).  No one on our side recalls such a discussion and no one's notes reflect such a discussion.  If
it had happened, we would have vigorously objected.

Even if it did happen (which it did not) it simply emphasizes how Defendants are unwilling to
reasonably cooperate in discovery when they cannot meet their own deadlines—deadlines that are
***already*** going to result in documents being produced too late, effectively days before the close of
fact discovery.  There was no consent, nor was any comment or objection required, because
Plaintiffs' recourse is—in any event—to immediately raise with the Court Defendants' failure to
meet its own commitments, which we intend to do.  If we do not receive your statement regarding
reliance on advice of counsel by <u>tomorrow 10am ET</u>, we will raise this with the Court.

Thanks,
David

---

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Tuesday, May 25, 2021 4:33 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>;
Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Michael N. Spink
<MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn,
Michael J. <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; Derek Vandenburgh
<DVandenburgh@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>; Jonathan D
Carpenter <JCarpenter@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

EXTERNAL SENDER

3

David,

We disagree with numerous of your characterizations and will follow-up with another communication, but one is quite egregious. We expressly noted during the call yesterday that Plaintiffs had rejected NeuMoDx's May 26th date to determine whether it would rely on opinions of counsel. We then said that given BD's rejection, the ongoing discussions of a potential extension, and Qiagen's ongoing document production, we would need more time. You did not object.

Regards,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Tuesday, May 25, 2021 2:22 PM
**To:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Michael Farnanlaw <mfarnan@farnanlaw.com>; Brian E. Farnan <bfarnan@farnanlaw.com>; Flynn, Michael J. <michael.flynn@morrisnichols.com>; Jack B. Blumenfeld <jblumenfeld@mnat.com>; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jim, Sam, and Jon:

We write to follow-up on additional issues raised during yesterday's meet-and-confer.

***First***, we discussed asserted claim narrowing and prior art narrowing.  Defendants indicated they were amenable to a compromise of 52 claims as the limit on the total number of asserted claims across all patents (down from Plaintiffs' original proposal of 80 asserted claims).  Defendants requested, however, that Plaintiffs prepare a revised compromise proposal reflecting the downstream, proportional changes if the parties could compromise to 52 asserted claims.  That revised, compromise proposal is reflected below.  <u>Please let us know if you agree to the revised, compromise proposal</u>.

4

The parties also discussed the stipulation in the first bullet point below regarding the meaning of "reduction" or "narrowing." On Friday, Plaintiffs stated they believe: by "narrowing," it is meant that Plaintiffs shall **narrow from** their existing set of asserted claims (identified in Plaintiffs' December 9, 2020 email), and shall not assert new claims that were not previously asserted for a given patent; and Defendants shall **narrow from** their existing set of invalidity grounds (as identified in Jon Carpenter's April 19, 2021 Email), and shall not assert new invalidity grounds that were not previously identified for a given claim—with any changes to the foregoing being subject to the good cause standard. Yesterday, Defendants stated they would not accept this stipulated meaning of "narrowing"; rather, Defendants believe they should be allowed to assert different invalidity grounds (as compared to those identified in Jon Carpenter's April 19, 2021 Email) through the time of final invalidity contentions. We asked whether Defendants' position is also that Plaintiffs should be allowed to assert different asserted claims (as compared to those identified in Plaintiffs' December 9, 2020 email) through the time of final infringement contentions; you refused to give us your position in that regard on the phone. Please let us know in writing, by COB today, whether it is Defendants' position that Plaintiffs should also be permitted to change which claims are asserted in their final infringement contentions, as long as the asserted claims comply with the overall numerical limits on the total number of asserted claims, and the maximum number of asserted claims for any single patent.

**Second**, the parties discussed potential changes to the schedule. As previously detailed, NeuMoDx has indicated it will determine whether to rely on opinions of counsel by May 26 and that it "target[s] producing documents within 2 weeks" after May 26—i.e., 8 business days before the current close of fact discovery on June 21; Qiagen has indicated it aims to begin production of documents on June 7, and it "hope[s]" to substantially complete document production by June 21 (with a caveat that June 21 may not be possible)—i.e., on the last day of the current close of fact discovery. It is our view that Defendants have unilaterally engaged in self-help by not producing documents in time for the close of fact discovery and depositions, and forcing an extension to the schedule. Nonetheless, Plaintiffs asked what reasonable extensions for clean-up document production are required, and suggested it should be around 3-4 weeks, but not change the current April 2022 trial date. Defendants stated they seek an extension of **3-4 months** on fact discovery, and a commensurate 3-4 month push on the current trial date. This extension request is unreasonable for clean-up document production, based on the current deadlines for the parties, and seems calculated to achieve extra-litigation effects insofar as it would push the trial date past the expected dates for Final Written Decisions (July 2022) in the pending IPRs for the '261, '262, and '466 patents. Thus, Defendants' 3-4 month extension request for fact discovery, and commensurate extension for the trial date, appears fueled by improper motives and gamesmanship and not the additional time needed to expeditiously complete its document production and fact discovery.

The parties also discussed potential changes to the schedule to accommodate marginal additional discovery related to Plaintiffs' counterclaims-in-reply—e.g., alleging misappropriation and copying of Plaintiffs' trade secret and confidential proprietary information. Plaintiffs floated, if Defendants agreed that the counterclaims-in-reply could be added to the current case, the idea of an extension to the current trial date to accommodate additional discovery. Defendants refused that idea.

***Third***, the parties discussed the joint status report.  Plaintiffs are preparing a draft joint status report to update the Court on at least the following topics: (1) the nature and stage of the proceedings, including the timing of motion practice on the counterclaims-in-reply; (2) the status of discovery; (3) the case schedule; (4) progress of the parties' negotiations regarding claim narrowing/prior art narrowing.  Defendants have not stated what, if any, topics they believe should be addressed in the joint status report--<u>please do so immediately</u>.

***Fourth***, Defendants stated that certain individuals on their Rule 26 and/or Paragraph 3 disclosures, whom Plaintiffs noticed for deposition last week, are now third-parties.  Please inform us by <u>COB today</u> whether Defendants contend that subpoenas must be issued instead of deposition notices for any noticed individuals.

***Lastly***, we discussed the need for a final meet-and-confer on these issues.  Defendants did not provide their availability today, as requested.  <u>Please provide specific times you are available to meet-and-confer tomorrow</u>.

Thanks,
David

//

**<u>Plaintiffs' Revised Compromise Proposal</u>**

| Limit | | Current Number | Plaintiffs' Proposed Limit |
|---|---|---|---|
| Claim Narrowing | <u>Total Limit</u>:  Limit on the Total Number of Asserted Claims Across All Patents | 120 | 52<br><br>[56.6% reduction] |
| | <u>Per Patent Limit</u>:  Maximum Number of Asserted Claims For Any Single Patent | 14 | 7 |
| Prior Art Narrowing | <u>Total Limit</u>:  Limit on the Total Number of Invalidity Grounds Across All Patents (where anticipation counts separately from single-reference obviousness, and any prior art combinations should be specifically identified, i.e., in the form: A + B, A + C, or A + B + C, etc.) | 164 grounds, max 6 references per combination | 71 grounds, max 6 references per combination<br><br>[56.6% reduction]<br><br><br>2 times the number of Asserted Claims |

| | | | |
|---|---|---|---|
| | Limit on Total number of Prior Art References | 2 times the number of Asserted Claims (Para 2 of Nov. 4, 2020 Letter to the Court) | (Para 2 of Nov. 4, 2020 Letter to the Court) |
| | <u>Per Patent Limit</u>:  Maximum Number of Invalidity Grounds For Any Single Patent | 3 times maximum number of asserted claims per patent (Para 3 of Nov. 4, 2020 Letter to the Court) | 3 times maximum number of asserted claims per patent (Para 3 of Nov. 4, 2020 Letter to the Court) |
| | | | |

<u>Additional Proposed Stipulations:</u>

- By "narrowing," it is meant that Plaintiffs shall narrow from their existing set of asserted claims (identified in Plaintiffs' December 9, 2020 email), and shall not assert new claims that were not previously asserted for a given patent.  Defendants shall narrow from their existing set of invalidity grounds (as identified in Jon Carpenter's April 19, 2021 Email), and shall not assert new invalidity grounds that were not previously identified for a given claim.
- An invalidity argument based upon a prior art product or use counts as a single reference that includes all corroborating evidence used to show how the product or use functioned.
- Limitations on prior art combinations do not extend to prior art references used to illustrate the state of the art, the knowledge possessed by a person of ordinary skill, or to address alleged secondary considerations of non-obviousness.

---

**From:** Yin, David
**Sent:** Tuesday, May 25, 2021 9:55 AM
**To:** 'Jonathan D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Peter M Kohlhepp' <PKohlhepp@carlsoncaspers.com>; 'Jim Cleland - Dickinson-Wright' <JCleland@dickinson-wright.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Alexandra J Olson' <AOlson@carlsoncaspers.com>; 'Caroline L Marsili' <CMarsili@carlsoncaspers.com>; 'Michael N. Spink' <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com, bfarnan@farnanlaw.com; 'Flynn, Michael J.' <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; 'Derek Vandenburgh' <DVandenburgh@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jim, Sam, and Jon:

As discussed yesterday, please let us know by 1:00pm ET today whether Defendants agree to the following stipulated extensions:

- Final Supplementation of Accused Products / Invalidity References – June 9
- Final infringement contentions – June 28
- Final invalidity contentions – July 9

Plaintiffs require clarity on Defendants' position to put in a stipulation today and obtain an order before Friday, so final infringement contentions are not due on Tuesday and final invalidity contentions are not due on June 14—before Qiagen has produced documents, and before any depositions have been taken.  Plaintiffs' proposal above is fair and balanced and was intended to be a compromise; for example, it gives Plaintiffs only 1 week to react to the current close of fact discovery, and gives Defendants 2 weeks to react to the current close of fact discovery and 10 days (not including July 4) to react to infringement contentions.  Moreover, these extensions are without prejudice to the parties seeking further modifications to the current close of fact discovery and the overall case calendar, including modifications to the above deadlines.

The above is intended as a compromise position, to avoid this issue going to the Court.  If we are forced to seek an extension from the Court, we will ask that final invalidity contentions be due 1 week after final infringement contentions, i.e. that the invalidity contentions be due July 6th.

Thanks,
David

---

**From:** Yin, David
**Sent:** Friday, May 21, 2021 6:24 PM
**To:** 'Jonathan D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Peter M Kohlhepp' <PKohlhepp@carlsoncaspers.com>; 'Jim Cleland - Dickinson-Wright' <JCleland@dickinson-wright.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Alexandra J Olson' <AOlson@carlsoncaspers.com>; 'Caroline L Marsili' <CMarsili@carlsoncaspers.com>; 'Michael N. Spink' <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; 'Flynn, Michael J.' <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; 'Derek Vandenburgh' <DVandenburgh@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon, Peter, and Jim:

At today's meet-and-confer we discussed picking up the issues in my May 20 email, and the issues related to claim narrowing and prior art narrowing, on Monday, May 24 at 2:30pm ET.  Here is a dial-in for that call:

Dial-in: 917-210-2626
Code: 730805186#

Thanks,
David

---

**From:** Yin, David
**Sent:** Thursday, May 20, 2021 9:04 PM
**To:** 'Jonathan D Carpenter' <JCarpenter@carlsoncaspers.com>; 'Peter M Kohlhepp'
<PKohlhepp@carlsoncaspers.com>; 'Jim Cleland - Dickinson-Wright' <JCleland@dickinson-wright.com>
**Cc:** 'Samuel T Lockner' <SLockner@carlsoncaspers.com>; 'Alexandra J Olson'
<AOlson@carlsoncaspers.com>; 'Caroline L Marsili' <CMarsili@carlsoncaspers.com>; 'Michael N.
Spink' <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com;
'Flynn, Michael J.' <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; 'Derek
Vandenburgh' <DVandenburgh@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon, Peter, and Jim:

I write to follow up on the parties' meet-and-confer earlier today.

First, the parties discussed a number of potential compromises that both sides were going to
consider and then let the other side know where they landed.  For example, one potential
compromise discussed was a global resolution where all of the defendants' procedural motions
could be withdrawn and the claims/counterclaims/counterclaims-in-reply could be kept in the
current case in Delaware with a very modest extension for any fact discovery in the case and a
commensurate very modest push on the trial date for the case.  Plaintiffs are considering that
compromise and also asked to know defendants' views on that potential compromise, including
specifically how much additional time Defendants would propose for the modest fact discovery
extension.  Please let us know defendants' position by tomorrow COB, including specifically how
much additional time Defendants would propose for the modest fact discovery extension, and your
availability to meet-and-confer on Monday regarding the same in advance of the parties' joint status
report.

Second, we discussed the timing of various impending document productions by NeuMoDx and
Qiagen, including, e.g., NeuMoDx's potential production of documents related to opinions of counsel
that it "target[s] producing documents within 2 weeks" after May 26; and Qiagen's production of
documents beginning on June 7, its "hope" to substantially complete by June 21, and its caveat that
June 21 may not be possible.  We therefore discussed Defendants' suggested possibility for a revised
schedule reflecting a discovery clean-up extension for the close of fact discovery.  Please provide a
specific proposal for such a revised schedule—including line-items for Qiagen's substantial
completion of document production and privilege log—by tomorrow COB.  We would also like to
meet-and-confer on this issue on Monday in advance of the parties' joint status report.

Finally, we discussed extending the deadlines for final infringement contentions and final invalidity
contentions until just after the current fact discovery deadline, in light of the Court's slight delay in

issuing its Markman opinion, and in light of the depositions that must be conducted before final contentions.  We propose moving those deadlines now so that the parties can continue their discussions on the broader scheduling issues in the foregoing paragraphs.  Please let us know if you would agree to the following stipulated extensions:

> Final Supplementation of Accused Products / Invalidity References – June 9
>
> Final infringement contentions - move to June 28
>
> Final invalidity contentions - move to July 4

Please let us know defendants' position by <u>tomorrow COB</u> and what times you are available to <u>meet-and-confer on Monday</u> regarding the same in advance of the parties' joint status report.

Thanks,
David

---

**From:** Yin, David
**Sent:** Thursday, May 20, 2021 5:12 PM
**To:** 'Jonathan D Carpenter' <JCarpenter@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jonathan,

As discussed today, let's pick up the discussion of today's agenda items on tomorrow's scheduled call at 10:00-11:30am ET.  I don't know if there's already a dial-in for that call, but we can use:

Dial-in: 917-210-2626
Code: 730805186#

Thanks,
David

---

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Wednesday, May 19, 2021 3:37 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson

<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com>; bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

**EXTERNAL SENDER**

David,

We can use the following dial-in number:

888-861-1255
Pin – 349419

Thanks,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Wednesday, May 19, 2021 10:56 AM
**To:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Michael Farnanlaw <mfarnan@farnanlaw.com>; Brian E. Farnan <bfarnan@farnanlaw.com>; Flynn, Michael J. <michael.flynn@morrisnichols.com>; Jack B. Blumenfeld <jblumenfeld@mnat.com>; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon and Peter,

We are available at 4pm ET tomorrow.  Would you please circulate a dial-in?

Please also be prepared to discuss, in addition to (1) NeuMoDx's reliance on advice of counsel and production of documents related to the same, (2) Qiagen's collection and production of documents, and the timing thereof; and (3) Defendants' pending motion to dismiss for venue, motion to sever and transfer, and motion to strike.

Thanks,
David

---

**From:** Yin, David
**Sent:** Tuesday, May 18, 2021 5:02 PM
**To:** 'Jonathan D Carpenter' <JCarpenter@carlsoncaspers.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon,

Here are Plaintiffs' proposals for claim narrowing and prior art narrowing, subject to the following additional stipulations:

| | Limit | Current Number | Plaintiffs' Proposed Limit |
|---|---|---|---|
| Claim Narrowing | Total Limit:  Limit on the Total Number of Asserted Claims Across All Patents | 120 | 80<br><br>[33% reduction] |
| | Per Patent Limit:  Maximum Number of Asserted Claims For Any Single Patent | 14 | 14 |
| Prior Art Narrowing | Total Limit:  Limit on the Total Number of Invalidity Grounds Across All Patents (where anticipation counts separately from single-reference obviousness, and any prior art combinations should be specifically identified, i.e., in the form: A + B, A + C, or A + B + C, etc.) | 164 grounds, max 6 references per combination | 110 grounds, max 6 references per combination<br><br>[33% reduction] |
| | | 2 times the number of | 2 times the number of |

|  | | Asserted Claims (Para 2 of Nov. 4, 2020 Letter to the Court) | Asserted Claims (Para 2 of Nov. 4, 2020 Letter to the Court) |
|---|---|---|---|
|  | <u>Per Patent Limit</u>: Maximum Number of Invalidity Grounds For Any Single Patent | 3 times maximum number of asserted claims per patent (Para 3 of Nov. 4, 2020 Letter to the Court) | 3 times maximum number of asserted claims per patent (Para 3 of Nov. 4, 2020 Letter to the Court) |

- By "narrowing," it is meant that Plaintiffs shall narrow from their existing set of asserted claims (identified in Plaintiffs' December 9, 2020 email), and shall not assert new claims that were not previously asserted for a given patent.  Defendants shall narrow from their existing set of invalidity grounds (as identified in Jon Carpenter's April 19, 2021 Email), and shall not assert new invalidity grounds that were not previously identified for a given claim.
- An invalidity argument based upon a prior art product or use counts as a single reference that includes all corroborating evidence used to show how the product or use functioned.
- Limitations on prior art combinations do not extend to prior art references used to illustrate the state of the art, the knowledge possessed by a person of ordinary skill, or to address alleged secondary considerations of non-obviousness.

Furthermore, as described in separate correspondence, NeuMoDx has (1) failed to provide sufficient invalidity contentions, and (2) failed to adequately respond to Plaintiffs' non-infringement contention interrogatory (Plaintiffs' Interrogatory No. 4), including by failing to cite any documents, much less citing documents on a limitation-by-limitation basis (as Plaintiffs have done in their infringement contentions).  Plaintiffs require sufficient invalidity contentions, and sufficient non-infringement interrogatory responses, before they can rationally engage in claim narrowing.

Plaintiffs reserve the right to further amend their proposals based on the parties' meet-and-confer and in view of Defendants' proposals.

Thanks,
David

---

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Tuesday, May 18, 2021 5:00 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com;

bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>;
jblumenfeld@mnat.com; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>; Jonathan D
Carpenter <JCarpenter@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

**EXTERNAL SENDER**

David,

Defendants propose a reduction to 26 asserted claims with no more than 4 asserted claims per
patent.  With respect to prior art, Defendants propose the following:

- The number of prior art references is less than or equal to two (2) times the maximum
  number of asserted claims allowed (i.e.  52)
- The number of prior art of combinations is less than or equal to three (3) times the maximum
  number of asserted claims allowed per patent (i.e. 12)
- No more than 6 prior art references in a single combination
- An invalidity argument based upon a prior art product or use counts as a single reference that
  includes all corroborating evidence used to show how the product or use functioned
- Limitations on prior art combinations do not extend to prior art references used to illustrate
  the state of the art, the knowledge possessed by a person of ordinary skill, or to address
  alleged secondary considerations of non-obviousness

This proposal is subject to discussion and modification.

As to your proposed time to meet and confer regarding Defendants' proposal regarding questions
on waiver of privilege/reliance on advice of counsel, I am not available to meet and confer during the
conference you have scheduled with my colleagues on Wednesday.  Moreover, I understand that
the issues identified for that call will require all the scheduled time.  We are available for a call on
Thursday between 4 and 5 pm ET to discuss our proposal regarding Plaintiffs' questions about
reliance on advice of counsel, as well as the parties' proposals for asserted claim/prior art
reductions.  Please let me know if you are available at that time.

Regards,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976

JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Tuesday, May 18, 2021 10:19 AM
**To:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>; Khan, Omar
<Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-
wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Michael Farnanlaw
<mfarnan@farnanlaw.com>; Brian E. Farnan <bfarnan@farnanlaw.com>; Flynn, Michael J.
<michael.flynn@morrisnichols.com>; Jack B. Blumenfeld <jblumenfeld@mnat.com>; Derek
Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon,

Unfortunately, we are now unable to make a 12pm ET exchange, but can do the simultaneous
exchange at 5pm ET today.

Thanks,
David

**From:** Yin, David
**Sent:** Monday, May 17, 2021 6:24 PM
**To:** 'Jonathan D Carpenter' <JCarpenter@carlsoncaspers.com>; Khan, Omar
<Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-
wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com;
bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>;
jblumenfeld@mnat.com; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon,

Plaintiffs can provide their proposal tomorrow May 18, at 12pm ET.

As to your May 14 email, we object to your proposal regarding defendants' reliance on advice of
counsel and production of related documents.  Please be prepared to meet-and-confer regarding
that issue during our scheduled Wednesday conference.

Thanks,

David

---

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Monday, May 17, 2021 4:38 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; Jim Cleland - Dickinson-Wright <JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>; Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

EXTERNAL SENDER

David,

We received no response from Plaintiffs and the proposed exchange time today has passed.  The Court ordered that the parties meet and confer to propose additional reductions "in a timely manner" (D.I. 208), and there is no reason to delay, particularly given the upcoming deadlines regarding Final Infringement and Final Invalidity Contentions.

Defendants are prepared to provide their proposal tomorrow, May 18, at 12 pm ET, provided that Plaintiffs confirm they will do the same.  Please confirm this is acceptable.

Thanks,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Friday, May 14, 2021 4:58 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson

<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; James Cleland (JCleland@dickinson-wright.com)
<JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Michael
Farnanlaw <mfarnan@farnanlaw.com>; Brian E. Farnan <bfarnan@farnanlaw.com>; Flynn, Michael
J. <michael.flynn@morrisnichols.com>; Jack B. Blumenfeld <jblumenfeld@mnat.com>; Derek
Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

David,

The Court ordered the parties to meet and confer to propose additional reductions of asserted
claims.  Your statement that a proposal to narrow the prior art is not dependent on the number of
asserted claims is untrue.  Not all of the prior art-related limitations in this case have been framed as
a per-claim limit, and even that approach might need to be revisited as the number of asserted
claims is reduced.  Nonetheless, in an effort to move this discussion forward, Defendants will provide
a proposal for reduction of asserted claims and prior art (which we will subject to discussion and
modification) on Monday, May 17, at 12 pm CT, provided Plaintiffs will do the same.  Please confirm
this is acceptable.

Regarding Plaintiffs' questions on waiver of privilege/reliance on advice of counsel, we will provide
Plaintiffs with Defendants' position by May 26.  This will give Defendants additional time to analyze
Plaintiffs' recent supplemental responses to interrogatories regarding their allegations of
infringement and willfulness (supplemented for the first time on May 3, 2021).  If Defendants decide
to rely on advice of counsel, we will target producing documents within 2 weeks after May 26.

Regards,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Thursday, May 13, 2021 6:33 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; James Cleland (JCleland@dickinson-wright.com)
<JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Michael
Farnanlaw <mfarnan@farnanlaw.com>; Brian E. Farnan <bfarnan@farnanlaw.com>; Flynn, Michael

J. <michael.flynn@morrisnichols.com>; Jack B. Blumenfeld <jblumenfeld@mnat.com>; Derek
Vandenburgh <DVandenburgh@carlsoncaspers.com>; Jonathan D Carpenter
<JCarpenter@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

David,

We have been busy with numerous filings today. We will look into your requests and respond no
later than COB tomorrow.

Regards,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Wednesday, May 12, 2021 5:59 PM
**To:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>; Khan, Omar
<Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; James Cleland (JCleland@dickinson-wright.com)
<JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Michael
Farnanlaw <mfarnan@farnanlaw.com>; Brian E. Farnan <bfarnan@farnanlaw.com>; Flynn, Michael
J. <michael.flynn@morrisnichols.com>; Jack B. Blumenfeld <jblumenfeld@mnat.com>; Derek
Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon,

If Defendants seek further claim narrowing, they must provide their proposal and we request that
they do so on same timeline as requested of Plaintiffs.  Moreover, we request that Defendants also
provide their proposal for narrowing prior art at the same time; there is no reason to require
staggered proposals or an "order for the proposals," particularly given that the prior art narrowing
framework in this case has been framed as a per-claim limit.  Please confirm by noon ET tomorrow
that each side can simultaneously exchange its prior art narrowing and its claim narrowing proposals
at noon ET on Friday.

Please also confirm by noon ET tomorrow that Defendants will provide an express indication in writing by noon ET on Friday of (i) whether Defendants' are relying on any advice of counsel, opinions of counsels, FTOs and/or legal advice or counsel in connection with Defendants' defenses to Plaintiffs' claims; (ii) if so, Defendants' views as to the scope of the privilege waiver and (iii) when Defendants will be producing the withheld material relating to advice of counsel, opinions of counsels, FTOs and/or legal advice or counsel.  We will be filing a discovery dispute letter with the Court on Friday if we do not get the foregoing confirmations and information by noon ET Friday. This issue has been the subject of numerous discussions, including our meet-and-confer with morning with Alex Olson and Jim Cleland, and as far back as the February 8 meet-and-confer with Jim Cleland, and we intend to bring it to a head.

Thanks,
David

---

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Wednesday, May 12, 2021 5:48 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Khan, Omar <Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L Marsili <CMarsili@carlsoncaspers.com>; James Cleland (JCleland@dickinson-wright.com) <JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J. <michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com; Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>; Derek Vandenburgh <DVandenburgh@carlsoncaspers.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

**EXTERNAL SENDER**

David,

The order for the proposals matters.  As the Plaintiffs, you are identifying what claims you are asserting against Defendants.  Defendants' prior art reductions are contingent on the scope of Plaintiffs' reduction of asserted claims.  Thus, please provide us with Plaintiffs' proposal for its additional reduction of the number of asserted claims.  Feel free to also provide proposals for narrowing prior art if you wish, but we require Plaintiffs' claim reduction proposal before making Defendants' proposal on prior art reductions.  Please provide Plaintiffs' proposal by 12 pm ET on Thursday, May 13.  Defendants will consider Plaintiffs' proposal and provide a counterproposal.

Regarding your inquiries about waiver of privilege, those issues are not and should not be tied to the reduction of asserted claims as ordered by the Court.  Defendants will respond regarding those issues separately.

Regards,
Jon

Jonathan D Carpenter
Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Tuesday, May 11, 2021 1:23 PM
**To:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>; Khan, Omar
<Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; James Cleland (JCleland@dickinson-wright.com)
<JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>; Michael
Farnanlaw <mfarnan@farnanlaw.com>; Brian E. Farnan <bfarnan@farnanlaw.com>; Flynn, Michael
J. <michael.flynn@morrisnichols.com>; Jack B. Blumenfeld <jblumenfeld@mnat.com>
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon,

As a follow up to our email below, please provide – at the same time you provide your proposals for
claim and prior art narrowing – an express indication in writing of (i) whether Defendants' are relying
on any advice of counsel, opinions of counsels, FTOs and/or legal advice or counsel in connection
with Defendants' defenses to Plaintiffs' claims; (ii) if so, Defendants' views as to the scope of the
privilege waiver and (iii) when Defendants will be producing the withheld material relating to advice
of counsel, opinions of counsels, FTOs and/or legal advice or counsel.  Please also be prepared to
meet-confer on all three of those issues at the same time that the parties meet-confer on claim and
prior art narrowing.

Best,
David

---

**From:** Yin, David
**Sent:** Tuesday, May 11, 2021 12:31 PM
**To:** 'Jonathan D Carpenter' <JCarpenter@carlsoncaspers.com>; Khan, Omar
<Omar.Khan@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson

<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; James Cleland (JCleland@dickinson-wright.com)
<JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J.
<michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com
**Subject:** RE: BD/NeuMoDx - post-Markman reduction of asserted claims

Jon,

Thanks for your email.  Please confirm you will provide Defendants' proposals for claim narrowing
and prior art narrowing on the same timeline as Plaintiffs provide their proposals.  With respect to
whether we can agree to the specific timeline you proposed, we are discussing internally and will
confirm, but it seems workable.  We can use the meet-confer on interrogatory responses (as being
scheduled in parallel thread with Alex Olson) to meet/confer on this issues as well.

Thanks,
David

---

**From:** Jonathan D Carpenter <JCarpenter@carlsoncaspers.com>
**Sent:** Tuesday, May 11, 2021 10:15 AM
**To:** Khan, Omar <Omar.Khan@wilmerhale.com>; Yin, David <David.Yin@wilmerhale.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Caroline L
Marsili <CMarsili@carlsoncaspers.com>; James Cleland (JCleland@dickinson-wright.com)
<JCleland@dickinson-wright.com>; Michael N. Spink <MSpink@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Flynn, Michael J.
<michael.flynn@morrisnichols.com>; jblumenfeld@mnat.com
**Subject:** BD/NeuMoDx - post-Markman reduction of asserted claims

**EXTERNAL SENDER**

Counsel,

Judge Stark's November 24, 2020 order (D.I. 108) requires that the parties must meet and confer "in
a timely manner after issuance of the claim construction order" to discuss additional reduction of
the number of asserted claims.  The Markman order issued yesterday.  (D.I. 232)  Please provide
Plaintiffs' proposal for its additional reduction of the number of asserted claims by no later than **12
pm ET on Thursday, May 13**.  Please also provide your availability on Friday, May 14, to meet and
confer on that issue.

Regards,
Jon

Jonathan D Carpenter

Attorney
Carlson Caspers
225 S. Sixth St., Suite 4200
Minneapolis, MN 55402
Direct: 612.436.9661
Cell: 763-257-2976
JCarpenter@carlsoncaspers.com
carlsoncaspers.com
BIO | vCard | Disclaimers

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BECTON, DICKINSON AND COMPANY,
GENEOHM SCIENCES CANADA, INC.
and HANDYLAB, INC.,

                      Plaintiffs,

v.

NEUMODX MOLECULAR, INC.,

                      Defendant.

C.A. No. 19-cv-1126-LPS

**JURY TRIAL DEMANDED**

**DEFENDANT NEUMODX'S RESPONSES TO PLAINTIFFS'**
**THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Defendant NeuMoDx Molecular, Inc. ("NeuMoDx"), by and through its respective

attorneys, hereby respond to Plaintiffs Becton, Dickinson and Company, Geneohm Sciences

Canada, Inc. and HandyLab, Inc.'s (collectively "Plaintiff's") Third Set of Requests for the

Production of Documents and Things to Defendant (Nos. 7-205).

**GENERAL OBJECTIONS**

NeuMoDx hereby incorporates the General Objections from its Objections and

Responses to Plaintiffs' First Request for Production of Documents and Things to Defendant

NeuMoDx Molecular (Nos. 1 and 2), served September 18, 2020.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 7:**

All documents that refer or relate to the Accused Products.

**RESPONSE TO REQUEST NO. 7:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it

seeks information protected by the attorney-client privilege, common interest privilege, joint

further objects to this Request as overly broad and unduly burdensome to the extent it recites

"Design History Files, Device Master Files, Device Master Records, Design Master Files, Master

Files for Devices, or Master Files."  NeuMoDx further objects to this Request as overly broad

and unduly burdensome to the extent that the term "Accused Product" is defined to include more

than the specifically identified Accused Products as defined in paragraph 33 of Plaintiffs' First

Amended Complaint (D.I. 54).  NeuMoDx objects to this request to the extent it seeks

information that is not relevant to any claim or defense or is not proportional to the needs of the

case, considering the importance of the issues at stake in the action, the amount in controversy,

the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit.  Subject to and without waiving these objections, NeuMoDx has

already produced technical documents as required by the local rules governing this case.  If

Plaintiffs contend additional documents are needed, NeuMoDx will meet and confer provided

that Plaintiffs tailor their request, identify what additional documents they need, and explain their

relevancy.

## REQUEST NO. 10:

All prior versions of the technical documents produced by NeuMoDx prior to the date of this Request.

## RESPONSE TO REQUEST NO. 10:

In addition to the General Objections, NeuMoDx objects to this Request to the extent it

seeks information protected by the attorney-client privilege, common interest privilege, joint

litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further

objects to this Request as overly broad and unduly burdensome, in that the request for "*all* prior

versions of the technical documents" does not reflect the proportionality limits of Rule 26(b)(1).

NeuMoDx further objects to this Request as vague and ambiguous, and to the extent understood, overly broad and unduly burdensome to the extent it recites "prior versions of the technical documents." NeuMoDx objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Specifically, NeuMoDx does not understand how prior versions of any technical documents are relevant to any issue in this case. Subject to and without waiving these objections, NeuMoDx will not produce any documents in response to this request unless Plaintiffs identify specific documents for which it is requesting prior versions and provide an articulable basis of the relevance of such documents.

**REQUEST NO. 11:**

All documents related to testing or measurement of temperature in or relating to the XPCR module, XPCR cartridge, PCR reaction chamber, PCR Heater, or PCR heater laminate.

**RESPONSE TO REQUEST NO. 11:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine. NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "All documents related to testing or measurement of temperature" does not reflect the proportionality limits of Rule 26(b)(1). NeuMoDx further objects to this Request as vague and ambiguous to the extent it recites "XPCR module, XPCR cartridge, PCR reaction chamber, PCR heater, or PCR heater laminate," which are undefined. NeuMoDx further objects to this Request as vague and

5

proportionality limits of Rule 26(b)(1).  NeuMoDx further objects to this Request as vague and ambiguous with respect to the term "Accused Product" as Plaintiffs have defined it.  NeuMoDx further objects to this Request as overly broad and unduly burdensome to the extent that the term "Accused Product" is defined to include more than the specifically identified Accused Products as defined in paragraph 33 of Plaintiffs' First Amended Complaint (D.I. 54).  NeuMoDx objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  NeuMoDx further objects to this Request as cumulative and duplicative of Plaintiffs' other Requests.  NeuMoDx further objects to this Request as cumulative and duplicative of Plaintiffs' other Requests.  NeuMoDx further objects to this Request as vague and ambiguous with respect to the phrases "design, function, method, operation, and features," which are undefined.   Subject to and without waiving these objections, NeuMoDx will produce non-privileged documents sufficient to generally show the design and function of the specific products identified in paragraph 33 of Plaintiffs' First Amended Complaint to the extent such documents are in NeuMoDx's possession and are located after a reasonable search.

## REQUEST NO. 46:

All documents, drawings, photos, models and prototypes that comprise, refer to, or relate to the Accused Products or any prior version of the Accused Products.

## RESPONSE TO REQUEST NO. 46:

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint

litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "*all documents, drawings, photos, models and prototypes*" does not reflect the proportionality limits of Rule 26(b)(1).  NeuMoDx objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive.  NeuMoDx further objects to this Request as vague and ambiguous with respect to the term "Accused Product" as Plaintiffs have defined it.  NeuMoDx further objects to this Request as overly broad and unduly burdensome to the extent that the term "Accused Product" is defined to include more than the specifically identified Accused Products as defined in paragraph 33 of Plaintiffs' First Amended Complaint (D.I. 54).  NeuMoDx further objects to this Request as not relevant to the extent it seeks information relating to products that are not at issue in this case.  Subject to and without waiving these objections, NeuMoDx will not produce any non-privileged documents in response to this request unless Plaintiffs tailor it so that it seeks documents relevant to a claim or defense at issue in this lawsuit.

## REQUEST NO. 47:

All documents and things relating to the testing or analysis of the Accused Products conducted by or for You, including quality control testing, batch testing, type testing, certification testing, conformance testing, in-use testing, internal testing, third-party testing, the first testing conducted by You of the performance of the Accused Products prior to launch, any testing to support or generate validation and verification data, and any testing relating to research and development of the Accused Products.

## RESPONSE TO REQUEST NO. 47:

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine. NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "*all*

litigation privilege, related privilege, and/or attorney work product doctrine. NeuMoDx further

objects to this Request as overly broad and unduly burdensome, in that the request for "*all*

documents and things*" does not reflect the proportionality limits of Rule 26(b)(1).  NeuMoDx

objects to this request to the extent it seeks information that is in the possession of the Plaintiffs

or that is available from another source that is more convenient, less burdensome, and less

expensive. NeuMoDx further objects to this Request as vague and ambiguous with respect to the

terms "presentation, poster, board, brochure, pamphlet, catalogue, flyer, advertisement, mailer,

video, demonstration, and/or press release," which are undefined.  NeuMoDx objects to this

request to the extent it seeks information that is not relevant to any claim or defense or is not

proportional to the needs of the case, considering the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit.  Subject to and without waiving

these objections, NeuMoDx will produce representative samples of non-privileged documents

distributed or presented by NeuMoDx at trade shows or conferences that refer or relate to the

specific products identified in paragraph 33 of Plaintiffs' First Amended Complaint to the extent

such documents are in NeuMoDx's possession and are located after a reasonable search.

**REQUEST NO. 70:**

     All documents and things, including communications, that relate to BD or HandyLab, any BD or HandyLab products, or any BD or HandyLab patents.

**RESPONSE TO REQUEST NO. 70:**

     In addition to the General Objections, NeuMoDx objects to this Request to the extent it

seeks information protected by the attorney-client privilege, common interest privilege, joint

litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further

objects to this Request as overly broad and unduly burdensome, in that the request for "*all* documents and things" does not reflect the proportionality limits of Rule 26(b)(1).  NeuMoDx objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive. NeuMoDx objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Subject to and without waiving these objections, NeuMoDx will not produce non-privileged documents specifically in response to this Request unless Plaintiffs clearly articulate the scope of documents sought beyond what has been requested and what NeuMoDx has already provided.

**REQUEST NO. 71:**

All documents and things, including communications, that relate to the BD MAX, BD COR, Raider, and/or Jaguar systems, instruments, kits, assays, reagents, or consumables.

**RESPONSE TO REQUEST NO. 71:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "*all* documents, and things" does not reflect the proportionality limits of Rule 26(b)(1).  NeuMoDx objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive.  NeuMoDx objects to this request to the extent it seeks information that is not

relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Subject to and without waiving these objections, NeuMoDx will produce non-privileged documents relating to the BD MAX, BD COR, Raider, or Jaguar systems to the extent such documents are in NeuMoDx's possession and are located after a reasonable search

**REQUEST NO. 72:**

All documents relating to any discussions or communications with Plaintiffs concerning the Asserted Patents, BD or HandyLab patents, Accused Products, and/or any molecular diagnostics systems in development, made, sold or offered for sale by BD, HandyLab, or NeuMoDx, even if the molecular diagnostics systems were still in development at the time of the discussions or communications.

**RESPONSE TO REQUEST NO. 72:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "All documents relating to any discussions or communications with Plaintiffs" does not reflect the proportionality limits of Rule 26(b)(1).  NeuMoDx further objects to this Request as vague and ambiguous with respect to the term "Accused Product" as Plaintiffs have defined it.  NeuMoDx further objects to this Request as overly broad and unduly burdensome to the extent that the term "Accused Product" is defined to include more than the specifically identified Accused Products as defined in paragraph 33 of Plaintiffs' First Amended Complaint (D.I. 54).  NeuMoDx objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is

available from another source that is more convenient, less burdensome, and less expensive. NeuMoDx further objects to this Request as vague and ambiguous with respect to the term "molecular diagnostics systems." NeuMoDx objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Subject to and without waiving these objections, NeuMoDx will produce non-privileged documents relating to communications with Plaintiffs concerning the Asserted Patents, HandyLab patents, NeuMoDx's products, and other molecular diagnostics systems of NeuMoDx or HandyLab to the extent such documents are in NeuMoDx's possession and are located after a reasonable search.

**REQUEST NO. 73:**

All documents and things relating to any meetings, negotiations, pitches, or discussions, or any other communications between You and Plaintiffs relating to potential investment, partnership, sale, offer for sale, or licensing opportunities between You and Plaintiffs.

**RESPONSE TO REQUEST NO. 73:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine. NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "*all* documents and things" relating to communications does not reflect the proportionality limits of Rule 26(b)(1). NeuMoDx objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less

request to the extent it seeks information that is not relevant to any claim or defense or is not

proportional to the needs of the case, considering the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit.  Subject to and without waiving

these objections, NeuMoDx will produce non-privileged documents sufficient to show the design

of NeuMoDx's products identified in paragraph 33 of Plaintiffs' Amended Complaint to the

extent such documents are in NeuMoDx's possession and are located after a reasonable search.

**REQUEST NO. 129:**

All documents and things that support, contradict, or undermine any contention that
NeuMoDx intentionally designed away from the Asserted Patents or BD and/or HandyLab
products.

**RESPONSE TO REQUEST NO. 129:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it

seeks information protected by the attorney-client privilege, common interest privilege, joint

litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further

objects to this Request as premature to the extent it calls for expert opinion.  NeuMoDx further

objects to this Request to the extent it calls for a legal conclusion.  NeuMoDx further objects to

this Request as cumulative and duplicative of Plaintiffs' other Requests.  NeuMoDx further

objects to this Request as overly broad and unduly burdensome, in that the request for "[*a*]*ll*

documents and things that support, contradict, or undermine any contention that NeuMoDx

intentionally designed away from the Asserted Patents or BD and/or HandyLab Products" does

not reflect the proportionality limits of Rule 26(b)(1). NeuMoDx objects to this request to the

extent it seeks information that is not relevant to any claim or defense or is not proportional to

the needs of the case, considering the importance of the issues at stake in the action, the amount

in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit. Subject to and without waiving these objections,

NeuMoDx will produce non-privileged documents sufficient to show the design of NeuMoDx's

products identified in paragraph 33 of Plaintiffs' Amended Complaint to the extent such

documents are in NeuMoDx's possession and are located after a reasonable search.

**REQUEST NO. 130:**

All documents and things considered, referenced, or relied upon by NeuMoDx in
designing its products, including any common, prior art components.

**RESPONSE TO REQUEST NO. 130:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it

seeks information protected by the attorney-client privilege, common interest privilege, joint

litigation privilege, related privilege, and/or attorney work product doctrine. NeuMoDx further

objects to this Request as overly broad and unduly burdensome, in that the request for "[*a*]*ll*

documents and things" considered in designing its products does not reflect the proportionality

limits of Rule 26(b)(1).  NeuMoDx objects to this request to the extent it seeks information that

is not relevant to any claim or defense or is not proportional to the needs of the case, considering

the importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

likely benefit. NeuMoDx further objects to this Request as vague and ambiguous with respect to

the phrase "common, prior art components," which is undefined.  NeuMoDx further objects to

this request to the extent it seeks information that is in the possession of the Plaintiffs or that is

available from another source that is more convenient, less burdensome, and less expensive.

Subject to and without waiving these objections, NeuMoDx will produce non-privileged

documents referenced or relied upon by NeuMoDx in designing the products identified in

paragraph 33 of Plaintiffs' Amended Complaint to the extent such documents are in NeuMoDx's

possession and are located after a reasonable search.

### REQUEST NO. 131:

All documents relating to whether You copied, considered, or referenced the Asserted
Patents or Plaintiffs' technology relating to the subject matter and inventions of the Asserted
Patents before or during the design of any of Your products.

### RESPONSE TO REQUEST NO. 131:

In addition to the General Objections, NeuMoDx objects to this Request to the extent it

seeks information protected by the attorney-client privilege, common interest privilege, joint

litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further

objects to this Request as cumulative and duplicative of Plaintiffs' other Requests.  NeuMoDx

further objects to this Request to the extent it calls for a legal conclusion.  NeuMoDx further

objects to this Request as overly broad and unduly burdensome, in that the request for "[*a*]*ll*

documents . . . [referencing] the Asserted Patents Plaintiffs' technology" does not reflect the

proportionality limits of Rule 26(b)(1).  NeuMoDx further objects to this Request as overly

broad and unduly burdensome in that it requests documents for "design of *any* of [NeuMoDx's]

products," regardless of whether they are at issue in this litigation.  Subject to and without

waiving this objection, NeuMoDx will produce non-privileged documents related to any

consideration of the Asserted Patents in the development of the NeuMoDx 96 and NeuMoDx

288 systems, to the extent such documents are in NeuMoDx's possession and are located after a

reasonable search.

**REQUEST NO. 132:**

All documents relating to any actual or attempted reverse engineering of any of BD or HandyLab products, or any inventions embodied by the claims of the Asserted Patents, or BD or HandyLab patents.

**RESPONSE TO REQUEST NO. 132:**

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine.  NeuMoDx further objects to this Request as cumulative and duplicative of Plaintiffs' other Requests.  NeuMoDx further objects to this Request to the extent it calls for a legal conclusion.  NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "[*a*]*ll* documents relating to any actual or attempted reverse engineering of any of BD or HandyLab products, or any inventions embodied by the claims of the Asserted Patents, or BD or HandyLab patents" does not reflect the proportionality limits of Rule 26(b)(1).  NeuMoDx objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Subject to and without waiving this objection, and based upon investigation to date, NeuMoDx states that it has no documents responsive to this Request.

**REQUEST NO. 133:**

All documents and things relating to the prosecution, scope, validity, and enforceability of any or all of the Asserted Patents or the subject matter of the Asserted Patents, including all

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Subject to and without waiving this objection, NeuMoDx will produce non-privileged documents relating to any opinions of counsel relating to the Asserted Patents and/or BD or HandyLab patents to the extent such documents are in NeuMoDx's possession and are located after a reasonable search.

## REQUEST NO. 137:

All documents and things relating to any comparison of the features, functions, characteristics, or qualities of any of the Accused Products with any of the Asserted Patents, BD Patents, HandyLab Patents, BD products, and/or HandyLab products.

## RESPONSE TO REQUEST NO. 137:

In addition to the General Objections, NeuMoDx objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine. NeuMoDx further objects to this Request as overly broad and unduly burdensome, in that the request for "[*a*]*ll* documents and things relating to any comparison of the features, functions, characteristics, or qualities of any of the Accused Products with any of the Asserted Patents, BD Patents, HandyLab Patents, BD products, and/or HandyLab products" does not reflect the proportionality limits of Rule 26(b)(1). NeuMoDx further objects to this Request as overly broad and unduly burdensome in that it requests documents for "*any* comparison of the features, functions, characteristics, or qualities of *any* of the Accused Products with *any* of the Asserted Patents, BD Patents, HandyLab Patents, BD products, and/or HandyLab products," regardless of whether they are at issue in this litigation.  NeuMoDx further objects to this Request as overly broad and unduly burdensome to the extent that the term "Accused Product" is defined to include more than the specifically identified Accused Products as defined in paragraph 33 of Plaintiffs' First

Amended Complaint (D.I. 54).  NeuMoDx further objects to this Request as vague and

ambiguous with respect to the term "Accused Product" as Plaintiffs have defined it.  NeuMoDx

objects to this request to the extent it seeks information that is not relevant to any claim or

defense or is not proportional to the needs of the case, considering the importance of the issues at

stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit.  NeuMoDx objects to

this request to the extent it seeks information that is in the possession of the Plaintiffs or that is

available from another source that is more convenient, less burdensome, and less expensive.

NeuMoDx further objects to this Request as cumulative and duplicative of Plaintiffs' other

Requests.  Subject to and without waiving this objection, NeuMoDx will produce non-privileged

documents relating to any comparisons between the NeuMoDx's products and the Asserted

Patents to the extent such documents are in NeuMoDx's possession and are located after a

reasonable search.

## REQUEST NO. 138:

All documents relating to the non-obviousness or obviousness of any subject matter
claimed or disclosed in the Asserted Patents, including but not limited to all documents relating
to secondary considerations of non-obviousness with respect to the Asserted Patents, including
commercial success, long-felt need, commercial acquiescence, expressions of skepticism,
copying, teaching away, successful or failed attempts by others, or simultaneous development.

## RESPONSE TO REQUEST NO. 138:

In addition to the General Objections, NeuMoDx objects to this Request to the extent it

seeks information protected by the attorney-client privilege, common interest privilege, joint

litigation privilege, related privilege, and/or attorney work product doctrine.   NeuMoDx further

objects to this Request as overly broad and unduly burdensome, in that the request for "[*a*]*ll*

# EXHIBIT 5

| | |
|---|---|
| **From:** | Yin, David |
| **To:** | "James K. Cleland" |
| **Cc:** | Samuel T Lockner; Alexandra J Olson; Peter M Kohlhepp; Jon D Carpenter; Michael N. Spink; Keith D. Weiss; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar; "mflynn@mnat.com"; jblumenfeld@mnat.com; Yin, David |
| **Subject:** | RE: EXTERNAL: RE: Search Terms for Electronic Discovery |
| **Date:** | Friday, January 15, 2021 5:48:00 PM |

Jim,

Below are the search terms Plaintiffs intend to use to search custodial and non-custodial ESI data sources, including on custodial emails, in accordance with the Delaware Default Standard for Discovery Including Discovery of ESI.  Please let us know you have any comments and/or additional terms, pursuant to Paragraph 5(b) of the Default Standard, by mid-next week.

Hope you have a good weekend and a good MLK, Jr. Day.

Thanks,
David

| **Plaintiffs' Search Terms** |
|---|
| 7998708 OR 8273308 OR 8323900 OR 8415103 OR 8703069 OR 8709787 OR 10494663 OR 10364456 OR 10443088 OR 10604788 OR 10625261 OR 10625262 OR 10632466 OR "7 998 708" OR "8 273 308" OR "8 323 900" OR "8 415 103" OR "8 703 069" OR "8 709 787" OR "10 494 663" OR "10 364 456" OR "10 443 088" OR "10 604 788" OR "10 625 261" OR "10 625 262" OR "10 632 466" |
| patent* w/3 (708 OR 308 OR 900 OR 103 OR 069 OR 787 OR 663 OR 456 OR 088 OR 788 OR 261 OR 262 OR 466) |
| *985577 OR "985 577" OR *929971 OR "929 971" OR *035725 OR "035 725" OR *358441 OR "358 440" OR *620452 OR "620 452" OR *940310 OR "940 310" OR *556121 OR "556 121" OR *506471 OR "506 471" OR *518735 OR "518 735" OR *556067 OR "556 067" OR *697995 OR "697 995" OR *698022 OR "698 022" OR *698023 OR "698 023" |
| 60859284 OR "60 859284" OR 859284 OR 60959437 OR "60 959437" OR 959437 OR 60786007 OR "60 786007" OR 786007 OR 60307638 OR "60 307638" OR 307638 OR 60567174 OR "60 567174" OR 567174 OR "60645784 OR "60 645784" OR 645784 |
| NeuMoDx OR NMDX |
| N96 OR N288 |
| "Life Magnetics" |
| "Molecular Systems Corp*" |
| Qiagen w/25 (licens* OR suppl*) |
| Jeff* w/3 Williams |
| jeff@cavlake.com |
| (Jeff* OR Williams) w/100 MSC |
| Sundaresh OR Sundu OR Brahmasandra OR Sundhu |
| sundu11 |

((Cece OR Ceecee OR Cecelia) w/3 Haley) w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

((Ted* OR Theodore) w/3 Springer) w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

(Betty w/3 Wu) w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

(Elizabeth w/3 (Craig OR Boutt)) w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

(Kalyan OR Handique) w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

(Kerry w/3 Wilson) w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

Althaus w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

Ganesan w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

Kehrer w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

Parunak w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

Phadke w/25 (invent* OR design* OR patent* OR application* OR conception OR conceiv* OR creat* OR test* OR analy* OR work* OR research* OR author* OR article* OR publi* OR idea* OR cartridge* OR heat* OR chamber* OR sample*)

(Ric* w/3 Bone) OR Israelsen OR (Maria w/3 Stout)

Tractor OR Domino OR (Hercules NOT w/3 (California OR "CA"))

**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Friday, January 15, 2021 10:42 AM
**To:** Yin, David <David.Yin@wilmerhale.com>; Khan, Omar <Omar.Khan@wilmerhale.com>;
'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D
Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>;
Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com;
bfarnan@farnanlaw.com
**Subject:** RE: EXTERNAL: RE: Search Terms for Electronic Discovery



**EXTERNAL SENDER**

David,

While I understand you were not able to provide them yesterday, we need any additional search
terms for NeuMoDx's documents from BD by COB today.  We simply cannot wait any longer in order
to comply with substantial document production deadlines.  If you wait to provide any supplemental
search terms until next week, we will do our best, but we fear it may place the deadline in jeopardy.

Jim

*For docketing purposes of patent & trademark matters only*, please add the appropriate email
of dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails
being sent to our office. Thank you.

**James K. Cleland** Member

350 S. Main Street          Phone  734-436-7356
Suite 300
Ann Arbor MI 48104          Fax     844-670-6009
[Profile] [V-Card]          Email   JCleland@dickinsonwright.com



ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

**From:** Yin, David <David.Yin@wilmerhale.com>
**Sent:** Thursday, January 14, 2021 3:39 PM
**To:** James K. Cleland <JCleland@dickinson-wright.com>; Khan, Omar
<Omar.Khan@wilmerhale.com>; 'mflynn@mnat.com' <mflynn@mnat.com>;
jblumenfeld@mnat.com

**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; Peter M Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D
Carpenter <JCarpenter@carlsoncaspers.com>; Michael N. Spink <MSpink@dickinson-wright.com>;
Keith D. Weiss <KWeiss@dickinson-wright.com>; mfarnan@farnanlaw.com;
bfarnan@farnanlaw.com
**Subject:** EXTERNAL: RE: Search Terms for Electronic Discovery

Jim,

Thanks for your email disclosing NeuMoDx's search terms.  We are reviewing, and we aim to get
back to you with our comments and/or additional terms early next week.  As we indicated in our
prior, separate email on Tuesday afternoon, we aim to send you Plaintiffs' search terms on Friday.
We would request comments and/or additional terms by mid next week.

Thanks,
David

---

**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Tuesday, January 12, 2021 8:26 PM
**To:** Khan, Omar <Omar.Khan@wilmerhale.com>; Yin, David <David.Yin@wilmerhale.com>;
'mflynn@mnat.com' <mflynn@mnat.com>; jblumenfeld@mnat.com
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Alexandra J Olson
<AOlson@carlsoncaspers.com>; James K. Cleland <JCleland@dickinson-wright.com>; Peter M
Kohlhepp <PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>;
Michael N. Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-
wright.com>; James K. Cleland <JCleland@dickinson-wright.com>; mfarnan@farnanlaw.com;
bfarnan@farnanlaw.com
**Subject:** Search Terms for Electronic Discovery

**EXTERNAL SENDER**

David and Omar,

Despite many months of NeuMoDx's written requests, oral requests, and meet and confers,
Plaintiffs still have not provided proposed search terms, or even a proposal for exchanging search
terms.  We cannot wait any longer.  Accordingly, below are the search terms NeuMoDx intends to
use to search custodial and non-custodial data sources.  Pursuant to the Court's Default Standard for
Discovery, Paragraph 5(b), please let us know if Plaintiffs have any additional terms that they would
like to be used in connection with NeuMoDx's electronic searching.  Please provide any additional
proposed search terms by no later than COB on January 14, 2021.

Finally, we once again strongly encourage Plaintiffs to provide NeuMoDx with the search terms they
are using to search custodial and non-custodial data sources.  As we have said numerous times

4

before, we believe that a transparent approach will result in fewer disagreements and disputes, and allow discovery to proceed in an orderly fashion without further delay.

Jim

Search Terms
- "Becton Dickinson"
- "BD" (making sure that this does not capture words that include the letters bd in sequence)
- "HandyLab" or "Handy Lab"
- "8,273,308" or "8273308" or "'308" or "308 patent"
- "8,703,069" or "8703069" or "'069" or "069 patent"
- "7,998,708" or "7998708" or "'708" or "708 patent"
- "8,323,900" or "8323900" or "'900" or "900 patent"
- "8,415,103" or "8415103" or "'103" or "103 patent"
- "8,709,787" or "8709787" or "'787" or "787 patent"
- "10,494,663" or "10494663" or "'663" or "663 patent"
- "10,364,456" or "10364456" or "'456" or "456 patent"
- "10,443,088" or "10443088" or "'088" or "088 patent"
- "10,604,788" or "10604788" or "'708" or "788 patent"
- "10,625,261" or "10625261" or "'261" or "261 patent"
- "10,625,262" or "10625262" or "'262" or "262 patent"
- "10,632,466" or "10632466" or "'466" or "466 patent"
- "N96"
- "N288"
- "NeuMoDx 500"
- "BD Max"
- "BD Cor"
- "Jaguar"
- "Raider"
- "Lynx"
- "non-compete" or "non compete"
- "Amendment to Employment Agreement"
- "@bd.com"
- "Forlenza" or "vince_forlenza"
- "Polen" or "tom_polen"
- "Condie" or "Jamie_condie"
- "Hickey" or "dave_hickey"
- "Ivey" or "rick_ivey"
- "Ruzycky" or "andre_ruzycky"
- "Verwer" or "ben_verwer"
- "LaSala" or "joseph_lasala"
- "Neal" or "shana_neal"
- "Rittman" or "scott_rittman"
- "Adam Steel" or "adam_steel"
- "infringement"

"non-infringement" or "non infringement"
- "validity"
- "invalid*"
- "opinion* w/sentence "patent"
- "acquisition" or "acquir*"
- "Qiagen" w/sentence "merger"
- "Qiagen" w/sentence "agreement"
- "merger agreement"
- "amendment to merger agreement"
- "license agreement"
- "supply and license agreement"
- "amendment to supply and license agreement"
- "licens*"
- "joint venture"
- "Thermo Fisher"

*For docketing purposes of patent & trademark matters only*, please add the appropriate email of dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being sent to our office. Thank you.

**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

Phone  734-436-7356
Fax      844-670-6009
Email   JCleland@dickinsonwright.com



DICKINSON WRIGHT PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may have made and notify us immediately by return e-mail.

Neither this transmission nor any attachment shall be deemed for any purpose to be a "signature" or "signed" under any electronic transmission acts, unless otherwise specifically stated herein. Thank you.

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may have made and notify us immediately by return e-mail.

Neither this transmission nor any attachment shall be deemed for any purpose to be a "signature" or "signed" under any electronic transmission acts, unless otherwise specifically stated herein. Thank you.

# EXHIBIT 6

| From: | James K. Cleland |
|---|---|
| To: | Yin, David; Alexandra J Olson |
| Cc: | Samuel T Lockner; Peter M Kohlhepp; Jon D Carpenter; Michael N. Spink; Keith D. Weiss; mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar; mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier |
| Subject: | Subpoenas on 14 Current and Former NeuMoDx Employees |
| Date: | Thursday, May 27, 2021 5:16:03 PM |

**EXTERNAL SENDER**

Omar and David,

As a follow up to our discussion yesterday, and despite the fact that Plaintiffs' subpoenas seeking the personal devices and emails of 14 current and former NeuMoDx employees is clearly directed to the new trade secret and related claims, we will agree to search for and produce responsive, relevant and non-privileged documents in the subpoena recipients' possession, custody and/or control, subject to our objections served on May 13, 2021.  Please note that this is an incredibly burdensome request that requires us to navigate sensitive boundaries with individual personal information, and search a significant number of personal electronic storage devices and personal email accounts.  Plaintiffs' requests necessarily require a substantial response time given their breadth and scope.  We also must address in the near future how this might impact deposition timing, as a number of these individuals received both a personal document subpoena and are the subject of BD's recent deposition notices.

Jim

_For docketing purposes of patent & trademark matters only_, please add the appropriate email of dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being sent to our office. Thank you.

**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

Profile    V-Card

Phone 734-436-7356
Fax     844-670-6009
Email  JCleland@dickinsonwright.com

DICKINSON WRIGHT PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may have made and notify us immediately by return e-mail.

Neither this transmission nor any attachment shall be deemed for any purpose to be a "signature" or "signed" under any electronic transmission acts, unless otherwise specifically stated herein. Thank you.

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BECTON, DICKINSON AND COMPANY,
GENEOHM SCIENCES CANADA, INC.
and HANDYLAB, INC.,

                          Plaintiffs,                          C.A. No. 19-cv-1126-LPS

v.                                                            **JURY TRIAL DEMANDED**

NEUMODX MOLECULAR, INC. et al.,

                          Defendants.

## MICHELLE MASTRONARDI'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS AND THINGS IN A CIVIL ACTION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Michelle Mastronardi

hereby submits her Objections and Responses to Plaintiff Becton, Dickinson and Company,

Geneohm Sciences Canada, Inc., and HandyLab, Inc.'s ("BD" or "HandyLab") Subpoena to

Produce Documents and Things in a Civil Action (hereinafter, the "Subpoena").

## GENERAL OBJECTIONS

Ms. Mastronardi's Specific Responses are made subject to and in reliance on the General

Objections set forth below. The recitation of one or more specific objections to any Request is

not to be construed as a waiver of any applicable General Objection.  Ms. Mastronardi

incorporates the following General Objections in her Specific Response to each and every

Request:

1.  Ms. Mastronardi objects to each and every Request to the extent it seeks information that

is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

1

2.  Ms. Mastronardi objects to each and every Request to the extent that it is unlimited in time or fails to specify a period of time or subject matter pertinent to the claims in the underlying suit.

3.  Ms. Mastronardi objects to each and every Request to the extent it is vague, overly broad, and/or ambiguous.

4.  Ms. Mastronardi objects to each and every Request to the extent that it seeks information that is not within her possession, custody, or control.

5.  Ms. Mastronardi objects to each and every Request to the extent that it seeks information, including electronically stored information, that is not readily accessible.

6.  Ms. Mastronardi objects to each and every Request to the extent that it requires her to produce documents that are publicly available or obtainable from another source that is more convenient, less burdensome, or less expensive.

7.  Ms. Mastronardi objects to each and every Request to the extent that it imposes obligations or burdens greater than those imposed by the Federal Rules of Civil Procedure.

8.  Ms. Mastronardi objects to each and every Request to the extent that it seeks information that is privileged or protected from disclosure by the attorney-client privilege, the attorney work product doctrine and/or any other constitutional, statutory, or common law privilege or protection.  Ms. Mastronardi will not produce any such privileged information and does not waive, and intends to preserve, any applicable privilege or protection. In the event that any privileged or protected information is produced by Ms. Mastronardi, her production is inadvertent and will not constitute a waiver of any privilege or protection.

9.  Ms. Mastronardi objects to each and every Request to the extent that it purports to require her to disclose information in violation of a legal or contractual obligation of nondisclosure to a third party.

10. Ms. Mastronardi objects to the definitions of "Michelle Mastronardi," you," and "your," to the extent that it would require her to produce documents that are not in her possession, custody, or control, including without limitation documents in the possession of other third parties.

11. Ms. Mastronardi objects to the definition of NeuMoDx to the extent it would require her to produce documents that are not relevant to the named parties.  Ms. Mastronardi will interpret this definition to mean NeuMoDx Molecular, Inc.

## RESPONSES TO REQUESTS FOR DOCUMENTS AND THINGS

### Request No. 1:

All documents and things, including communications, relating or referring to BD and/or HandyLab, including but not limited to BD's or HandyLab's employees, intellectual property, products or contemplated products, or components thereof—including but not limited to BD MAX, BD COR, Anaconda, Jaguar, Raider, Lynx, or RTA-10, and including cartridges, assays, test strips, reagents, buffers, and consumables relating thereto.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; and (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

### Response to Request No. 1:

In addition to the General Objections, Ms. Mastronardi objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine.  Ms.

3

Mastronardi objects to this Request to the extent that it purports to require her to disclose information in violation of a legal or contractual obligation of nondisclosure to a third party.  Ms. Mastronardi further objects to this Request as overly broad and unduly burdensome, in that the request for "[a]ll documents . . . relating or referring to BD and/or HandyLab" does not reflect the proportionality limits of Rule 26(b)(1).  Ms. Mastronardi objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Ms. Mastronardi objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive.  Ms. Mastronardi further objects to this request as it is unreasonably duplicative and redundant of discovery already sought by the parties to this litigation.  Ms. Mastronardi further objects to this request on the basis that certain of the named defendants in the captioned lawsuit have filed various motions under the Federal Rules of Civil Procedure and whether, to what extent, and where Plaintiffs' allegations relating to trade secret misappropriation and related claims will proceed is unknown.

**Request No. 2:**

All documents and things, including communications, referring or relating to any BD or HandyLab development, research, design, testing, manufacturing, marketing, sales, strategy, business, financials, or other activities, conduct, or performance.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading,

acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**Response to Request No. 2:**

In addition to the General Objections, Ms. Mastronardi objects to this Request to the extent it seeks information protected by the attorney-client privilege, common interest privilege, joint litigation privilege, related privilege, and/or attorney work product doctrine.  Ms. Mastronardi objects to this Request to the extent that it purports to require her to disclose information in violation of a legal or contractual obligation of nondisclosure to a third party.  Ms. Mastronardi further objects to this Request as overly broad and unduly burdensome, in that the request for "[a]ll documents . . . referring or relating to any BD or HandyLab development, research, design, testing, manufacturing, marketing, sales, strategy, business, financials, or other activities, conduct, or performance" does not reflect the proportionality limits of Rule 26(b)(1), particularly with respect to BD as there is no other product-based limitation on the request.  Ms. Mastronardi objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Ms. Mastronardi objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive.  Ms. Mastronardi further objects to this request as it is unreasonably duplicative and redundant of discovery already sought by the parties to this litigation.  Ms. Mastronardi further objects to this request on the basis that certain of the named defendants in the captioned lawsuit have filed various motions under the Federal Rules of Civil Procedure and

whether, to what extent, and where Plaintiffs' allegations relating to trade secret

misappropriation and related claims will proceed is unknown.

**Request No. 3:**

All documents and things, including communications, referring or relating to BD or HandyLab confidential information, proprietary information, intellectual property, inventions, patents, trade secrets, copyrights, know-how, techniques, processes, methods, systems, projects, agreements, software programs, customer lists, supplier lists, vendor lists, sources of supply, part lists, or plans.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**Response to Request No. 3:**

In addition to the General Objections, Ms. Mastronardi objects to this Request to the

extent it seeks information protected by the attorney-client privilege, common interest privilege,

joint litigation privilege, related privilege, and/or attorney work product doctrine.  Ms.

Mastronardi objects to this Request to the extent that it purports to require her to disclose

information in violation of a legal or contractual obligation of nondisclosure to a third party.  Ms.

Mastronardi further objects to this Request as overly broad and unduly burdensome, in that the

request for "[a]ll documents . . . referring or relating to BD or HandyLab confidential

information, proprietary information, intellectual property, inventions, patents, trade secrets,

copyrights, know-how, techniques, processes, methods, systems, projects, agreements, software

programs, customer lists, supplier lists, vendor lists, sources of supply, part lists, or plans" does

not reflect the proportionality limits of Rule 26(b)(1), particularly with respect to BD.  Ms.

Mastronardi objects to this request to the extent it seeks information that is not relevant to any

6

claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Ms. Mastronardi objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive.  Ms. Mastronardi further objects to this request as it is unreasonably duplicative and redundant of discovery already sought by the parties to this litigation.  Ms. Mastronardi further objects to this request on the basis that certain of the named defendants in the captioned lawsuit have filed various motions under the Federal Rules of Civil Procedure and whether, to what extent, and where Plaintiffs' allegations relating to trade secret misappropriation and related claims will proceed is unknown.

## Request No. 4:

All documents and things prepared, accessed or obtained by you as part of your employment with BD and/or HandyLab.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

## Response to Request No. 4:

In addition to the General Objections, Ms. Mastronardi further objects to this Request as overly broad and unduly burdensome, in that the request for "[a]ll documents . . . prepared, accessed or obtained by you as part of your employment with BD and/or HandyLab" does not reflect the proportionality limits of Rule 26(b)(1).  Ms. Mastronardi objects to this request to the

extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Ms. Mastronardi objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive.  Ms. Mastronardi further objects to this request as it is unreasonably duplicative and redundant of discovery already sought by the parties to this litigation.  Ms. Mastronardi further objects to this request on the basis that certain of the named defendants in the captioned lawsuit have filed various motions under the Federal Rules of Civil Procedure and whether, to what extent, and where Plaintiffs' allegations relating to trade secret misappropriation and related claims will proceed is unknown.

**Request No. 5:**

All documents and things, including communications, originating at, received from, sent to, and/or copying BD and/or HandyLab, including but not limited to any communications and documents exchanged between a BD ("@bd.com") and/or HandyLab ("@handylab.com") email account, including documents and things stored on your personal or business email account(s), computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things.

**Response to Request No. 5:**

In addition to the General Objections, Ms. Mastronardi further objects to this Request as overly broad and unduly burdensome, in that the request for "[a]ll documents . . . originating at, received from, sent to, and/or copying BD and/or HandyLab, including but not limited to any communications and documents exchanged between a BD ("@bd.com") and/or HandyLab ("@handylab.com") email account" does not reflect the proportionality limits of Rule 26(b)(1).

Ms. Mastronardi objects to this request to the extent it seeks information that is not relevant to

any claim or defense or is not proportional to the needs of the case, considering the importance

of the issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving the

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Ms. Mastronardi objects to this request to the extent it seeks information that is in the possession

of the Plaintiffs or that is available from another source that is more convenient, less

burdensome, and less expensive.  Ms. Mastronardi further objects to this request as it is

unreasonably duplicative and redundant of discovery already sought by the parties to this

litigation.  Ms. Mastronardi further objects to this request on the basis that certain of the named

defendants in the captioned lawsuit have filed various motions under the Federal Rules of Civil

Procedure and whether, to what extent, and where Plaintiffs' allegations relating to trade secret

misappropriation and related claims will proceed is unknown.

**Request No. 6:**

Any and all agreements by, between or among you and BD, HandyLab, Life Magnetics,
Molecular Systems Corporation, NeuMoDx, Molecular Systems Corporation, and/or Qiagen,
including but not limited to employment agreements, confidentiality agreements, non-disclosure
agreements, licensing or license agreements, royalty agreements, assignment agreements,
consulting agreements, and/or termination agreements.

**Response to Request No. 6:**

In addition to the General Objections, Ms. Mastronardi objects to this Request to the

extent that it purports to require her to disclose information in violation of a legal or contractual

obligation of nondisclosure to a third party.  Ms. Mastronardi further objects to this Request as

overly broad and unduly burdensome, in that the request for "[a]ll agreements . . . between

[Mastronardi] and BD, HandyLab, Life Magnetics, Molecular Systems Corporation, NeuMoDx,

Molecular Systems Corporation, and/or Qiagen" does not reflect the proportionality limits of Rule 26(b)(1).  Ms. Mastronardi objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Ms. Mastronardi objects to this request to the extent it seeks information that is in the possession of the Plaintiffs or that is available from another source that is more convenient, less burdensome, and less expensive.  Ms. Mastronardi further objects to this request as it is unreasonably duplicative and redundant of discovery already sought by the parties to this litigation.  Ms. Mastronardi further objects to this request on the basis that certain of the named defendants in the captioned lawsuit have filed various motions under the Federal Rules of Civil Procedure and whether, to what extent, and where Plaintiffs' allegations relating to trade secret misappropriation and related claims will proceed is unknown.

**Request No. 7:**

Your current (or most recent) *curriculum vitae* or resume.

**Response to Request No. 7:**

In addition to the General Objections, Ms. Mastronardi objects to this request to the extent it seeks information that is not relevant to any claim or defense or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Ms. Mastronardi objects to this request to the

extent it seeks information that is in the possession of the Plaintiffs or that is available from

another source that is more convenient, less burdensome, and less expensive.  Ms. Mastronardi

further objects to this request as it is unreasonably duplicative and redundant of discovery

already sought by the parties to this litigation. Ms. Mastronardi further objects to this request on

the basis that certain of the named defendants in the captioned lawsuit have filed various motions

under the Federal Rules of Civil Procedure and whether, to what extent, and where Plaintiffs'

allegations relating to trade secret misappropriation and related claims will proceed is unknown.

Dated: May 13, 2021                    /s/ Alexandra J. Olson
                                       James K. Cleland (P68507)
                                       Michael N. Spink
                                       Keith Weiss
                                       DICKINSON WRIGHT PLLC
                                       350 S. Main Street, Suite 300
                                       Ann Arbor, MI 48104

                                       Alan G. Carlson
                                       Gary J. Speier
                                       Samuel T. Lockner
                                       Jonathan D. Carpenter
                                       Alexandra J. Olson
                                       Peter M. Kohlhepp
                                       CARLSON, CASPERS, VANDENBURGH
                                       & LINDQUIST, P.A.
                                       225 South Sixth Street, Suite 4200
                                       Minneapolis, MN 55402
                                       Telephone: (612) 436-9600
                                       Facsimile: (612) 436-9605

                                       *Attorneys for Michelle Mastronardi*

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1126 (LPS) |
| NEUMODX MOLECULAR, INC., QIAGEN GMBH, QIAGEN NORTH AMERICAN HOLDINGS, INC., SUNDARESH BRAHMASANDRA, and JEFFREY WILLIAMS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS TO DEFENDANTS NEUMODX MOLECULAR, INC.,
<u>SUNDARESH BRAHMASANDRA, AND JEFFREY WILLIAMS (NOS. 211-267)</u>**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Becton, Dickinson and Company and GeneOhm Sciences Canada, Inc. (collectively, "BD"), and HandyLab, Inc. ("HandyLab" and collectively with BD, "Plaintiffs"), hereby request that Defendants NeuMoDx Molecular, Inc., Sundaresh Brahmasandra, and Jeffrey Williams respond to the following requests for production within thirty (30) days of service, in accordance with the Definitions and Instructions below.  Productions should be made at the law offices of Wilmer Cutler Pickering Hale and Dorr LLP, Attn: Omar Khan, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, or at such other place as may be mutually agreeable to counsel.

<u>**DEFINITIONS**</u>

1.      Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1

2.      "Plaintiff," "Plaintiffs," "our," or "ours" shall refer to Becton, Dickinson and Company Inc., GeneOhm Sciences Canada, Inc., and HandyLab, Inc., collectively.

3.      "Defendant," "Defendants," "you," "your," or "yours" shall refer to NeuMoDx, Qiagen, Sundaresh Brahmasandra, and Jeffrey Williams collectively.

4.      "NeuMoDx" shall refer to NeuMoDx Molecular, Inc., and all of NeuMoDx's corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, and each person acting or purporting to act on its behalf, including, without limitation, Jeff Williams, Sundaresh Brahmasandra, Qiagen GmbH, Qiagen North American Holdings, Inc., and Qiagen N.V., Molecular Systems Corporation ("MSC"), and corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, and each person acting or purporting to act on Qiagen's or MSC's behalf.

5.      "Qiagen" shall refer to Qiagen GmbH, Qiagen North American Holdings, Inc., and all of their corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, and each person acting or purporting to act on its behalf, including, without limitation, Qiagen N.V., Qiagen LLC, NeuMoDx, and corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, and each person acting or purporting to act on , Qiagen N.V's., Qiagen LLC's, or NeuMoDx's behalf.

6.     The "Patent Office" refers to the United States Patent and Trademark Office.

7.     "This litigation" or "this case" shall refer to the above-captioned lawsuit, *Becton Dickinson & Co. v. NeuMoDx Molecular, Inc.*, No. 19-cv-1126 (LPS).

8.     "Asserted Patents" means U.S. Patent Nos. 8,273,308 ("the '308 Patent"), 8,703,069 ("the '069 Patent"), 7,998,708 ("the '708 Patent"), 8,323,900 ("the '900 Patent"), 8,415,103 ("the '103 Patent"), 8,709,787 ("the '787 Patent"), 10,494,663 ("the '663 Patent"), 10,364,456 ("the '456 Patent"), 10,443,088 ("the '088 Patent"), 10,625,261 ("the '261 Patent"), 10,625,262 ("the '262 Patent"), 10,632,466 ("the '466 Patent"), 10,604,788 ("the '788 Patent"),  and any other patents asserted as infringed in this litigation in Plaintiffs' First Amended Complaint, Plaintiffs' Initial Infringement Contentions, Plaintiffs' Initial Disclosure of Asserted Patents, and any amendment or supplement to the foregoing.

9.     "Related Patents and Applications" includes, without limitation: (a) any U.S. or foreign patents issuing directly or indirectly from any continuation, continuation-in-part, or divisional of any Asserted Patent, or any U.S. or foreign patents that issue directly or indirectly from a provisional, continuation, continuation-in-part, or divisional that is in the priority chain of any Asserted Patent and any U.S. or foreign patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications); (b) any U.S. or foreign patent or application that shares all or substantially all of its specification with the Asserted Patent; (c) any U.S. or foreign patent or application, including provisional applications, including provisional applications, to which any Asserted Patent claims priority; (d) any U.S. or foreign patent or application that claims priority to any Asserted Patent; (e) any U.S. or foreign patent or application that has a claim of priority in common with any Asserted Patent; and (f) foreign counterparts of the Asserted Patents.

3

10.    "Accused Products" include all versions of the past and present NeuMoDx molecular systems, platforms, solutions, instruments, analyzers, consumables, assays (including research use only, investigational use only, CE-IVD, FDA-cleared and LDT), test strips (including research use only, investigational use only, CE-IVD, FDA-cleared and LDT), controls and calibrators, cartridges, reagents, buffers, and accessories, as well as all derivative products, all convoyed products, and/or all other components or products made, manufactured, used, purchased, sold, offered for sale, marketed, promoted, imported, exported, supplied, caused to be supplied, and/or induced to be used in connection with the foregoing.  For the avoidance of doubt, Accused Products includes those identified in Plaintiffs' First Amended Complaint (D.I. 54, ¶¶ 32-35), Plaintiffs' Initial Infringement Contentions, Plaintiffs' Initial Disclosure of Accused Products, any amendment or supplement to the foregoing, and any other product made by or for, used, for sold, or offered for sale, or licensed or offered for license by Defendants which has substantially the same structure or operates in substantially the same way.

11.    "Employment Agreement" refers to the 2009 employment agreement entered into by and between HandyLab, Inc. and Sundaresh Brahmasandra.

12.    "Amendment to Employment Agreement" refers to a document addressed to Sundaresh Brahmasandra dated February 23, 2012 that stated it "serve[d] to amend certain terms of the Employment Agreement . . . between [Brahmasandra] and HandyLab, Inc."

13.    "Prior art" shall mean all prior art included within the broadest meaning of 35 U.S.C. §§ 102, 103, including documents, patents, publications, disclosures, uses, sales, offers for sale, acts, things, knowledge, or occurrences including but not limited to those available to the public.

14.     "Plaintiffs' Confidential Information" shall mean all documents, information, or materials reflecting, referring and/or relating to Plaintiffs' confidential or proprietary documents, information, or materials, including, without limitation any documents, information, or materials created or generated by Plaintiffs' employees or consultants pursuant to their employment by Plaintiffs, any documents, information, or materials labeled "Confidential" or "Proprietary," any documents, information, or materials subject to and/or covered by a confidentiality or non-disclosure agreement or contract, and any documents, information, or materials relating to any of Plaintiffs' inventions, products, documentation, designs, research, developments, modifications, improvements, methods, know-how, techniques, systems, processes, software or computer programs or codes, works of authorship, customer lists or information regarding customer needs, projects, proposals, analyses, assessments, experimentation, testing, results, modifications, formula, data, drawings, CAD files, schematics, specifications, personnel matters and compensation data, manufacturing and manufacturing sources, sources of supply, financial information, the identity of people and organizations with whom Plaintiffs have business relationships and the nature and substance of those relationships, and strategy, forecasts, and/or plans or other analyses or assessments pertaining to  Plaintiffs' business, sales, marketing, advertising, competitors, financials, licensing, and/or research and development.

15.     "Georgia Pacific Factors" means the factors relevant to the determination of a reasonable royalty identified by the court in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

16.     "Document" is equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedures and shall be construed to mean, without limitation, any written, printed, typed, stored, faxed, photographed, recorded or otherwise reproduced communication,

compilation or reproduction including computer or electronically generated or stored information or data, whether assertedly privileged or not.  As used herein, "document" specifically includes all forms of electronic data.  A prior or subsequent version, or draft or nonidentical copy is a separate document within the meaning of this term.

17.     "Communication" means every contact of any nature, including any oral, written or electronic transmission of information or request for information made by one or more persons and/or between two or more persons by means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, text messages, other computer linkups, written memoranda, voicemail messages, "instant messages," computer files, electronic or magnetic media, face-to-face conversations, or other documents containing such contacts.

18.     "Thing" has the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and the relevant case law.

19.     "Person(s)" means natural persons as well as business entities and associations of all sorts, including partnerships, companies, proprietorships, joint ventures, corporations, government agencies, and unincorporated associations, and the officers, directors, employees, agents, and attorneys thereof.

20.     "Entity" or "Entities" means, including without limitation, corporation, company, firm, partnership, joint venture, association, governmental body or agency, or persons other than a natural person.

21.     "Third Party" or "Third Parties" shall mean all Persons or Entities who are not parties to this litigation, as well as their officers, directors, employees, agents, and attorneys.

22.     "Including" means including but not limited to.

23.     "Relate to," "relates to," "refers to," or "relating to" means regarding, referring to, concerning, mentioning, reflecting, pertaining to, analyzing, evidencing, stating, involving, identifying, describing, discussing, documenting, commenting on, dealing with, embodying, responding to, supporting, contradicting, comprising, containing, or constituting (in whole or in part), as the context makes appropriate.

24.     "Describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or Communication, means (a) to state the Date and place thereof; (b) to Identify the individual participants; (c) to summarize separately for each individual participant what he said or did; and (d) to Identify each Document used or prepared in connection therewith or making any reference thereto.

25.     "Identify" means (1) when referring to a natural Person, stating the Person's full name, present or last known address and telephone number, and the last known title and place of employment; (2) when referring to any entity (including without limitation corporation, company, firm, partnership, joint venture, association, governmental body or agency, or persons other than a natural person), to state the full legal name of the entity, the place of incorporation or organization, the address and telephone number of the principal place of business, and the nature of the business conducted by that entity; (3) when referring to non-patent Documents, the production number or type of Document, its general nature and subject matter, Date of creation, and all author(s), addresses(s), and recipient(s); (4) when referring to patent Documents, the country, patent and/or application number, Dates of filing, publications, and grant, and the names of patentees or applicants; and (5) when referring to a source or Thing, sufficient information to identify the location, ownership, and nature of such source or Thing.

26.     The terms "all," "each," and "any" shall be construed as all and any.

27.     The use of the singular form of any word shall include the plural form and vice versa.

28.     The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

29.     The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgement on the part of Plaintiffs that such definition is accurate, meaningful, or appropriate for any other purpose in this litigation.

## INSTRUCTIONS

The following instructions shall apply to all the below Requests and should be considered part of each Request.

30.     Defendants shall produce all responsive Documents (including any stored by electronic means).  If Defendants are withholding or intend to withhold any Documents or Things responsive to these requests, Defendants must state the basis for withholding the Document in a manner sufficient to enable Plaintiffs and the Court to adjudicate the validity of its withholding. In the case of any Document and Things being withheld on the grounds of attorney-client privilege, work product doctrine, or other privilege doctrine or immunity, please also provide a privilege log identifying the following information for each Document or Thing:

a.     the request to which the Document is responsive;

b.     the title of the Document;

c.     the Date appearing on the Document, and if no Date appears thereon, so state and give the Date, or approximate Date, on which the Document was prepared;

d.     the type or general nature of the Document (i.e., whether it is a letter memorandum, minutes of a meeting, etc.);

e.     number of pages;

8

f.      attachments;

g.      appendices;

h.      the name, title, and company affiliation of the Person who prepared the Document;

i.      the name, title, and company affiliation of each Person to whom the Document was disclosed, including the Person or Persons to whom it was addressed and the Person or Persons who received the Document, or copies of the Document, including blind copy recipients, and any individual to whom the Document was distributed shown or explained;

j.      the name, title, and company affiliation of the Person or Persons who maintain custody of the Document; and

k.      the general subject matter of the Document and the basis for withholding the Document, in a manner sufficient for Plaintiffs and the Court to determine the validity of Defendants' withholding.

31.     Produce all responsive Documents in Your actual or constructive possession, custody, or control, or the actual or constructive possession, custody, or control of Your attorneys, accountants, representatives, consultants, agents, employees, or anyone else acting on Your behalf. You are to produce entire Documents, including attachments, enclosures, cover letters, memoranda and appendices.

32.     Each Document is to be produced along with all prior and subsequent versions and all nonidentical drafts thereof in their entirety, without abbreviation or redaction, and as maintained in the ordinary course of business. In the event that multiple copies of a Document exist, produce every copy on which appear any notations or markings of any sort not appearing on any other copy.

33.     If a responsive Document is not in Your possession, custody or control, Identify the names of the Persons who have possession, custody or control of such Document. If such Document was in Your possession, custody or control in the past but is no longer in Your possession, custody or control, state what disposition was made of it, the reasons for such disposition, Identify any Persons having any knowledge of said disposition, and Identify the Persons responsible for such disposition.

34.     If a responsive Document has been destroyed or is alleged to have been destroyed, state the reasons for its destruction, the names of the Persons having any knowledge of its destruction and the names of the Persons responsible for its destruction.

35.     If Defendants contend that any Request is objectionable in whole or in part, Defendants shall state with particularity each objection, the basis for it, and the categories of information to which the objection applies, and respond to the Request insofar as it is not deemed objectionable.

36.     If Defendants find the meaning of any term in these Requests unclear or ambiguous, Defendants shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Request according to the assumed meaning.

37.     The Documents produced in response to these Requests shall be (a) organized and designated to correspond to the categories in these Requests or, if not, (b) produced as they are maintained in the normal course of business, and in either case: (i) all associated file labels, file headings, and file folders shall be produced together with the responsive Documents from each file and each file shall be identified as to its owner or custodian; (ii) all Documents that cannot be legibly copied shall be produced in their original form; otherwise, You may produce photocopies;

(iii) all photocopies shall be stapled or clipped as the originals; and (iv) each page shall be given a discrete production number.

38.     None of the Definitions or Requests set forth above shall be construed as an admission Relating to the existence of evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the Definition or Request.

39.     These Requests shall be deemed continuing, requiring Defendants to provide supplemental responses and production promptly in accordance with Rule 26 of the Federal Rules of Civil Procedure. Such supplemental responses and production are to be provided as soon as reasonably possible after the need therefore is determined.

40.     The Definitions apply regardless of capitalization.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 211:**

All documents and things, including communications, prior to July 29, 2019 exchanged between in-house and/or outside counsel for Qiagen (including, for example, attorneys at Carlson Caspers), on the one hand, and in-house and/or outside counsel for NeuMoDx (including, for example, attorneys at Dickinson Wright), on the other.

**REQUEST NO. 212:**

All documents and things, including communications, in Defendants' possession, custody, or control that were created, in whole or in part, by or on the behalf of Plaintiffs, including by any former employee of Plaintiffs pursuant to any employment or consultancy with Plaintiffs.

**REQUEST NO. 213:**

All documents and things, including communications, relating to Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 214:**

Three native copies of all custodial or non-custodial sources, places or locations that are now and/or have ever been storing, reflecting, referring and/or relating to any Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 215:**

Three native copies of each hard drive that is now and/or has ever been storing, reflecting, referring and/or relating to any Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 216:**

Three native copies of each shared or networked data source or location that is now and/or has ever been storing, reflecting, referring and/or relating to any Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 217:**

All documents and things, including communications, relating to any retention or acquisition of Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 218:**

All documents and things, including communications, relating to any use of Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 219:**

All documents and things, including communications, relating to any disclosure of Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 220:**

All documents and things, including communications, relating to any features or components of any NeuMoDx product that relate to and/or derive from (whether directly or indirectly) Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 221:**

All communications between current or former NeuMoDx employees or consultants regarding Plaintiffs' Confidential Information or any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 222:**

All communications between any current or former NeuMoDx employee or consultant and any third-party regarding Plaintiffs' Confidential Information or any formal or informal documentation of Plaintiffs' Confidential Information.

**REQUEST NO. 223:**

All documents and things, including communications, relating to Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential

Information, in the possession of Defendants' current or former employees, whether stored in personal or work devices, accounts, or locations, including but not limited to:

a)  Sundaresh Brahmasandra

b)  Jeff Williams

c)  Elizabeth Craig

d)  Michelle Mastronardi

e)  Betty Wu

f)  Patrick Duffy

g)  Dave Adams

h)  Kim Kochan

i)  Pete Vachon

j)  James Olson

k)  Jill Lippens

l)  Jennifer Ruth

m)  Sandy Pelchat

n)  Carmin Olson

**REQUEST NO. 224:**

All documents and things, including communications, stored electronically at the following locations:

a)  SBrahmasandra\Documents\NMDX\Project Planning\

b)  SBrahmasandra\Documents\NMDX\MARKETING\Market Research\

c)  BDeSantis\Dropbox (NeuMoDx)\SHARED RESOURCES\

d)  E028N_ElizabethCraig\ecraig\Documents\Documents\HL\

e)  SBrahmasandra\Documents\NMDX\DOC TEMPLATEs\

14

f) MKusner\Z Drive\ARCHIVE\Technical Meeting Presentations\Old Technical Presentations\

g) MKusner\Z Drive\ARCHIVE\PLANNING\Concept Phase Documents\Originals

h) E024N_BrianDeSantis\bdesantis\Software\Project Management\Process Compliance\

i) SBrahmasandra\Documents\NMDX\MISC\Biz Dev\Qiagen\DILIGENCE\OLDER STUFForSUPPORTING\

j) SBrahmasandra\Documents\NMDX\IP\

k) bwu\Documents\Bwu\Documents\Documents\Documents\sample prep\

l) SBrahmasandra\Documents\NMDX\MISC\Biz Dev\Qiagen\Distribution Agreements\

**REQUEST NO. 225:**

All physical or tangible materials generated by or on the behalf of Plaintiffs, including by any former employee of Plaintiffs' pursuant to any employment or consultancy with Plaintiffs, including, *e.g.*, any physical BD or HandyLab document, product, component, subcomponent, cartridge, bead, reagent, compound, or material.

**REQUEST NO. 226:**

All documents and things, including communications, relating to any allegation by Defendants that they acquired Plaintiffs' Confidential Information with Plaintiffs' authorization.

**REQUEST NO. 227:**

All documents and things, including communications, relating to any allegation by Defendants that any of Plaintiffs' Confidential Information was not the subject of reasonable efforts to maintain its secrecy.

**REQUEST NO. 228:**

All documents and things, including communications, relating to any allegation by Defendants that any of Plaintiffs' Confidential Information was, or is, generally known or readily ascertainable.

**REQUEST NO. 229:**

All documents and things, including communications, relating to any allegation by Defendants that any of Plaintiffs' Confidential Information was, or is, obtained or obtainable from another person with a right to disclose the information.

**REQUEST NO. 230:**

All documents and things, including communications, relating to any alleged reverse engineering or independent development of Plaintiffs' Confidential Information by any person or entity other than Plaintiffs.

**REQUEST NO. 231:**

All employment agreements between NeuMoDx and its employees, including but not limited to Sundaresh Brahmasandra, Jeffrey Williams, Elizabeth Craig, Michelle Mastronardi, Betty Wu, Patrick Duffy, Dave Adams, Kim Kochan, Pete Vachon, James Olson, Jill Lippens, Jennifer Ruth, Sandy Pelchat, and Carmin Olson.

**REQUEST NO. 232:**

All confidentiality or non-disclosure agreements between NeuMoDx and its employees, including but not limited to Sundaresh Brahmasandra, Jeffrey Williams, Elizabeth Craig, Michelle Mastronardi, Betty Wu, Patrick Duffy, Dave Adams, Kim Kochan, Pete Vachon, James Olson, Jill Lippens, Jennifer Ruth, Sandy Pelchat, and Carmin Olson.

**REQUEST NO. 233:**

All NeuMoDx employee handbooks, codes of conduct, policies, rules, guidelines, guidances, warnings, or notices that relate or refer to confidentiality.

**REQUEST NO. 234:**

All documents and things, including communications, relating to BD and/or HandyLab, including but not limited to BD's or HandyLab's employees, intellectual property, products or contemplated products, or components thereof—including but not limited to BD MAX, BD COR, Anaconda, Jaguar, Raider, Lynx, or RTA-10, and including cartridges, assays, test strips, reagents, buffers, and consumables relating thereto.

**REQUEST NO. 235:**

All documents and things, including communications, relating to any BD or HandyLab development, research, design, testing, manufacturing, marketing, sales, strategy, business, financials, or other activities, conduct, or performance.

**REQUEST NO. 236:**

All documents and things, including communications, relating to BD or HandyLab confidential information, proprietary information, intellectual property, inventions, patents, trade secrets, copyrights, know-how, techniques, processes, methods, systems, projects, agreements, software programs, customer lists, supplier lists, vendor lists, sources of supply, part lists, or plans.

**REQUEST NO. 237:**

All documents and things prepared, accessed or obtained by you or any NeuMoDx employee (current or former) as part of any employment with BD and/or HandyLab.

17

**REQUEST NO. 238:**

All documents and things, including communications, originating at, received from, sent to, and/or copying BD and/or HandyLab, including but not limited to any communications and documents exchanged between a BD ("@bd.com") and/or HandyLab ("@handylab.com") email account, documents and things stored on personal or business email account(s), computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things.

**REQUEST NO. 239:**

All agreements between or among one or more of you, any NeuMoDx employee (current or former), BD, HandyLab, Life Magnetics, Molecular Systems Corporation, and/or Qiagen, including but not limited to employment agreements, confidentiality agreements, non-disclosure agreements, licensing or license agreements, royalty agreements, assignment agreements, consulting agreements, and/or termination agreements.

**REQUEST NO. 240:**

All documents and things, including communications, relating to any personal, professional, or business relationship between any NeuMoDx consulting or testifying expert and NeuMoDx, or any of NeuMoDx's founders, executives, and/or principals.

**REQUEST NO. 241:**

All documents and things, including communications, relating to any personal, professional, or business relationship between any NeuMoDx consulting or testifying expert and HandyLab, or any of HandyLab's founders, executives, and/or principals.

**REQUEST NO. 242:**

All documents and things, including communications, relating to any involvement by the University of Michigan—including but not limited to any faculty member, researcher, administrator, fellow, research assistant, undergraduate or graduate student of the University of Michigan—in designing, manufacturing, and/or supplying any Accused Product or prior version of any Accused Product, and/or any component or subcomponent of any Accused Product or prior version of any Accused Product.

**REQUEST NO. 243:**

All documents and things, including communications, exchanged with the University of Michigan—including but not limited to any faculty member, researcher, administrator, fellow, research assistant, undergraduate or graduate student of the University of Michigan—relating to any of NeuMoDx's current or past products, including the Accused Products and any prior version of the Accused Products.

**REQUEST NO. 244:**

All documents and things, including communications, relating to any attempts to consult with, obtain input, seek feedback, or obtain advice from the University of Michigan—including but not limited to any faculty member, researcher, administrator, fellow, research assistant, undergraduate or graduate student of the University of Michigan—regarding NeuMoDx's current or past products, including the Accused Products and any prior version of the Accused Products.

**REQUEST NO. 245:**

All documents and things, including communications, relating to any design and development activities, research, testing, reviews, or evaluations performed by the University of Michigan—including but not limited to any faculty member, researcher, administrator, fellow, research assistant, undergraduate or graduate student of the University of Michigan—relating to

NeuMoDx's current or past products, including the Accused Products and any prior version of the Accused Products, by.

**REQUEST NO. 246:**

All documents and things, including communications, relating to testing, measurement, or attempts to measure or characterize  temperature, temperature uniformity, or spatial variations in temperature in the PCR reaction chamber, including any testing, measurement, or attempts to measure using, *e.g.*, wax melt curve analyses, thermocouples, temperature sensitive dye, or computer models, including but not limited to all documents and communications originating from, received from, or sent to Tom Haddock and Shepherd Smith related to such attempts.

**REQUEST NO. 247:**

All documents and things, including communications, relating to design testing, simulation, and fabrication of heaters and wafers produced by any third party vendors involved in design or fabrication of wafers, including Onnop Srivannit or Lurie Nanofabrication Facility, including all documents, engineering drawings, and test reports.

**REQUEST NO. 248:**

All documents and things, including communications, relating to design, testing, simulation, and fabrication of heaters and wafers, including but not limited to all engineering drawings and test reports.

**REQUEST NO. 249:**

All documents and things, including communications, relied upon in preparing and/or supporting the assertions in and/or responsive to Defendant's Supplemental Response to Interrogatory No. 4.

**REQUEST NO. 250:**

All documents and things, including communications, relating to the operation of valve 8 in the XPCR module of the NeuMoDx 96 and/or NeuMoDx 288 systems, including but not limited to all engineering drawings, presentations, and test reports.

**REQUEST NO. 251:**

All documents and things, including communications, relating to the coordination and/or sequencing of the operation of the valves and optics when detecting the presence of samples in the PCR reaction chamber, including but not limited to all engineering drawings, presentations, and test reports.

**REQUEST NO. 252:**

All documents and things, including communications, responsive to Interrogatory No. 22 relating to analyses, opinions, assessments, studies, reports, research, tests, experiments, investigations, simulations, measurements, evaluations and/or examinations relating to the temperature, temperature uniformity, temperature variance, temperature distribution, temperature gradient, and/or any temperature-related parameter, property or variable of any system, subsystem, module, submodule, component or subcomponent associated with thermal cycling and/or PCR in the Accused Products and/or any of NeuMoDx's current or past products (including prior versions and/or prototypes), including but not limited to identifying and describing in detail any analyses, opinions, assessments, studies, reports, research, tests, experiments, investigations, simulations, measurements, evaluations and/or examinations relating to the temperature, temperature uniformity, temperature variance, temperature distribution, temperature gradient, and/or any temperature-related parameter, property or variable of the entirety of and/or any module, submodule, component or subcomponent of any XPCR Module, Thermocycling or Thermal Cycling Module, PCR Heater, PCR Heater PCB, PCR

21

Heater Assembly, PCR Chip, Cartridge, XPCR Cartridge, PCR Chamber, PCR reaction

chamber, and/or PCR reaction zone.

**REQUEST NO. 253:**

All documents and things, including communications, relating to connections and

communications between the internal computer running the graphical user interface and

components of the instrument, including the XPCR modules, release heater, heater assembly,

magnet heater, extraction plate heater module, syringe pump, and liquid handling robot,

including but not limited to design documents, product specifications, product requirements, and

software architecture.

**REQUEST NO. 254:**

All documents and things, including communications, relating to the timing,

synchronization, sequencing, staggering, and scheduling of the PCR heater, PCR cycles, optics

assembly, and valve actuation assembly, including but not limited to documents relating to the

PCR Schedular, Optics Schedular, and Fill Check.

**REQUEST NO. 255:**

Three samples of components of the Accused Products, including the XPCR module

(34400001), XPCR cartridge (31300274), PCR heater assembly (31300012), pressure

distribution assembly (31300010), cartridge carriage assembly (31300035), valve actuation

assembly (31300173), heater magnet assembly (31300019), and shim scissor jack (12500121).

**REQUEST NO. 256:**

All documents and things, including communications, relating to all prior versions,

prototypes, or non-commercially launched versions of NeuMoDx's molecular diagnostic

instruments, platforms, and systems, including without limitation the NeuMoDx 500 or

NMDX500 and NeuMoDx 100 or NMDX100.

22

**REQUEST NO. 257:**

All documents and things, including communications, relating to the timing of valve opening and/or closure in the NeuMoDx 96 and/or NeuMoDx 288 systems, including the timing of valve opening and/or closure in relation to the "fill check."

**REQUEST NO. 258:**

All documents and things, including communications, relating to the mechanical, chemical, physical, operational, temporal, and functional characteristics of the Accused Products and any components or processes associated with the Accused Products, including but not limited to any microfluidic cartridge, microfluidic valves, processor, temperature, temperature uniformity, synchronization, or heating thereof.

**REQUEST NO. 259:**

All Product Specification documents for all test strips, including but not limited to NeuMoDx HCV Quant Test Strip, NeuMoDx TV/MG Test Strip, NeuMoDx Strep A/C/G Vantage Test Strip.

**REQUEST NO. 260:**

Final versions of RPT-4097 and RPT-4097B.

**REQUEST NO. 261:**

All source code relating to the operation and control of the XPCR modules, including release heater assembly, magnet heater assembly, PCR heater assembly, valve actuation assembly, in the NeuMoDx 96 and NeuMoDx 288 systems.

**REQUEST NO. 262:**

All source code relating to the operation and control of the extraction plate heater module in the NeuMoDx 96 and NeuMoDx 288 systems.

**REQUEST NO. 263:**

All source code relating to the operation and control of the liquid reagent module, including the syringe pump, in the NeuMoDx 96 and NeuMoDx 288 systems.

**REQUEST NO. 264:**

All source code relating to the operation and control of the liquid handling robot in the NeuMoDx 96 and NeuMoDx 288 systems.

**REQUEST NO. 265:**

All source code relating to the operation and control of the syringe pump in the NeuMoDx 96 and NeuMoDx 288 systems.

**REQUEST NO. 266:**

All documents and things, including communications, relating to connections and communications between the internal computer of the NeuMoDx 96 and NeuMoDx 288 systems on the one hand; and components of the systems, including the XPCR modules, release heater, heater assembly, magnet heater, extraction plate heater module, syringe pump, and liquid handling robot, on the other.

**REQUEST NO. 267:**

All documents and things, including communications, relating to any consideration by NeuMoDx of a formal or financial relationship or agreement with BD, or efforts by NeuMoDx to establish a formal or financial relationship or agreement with BD, including but not limited to an acquisition, license, joint venture, or investment, with such documents including but not limited to any meetings, negotiations, discussions, due diligence, valuations, records, minutes, presentations, and memoranda.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
David P. Yin
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Omar A. Khan
Barish Ozdamar
Laura Macro
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

April 30, 2021

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
amoshos@morrisnichols.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2021, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Brian E. Farnan, Esquire                                 *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*


James K. Cleland, Esquire                                *VIA ELECTRONIC MAIL*
Michael Spink, Esquire
Keith Weiss, Esquire
DICKINSON WRIGHT PLLC
350 South Main Street, Suite 300
Ann Arbor, MI  48104
*Attorneys for Defendants*


Alan G. Carlson, Esquire                                 *VIA ELECTRONIC MAIL*
J. Derek Vandenburgh, Esquire
Gary J. Speier, Esquire
Jonathan D. Carpenter, Esquire
Peter M. Kohlhepp, Esquire
Samuel T. Lockner, Esquire
Alexandra J. Olson, Esquire
CARLSON, CASPERS, VANDENBURGH &
    LINDQUIST, P.A.
225 South 6th Street, Suite 4200
Minneapolis, MN  55402
*Attorneys for Defendants*

*/s/ Michael J. Flynn*
Michael J. Flynn (#5333)

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1126 (LPS) |
| NEUMODX MOLECULAR, INC., QIAGEN GMBH, QIAGEN NORTH AMERICAN HOLDINGS, INC., SUNDARESH BRAHMASANDRA, and JEFFREY WILLIAMS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS NEUMODX MOLECULAR, INC., QIAGEN GMBH, QIAGEN NORTH AMERICAN HOLDINGS, INC., SUNDARESH BRAHMASANDRA, AND JEFFREY WILLIAMS (NOS. 268-304)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Becton, Dickinson and Company and GeneOhm Sciences Canada, Inc. (collectively, "BD"), and HandyLab, Inc. ("HandyLab" and collectively with BD, "Plaintiffs"), hereby request that Defendants NeuMoDx Molecular, Inc., Qiagen GmbH, Qiagen North American Holdings, Inc., Sundaresh Brahmasandra, and Jeffrey Williams respond to the following requests for production within thirty (30) days of service, in accordance with the Definitions and Instructions below. Productions should be made at the law offices of Wilmer Cutler Pickering Hale and Dorr LLP, Attn: Omar Khan, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, or at such other place as may be mutually agreeable to counsel.

**DEFINITIONS**

Plaintiffs hereby incorporate by reference the Definitions set forth in Plaintiffs' Fifth Set of Requests for Production of Documents and Things to Defendants NeuMoDx Molecular, Inc., Sundaresh Brahmasandra, and Jeffrey Williams (Nos. 211-267), served on April 30, 2021.

**INSTRUCTIONS**

Plaintiffs hereby incorporate by reference the Instructions set forth in Plaintiffs' Fifth Set of Requests for Production of Documents and Things to Defendants NeuMoDx Molecular, Inc., Sundaresh Brahmasandra, and Jeffrey Williams (Nos. 211-267), served on April 30, 2021.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 268:**

All documents and things, including communications, relating to NeuMoDx's knowledge or awareness, including first knowledge or awareness, of the License and Supply Agreement between HandyLab and Qiagen executed on May 21, 2008 and/or the Amendment to the License and Supply Agreement between HandyLab and Qiagen executed on July 1, 2009, including relating to all responses thereto.

**REQUEST NO. 269:**

All documents and things, including communications, relating to NeuMoDx's acquisition or receipt, including NeuMoDx's first acquisition or receipt, of a copy or copies of the License and Supply Agreement between HandyLab and Qiagen executed on May 21, 2008 and/or the Amendment to the License and Supply Agreement between HandyLab and Qiagen executed on July 1, 2009, including relating to all responses thereto.

**REQUEST NO. 270:**

All documents and things, including communications, relating to the License and Supply Agreement between HandyLab and Qiagen executed on May 21, 2008 and/or the Amendment to the License and Supply Agreement between HandyLab and Qiagen executed on July 1, 2009.

**REQUEST NO. 271:**

All documents and things, including communications, relating to any exchange by, among, or between one or more of NeuMoDx, Qiagen, HandyLab, or any third party, of information relating to the License and Supply Agreement between HandyLab and Qiagen executed on May 21, 2008 and/or the Amendment to the License and Supply Agreement between HandyLab and Qiagen executed on July 1, 2009.

**REQUEST NO. 272:**

All documents and things, including communications, relating to BD and/or HandyLab patents.

**REQUEST NO. 273:**

All documents and things, including communications, relating to the Asserted Patents.

**REQUEST NO. 274:**

All documents and things, including communications, relating to Jaguar, Raider, Lynx, and/or RTa-10.

**REQUEST NO. 275:**

All documents and things, including communications, relating to any Related Patents or Applications.

**REQUEST NO. 276:**

All documents and things, including communications, relating to the conception, reduction to practice, research, design, or development of the subject matter covered by any

claims of any Related Patents or Applications, including all documents showing the Person(s) involved and their contributions thereto.

**REQUEST NO. 277:**

All documents and things, including communications, relating to Your first knowledge or awareness of any Related Patents or Applications, including relating to all responses thereto.

**REQUEST NO. 278:**

All documents and things, including communications, relating to any attempts by You to license any Related Patents or Applications.

**REQUEST NO. 279:**

All documents and things, including communications, relating to any attempts by You to avoid infringement of any Related Patents or Applications, including any contemplated work arounds or design arounds.

**REQUEST NO. 280:**

All documents and things, including communications, relating to prosecution of any Related Patents or Applications.

**REQUEST NO. 281:**

All documents and things, including communications, relating to Your processes and procedures for identifying, researching, monitoring, investigating, and/or assessing competitor products, patents, and patent applications.

**REQUEST NO. 282:**

All documents and things, including communications, relating to identifying, researching, monitoring, investigating, and/or assessing the Asserted Patents or any related U.S. or foreign patent or application.

**REQUEST NO. 283:**

All documents and things, including communications, relating to identifying, researching, monitoring, investigating, and/or assessing any HandyLab, BD, or BD Affiliates and Subsidiaries products, patents, or patent applications.

**REQUEST NO. 284:**

All documents and things, including communications, relating to identifying, researching, monitoring, investigating, and/or assessing the Plaintiffs' products, including but not limited to BD MAX, BD COR, and/or Jaguar.

**REQUEST NO. 285:**

All documents and things, including communications, relating to any attempts to avoid infringement of the Asserted Patents, including any contemplated work arounds or design arounds to the Asserted Patents.

**REQUEST NO. 286:**

All documents and things, including communications, relating to any attempts to design around or otherwise avoid infringement of any of the Asserted Patents, including documents relating to the manufacturing costs, performance, pricing, and customer acceptance of such alternatives to the Accused Products.

**REQUEST NO. 287:**

All documents and things, including communications, relating to any alleged non-infringing alternatives for the technology claimed in the Asserted Patents.

**REQUEST NO. 288:**

All documents and things, including communications, relating to Your processes and procedures for obtaining and/or conducting opinions of counsel, freedom to operate opinions, patent clearance, and/or intellectual properly analyses.

5

**REQUEST NO. 289:**

All documents and things, including communications, relating to any opinions of counsel, freedom to operate opinions, patent clearance, and/or intellectual properly analyses concerning the Accused Products.

**REQUEST NO. 290:**

All documents and things, including communications, relating to any opinions of counsel, freedom to operate opinions, patent clearance, and/or intellectual properly analyses concerning the Asserted Patents or any related U.S. or foreign patent or application.

**REQUEST NO. 291:**

All documents and things, including communications, relating to any opinions of counsel, freedom to operate opinions, patent clearance, and/or intellectual properly analyses concerning any HandyLab, BD, or BD Affiliates and Subsidiaries products, patents, or patent applications.

**REQUEST NO. 292:**

All documents and things, including communications, relating to any opinions of counsel, freedom to operate opinions, patent clearance, and/or intellectual properly analyses relating to Plaintiffs' products, including but not limited to BD MAX, BD COR, and/or Jaguar.

**REQUEST NO. 293:**

All documents and things, including communications, relating to any analysis of the market, market competition, or competitors, including but not limited to all documents and things, including communications, relating to the scope and characterization of the market in which the Accused Products are sold.

**REQUEST NO. 294:**

All documents and things, including communications, describing Plaintiffs and NeuMoDx as competitors or as in the same market.

**REQUEST NO. 295:**

All communications with the listed inventors of the Asserted Patents, either while employed by NeuMoDx, or as third parties, relating to BD, HandyLab, BD or HandyLab patents, or BD or HandyLab products.

**REQUEST NO. 296:**

All documents and things, including communications, received from any of the listed inventors of the Asserted Patents while they were not employees of NeuMoDx.

**REQUEST NO. 297:**

All emails from the custodians listed by Defendants in their disclosures pursuant to Paragraph 3 of the Court's Default Discovery Order relating to BD, HandyLab, the Asserted Patents, Related Patents and Applications, BD or HandyLab patents, Plaintiffs' Confidential Information, BD or HandyLab products, including BD MAX, BD COR, Jaguar, Raider, Lynx, or RTa-10, BD's acquisition of HandyLab, the inventors of the Asserted Patents, Qiagen, Qiagen's acquisition of NeuMoDx, the markets for and marketing of the Accused Products, competitors of the Accused Products, and this lawsuit.

**REQUEST NO. 298:**

All documents and things, including communications, supporting, refuting, reflecting, or relating to the existence of any current joint or common legal interests between NeuMoDx or Qiagen, and any other person or entity, including any interests relating to BD or HandyLab's intellectual property and/or infringement of the same.

**REQUEST NO. 299:**

All documents and things, including communications, relating to any common legal strategy or joint defense between NeuMoDx or Qiagen, and any other person or entity, relating to any actual or anticipated litigation with BD and/or HandyLab, including but not limited to this

7

litigation, any IPRs filed by NeuMoDx or Qiagen involving any Asserted Patents, or any other litigation involving any Asserted Patents or Accused Products, including proceedings before the United States International Trade Commission, the Patent and Trademark Office, or foreign tribunal.

**REQUEST NO. 300:**

All documents and things, including communications, relating to any Common Interest Agreements between NeuMoDx or Qiagen, and any other person or entity, including but not limited to all discussions, negotiations, diligence, drafts, versions, and/or revisions.

**REQUEST NO. 301:**

All documents and things, including communications, relating to freedom to operate opinions or opinions of counsel exchanged between NeuMoDx or Qiagen, and any other person or entity, relating to NeuMoDx's freedom-to-operate in the molecular diagnostics field and/or relating to BD or HandyLab patents.

**REQUEST NO. 302:**

All documents and things, including communications, relating to any actual or potential investment, merger or acquisition by or between NeuMoDx and Qiagen, regardless of whether such investment, merger or acquisition occurred, including but not limited to any meetings, negotiations, discussions, due diligence, records, minutes, and memoranda.

**REQUEST NO. 303:**

All actual or potential agreements relating to Qiagen's actual or potential investments in and financing of NeuMoDx, including but not limited to any stock purchase agreements, loan agreements, and option agreements.

**REQUEST NO. 304:**

All documents and things, including communications, relating to any actual or potential merger or acquisition by or between Qiagen and Thermo Fisher Scientific, which documents, things, or communications also relate to one or more of the following:

- NeuMoDx;

- This litigation;

- Any *inter partes* review filings or proceeding involving Plaintiffs' patents;

- BD and/or HandyLab, including BD and/or HandyLab patents or products;

- Asserted Patents;

- Related Patents and Applications;

- Plaintiffs' Confidential Information;

- Competition with Plaintiffs' products, including but not limited to BD MAX and BD COR;

- License and Supply Agreement between HandyLab and Qiagen executed on May 21, 2008, and/or the Amendment to the License and Supply Agreement between HandyLab and Qiagen executed on July 1, 2009.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
David P. Yin
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Omar A. Khan
Barish Ozdamar
Laura Macro
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

April 30, 2021

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
amoshos@morrisnichols.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2021, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Brian E. Farnan, Esquire                              *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*

James K. Cleland, Esquire                             *VIA ELECTRONIC MAIL*
Michael Spink, Esquire
Keith Weiss, Esquire
DICKINSON WRIGHT PLLC
350 South Main Street, Suite 300
Ann Arbor, MI  48104
*Attorneys for Defendants*

Alan G. Carlson, Esquire                              *VIA ELECTRONIC MAIL*
J. Derek Vandenburgh, Esquire
Gary J. Speier, Esquire
Jonathan D. Carpenter, Esquire
Peter M. Kohlhepp, Esquire
Samuel T. Lockner, Esquire
Alexandra J. Olson, Esquire
CARLSON, CASPERS, VANDENBURGH &
   LINDQUIST, P.A.
225 South 6th Street, Suite 4200
Minneapolis, MN  55402
*Attorneys for Defendants*

/s/ *Michael J. Flynn*
Michael J. Flynn (#5333)

# EXHIBIT 10

**From:** James K. Cleland <JCleland@dickinson-wright.com>
**Sent:** Thursday, May 27, 2021 12:51 PM
**To:** Yin, David <David.Yin@wilmerhale.com>; Alexandra J Olson <AOlson@carlsoncaspers.com>
**Cc:** Samuel T Lockner <SLockner@carlsoncaspers.com>; Peter M Kohlhepp
<PKohlhepp@carlsoncaspers.com>; Jon D Carpenter <JCarpenter@carlsoncaspers.com>; Michael N.
Spink <MSpink@dickinson-wright.com>; Keith D. Weiss <KWeiss@dickinson-wright.com>;
mfarnan@farnanlaw.com; bfarnan@farnanlaw.com; Khan, Omar <Omar.Khan@wilmerhale.com>;
mflynn@mnat.com; jblumenfeld@mnat.com; Gary J Speier <GSpeier@carlsoncaspers.com>
**Subject:** Plaintiffs' Discovery for New Claims and on New Defendants

<mark>EXTERNAL SENDER</mark>

Omar and David:

You mentioned yesterday that you have case law support that Defendants, including newly (and improperly) named Defendants Williams and Brahmasandra, are required to respond to Plaintiffs' written discovery requests directed to Plaintiffs' new trade secret and related claims and new parties, even though there are pending motions to dismiss and strike. As we indicated, we believe it was improper for Plaintiffs to serve the written discovery while there is a dispute over whether the new claims and parties are properly in this case—especially given the lack of venue over Williams and Brahmasandra. Please provide your legal support today. If we do not receive a response, we will understand that you have no legal support.

Jim


*For docketing purposes of patent & trademark matters only*, please add the appropriate email of
dwpatents@dickinsonwright.com or dwtrademarks@dickinsonwright.com to any emails being
sent to our office. Thank you.


**James K. Cleland** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104



Phone  734-436-7356
Fax     844-670-6009

Email   JCleland@dickinsonwright.com

**DICKINSON WRIGHT** PLLC

ARIZONA  CALIFORNIA  FLORIDA  ILLINOIS  KENTUCKY  MICHIGAN  NEVADA
OHIO  TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be
legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may

have made and notify us immediately by return e-mail.

Neither this transmission nor any attachment shall be deemed for any purpose to be a "signature" or "signed" under any electronic transmission acts, unless otherwise specifically stated herein. Thank you.

# EXHIBIT 11

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| Becton, Dickinson and Company, et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| NeuMoDx Molecular, Inc. | ) |
| *Defendant* | ) |

Civil Action No.   19-1126 (LPS)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Sundaresh Brahmasandra, c/o NeuMoDx Molecular, Inc., 1250 Eisenhower Place, Ann Arbor, MI 48108; and
Sundaresh Brahmasandra, 2325 Hollow Oak Drive, Ann Arbor, MI 48103

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attachment A

| Place: Electronically available to: Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Fl. Wilmington, DE 19801 | Date and Time: 05/18/2021 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/20/2021

*CLERK OF COURT*

OR

_____                    /s/ Michael J. Flynn
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Becton, Dickinson and Company, Geneohm Sciences Canada, Inc. and Handylab, Inc.  , who issues or requests this subpoena, are:
Michael J. Flynn, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16 Fl., Wilmington, DE 19801; mflynn@mnat.com; 302-351-9661.

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    19-1126 (LPS)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                        *Server's signature*

                                        _____
                                        *Printed name and title*

                                        _____
                                        *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Attachment A

## <u>INSTRUCTIONS</u>

1.      You are to produce, at all times acting within 100 miles of Your residence and/or place of business, all requested documents; electronically stored information (including but not limited to writings, drawings, schematics, graphs, charts, photographs, sound recordings, images, and other data or data compilations) stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form, subject to any protocol governing the production of electronically stored information subsequently agreed to by the parties; or tangible things that can converted to an electronic form that are in your actual or constructive possession, custody, or control, including documents and things stored on your personal or business email account(s), computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices, CDs, tapes, or cloud-based storage.

2.      You are to produce, at all times acting within 100 miles of Your residence and/or place of business, items responsive these requests in an electronic medium for retrieval by counsel for the party issuing the subpoena.

3.      Should you withhold any items responsive to these requests on the grounds that they are privileged, protected work product, or otherwise protected from discovery, you are to provide a log that expressly specifies the grounds for withholding the item and provides a description of the nature of the item not produced and sufficient information to enable Plaintiffs and the Court to assess the grounds on which the item has been withheld.

4.      If you object to any request or part of any request, you are to produce all items to which your objection does not apply.

1

5.      If in answering any request you claim any ambiguity in either the request or an applicable definition or instruction, you are to identify in your response the language you consider ambiguous and state the interpretation you are using in responding.

6.      In the event that multiple copies of a document exist, produce every copy of the document, including copies on which appear any notations or markings of any sort not appearing on any other copy.

7.      If you or your attorney know of the existence, past or present, of any document described in this Request, but such document is not presently in your possession, custody, or control, or in the possession, custody, or control of your agents, representatives, or attorneys, identify the document and the individual in whose possession, custody, or control the document was last known to reside. If the document no longer exists, state when, how, and why the document ceased to exist.

8.      You are to produce documents (a) as they are kept in the usual course of business or (b) organized and labelled to correspond to the categories in each request. In either case: (i) all associated file labels, file headings, and file folders shall be produced together with the responsive documents from each file and each file shall be identified as to its owner or custodian; (ii) all documents that cannot be legibly copied shall be produced in their original form; otherwise, you may produce photocopies; (iii) all photocopies shall be stapled or clipped as the originals; and (iv) each page shall be given a discrete production number.

9.      Nothing in these requests shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization.

10.      These requests are continuing so as to require supplemental or additional responses.

## DEFINITIONS

1.      Notwithstanding any definition set forth below, each word, term, or phrase used in these Instructions and Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

2.      "Sundaresh Brahmasandra," "you" or "your" means Sundaresh Brahmasandra, in your personal and individual capacity, and all other persons or entities acting or purporting to act or that have acted or purported to have acted on your behalf.

3.      "Plaintiff," "Plaintiffs," "our," or "ours" shall refer to Becton, Dickinson and Company Inc. GeneOhm Sciences Canada, Inc. (collectively "BD"), and HandyLab, Inc. ("HandyLab"), and all corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, business partners, affiliates, and all other persons or entities acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

4.      "NeuMoDx," shall refer to NeuMoDx Molecular, Inc., and all of NeuMoDx's corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, business partners, affiliates, and all other persons or entities acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing, including, without limitation, Jeff Williams, Sundaresh Brahmasandra, Qiagen GmbH, Qiagen North American Holdings, Inc., and Qiagen N.V.

3

(collectively "Qiagen"),   Molecular Systems Corporation ("MSC"), and corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, and each person acting or purporting to act on Qiagen's or MSC's behalf.

5.      "This litigation" or "this case" shall refer to the above-captioned lawsuit, *Becton Dickinson & Co. et al. v. NeuMoDx Molecular, Inc. et al.*, No. 19-cv-1126-LPS (D. Del.).

6.      "Document" is equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedures and shall be construed to mean, without limitation, any written, printed, typed, stored, faxed, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or electronically generated or stored information or data, whether assertedly privileged or not.  As used herein, "document" specifically includes, without limitation, all forms of electronic data, notes, memoranda, reports, lists, records, drawings, sketches, specifications, data, or documentation.  A prior or subsequent version, or draft or nonidentical copy is a separate document within the meaning of this term.

7.      "Communication" means every contact of any nature, including any oral, written or electronic transmission of information or request for information made by one or more persons and/or between two or more persons by means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, text messages, other computer linkups, written memoranda, voicemail messages, "instant messages," computer files, electronic or magnetic media, face-to-face conversations, or other documents containing such contacts.

8.      "Thing" has the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and the relevant case law.

9.      "Person(s)" means natural persons as well as business entities and associations of all sorts, including partnerships, companies, proprietorships, joint ventures, corporations, government agencies, and unincorporated associations, and the officers, directors, employees, agents, and attorneys thereof.

10.     "Entity" or "Entities" means, including without limitation, corporation, company, firm, partnership, joint venture, association, governmental body or agency, or persons other than a natural person.

11.     "Third Party" or "Third Parties" shall mean all Persons or Entities who are not parties to this litigation, as well as their officers, directors, employees, agents, and attorneys.

12.     "Including" means including but not limited to.

13.     "Relate to," "relates to," "refers to," or "relating to" means regarding, referring to, concerning, mentioning, reflecting, pertaining to, analyzing, evidencing, stating, involving, identifying, describing, discussing, documenting, commenting on, dealing with, embodying, responding to, supporting, contradicting, comprising, containing, or constituting (in whole or in part), as the context makes appropriate.

14.     The terms "all," "each," and "any" shall be construed as all and any.

15.     The use of the singular form of any word shall include the plural form and vice versa.

16.     The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

5

17.     The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgement on the part of Plaintiffs that such definition is accurate, meaningful, or appropriate for any other purpose in this litigation.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1:

All documents and things, including communications, relating or referring to BD and/or HandyLab, including but not limited to BD's or HandyLab's employees, intellectual property, products or contemplated products, or components thereof—including but not limited to BD MAX, BD COR, Anaconda, Jaguar, Raider, Lynx, or RTA-10, and including cartridges, assays, test strips, reagents, buffers, and consumables relating thereto.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; and (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

### REQUEST NO. 2:

All documents and things, including communications, referring or relating to any BD or HandyLab development, research, design, testing, manufacturing, marketing, sales, strategy, business, financials, or other activities, conduct, or performance.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB

drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**REQUEST NO. 3:**

All documents and things, including communications, referring or relating to BD or HandyLab confidential information, proprietary information, intellectual property, inventions, patents, trade secrets, copyrights, know-how, techniques, processes, methods, systems, projects, agreements, software programs, customer lists, supplier lists, vendor lists, sources of supply, part lists, or plans.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**REQUEST NO. 4:**

All documents and things prepared, accessed or obtained by you as part of your employment with BD and/or HandyLab.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and

things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**REQUEST NO. 5:**

All documents and things, including communications, originating at, received from, sent to, and/or copying BD and/or HandyLab, including but not limited to any communications and documents exchanged between a BD ("@bd.com") and/or HandyLab ("@handylab.com") email account, including documents and things stored on your personal or business email account(s), computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things.

**REQUEST NO. 6:**

Any and all agreements by, between or among you and BD, HandyLab, Life Magnetics, Molecular Systems Corporation, NeuMoDx, Molecular Systems Corporation, and/or Qiagen, including but not limited to employment agreements, confidentiality agreements, non-disclosure agreements, licensing or license agreements, royalty agreements, assignment agreements, consulting agreements, and/or termination agreements.

**REQUEST NO. 7:**

Your current (or most recent) *curriculum vitae* or resume.

8

# EXHIBIT 12

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| Becton, Dickinson and Company, et al. | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.  19-1126 (LPS) |
| NeuMoDx Molecular, Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Jeffrey Williams, c/o NeuMoDx Molecular, Inc., 1250 Eisenhower Place, Ann Arbor, MI 48108; and
Jeffrey Williams, 861 Maximilian Court, Chelsea, MI 48118

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See Attachment A

| Place: Electronically available to: Morris, Nichols, | Date and Time: |
|---|---|
| Arsht & Tunnell LLP, 1201 N. Market St., 16th Fl. Wilmington, DE 19801 | 05/18/2021 9:00 am |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      04/20/2021

|  | |
|---|---|
| *CLERK OF COURT* | OR |
| | /s/ Michael J. Flynn |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Becton, Dickinson
and Company, Geneohm Sciences Canada, Inc. and Handylab, Inc.      , who issues or requests this subpoena, are:
Michael J. Flynn, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16 Fl., Wilmington, DE 19801;
mflynn@mnat.com; 302-351-9661.

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 19-1126 (LPS)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____  on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Attachment A

## **INSTRUCTIONS**

1.      You are to produce, at all times acting within 100 miles of Your residence and/or place of business, all requested documents; electronically stored information (including but not limited to writings, drawings, schematics, graphs, charts, photographs, sound recordings, images, and other data or data compilations) stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form, subject to any protocol governing the production of electronically stored information subsequently agreed to by the parties; or tangible things that can converted to an electronic form that are in your actual or constructive possession, custody, or control, including documents and things stored on your personal or business email account(s), computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices, CDs, tapes, or cloud-based storage.

2.      You are to produce, at all times acting within 100 miles of Your residence and/or place of business, items responsive these requests in an electronic medium for retrieval by counsel for the party issuing the subpoena.

3.      Should you withhold any items responsive to these requests on the grounds that they are privileged, protected work product, or otherwise protected from discovery, you are to provide a log that expressly specifies the grounds for withholding the item and provides a description of the nature of the item not produced and sufficient information to enable Plaintiffs and the Court to assess the grounds on which the item has been withheld.

4.      If you object to any request or part of any request, you are to produce all items to which your objection does not apply.

5.      If in answering any request you claim any ambiguity in either the request or an applicable definition or instruction, you are to identify in your response the language you consider ambiguous and state the interpretation you are using in responding.

6.      In the event that multiple copies of a document exist, produce every copy of the document, including copies on which appear any notations or markings of any sort not appearing on any other copy.

7.      If you or your attorney know of the existence, past or present, of any document described in this Request, but such document is not presently in your possession, custody, or control, or in the possession, custody, or control of your agents, representatives, or attorneys, identify the document and the individual in whose possession, custody, or control the document was last known to reside. If the document no longer exists, state when, how, and why the document ceased to exist.

8.      You are to produce documents (a) as they are kept in the usual course of business or (b) organized and labelled to correspond to the categories in each request. In either case: (i) all associated file labels, file headings, and file folders shall be produced together with the responsive documents from each file and each file shall be identified as to its owner or custodian; (ii) all documents that cannot be legibly copied shall be produced in their original form; otherwise, you may produce photocopies; (iii) all photocopies shall be stapled or clipped as the originals; and (iv) each page shall be given a discrete production number.

9.      Nothing in these requests shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization.

10.     These requests are continuing so as to require supplemental or additional responses.

## **DEFINITIONS**

1.      Notwithstanding any definition set forth below, each word, term, or phrase used in these Instructions and Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

2.      "Jeffrey Williams," "you" or "your" means Jeffrey Williams, in your personal and individual capacity, and all other persons or entities acting or purporting to act or that have acted or purported to have acted on your behalf.

3.      "Plaintiff," "Plaintiffs," "our," or "ours" shall refer to Becton, Dickinson and Company Inc. GeneOhm Sciences Canada, Inc. (collectively "BD"), and HandyLab, Inc. ("HandyLab"), and all corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, business partners, affiliates, and all other persons or entities acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing.

4.      "NeuMoDx," shall refer to NeuMoDx Molecular, Inc., and all of NeuMoDx's corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, principals, agents, employees, representatives, assigns, attorneys, experts, insurers, business partners, affiliates, and all other persons or entities acting or purporting to act or that have acted or purported to have acted on behalf of any of the foregoing, including, without limitation, Jeff Williams, Sundaresh Brahmasandra, Qiagen GmbH, Qiagen North American Holdings, Inc., and Qiagen N.V. (collectively "Qiagen"),  Molecular Systems Corporation ("MSC"), and corporate parents, corporate predecessors, corporate successors, and all past or present subsidiaries, affiliates, divisions, units, departments, officers, directors, principals, agents, employees, representatives,

assigns, attorneys, experts, insurers, and each person acting or purporting to act on Qiagen's or MSC's behalf.

5.      "This litigation" or "this case" shall refer to the above-captioned lawsuit, *Becton Dickinson & Co. et al. v. NeuMoDx Molecular, Inc. et al.*, No. 19-cv-1126-LPS (D. Del.).

6.      "Document" is equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedures and shall be construed to mean, without limitation, any written, printed, typed, stored, faxed, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or electronically generated or stored information or data, whether assertedly privileged or not.  As used herein, "document" specifically includes, without limitation, all forms of electronic data, notes, memoranda, reports, lists, records, drawings, sketches, specifications, data, or documentation.  A prior or subsequent version, or draft or nonidentical copy is a separate document within the meaning of this term.

7.      "Communication" means every contact of any nature, including any oral, written or electronic transmission of information or request for information made by one or more persons and/or between two or more persons by means including, without limitation, telephone conversations, letters, telegrams, teletypes, telexes, telecopies, e-mail, text messages, other computer linkups, written memoranda, voicemail messages, "instant messages," computer files, electronic or magnetic media, face-to-face conversations, or other documents containing such contacts.

8.      "Thing" has the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and the relevant case law.

9.      "Person(s)" means natural persons as well as business entities and associations of all sorts, including partnerships, companies, proprietorships, joint ventures, corporations,

government agencies, and unincorporated associations, and the officers, directors, employees, agents, and attorneys thereof.

10.     "Entity" or "Entities" means, including without limitation, corporation, company, firm, partnership, joint venture, association, governmental body or agency, or persons other than a natural person.

11.     "Third Party" or "Third Parties" shall mean all Persons or Entities who are not parties to this litigation, as well as their officers, directors, employees, agents, and attorneys.

12.     "Including" means including but not limited to.

13.     "Relate to," "relates to," "refers to," or "relating to" means regarding, referring to, concerning, mentioning, reflecting, pertaining to, analyzing, evidencing, stating, involving, identifying, describing, discussing, documenting, commenting on, dealing with, embodying, responding to, supporting, contradicting, comprising, containing, or constituting (in whole or in part), as the context makes appropriate.

14.     The terms "all," "each," and "any" shall be construed as all and any.

15.     The use of the singular form of any word shall include the plural form and vice versa.

16.     The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

17.     The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgement on the part of Plaintiffs that such definition is accurate, meaningful, or appropriate for any other purpose in this litigation.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents and things, including communications, relating or referring to BD and/or HandyLab, including but not limited to BD's or HandyLab's employees, intellectual property, products or contemplated products, or components thereof—including but not limited to BD MAX, BD COR, Anaconda, Jaguar, Raider, Lynx, or RTA-10, and including cartridges, assays, test strips, reagents, buffers, and consumables relating thereto.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; and (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**REQUEST NO. 2:**

All documents and things, including communications, referring or relating to any BD or HandyLab development, research, design, testing, manufacturing, marketing, sales, strategy, business, financials, or other activities, conduct, or performance.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**REQUEST NO. 3:**

All documents and things, including communications, referring or relating to BD or HandyLab confidential information, proprietary information, intellectual property, inventions, patents, trade secrets, copyrights, know-how, techniques, processes, methods, systems, projects, agreements, software programs, customer lists, supplier lists, vendor lists, sources of supply, part lists, or plans.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**REQUEST NO. 4:**

All documents and things prepared, accessed or obtained by you as part of your employment with BD and/or HandyLab.

This request includes, without limitation, (i) documents and things stored on your personal or business email account(s), webmail, computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things; (ii) documents and things referring or relating to transferring, retaining, moving, uploading, acquiring, disclosing and/or using any documents and things relating or referring to the subject matter of this Request.

**REQUEST NO. 5:**

All documents and things, including communications, originating at, received from, sent to, and/or copying BD and/or HandyLab, including but not limited to any communications and documents exchanged between a BD ("@bd.com") and/or HandyLab ("@handylab.com") email account, including documents and things stored on your personal or business email account(s), computer(s), laptop(s), servers, hard drives, network drives, digital data storage devices or mechanisms (including but not limited to thumb drives, USB drives, CDs, and/or cloud-based storage), or physical documents and things.

**REQUEST NO. 6:**

Any and all agreements by, between or among you and BD, HandyLab, Life Magnetics, Molecular Systems Corporation, NeuMoDx, Molecular Systems Corporation, and/or Qiagen, including but not limited to employment agreements, confidentiality agreements, non-disclosure agreements, licensing or license agreements, royalty agreements, assignment agreements, consulting agreements, and/or termination agreements.

**REQUEST NO. 7:**

Your current (or most recent) *curriculum vitae* or resume.

# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1126 (LPS) |
| NEUMODX MOLECULAR, INC., QIAGEN GMBH, QIAGEN NORTH AMERICAN HOLDINGS, INC., SUNDARESH BRAHMASANDRA, and JEFFREY WILLIAMS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' THIRD SET OF INTERROGATORIES TO DEFENDANTS (NOS. 24-27)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Becton, Dickinson and Company, GeneOhm Sciences Canada, Inc. (collectively, "BD"), and HandyLab, Inc. ("HandyLab" and collectively with BD, "Plaintiffs"), hereby request that Defendants NeuMoDx Molecular, Inc., Qiagen GmbH, Qiagen North American Holdings, Inc., Sundaresh Brahmasandra, and Jeffrey Williams respond to the following interrogatories within thirty (30) days of service.

## DEFINITIONS

Plaintiffs hereby incorporate by reference the Definitions set forth in Plaintiffs' Fifth Set of Requests for Production of Documents and Things to Defendants NeuMoDx Molecular, Inc. Sundaresh Brahmasandra, and Jeffrey Williams, served on April 30, 2021.

## INSTRUCTIONS

Plaintiffs hereby incorporate by reference the Instructions set forth in Plaintiffs' First Set of Interrogatories, served on September 2, 2020.

## INTERROGATORIES

1

**INTERROGATORY NO. 24:**

Identify and describe in detail all facts and circumstances relating to each and every document or communication in Defendants' possession, custody, or control reflecting or relating to Plaintiffs' Confidential Information, including any formal or informal documentation of Plaintiffs' Confidential Information.  This includes but is not limited to (1) identifying all documents, communications and tangible things in Defendants' possession, custody or control that constitute, contain or otherwise refer to Plaintiffs' Confidential Information; (2) identifying all sources, places or locations where Confidential Information is sourced, placed, or located, including identifying all custodial and non-custodial sources ("Locations of Confidential Information"); (3) identifying all individuals and entities, including but not limited to NeuMoDx's or Qiagen's current or former employees, vendors, contractors or agents, that disclosed, saw, used, and/or had possession or access to Plaintiffs' Confidential Information or Locations of Confidential Information; and (4) describing in detail all facts and circumstances relating to how each such Entity or Individual acquired, obtained, retained, sent, received, used, disclosed, saw, accessed, or possessed each item of Confidential Information, including describing all use in connection with NeuMoDx's products, including product design, research, development, assembly, manufacturing, or testing; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**INTERROGATORY NO. 25:**

Describe in detail the facts and circumstances relating to any NeuMoDx or Qiagen practices, policies, and/or procedures relating to any patent identification, monitoring, tracking, analysis, assessment, and/or investigation.  This includes, but is not limited to, any steps taken by NeuMoDx or Qiagen to monitor or track patents assigned to NeuMoDx's or Qiagen's competitors,

2

including but not limited to BD and/or HandyLab; any steps taken by NeuMoDx or Qiagen to monitor or track patents relating to nucleic acid testing and/or molecular diagnostics; any steps taken by NeuMoDx or Qiagen to monitor or identify patents that NeuMoDx's products may infringe; any steps taken by NeuMoDx or Qiagen to determine whether NeuMoDx infringes any patents; any steps taken by NeuMoDx or Qiagen after learning of patents that NeuMoDx's products may infringe, including, but not limited to any steps taken by NeuMoDx or Qiagen to investigate any U.S. or foreign patents issuing directly or indirectly from any ancestor, provisional, continuation, continuation-in-part, divisional, or reissue relating to the Asserted Patents or from any interference or reexamination proceedings regarding any such patents or the applications thereof, any reexamination and reissue certificate(s) issuing from any of the foregoing, and any U.S. or foreign patent applications leading directly or indirectly to the foregoing (including without limitation all published and unpublished pending and abandoned applications); NeuMoDx's or Qiagen's practices, policies, and/or procedures relating to legal escrow amounts, freedom to operate opinions, patent clearance opinions, and/or opinions of counsel; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**INTERROGATORY NO. 26:**

Describe in detail the facts and circumstances relating to NeuMoDx's past or current legal, business, or other relationships with Qiagen.  This includes, but is not limited, to identifying and describing in detail the facts and circumstances, including relevant dates, pertaining to all contracts and agreements between Qiagen and NeuMoDx, including any acquisition, distribution, supply, joint venture, or common interest agreements; Qiagen's acquisition of NeuMoDx, including any due diligence in connection with said acquisition; policies, guidance, and intercompany agreements relating to the relationship between Qiagen and NeuMoDx; Qiagen's supervision,

3

management of and relationship with and to NeuMoDx, including any past or present employee, manager, executive, or director of Qiagen  who is a past or present employee, manager, executive, or director of NeuMoDx, and vice versa; Qiagen's financing of NeuMoDx's operations; Qiagen's distribution, sales, offers for sale, marketing, and advertising of NeuMoDx products; any analyses, evaluations, investigations, or assessments conducted by Qiagen or on behalf of Qiagen related to NeuMoDx, BD, HandyLab, their products, or their intellectual property; communications and/or actions by or between Qiagen and/or NeuMoDx in connection with any petitions for *inter partes* review of the Asserted Patents; communications and/or actions by or between Qiagen and/or NeuMoDx in connection with this litigation; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**<u>INTERROGATORY NO. 27:</u>**

Describe in detail all factual and legal bases for any contention by Defendants that BD and/or HandyLab products do or do not practice the Asserted Patents.  This includes but is not limited to identifying and describing in detail, separately for each Asserted Patent and on a claim-by-claim basis, each limitation NeuMoDx alleges is or is not practiced BD and/or HandyLab products, and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
David P. Yin
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Omar A. Khan
Barish Ozdamar
Laura Macro
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

April 30, 2021

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
amoshos@morrisnichols.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2021, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Brian E. Farnan, Esquire                              *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*


James K. Cleland, Esquire                             *VIA ELECTRONIC MAIL*
Michael Spink, Esquire
Keith Weiss, Esquire
DICKINSON WRIGHT PLLC
350 South Main Street, Suite 300
Ann Arbor, MI  48104
*Attorneys for Defendants*


Alan G. Carlson, Esquire                              *VIA ELECTRONIC MAIL*
J. Derek Vandenburgh, Esquire
Gary J. Speier, Esquire
Jonathan D. Carpenter, Esquire
Peter M. Kohlhepp, Esquire
Samuel T. Lockner, Esquire
Alexandra J. Olson, Esquire
CARLSON, CASPERS, VANDENBURGH &
   LINDQUIST, P.A.
225 South 6th Street, Suite 4200
Minneapolis, MN  55402
*Attorneys for Defendants*

/s/ *Michael J. Flynn*
Michael J. Flynn (#5333)

# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-1126 (LPS) |
| NEUMODX MOLECULAR, INC., QIAGEN GMBH, QIAGEN NORTH AMERICAN HOLDINGS, INC., SUNDARESH BRAHMASANDRA, and JEFFREY WILLIAMS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' FOURTH SET OF**
**INTERROGATORIES TO DEFENDANTS (NOS. 28-30)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Becton, Dickinson and Company, GeneOhm Sciences Canada, Inc. (collectively, "BD"), and HandyLab, Inc. ("HandyLab" and collectively with BD, "Plaintiffs"), hereby request that Defendants NeuMoDx Molecular, Inc., Qiagen GmbH, Qiagen North American Holdings, Inc., Sundaresh Brahmasandra, and Jeffrey Williams respond to the following interrogatories within thirty (30) days of service.

## DEFINITIONS

Plaintiffs hereby incorporate by reference the Definitions set forth in Plaintiffs' Fifth Set of Requests for Production of Documents and Things to Defendants NeuMoDx Molecular, Inc. Sundaresh Brahmasandra, and Jeffrey Williams, served on April 30, 2021.

## INSTRUCTIONS

Plaintiffs hereby incorporate by reference the Instructions set forth in Plaintiffs' First Set of Interrogatories, served on September 2, 2020.

## INTERROGATORIES

## INTERROGATORY NO. 28:

Describe in detail, in chart form, the facts and circumstances relating to each version, which includes each prototype, revision, update, modification, change, launched version, non-commercially launched version, and/or newly released version, of the Accused Products.  This includes, but is not limited to, identifying and describing in detail (using separate rows of the chart) each version of NeuMoDx's molecular diagnostic instruments, platforms, systems, cartridges, assays, and consumables, including without limitation the NeuMoDx 500 or NMDX 500, or NeuMoDx 100 or NMDX 100; describing in detail the mechanical, physical, operational, and/or functional differences between each such version and the immediate prior version; describing in detail all revisions, updates, modifications, and/or changes to the technical design or features reflected in each such version as compared to the immediate prior version, including but not limited to revisions, updates, modifications, and/or changes to the microfluidic cartridge and/or heaters, microfluidic valves, XPCR Module, Thermocycling or Thermal Cycling Module, PCR Heater, PCR Heater PCB, PCR Heater Assembly, PCR Chip, Cartridge, XPCR Cartridge, PCR Chamber, PCR reaction chamber, and/or PCR reaction zone; the individuals involved in the revisions, updates, modifications, and/or changes of each such version; the reasons for such revisions, updates, modifications, and/or changes in each such version; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

## INTERROGATORY NO. 29:

Describe in detail the facts and circumstances relating to all interactions with—including but not limited to communications with, and documents provided to or received from—NeuMoDx or other entities (including but not limited to Thermo Fisher Scientific Inc. and its affiliates)

relating to BD or HandyLab.  This includes, but is not limited to, identifying and describing in detail interactions in which BD or HandyLab were referenced; communications and documents referencing, regarding or relating to BD or HandyLab, including their predecessors, successors, past or present subsidiaries, affiliates, divisions, units, departments, officers, directors, principals, agents, employees, and representatives; any reference to any patent or application owned, assigned or licensed to BD or HandyLab, including but not limited to the Asserted Patents; any reference to a BD or HandyLab product or project, including without limitation the MAX, COR, Jaguar, or Raider systems, any component or feature thereof, any technologies reflected therein; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

## INTERROGATORY NO. 30:

Describe in detail all factual and legal bases relating to Defendants' Counterclaim for declaratory judgment of no termination of the License and Supply Agreement between HandyLab and Qiagen executed on May 21, 2008 and/or the Amendment to the License and Supply Agreement between HandyLab and Qiagen executed on July 1, 2009 (the "Agreement").  This includes, but is not limited to, identifying and describing in detail the specific contractual language that allegedly forms the basis for Defendants' Counterclaim; Defendants' interpretation of that language and all documents (including communications) supporting Defendants' interpretation; all exchanges, discussions and communications between Qiagen and NeuMoDx relating to the Agreement (including NeuMoDx's awareness and/or possession of the Agreement, including first awareness and first possession, and the timing and circumstances of such awareness and/or possession, in particular after November 20, 2009); all factual and legal bases relating to whether Defendants challenged the validity of HandyLab patents or assisted in any such challenge; all factual and legal bases relating to whether Defendants provided HandyLab notice of any

3

infringement or threatened infringement prior to June 18, 2019; all factual and legal bases whether Defendants brought any disputes arising under the Agreement and/or challenges to the validity of HandyLab patents outside of the state or federal courts situated in Delaware; and all factual and legal bases relating to any contention that Defendants have or have not breached any provision of the Agreement, including but not limited to Sections 4.5, 7.1, 9, 14, and 20 of the Agreement, that Defendants' breaches are not material, that Defendants' breaches are curable and were cured, or that termination is prohibited under the Agreement; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew M. Moshos*

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
David P. Yin
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Omar A. Khan
Barish Ozdamar
Laura Macro
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

May 4, 2021

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
amoshos@morrisnichols.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2021, copies of the foregoing were caused to be served upon

the following in the manner indicated:

Brian E. Farnan, Esquire                                          *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*


James K. Cleland, Esquire                                       *VIA ELECTRONIC MAIL*
Michael Spink, Esquire
Keith Weiss, Esquire
DICKINSON WRIGHT PLLC
350 South Main Street, Suite 300
Ann Arbor, MI  48104
*Attorneys for Defendants*


Alan G. Carlson, Esquire                                        *VIA ELECTRONIC MAIL*
J. Derek Vandenburgh, Esquire
Gary J. Speier, Esquire
Jonathan D. Carpenter, Esquire
Peter M. Kohlhepp, Esquire
Samuel T. Lockner, Esquire
Alexandra J. Olson, Esquire
CARLSON, CASPERS, VANDENBURGH &
    LINDQUIST, P.A.
225 South 6th Street, Suite 4200
Minneapolis, MN  55402
*Attorneys for Defendants*


*/s/ Andrew M. Moshos*
_____
Andrew M. Moshos (#6685)

# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY, | ) | |
| GENEOHM SCIENCES CANADA, INC. | ) | |
| and HANDYLAB, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1126 (LPS) |
| | ) | |
| NEUMODX MOLECULAR, INC., | ) | |
| QIAGEN GMBH, QIAGEN NORTH | ) | |
| AMERICAN HOLDINGS, INC., | ) | |
| SUNDARESH BRAHMASANDRA and | ) | |
| JEFFREY WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' FIFTH SET OF
INTERROGATORIES TO DEFENDANTS (NOS. 31-35)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Becton, Dickinson and Company, GeneOhm Sciences Canada, Inc. (collectively, "BD"), and HandyLab, Inc. ("HandyLab" and collectively with BD, "Plaintiffs"), hereby request that Defendants NeuMoDx Molecular, Inc., Qiagen GmbH, Qiagen North American Holdings, Inc., Sundaresh Brahmasandra, and Jeffrey Williams respond to the following interrogatories within thirty (30) days of service.

**DEFINITIONS**

Plaintiffs hereby incorporate by reference the Definitions set forth in Plaintiffs' Fifth Set of Requests for Production of Documents and Things to Defendants NeuMoDx Molecular, Inc. Sundaresh Brahmasandra, and Jeffrey Williams, served on April 30, 2021.

**INSTRUCTIONS**

Plaintiffs hereby incorporate by reference the Instructions set forth in Plaintiffs' First Set of Interrogatories, served on September 2, 2020.

## INTERROGATORIES

**INTERROGATORY NO. 31:**

Describe in detail any contentions and all facts and circumstances relating to demand, sales, and customers or consumers or end-users of the Accused Products. This includes, but is not limited to, the identity of each actual or potential customer or consumer or end-user for the Accused Products; all communications between You and each actual or potential customer or consumer or end-user, including communications regarding price, capabilities of the Accused Products, and alternatives to the Accused Products and/or comparisons of the Accused Products to alternatives available on the market; the ultimate sales price for Accused Products; any contracts entered into with any customer or consumer or end-user concerning the Accused Products; any terms and conditions or warranties entered into with any customer or consumer or end-user concerning the Accused Products; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**INTERROGATORY NO. 32:**

Separately for each such NeuMoDx confidential document and/or information, describe in detail, in chart-form, any contentions and all facts and circumstances relating to each NeuMoDx confidential document and/or information that NeuMoDx contends or alleges that it shared with HandyLab and/or BD at any time prior to the filing of this litigation. This includes, without limitation, providing a chart (1) identifying with specificity each specific NeuMoDx confidential document and/or information that NeuMoDx contends or alleges that it shared with BD at any time prior to the filing of this litigation ("NeuMoDx Information"); (2) separately for each such NeuMoDx Information, all facts and circumstances relating to any contention by NeuMoDx that such NeuMoDx Information was confidential; (3) separately for each such NeuMoDx Information,

2

when, where and how the NeuMoDx Information was shared with BD; (4) separately for each such NeuMoDx Information, all individual(s) from BD with whom the NeuMoDx Information was shared; (5) separately for each such NeuMoDx Information, an express indication of whether the NeuMoDx Information was shared with BD under conditions of confidentiality; (6) separately for each such NeuMoDx Information, all facts and circumstances evidencing any such conditions of confidentiality; (7) separately for each such NeuMoDx Information, all other third parties, persons or entities who also ever saw, ever had access to and/or received the NeuMoDx Information; (8) separately for each such NeuMoDx Information, when, where and how each such third party, person or entity saw, had access to and/or received the NeuMoDx Information; (9) whether the NeuMoDx Information was shared with such other third party, person or entity under conditions of confidentiality; (10) all facts and circumstances evidencing any such conditions of confidentiality as to such other third party, person or entity; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

## INTERROGATORY NO. 33:

Describe in detail all factual and legal bases relating to any contention that Defendants and/or their current or former employees have not acquired, accessed, retained, used, disclosed, disseminated, handled and/or otherwise misappropriated Plaintiffs' Confidential Information. This includes but is not limited to identifying and describing in detail all of Plaintiffs' Confidential Information in Defendants' possession, custody, or control; the circumstances of Defendants' possession, custody, or control of Plaintiffs' Confidential Information; Defendants' use or reference to Plaintiffs' Confidential Information; any contention by Defendants that they acquired Plaintiffs' Confidential Information with Plaintiffs' authorization; any contention by Defendants that any of Plaintiffs' Confidential Information was not the subject of reasonable efforts to

maintain its secrecy; any contention by Defendants that any of Plaintiffs' Confidential Information was, or is, generally known or readily ascertainable; any allegation by Defendants that any of Plaintiffs' Confidential Information was, or is, obtained or obtainable from another person with a right to disclose the information; any alleged reverse engineering or independent development of Plaintiffs' Confidential Information by any person or entity other than Plaintiffs; Defendants' retention and storage of Plaintiffs' Confidential Information; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**INTERROGATORY NO. 34:**

Describe in detail any contentions and all facts and circumstances relating to all steps You have taken, if any, to ensure that any former employees of Plaintiffs that You employed and/or currently employ did not and/or do not acquire, access, retain, use, disclose, disseminate, handle and/or otherwise misappropriate Plaintiffs' Confidential Information while working for You; and all documents (including communications) and witnesses relating to and the three Persons most knowledgeable about the foregoing or the subject matter of this Interrogatory.

**INTERROGATORY NO. 35:**

Describe in detail all factual and legal bases relating to any contention that Defendants have not breached and/or caused the breach of any employment, confidentiality, non-disclosure agreement, or other agreement and/or duty or obligation between or among Plaintiffs on the one hand and Defendants or Defendants' past or present employees on the other hand; or have not fraudulently induced or concealed facts in connection with any such agreements, duties, or obligations, including but not limited to Sundaresh Brahmasandra's Employment Agreement with BD and/or HandyLab, the Amendment to Sundaresh Brahmasandra's Employment Agreement dated February 23, 2012, Jeffrey Williams's Employment Agreement with BD and/or HandyLab,

and Brahmasandra's and Williams's confidentiality and/or non-disclosure agreements with, and/or duties and obligations to, BD and/or HandyLab.  This includes but is not limited to identifying and describing in detail all negotiations, discussions, or communications in connection with any such agreement, duty, and/or obligation; all of Plaintiffs' Confidential Information in Defendants' possession, custody, or control at the time any such negotiations, discussions, or communications occurred; all representations by Defendants' relating to NeuMoDx's proposed business in connection with any such agreement, duty, and/or obligation; the factual and legal bases for any contention by Defendants that Defendants acted in good faith with relating to the agreements, duties, and/or obligation; and all documents (including communications) and witnesses relating to, and the three Persons most knowledgeable about, the foregoing or the subject matter of this Interrogatory.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
David P. Yin
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Omar A. Khan
Barish Ozdamar
Laura Macro
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

May 21, 2021

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
amoshos@morrisnichols.com

*Attorneys for Plaintiffs*

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2021, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Brian E. Farnan, Esquire                          *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*

James K. Cleland, Esquire                         *VIA ELECTRONIC MAIL*
Michael Spink, Esquire
Keith Weiss, Esquire
DICKINSON WRIGHT PLLC
350 South Main Street, Suite 300
Ann Arbor, MI  48104
*Attorneys for Defendants*

Alan G. Carlson, Esquire                          *VIA ELECTRONIC MAIL*
J. Derek Vandenburgh, Esquire
Gary J. Speier, Esquire
Jonathan D. Carpenter, Esquire
Peter M. Kohlhepp, Esquire
Samuel T. Lockner, Esquire
Alexandra J. Olson, Esquire
CARLSON, CASPERS, VANDENBURGH &
  LINDQUIST, P.A.
225 South 6th Street, Suite 4200
Minneapolis, MN  55402
*Attorneys for Defendants*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)