IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NEUMODX MOLECULAR, INC., QIAGEN GMBH, QIAGEN NORTH AMERICAN HOLDINGS, INC., SUNDARESH BRAHMASANDRA and JEFFREY WILLIAMS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   C.A. No. 19-1126 (LPS) <br><br> **REDACTED -** <br> **PUBLIC VERSION** |

**PLAINTIFFS' LETTER BRIEF RESPONSE TO
DEFENDANTS' LETTER REGARDING
MODIFICATION AND CLARIFICATION OF THE SCHEDULING ORDER**

OF COUNSEL:

Amy K. Wigmore
Heather M. Petruzzi
David P. Yin
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Omar A. Khan
Barish Ozdamar
Laura Macro
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
Andrew M. Moshos (#6685)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com
amoshos@morrisnichols.com

*Attorneys for Plaintiffs*

Original Filing Date: June 4, 2021
Redacted Filing Date: June 11, 2021

Dear Chief Judge Stark:

Throughout this case, Defendants have repeatedly attempted to obtain or compel an extension to the Court's April 11, 2022 trial date.  As with their prior efforts, Defendants' latest request—for 4 more months to complete fact discovery, and a 6-month trial date push—should be rejected.  Any need to extend fact discovery is caused by Defendants' own failure to diligently participate in discovery and by their resort to self-help to force an extension.  Moreover, given Qiagen intends to substantially complete document productions by June 21, and Defendants intend to start depositions in June, a modest, 30-day extension (as set forth in Ex. 1) should be sufficient to complete fact discovery for the parties' patent-related claims, defenses, and counterclaims.[1]

**I. Defendants' Delay Is For Tactical Advantage.**  In its pending IPR petitions, filed in November 2020, NeuMoDx argued that the PTAB should not discretionarily deny the petitions because, although "[t]rial is currently scheduled for April 11, 2022, meaning the final written decision would be due approximately one month after trial ..., that trial date is likely to be delayed significantly … for anywhere from 4 to 6 months later." *See, e.g.,* Ex. 2.  It is no surprise that Defendants have sought to engineer *exactly* such a delay, and they now expressly seek a 6-month extension to the trial date.  Defendants' pattern of delay is well-documented:

- In May 2020, NeuMoDx responded to Plaintiffs' timely motion to amend the complaint to add additional patents, and NeuMoDx complained that the additional patents will "require" a 6-month trial extension to "September/October [] 2022" (D.I. 37, D.I. 44 at 1, D.I. 47 at 18).  Defendants are now again proposing a trial extension to October 2022.  The Court should again reject that effort and find "this case can and should proceed toward trial on the date previously provided by the Court (April 11, 2022)."  D.I. 52.

- In June 2020, after having delayed producing 95% of its core technical documents until just days before Plaintiffs' infringement contentions were due, NeuMoDx inexplicably refused to produce relevant, prior versions of Core Technical Documents.  *See* D.I. 67 at 1 & n.1.  The Court compelled NeuMoDx to produce the specific documents Plaintiffs identified.  D.I. 71.

- In October 2020, NeuMoDx sought to compel new infringement contentions, and requested "proportional extensions"—of several months—for its "preliminary claim construction and invalidity contentions."  D.I. 92 at 3.  The Court rejected that request.  D.I. 91 at 26:15-19.

- In November 2020, NeuMoDx successfully forced a 1-month delay in the *Markman* hearing, by refusing to timely narrow its claim construction disputes.  *See* D.I. 100 at 1-2.

- In December 2020, NeuMoDx opposed Plaintiffs' timely amendment to add Qiagen—even though Qiagen had acquired NeuMoDx (in Sept. 2020), Qiagen participated in a Court-ordered mediation as the "decisionmaker" (in Oct. 2020), NeuMoDx refused to collect relevant discovery from Qiagen (in late November and December 2020), and Plaintiffs timely served its proposed amendment (in December 2020) long before the deadline to amend pleadings.  *See*

---

[1] To the extent the Court is inclined to enter Defendants' proposed schedule, Defendants' pending motion to strike and sever/transfer should be summarily denied because there could be no prejudice to Defendants under their schedule.  As Plaintiffs demonstrated, there is significant overlap in issues, evidence, and witnesses between the patent and non-patent claims (D.I. 274 at 9-13) and, thus, Defendants' claim that the counterclaims-in-reply are "equivalent to starting a whole new case" (D.I. 294 at 1 n.1) is exaggerated and unfounded.  There should be more than ample time, under Defendants' schedule, for any incremental discovery on the counterclaims-in-reply.

- D.I. 127.  Two months later, Defendants ultimately stipulated to Qiagen's joinder.  D.I. 159.

- In February 2020, NeuMoDx significantly delayed the production of its ESI by refusing to provide a hit report for *any* of Plaintiffs' search terms and declining to even discuss ESI discovery.  D.I. 158 at 3.  The Court ultimately ordered NeuMoDx to do so.  D.I. 177 at 185.

- NeuMoDx fully knew that its founders had misappropriated vast quantities of Plaintiffs' confidential and proprietary information.  D.I. 209 ¶ 27-36.  But NeuMoDx delayed producing *any* of that highly relevant material until the deadline for substantial completion of document productions and it then produced the majority of the misappropriation-related documents *after* that deadline.  D.I. 275 n.3; D.I. 295 at 2.

- Even though Qiagen was added to this case in February, and has long known that it would be involved (D.I. 127), Qiagen had not even gathered its ESI until May 2022.  Ex. 3 at 12.

Most recently, Defendants have slowed discovery to a trickle.  Qiagen has produced just 356 documents total, and does not intend to substantially complete its production until the last day of fact discovery.  D.I. 292 at 3.  NeuMoDx has not even finished complying with the Court's April 7 order on the common interest privilege.  *Id*. at 3.  NeuMoDx is withholding additional misappropriation-related documents indisputably relevant to willful and induced infringement and objective indicia of nonobviousness, despite having *already* identified and sequestered those documents.  D.I. 295 at 2.  Defendants have refused to disclose their reliance on advice of counsel, despite having promised to do so first by March, and then by May.  *Id*. at 1.  And none of the subpoenaed third parties represented by Defendants' current or former counsel have produced *any* documents, while all the other subpoenaed third parties (not represented by Defendants' counsel) have produced documents or indicated they do not have responsive materials.  D.I. 292 at 3.

As a reward for their pattern of delays, Defendants boldly seek a 6-month extension to the trial date.  Defendants' request plainly has nothing to do with any of the recent activity in this case, because Defendants had predetermined—over 8 months ago when filing their IPRs—that it would be advantageous for the "trial date ... to be delayed significantly" by "4 to 6 months."  Granting Defendants' request would encourage them (and others) to manufacture self-serving extensions by engaging in self-help.  Defendants' request should be rejected on that basis alone.

**II. Fact Discovery Should Be Completed Expeditiously**.  Defendants' efforts to blame Plaintiffs for their own delays are meritless.  Defendants make essentially three arguments: (1) Qiagen acted with diligence, but Plaintiffs caused Qiagen's delays; (2) Defendants engaged in "time consuming discovery" into misappropriation issues; and (3) Defendants "facilitated objections and responses" on behalf of subpoenaed third-parties.  Those arguments are all flawed.

*First*, Qiagen has produced just 356 documents, even though (i) Qiagen should have known it would be joined since at least September 2020 when it acquired NeuMoDx and then attended a mediation on its behalf in October 2020; (ii) Plaintiffs sent NeuMoDx the proposed Second Amended Complaint adding Qiagen in December 2020 (D.I. 127 n.2), and (iii) the parties *stipulated* to add Qiagen and then to extend the close of fact discovery to June 21, 2021 to allow Qiagen time for discovery (D.I. 194).  Qiagen's meager production is hardly evidence of diligence.

Further, Plaintiffs are not responsible for Qiagen's failures.  Defendants assert that Plaintiffs did not cooperate in ESI discovery.  D.I. 294 at 2.  The record plainly belies Qiagen's assertion and shows that: (i) Qiagen's initial Paragraph 3 disclosures were deficient because they only identified two former employees (D.I. 294-4, Ex. D at 19); (ii) on April 5, shortly after Qiagen supplemented its Paragraph 3 disclosures, Plaintiffs disclosed its list of proposed ESI search terms—*before* Qiagen had finalized its own list of ESI terms (*id.* at 13-16); (iii) Qiagen did not

The Honorable Leonard P. Stark  Page 3
June 4, 2021

*even have* any ESI on which to run search terms until May 4 (Ex. 3 at 12); and (iv) Qiagen did not generate the first hit report on Plaintiffs' ESI terms until May 12 (*id*. at 1). Thus, the fact that Plaintiffs provided their search terms on April 5, rather than earlier, was irrelevant because Qiagen had **no ability** to run those terms until May 4. Defendants also argue that Plaintiffs "did not adhere to their pledge of 'narrow discovery'" by serving "expansive" written discovery. D.I. 294 at 4. That unsupported assertion is simply untrue. Qiagen has not shown—and cannot show—that any of Plaintiffs' requests falls outside the categories of information on which Plaintiffs preliminarily indicated they would seek discovery (*see* D.I. 294-4, Ex. D at 31).

*Second*, Defendants' argument that they were required to "undertake an extensive investigation" into their own misappropriation of confidential information (D.I. 294 at 2-3) is no excuse and defies logic. Misappropriation and copying have always been relevant to the patent claims; documents relating to those issues should have been (and likely were) encompassed by Defendants original investigatory work from the beginning. *See* D.I. 295 at 2 & n.2. Defendants knew that their principals misappropriated Plaintiffs' information and that related discovery was responsive, but they nonetheless withheld that discovery and produced the vast majority of it *after* the relevant deadlines. D.I. 275. It should have been no surprise when, after Defendants' belated productions, Plaintiffs demanded additional discovery and investigation. D.I. 294, Ex. H.

*Third*, Defendants argue that they have "facilitated objections and responses on behalf of" third-parties subpoenaed by Plaintiffs. But Defendants' efforts on behalf of third-parties are hardly unique, nor have they actually resulted in *any* produced documents. None of the third parties represented by Defendants' current or former counsel has produced any documents, while all other third parties have either produced documents or indicated they have none. D.I. 292 at 3.

At bottom, Defendants contend that the remaining discovery includes (i) Qiagen's document production, (ii) ESI productions for a handful of search terms; (iii) third-party productions; and (iv) depositions. *Id*. at 294. Defendants argue that most of the discovery "will inure to Defendants' benefit." *Id*. If that is so, then Defendants should have expeditiously completed discovery within the Court-appointed deadlines. Regardless, there appears to be no reason why all of that remaining fact discovery work could not be completed in July. Defendants argue that there are "20-50K" ESI documents each for NeuMoDx and Plaintiffs, but the parties should complete that in the same time Qiagen intends to complete productions "100K+ documents" by June 21. D.I. 294 at 3; D.I. 292 at 3. Defendants have represented that third-party productions will be complete by late-June/early-July, and they intend to take depositions of Plaintiffs' witnesses in the latter part of June. Ex. 4. If Plaintiffs are willing—despite Defendants' discovery delays—to put in the work to complete fact discovery with a modest 30-day extension, then so should Defendants. Ex. 6, *CareDx v. Natera*, No. 19-cv-662 (D. Del. Sep. 14, 2020), at 21:4-17 ("wouldn't make sense to extend the trial date based on a failing of the defendant's side [to timely produce documents] since the plaintiff wants to keep it"). As Defendants manufactured the current need for an extension, any extension should not be a windfall for them.

**III. "Narrowing" Means *Selecting From* Current Invalidity Grounds.** Defendants contend that they may freely assert any "new prior art, and thus combinations," even absent "good cause." D.I. 294 at 3. That makes no sense. Plaintiffs have relied upon Defendants' identification of invalidity grounds for each claim in making their claim reductions, and they need to know which grounds are at issue for each claim before making additional reductions. Thus, "[a]bsent good cause, Defendants cannot substitute different art for the ones currently asserted" in initial contentions. Ex. 5, *Acceleration Bay v. Activision Blizzard*, No. 16-cv-453-RGA (D. Del. Apr. 13, 2017). The Court should reject Defendants' effort to transform this case at the eleventh hour.

The Honorable Leonard P. Stark	Page 4
June 4, 2021

                              Respectfully,

                              */s/ Andrew M. Moshos*

                              Andrew M. Moshos (#6685)

AMM:lo
cc:     Clerk of Court
         All counsel of record