# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY, GENEOHM SCIENCES CANADA, INC. and HANDYLAB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NEUMODX MOLECULAR, INC., QIAGEN GMBH, and QIAGEN NORTH AMERICAN HOLDINGS, INC., <br><br> Defendant. | C.A. No. 19-cv-1126-LPS |

## DEFENDANTS' RESPONSIVE LETTER BRIEF REGARDING ISSUES RAISED IN THE INTERIM STATUS REPORT

Dated: June 4, 2021

Of Counsel:

James K. Cleland
Michael Spink
Keith Weiss
Dickinson Wright PLLC
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104
Tel. 734-436-7356
jcleland@dickinson-wright.com

Alan G. Carlson
Gary J. Speier
Samuel T. Lockner
Jonathan D. Carpenter
Alexandra J. Olson
Peter M. Kohlhepp
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant*

Dear Chief Judge Stark:

Defendants write in response to Plaintiffs' letter brief (D.I. 295).

**I. Reliance On Advice of Counsel Defense.** Plaintiffs continue to ignore the major disruptions to the case schedule and the effect that has had on Defendants' discovery efforts, including Defendants' analysis of whether they will rely on advice of counsel. Instead, Plaintiffs demand that Defendants make that strategically important decision without the benefit of material discovery; those demands, if ordered, would unfairly prejudice Defendants.

The discovery landscape of this case changed drastically after the February 8, 2021 meet-and-confer where the parties discussed a *possible* timeframe for NeuMoDx to disclose whether it will rely on advice of counsel. For example, Qiagen was added on February 25, 2021, (D.I. 169) and the Court ordered production of documents Defendants had withheld under a common interest privilege on April 7, 2021. D.I. 171, 193, 195, 196, 210. Both events changed the scope and timing of Defendants' (no longer just NeuMoDx's) analysis regarding reliance on advice of counsel. Indeed, Qiagen is still in the process of completing its document collection, and is just beginning its document production. D.I. 292 at 3. A party is ordinarily allowed to at least complete production of its own documents, and prepare a privilege log, before having to make an advice of counsel determination. Oftentimes fact discovery is nearly complete (i.e., most depositions completed) before having to make that decision.

Facing a June 21 close of fact discovery, Defendants proposed providing its position regarding advice of counsel by May 26; however, Plaintiffs rejected that proposal. D.I. 295, Ex. 3 at 17. Based in part on the above reasons, and on the parties' subsequent discussions regarding an extension of at least the fact discovery period, Defendants informed Plaintiffs that they needed more time to make the decision. D.I. 295, Ex. 3 at 2, 4. Plaintiffs only objected to Defendants request for more time after the meet and confer concluded.

In addition to the joinder of Qiagen and the recent production of common interest documents, Defendants' ability to analyze advice of counsel has been slowed by Plaintiffs' delayed discovery responses. Plaintiffs waited over six months to provide any meaningful response to Defendants' interrogatories regarding allegations of willfulness and infringement as to NeuMoDx, which they finally did in part just last month. (D.I. 86; D.I. 225; Ex. A, Interrogatory Nos. 4, 12).[1] Obtaining that information was important for NeuMoDx to ground its analysis. D.I. 295, Ex. 3 at 17. But Plaintiffs have not yet provided their positions on those same interrogatories as to Qiagen. Despite having not provided their own full contentions, Plaintiffs demand that both NeuMoDx and Qiagen make a final determination whether they will rely on advice of counsel. Defendants should get to see Plaintiffs' full contentions on willfulness, as well as complete Qiagen's document collection and privilege log. Otherwise, Defendants would be forced to adopt a strategic responsive position with partial information before Plaintiffs even set forth their contentions.

Plaintiffs' cited authority does not justify Plaintiffs' relief. Two of their cases support Defendants. *Confluent Surgical v. HyperBranch Medical* was the second of two related cases, which together involved 13 asserted patents. C.A. No. 17-688-LPS-CJB (D. Del. Oct. 30, 2017 Oral order (attached as Ex. C)). The Court allowed more than a year of discovery from its 10/23/2017 scheduling order in that second patent case before requiring a decision on advice of counsel 30 days after the Markman order. *See id*. at D.I. 30 (setting Markman hearing for

---

[1] During that timeframe, Defendants repeatedly attempted to obtain information from Plaintiffs important to make that decision. *See* Ex. B.

9/24/2018). Here, Qiagen has only been involved in this case for less than four months. *Confluent Surgical* shows that advice of counsel determinations should be made only after time to allow for prudent discovery. In *LG Philips LCD, Co. v. Tatung, Co.*, the Court acknowledged the dilemma accused infringers face in making the decision whether to rely on advice of counsel, and allowed defendants to make the reliance decision four months after the close of fact discovery, noting the potential for great prejudice to defendants if precluded from asserting advice of counsel. 243 F.R.D. 133, 136, 138-139 (D. Del. 2007). The remaining two cases, the *GSI Grp* and *Intervet* cases, are factually distinguishable because the Court did not contend with the recent addition of a new defendant, like Qiagen here.

**II. Discovery Allegedly Relevant to Patent Claims and Non-Patent Claims**

Plaintiffs' accusations that NeuMoDx is "withholding discovery," which allegedly "bears directly on Plaintiffs' patent infringement claims" "in yet another attempt to unilaterally extend the discovery schedule" are inaccurate. NeuMoDx has produced hundreds of documents purportedly relating to Plaintiffs' patent and alleged misappropriation claims. It is, in fact, those documents that spurred this most-recent bucket of Plaintiffs' ever-expanding appetite for discovery. Moreover, Plaintiffs make no showing that any additional documents they now seek relate, let alone "bear directly," to the patent case. And NeuMoDx is not seeking to unilaterally extend discovery. Both parties have acknowledged an extension is needed and NeuMoDx has requested a specific extension from the Court. D.I. 292 at 4-5; D.I. 294-1. Plaintiffs' alleged dispute is much different than they argue; plus, it is premature. *Id*. at fn2.

To be clear, NeuMoDx has produced all documents it has located during its reasonable searches responsive to Plaintiffs' RFPs relating to the patent case, including documents that may concern HandyLab or BD information.[2] In fact, NeuMoDx has employed both manual and electronic collections, and used the broadest possible search terms like Becton Dickinson, BD, and HandyLab to identify documents for production. Then, after receiving Plaintiffs' April 13 letter, NeuMoDx undertook a second review and produced any additional documents that may have been inadvertently missed. With respect to relevancy determinations, NeuMoDx's production erred on the side of disclosure. It has not withheld any information that it is aware which might relate to alleged HandyLab or BD confidential or proprietary information.[3] NeuMoDx has satisfied Plaintiffs' (i) issue. *See* D.I. 295 at 2. NeuMoDx included metadata with its productions, which showed the origin of the documents, satisfying Plaintiffs' (ii) issue. *Id*.

The only dispute is Plaintiffs' (iii) issue, which they have now shifted to characterize as demanding (1) Bates-stamped production copies of all "Confidential Information, and all documents within Locations of Confidential Information; and (2) native copies of all Confidential Information, and all documents within Locations of Confidential Information." *Id*. Recall that NeuMoDx has already produced all documents it collected that may concern HandyLab or BD information, so Plaintiffs' demand is that all *other* documents saved or maintained in the same location—irrespective of relevance to this lawsuit—must be produced, as well as all *native* copies of the locations. Distilled down, Plaintiffs' claim is that if a location housed alleged BD or HandyLab confidential or proprietary information, the whole location now

---

[2] Plaintiffs have also subpoenaed 14 individuals for their personal devices. NeuMoDx is facilitating the review and production of materials from them; however, the scope (potentially dating back 10+years) and personal nature of Plaintiffs' demands requires time.

[3] NeuMoDx reserves the right to challenge that the previously produced documents are relevant to the patent case or form the basis of a legitimate trade secret misappropriation or related claim.

must be produced natively. Plaintiffs fail to consider, however, that the parties vigorously dispute what constitutes HandyLab or BD confidential or proprietary information. NeuMoDx should not have to produce native locations merely because Plaintiffs' *claim* certain information is proprietary or confidential information. Plaintiffs provide no case law justifying their extreme ask and it goes beyond the mandates of the Federal Rule of Civil Procedure 26.

Even so, NeuMoDx sought reasoned solutions to assuage any of Plaintiffs' alleged concerns. NeuMoDx voluntarily restricted access to documents identified by BD. During one of the initial meet and confers, Plaintiffs' raised the possibility of retaining a third-party expert to audit NeuMoDx, which NeuMoDx agreed to consider. Ex. D at 5-6. NeuMoDx then repeatedly asked for names of potential experts. Ex. D at 1, 3, 4-5. But Plaintiffs never responded with further substantive discussion on that approach or its potential scope. D.I. 292 at fn1.

To the extent any additional information exists at NeuMoDx, Plaintiffs have now served new discovery and responses are due next week. Those requests form the more appropriate basis for the parties to discuss this dispute. Additionally, Plaintiffs' recently filed counterclaims-in-reply are subject to motions to dismiss, strike, sever and transfer. *See* D.I. 239, 241. The parties should allow the Court time to resolve those motions before jumping ahead and asking the Court for the extreme relief of compelling production of *full native locations* of documents—without regard to those documents' relevance. For now, the parties should focus on the patent case.

**III. Plaintiffs' Improper Party Discovery Requests Served Prior to Resolution of Venue Motion Practice on Newly-Named Parties Williams and Brahmasandra**

Plaintiffs' third issue is both misleading and improper.  Plaintiffs allege that Williams and Brahmasandra have refused to engage in discovery.  False. Plaintiffs issued third party subpoenas on Williams and Brahmasandra in the patent case.  Those subpoenas call for extensive discovery of their personal devices and personal information.  Nonetheless, and in-line with responding to Plaintiffs' 12 other subpoenas on NeuMoDx current and ex-employees seeking personal device discovery, Defendants agreed to collect, search and produce documents subject to objections.  There is no withholding of discovery.

As for Plaintiffs' party discovery requests served on Williams and Brahmasandra, those are improper and untimely.  Plaintiffs effectively set a trap.  Plaintiffs know Williams and Brahmasandra filed a motion to dismiss for lack of venue, which motion is fully briefed and pending with the Court.  Plaintiffs also know that by engaging in party discovery, Williams and Brahmasandra run the risk of waiving their pending venue challenge.  *See Hornberger Management Co. v. Haws & Tingle Gnl Contractors*, 768 A.2d 983, 988 (2000).  Plaintiffs' letter brief seeks to compel Williams and Brahmasandra to effectively waive their venue challenge.  It is improper to place them into that position.  Additionally, Williams and Brahmasandra were named without any basis for venue, and are entitled to resolution of their motion without having to engage in extensive discovery in a foreign venue. *See McDonnel Douglass v. Polin*, 429 F.2d 30 (3rd Cir. 1970); *Rait Partnership v. Fieldstone Lester*, 2009 WL 3297310, at * 3 (D. Del. 2009).  And even if their motion is denied, Williams and Brahmasandra are entitled to proceed under the Federal Rules, including procedures under Rules 16(f) and 26.

Plaintiffs' cases present facts different from the facts here.  Williams and Brahmasandra did not need to file a motion for stay or for protective order, their Rule 12(b)(3) motion to dismiss served to effectively stay any answer or discovery.  In *Bristol-Meyers Squibb*, the third party counterclaim defendant was the owner of the patents-in-suit, and was required to respond to discovery only after resolution of a motion to dismiss. *Willemijn* involved pre-trial motions.  Plaintiffs other cases are even farther afield.

                                                                Respectfully submitted,

                                                                /s/ Michael J. Farnan

cc: Counsel of Record (Via E-Mail)           Michael J. Farnan